**2011
Pension
Agreement**

**between**

**CHRYSLER GROUP LLC**



**and the**



**OCTOBER 12, 2011**

**PRODUCTION, MAINTENANCE
AND PARTS DEPOT
OFFICE AND CLERICAL
ENGINEERING**

LITHO IN U.S.A.

# TABLE OF CONTENTS

## Pension Agreement

| Section | | Page |
|---|---|---|
| 1. | Pension Fund | 1 |
| 2. | Trustee of the Fund | 2 |
| 3. | Contributions to the Pension Fund | 4 |
| 4. | Applicability of Pension Plan and Benefits for Retirement under Prior Pension Plan | 5 |
| 5. | Normal Retirement | 14 |
| 6. | Deferred Pension | 15 |
| 7. | Early Retirement | 19 |
| 8. | Permanent Total Disability Retirement | 22 |
| 9. | Surviving Spouse Benefits | 27 |
| 10. | Supplemental Allowances and Special Age 65 Benefit | 41 |
| 11. | Credited Service and Records | 44 |
| 12. | Commencement and Continuation of Pensions | 69 |
| 13. | Application for Pension, Supplemental Allowance or Special Age 65 Benefit | 72 |
| 14. | Payment of Pension, Supplemental Allowance and Special Age 65 Benefit | 73 |
| 15. | Effect on Other Pension Plans | 85 |
| 16. | Effect on Employment Rights | 85 |
| 17. | Right to Pension, Supplemental Allowance or Special Age 65 Benefit | 85 |
| 18. | Procedure for Handling Questions of Fact | 86 |
| 19. | Board of Administration | 88 |
| 20. | Pension Agreement Effective | 93 |
| 21. | Demands for Change Precluded | 95 |
| 22. | Duration of Pension Plan | 95 |
| 23. | Termination of Pension Plan | 97 |
| 24. | Limitation on Payments | 98 |
| 25. | Accounts of Trustees | 99 |
| 26. | Inclusion of Other Chrysler Employees | 100 |
| 27. | Service of Employee Outside Plan | 100 |
| 28. | Named Fiduciaries | 102 |
| 29. | Definitions | 104 |
| 30. | Construction | 111 |
| Appendix | | |
| A. | Benefit Class Codes | 111 |
| B. | Basic Benefit Rates | 114 |
| C. | Basic Pension Rates for the Purpose of Section (6) | 118 |
| D. | Temporary Benefit Rates | 118 |
| E. | Total Monthly Benefit for Purposes of Section (10) | 119 |

F. Interim Supplement Rates.................................................. 119
G. Foundry Service ................................................................. 120
H. Asbestos Service................................................................ 126
I. Reduction Factors for Disability Survivor Option.......... 128
J. Limitation on Contributions and Benefits...................... 129
Schedule I – Covered Locals................................................ 134
Letters
1. Canadian Transfers ......................................................... 137
2. Overpayment Recoveries................................................ 141
3. Re-employed Retirees...................................................... 142
4. Special Early Standards .................................................. 143
5. Investments...................................................................... 147
6. Special Early Offer - Hourly/Salary................................ 152
7. Actuarial Valuations and 5500 Reports ....................... 153
8. Administrative Expense ................................................. 154
9. Workers' Compensation Reduced by
   PTD Benefits .................................................................... 155
10. IRS Approvals.................................................................. 156
11. Extended Supplements – Social Security
   80% Benefit...................................................................... 157
12. SSDIB Award..................................................................... 159
13. PTD Study.......................................................................... 161
16. Hourly Benefits Statement............................................. 162
17. Surviving Spouse Option Notice.................................... 163
18. Chrysler/AMC Retirees.................................................... 164
19. Chrysler LLC/Jeep Retirees ........................................... 166
20. Notice of Benefit Amounts ............................................ 169
21. Toll-Free Number............................................................. 170
22. AMC – 170 Hour Rule ...................................................... 171
23. Chrysler/New Venture Gear ........................................... 172
24. Workers' Compensation – Credited Service................. 180
26. Dallas Parts Depot .......................................................... 182
27. Chrysler LLC/MBUSA........................................................ 184
30. Lifetime Supplement and
   Age-Service Supplement................................................ 188
31. Designated Contingent Annuitant Benefit.................... 190
32. Lump Sum – Pension Fund.............................................. 193
33. GEMA Employee Participation in Pension
   Agreement........................................................................ 196

SHADING REPRESENTS NEW
LANGUAGE IN THE 2011 AGREEMENT

# PENSION AGREEMENT

Agreement entered into on this 12 day of October, 2011, between Chrysler Group LLC (hereinafter referred to as the "Company") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and those of its Local Unions which are or become listed in Schedule I to this Pension Agreement (the said Local Unions and the International Union being hereinafter referred to collectively as the "Union").

As part of Chrysler LLC's bankruptcy process, the Chrysler LLC-UAW Pension Plan was designated to be assumed by Chrysler LLC and was assigned, effective June 10, 2009, to the Company.

Under various agreements with said International Union and certain of its Local Unions, the Company, Chrysler LLC, and predecessors to Chrysler LLC have heretofore established and from time to time amended a pension plan, which as most recently amended was set forth in the Prior Pension Plan, and various memorandums of agreement subsequent to such date between the parties thereto. Such pension plan is amended to read as follows (and as so amended is hereinafter referred to as the "Pension Plan"), effective with respect to each group of employees involved immediately upon receipt by the Company from the Union of written notice that this Pension Agreement and the 2011 national collective bargaining agreement applicable to such group of employees have been ratified:

## (1)  Pension Fund

The Company will maintain during the term of this Pension Plan a Pension Fund to be held and

invested by a trustee or trustees and their successors into which, during the term of this Pension Plan, the Company's payments to fund pensions, supplemental allowances and special age 65 benefits shall be made. No employee shall make or be required to make any payment to the Pension Fund. The Pension Fund shall be used to pay the pensions, supplemental allowances and special age 65 benefits described below in this Pension Plan and the pensions, supplemental allowances and special age 65 benefits shall be payable only from the Pension Fund and only upon the employees applying for them in the manner this Pension Plan provides below. Expenses of the Pension Fund also shall be payable from the Pension Fund except to the extent that the Company shall pay them.

**(2)    Trustee of the Fund**

The Company shall have the sole right to select and contract with the corporate trustee or trustees, to remove any trustee or trustees, to select successors, and to determine the form and terms of the trust agreement with the trustee or trustees, which may authorize the trustee or trustees to include among the investments of the Pension Fund

(i)    obligations and stock of the Company,

(ii)    investments in deposits that bear a reasonable rate of interest made in any bank or similar financial institution supervised by the United States or by any State, whether or not such bank or institution is the trustee of the part of the Pension Fund so deposited or is a trustee of any other part of the Pension Fund, and

2

(iii)    interests in a common or collective trust fund or pooled investment fund maintained by the trustee (if the trustee is a bank or trust company supervised by a State or Federal agency) or in a pooled investment fund of an insurance company qualified to do business in a State, purchased or sold, in the case of any such interest, in a transaction in which the trustee received not more than reasonable compensation.

In performance, or part performance, of the requirements of this Pension Plan that it maintain a Pension Fund and make payments into it, the Company at any time or from time to time shall have the right to contract, or to cause the trustee or trustees of the Pension Fund to contract for or purchase from any legal reserve life insurance company or companies having at least $1,000,000,000 of assets a contract or contracts (including but not limited to contracts of the deposit administration type) providing for the funding of all or part of the pensions, supplemental allowances or special age 65 benefits, or any or all of them, for any employee or employees, or retired employee or employees, provided by and on the conditions set forth in this Pension Plan, and for such purpose to pay directly to such insurance company or companies such sums as may be required therefore, or to cause the trustee or trustees to transfer or pay to such insurance company or companies all or such part of the Pension Fund as may be required therefore. The Board of Administration referred to in Section (19) of this Pension Plan shall have and may exercise all of its powers with respect to any pensions, supplemental allowances or special age 65 benefits to be provided under such contract or contracts with an insurance company or companies and with respect to all employees and retired employees covered by

3

them. Such contract or contracts shall be treated as assets of the Pension Fund and payments by the Company to such insurance company or companies shall be treated as contributions to the Pension Fund. In determining the assets of the Pension Fund as provided in Section (3) of this Pension Plan, the values of such contract or contracts with an insurance company or companies shall be the values certified by the insurance company or companies issuing them.

**(3)      Contributions to the Pension Fund**

The Company, subject to Section 23, shall make such contributions to the Pension Fund with respect to pensions, supplemental allowances and special age 65 benefits as shall be required under accepted actuarial principles and Section 412 of the Internal Revenue Code, or any successor thereof.

Notwithstanding the paragraph above, for Plan years beginning on and after October 1, 2008, the Plan shall comply with the minimum funding standards of the Employee Retirement Income Security Act of 1974 and the Pension Protection Act of 2006.

All contributions of the Company to the Pension Fund are conditioned on the deductibility of the contribution under Section 404 of the Internal Revenue Code, or any successor thereof at the time in effect, and if any such deduction is disallowed, such contribution may, to the extent disallowed, be returned to the Company within one year after the disallowance of the deduction.

**(4)      Applicability of Pension Plan and Benefits for Retirement under Prior Pension Plan**

A.   Except as provided in B. below, the provisions of this Pension Plan are applicable only to employees who have seniority on or after October 1, 2011 and who retire or lose seniority on or after that date and to the eligible surviving spouses of such employees, and the provisions of the Prior Pension Plan (as defined in Section (29) below) shall not be applicable to them after such date. However, all references in Section (1), (2), (3), (19) and (23) of this Pension Plan to pensions, supplemental allowances and special age 65 benefits shall include those payable under the Prior Pension Plan as well as under this Pension Plan.

The provisions of the Prior Pension Plan shall continue to be applicable on and after October 1, 2011 to all employees who retired or lost their seniority prior to such date (and who after that date if retired on a permanent total disability pension prior to such date do not cease to be permanently and totally disabled) and to the eligible surviving spouses of such employees.

B.   Employees retired prior to September 1, 2011 under the Prior Pension Plan or eligible surviving spouses of such employees, shall have their benefits, if any, determined in accordance with the Prior Pension Plan, except that:

1.   The monthly basic pension payment for each such retired employee or surviving spouse shall be as provided in Appendix B.

4

5

2.   The monthly temporary pension payment for each such retired employee with benefits commencing prior to October 1, 2011 entitled to receive the temporary pension under Section (7) or (8) of the Prior Pension Plan would be as follows:

| Date of Employee's Retirement | Temporary Pension Benefit Rate | Monthly Maximum |
|---|---|---|
| On and after September 1, 1961 and before September 1, 1964 | 15.90 | 397.50 |
| On and after September 1, 1964 and before September 7, 1967 | 16.40 | 410.00 |
| On and after September 7, 1967 and before September 15, 1970 | 16.65 | 416.25 |
| On and after September 15, 1970 and before March 1, 1974 | 17.15 | 428.75 |
| On and after March 1, 1974 and before October 1, 1976 | 18.15 | 453.75 |
| On and after October 1, 1976 and before October 1, 1978 | 18.65 | 466.25 |
| On and after October 1, 1978 and before September 15, 1979 | 19.65 | 491.25 |
| On and after September 15, 1979 and before October 1, 1980 | 20.65 | 516.25 |
| On and after October 1, 1980 and before October 1, 1981 | 21.65 | 541.25 |
| On and after October 1, 1981 and before August 15, 1983 | 22.65 | 566.25 |
| On and after August 15, 1983 and before October 1, 1985 | 22.65 | 679.50 |
| On and after October 1, 1985 and before October 1, 1986 | 23.65 | 709.50 |
| On and after October 1, 1986 and before October 1, 1987 | 24.65 | 739.50 |
| On and after October 1, 1987 and before September 1, 1988 | 24.85 | 745.50 |
| On and after September 1, 1988 and before September 1, 1989 | 25.95 | 778.50 |
| On and after September 1, 1989 and before September 1, 1990 | 27.05 | 811.50 |
| On and after September 1, 1990 and before September 1, 1991 | 29.40 | 882.00 |
| On and after September 1, 1991 and before September 1, 1992 | 31.60 | 948.00 |
| On and after September 1, 1992 and before September 1, 1993 | 33.70 | 1,011.00 |
| On and after September 1, 1993 and before September 1, 1994 | 34.40 | 1,032.00 |
| On and after September 1, 1994 and before September 1, 1995 | 35.35 | 1,060.50 |

| | | |
|---|---|---|
| On and after September 1, 1995 and before September 1, 1996 | 36.50 | 1,095.00 |
| On and after September 1, 1996 and before September 1, 1997 | 36.75 | 1,102.50 |
| On or after September 1, 1997 and before September 1, 1998 | 38.00 | 1,140.00 |
| On and after September 1, 1998 and before September 1, 1999 | 39.65 | 1,189.50 |
| On and after September 1, 1999 and before September 1, 2000 | 39.85 | 1,195.50 |
| On and after September 1, 2000 and before September 1, 2001 | 41.45 | 1,243.50 |
| On or after September 1, 2001 and before September 1, 2002 | 43.35 | 1,300.50 |
| On or after September 1, 2002 and before September 1, 2003 | 45.45 | 1,363.50 |
| On or after September 1, 2003 and before September 1, 2004 | 46.75 | 1,402.50 |
| On or after September 1, 2004 and before September 1, 2005 | 48.05 | 1,441.50 |
| On or after September 1, 2005 and before September 1, 2006 | 49.50 | 1,485.00 |
| On or after September 1, 2006 and before September 1, 2007 | 50.80 | 1,524.00 |
| On or after September 1, 2007 and before September 1, 2008 | 50.80 | 1,524.00 |

8

| | | |
|---|---|---|
| On or after September 1, 2008 and before September 1, 2009 | 51.00 | 1,530.00 |
| On or after September 1, 2009 and before September 1, 2010 | 51.20 | 1,536.00 |
| On or after September 1, 2010 and before September 1, 2011 | 51.40 | 1,542.00 |

3.    An employee who retired under Section (7) of this Plan at his option after attaining age 55 with less than 30 years of credited service shall receive, for months commencing on and after October 1, 2011 an interim supplement as follows:

| Age at Retirement | Monthly Amount* Per Year of Credited Service commencing October 1, 2011 |
|---|---|
| 55 | $22.60 |
| 56 | $26.70 |
| 57 | $32.25 |
| 58 | $37.80 |
| 59 | $42.20 |
| 60 & 61 | $48.85 |

*Prorated for intermediate ages computed to the nearest whole month.

4.    (i)      Any retired employee age 65 years or older who is receiving monthly pension benefits which commenced prior to September 15, 1979 under the applicable sections of the Prior Pension Plan, or

        (ii)    any eligible Surviving Spouse who is receiving pension benefits which commenced prior to September 15, 1979 under the applicable section of the Prior Pension Plan who is age 65 or older, or who is under age 65 if enrolled in the voluntary Medicare

9

coverage that is available under the Federal Social Security Act by making contributions (excluding the eligible surviving spouse of a former employee who was receiving a monthly deferred vested pension under the applicable section of the Prior Pension Plan) or

(iii)  any retired employee who has not attained age 65 who is receiving a monthly pension which commenced prior to September 15, 1979 under the applicable sections of the Prior Pension Plan and who is enrolled in the voluntary Medicare coverage that is available under the Federal Social Security Act by making contributions,

shall, subject to Clauses 2. and 3. below, receive a monthly special age 65 benefit equal to the lesser of $76.20 or the Medicare Part B premium for each month commencing on or after January 1, 2004, in addition to the monthly pension, but in no event shall payment of such special age 65 benefit under (i) or (ii) above (except in the case of an eligible surviving spouse described in (ii) above who is under age 65 and enrolled in such voluntary Medicare coverage) commence prior to the first day of the month following the month during which age 65 is attained and in no event shall payment of such special age 65 benefit continue under (iii) above, or to an eligible surviving spouse described in (ii) above who is under age 65 and enrolled in such voluntary Medicare coverage, after the month during which age 65 is attained or after any earlier date on which such person ceases to be enrolled in such voluntary Medicare coverage and in no event shall a special age 65 benefit payable before attaining age 65 commence before the employee or surviving spouse makes application

therefore; provided however, that with respect to an otherwise eligible individual under age 65, payment shall commence with the first month of enrollment; and provided further however, that not more than one such payment shall be made to any individual for any one month; and provided further that in no event shall any special age 65 benefit be payable to an eligible surviving spouse whose benefits did not commence prior to January 1, 1980.

5.  Effective January 1, 1991, the special age 65 benefit payable to an individual who is not enrolled in Medicare Part B as of October 1, 1990 but who was receiving a special age 65 benefit, will be limited to $28.00 per month. Such an individual will become entitled to the schedule of payments in Clause 1. above, upon proof of enrollment in Medicare Part B. Thereafter, continued receipt of a special age 65 benefit will be contingent on maintenance of Medicare Part B enrollment.

6.  For an individual enrolled in Medicare Part B as of October 1, 1990 or who first becomes eligible for Medicare Part B on or after October 1, 1990, receipt of a special age 65 benefit on and after January 1, 1991 is contingent upon continued enrollment in Medicare Part B.

7.  The monthly pension payment payable to the surviving spouse of a retired employee who elected a Special Survivorship Option and who dies after such election becomes effective, shall be an amount equal to $14.10 for each year of credited service such employee had at the date of his retirement for any month commencing on or after October 1, 2011.

10

11

8. Monthly benefits payable on and after October 1, 2011 shall not be limited by the 70% limitation set forth in Section (10)F. of the Prior Pension Plan.

9. Effective October 1, 1999, the monthly pension payable to the otherwise eligible surviving spouse of an employee who:

(i) retired prior to September 1, 1964 (excluding surviving spouses of retirees who died prior to age 55 and who are receiving, or are eligible to receive, benefits in accordance with Section (9)(C), or lost seniority prior to September 1, 1964 and was eligible for Deferred Pension Benefits) shall be increased from 50% to 55% of the reduced monthly basic pension that was, or would have been payable after age 65, to the retired employee.

(ii) retired on or after September 1, 1964 and before November 1, 1976 (excluding surviving spouses of retirees who died prior to age 55 and who are receiving, or are eligible to receive, benefits in accordance with Section (9)(C), or lost seniority on or after September 1, 1964 and before November 1, 1976 and was eligible for Deferred Pension Benefits) shall be increased from 55% to 60% of the reduced monthly basic pension that was, or would have been payable after age 65, to the retired employee.

(iii) retired on or after November 1, 1976 (excluding surviving spouses of retirees who died prior to age 55 and who are receiving, or are eligible to receive, benefits in accordance with Section (9)(C), or lost seniority on or after November 1, 1976 and was eligible for Deferred Pension Benefits) shall be increased from 60% to 65% of the reduced monthly

12

basic pension that was, or would have been payable after age 65, to the retired employee.

C. A retired employee or former employee who has commenced receiving deferred pension benefits under the Prior Pension Plan and who is re-employed by the Company shall continue to receive during such re-employment, any monthly basic pension, temporary pension or special age 65 benefit to which he might be otherwise entitled, but not a supplemental allowance.

D. A retired employee who is entitled to receive a supplemental allowance or temporary pension will receive such benefit, if otherwise eligible, through the month in which he attains age 62 and one month.

E. A retired employee whose basic monthly benefit would otherwise have been recomputed without any reduction for his pension commencing before age 62 shall have his basic monthly pension recomputed without any reduction for benefits payable in months after the month in which he attains age 62 and one month.

F. Notwithstanding any provision of this Pension Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Sections 401(a)(37) and 414(u) of the Code. In the event that a participant dies on or after January 1, 2007 while performing qualified military service, any death benefit or preretirement survivor benefit payable with respect to the participant shall be determined (other than with respect to benefit accruals relating to the period of qualified military service) as if the participant

13

resumed employment on the date immediately prior to his or her death and then terminated employment on account of death.

G. Funding Based Limits on Benefits and Benefits Accruals

The Pension Plan shall at all times comply with Code Section 436 and regulations and other guidance thereunder.

**(5)     Normal Retirement**

The basic pension of an employee who retires at or after age 65 with one year or more of credited service, as defined in Section (11) of this Pension Plan, shall be a monthly pension payment equal to the amount that is assigned to the Benefit Class Code that is applicable to him as provided in Appendix B to this Pension Plan for each year of credited service that he had at the date of his retirement.

An employee who loses his seniority (other than by death or retirement) under the labor agreement after he has attained age 65 and who at the date he loses seniority has one year or more of credited service shall have the right to retire under this Section (5).

If an employee receiving a normal retirement pension under this Pension Plan or the Prior Pension Plan shall be re-employed, then he shall continue to receive during such re-employment, any monthly basic pension to which he might be otherwise entitled, but not a supplemental allowance, and such re-employment shall not result in the accrual of any

14

additional credited service under Section (11) of this Pension Plan.

Notwithstanding anything in this Pension Plan to the contrary, the payment of benefits under the Pension Plan to an employee will begin not later than the 60th day after the latest of the close of the calendar year in which:

A.     the date on which the employee attains the earlier of age 65 or the normal retirement age specified   under the plan;

B.     occurs the 10th anniversary of the year in which the employee commenced participation in the plan, or

C.     the employee terminates his service with the employer.

**(6)     Deferred Pension**

An employee who loses his seniority under the labor agreement and who at the date he loses his seniority

(i)     has 5 years or more of credited service and is not eligible for a pension under any other Section of this Pension Plan, or

(ii)     has attained the latter of age 65 or the fifth anniversary in which the employee commenced participation in the Pension Plan,

shall be eligible for a deferred pension under compliance with the terms of this Section (6), which shall be a monthly pension payment equal to the

15

amount that is assigned to the Benefit Class Code that is applicable to him as provided in Appendix C to this Pension Plan for each year of credited service that he had at the date he lost his seniority.

Any deferred pension under this Section (6) shall at the option of the former employee be either

(a)    a monthly pension effective the first day of the first month after he attains age 65 commencing not earlier than 180 days prior to the date on which such former employee elects to have his deferred pension commence, in the full amount for which he is eligible under this Section (6), or

(b)    a monthly pension commencing as of the first day of the month after he attains age 60 or files his application for such pension, whichever is later, in an amount equal to the monthly pension provided for in (a) above reduced by a percentage equal to five-ninths of one percent multiplied by the number of months by which he is less than 65 years of age at the date such pension commences, or

(c)    if he loses his seniority on or after January 1, 1976 and has attained at least age 55 but not 60, a monthly pension commencing as of the first day of the month after he lost his seniority and after his combined years of age and years of credited service (to the nearest 1/12 in each case) total 85 or more, or after he files his application for such pension, whichever is later, in an amount equal to the monthly pension provided for in (a) above, multiplied by a percentage as set forth in the following table:

| Age When Pension Commences | Percentage* |
|---|---|
| 55 | 42.5 |
| 56 | 46.4 |
| 57 | 50.6 |
| 58 | 55.4 |
| 59 | 60.7 |
| 60 | 66.7 |

*Prorated for intermediate ages computed to the nearest whole month.

An application for a deferred pension under this Section (6) must be filed as provided in Section (13) by each former employee eligible therefore not earlier than 180 days prior to the date on which such former employee elects to have his deferred pension commence.

An application for a pension may not be filed by a former employee earlier than 180 days prior to the date he elects to have his deferred pension commence nor, if he lost his seniority before January 1, 1976, later than the date on which he attains age 70; provided, however, that, effective October 1, 1996 this age restriction shall no longer be applicable for benefits payable thereafter. Unless application is filed within these time limits, no deferred pension shall be payable to such former employee at any time.

Upon approval of his application by the Board of Administration, the deferred monthly pension payable from the Pension Fund under this Section (6) shall begin as of the first day of the month as of which the former employee elects to have his pension commence but not before the first day of the first month after

(a)    he attains age 60, or

(b)    if he loses his seniority on or after January 1, 1976, the date he attains age 55 but not 60 and his combined years of age and years of credited service (to the nearest 1/12 in each case) total 85 or more, or

(c)    he filed his application for such pension, whichever is latest, and shall be payable thereafter as of the first day of each month during the lifetime of such former employee.

If a former employee receiving a deferred pension under this Pension Plan or the Prior Pension Plan shall be re-employed by the Company, then he shall continue to receive during such re-employment, any monthly deferred pension to which he might be otherwise entitled, and such re-employment shall not result in the accrual of any additional credited service under Section (11) of this Pension Plan.

If a former employee eligible for a deferred pension under this Pension Plan or the Prior Pension Plan is re-employed by the Company prior to the commencement of deferred pension benefits, then

(a)    his eligibility for a deferred pension under this Pension Plan or the Prior Pension Plan shall cease,

(b)    he shall be entitled to the credited service he had at the date he lost his seniority, and

(c)    his service with the Company after the date he is re-employed shall be used in a manner consistent with Section 27 (ii).

18

(7)    **Early Retirement**

A.    The basic pension of an employee who retires at his option and who

(i)    has attained age 60 but not 65 and has 10 years or more of credited service, or

(ii)    has attained age 55 but not 60 and whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more, or

(iii)    has not attained age 55 and has 30 years or more of credited service,

shall be a monthly pension payment, commencing at or after early retirement, equal to the amount that is assigned to the Benefit Class Code that is applicable to him as provided in Appendix B to this Pension Plan for each year of credited service that he had at the date of his early retirement, multiplied by a percentage as set forth in the following table:

| Age When Pension Commences | Percentage* |
|---|---|
| 42 | 21.0 |
| 43 | 22.6 |
| 44 | 24.3 |
| 45 | 26.1 |
| 46 | 28.2 |
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |

19

| 52 | 45.0 |
|----|------|
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.0 |

*Prorated for intermediate ages computed to the nearest whole month.

provided, however, that if he retired with 30 or more years of credited service or combined years of age and years of credited service (to the nearest 1/12 in each case) which totaled 85 or more, the basic monthly pension otherwise payable to him after age 62 and one month shall be recomputed without any reduction for his pension commencing before he attained age 62 and one month.

The basic pension payable in any month will not be reduced below an amount which results in the early retirement supplement paid to the retired employee in such month under Section (10) exceeding the old age insurance benefits, unreduced on account of age, payable under Title II of the Social Security Act, as amended.

B.    The pension of an employee who is retired Special Early as set forth hereinafter in the Standards applicable to such retirement, and who has attained age 55 (age 50 for an employee who is laid off on or after November 1, 1985 as a result of a plant closing where no other Chrysler Group LLC plants are in the

20

same labor market area) but not 65 and has 10 years or more of credited service, shall be

1.    a monthly basic pension payment equal to the amount that is assigned to the Benefit Class Code that is applicable to him as provided in Appendix B to this Pension Plan for each year of credited service that he had at the date of his early retirement, and

2.    the monthly amount that is applicable to him as provided in Appendix D to this Pension Plan for each year of credited service that he had at the date of his early retirement, provided, however, that the portion of his pension provided under this paragraph 2. (which portion, as well as the portion described in Section (8)(b) below, is referred to as the "temporary pension") shall not be payable to him for any month for which he would be entitled to receive Social Security Benefits; provided further, however, that a temporary pension for any retired employee shall not be payable for any month commencing after he attains age 62 and one month.

C.    An employee shall have the right to retire under A. of this Section (7) if he loses his seniority (other than by death or retirement) under the labor agreement

(i)    after he has attained age 60 but before age 65, if at the date he loses seniority he has 10 years or more of credited service, or

(ii)    after he has attained age 55 but not 60, if his combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more at the date he loses seniority, or

21

(iii)    before he has attained age 55, if he has 30 years or more of credited service at the date he loses seniority.

D.    If an employee receiving an early retirement pension under this Pension Plan or the Prior Pension Plan shall be re-employed, then he shall continue to receive during such re-employment, any monthly basic pension or temporary pension to which he might be otherwise entitled, but not a supplemental allowance, and such re-employment shall not result in the accrual of any additional credited service under Section (11) of this Pension Plan.

## (8)    Permanent Total Disability Retirement

The pension of an employee who

(i)    is permanently and totally disabled and became such after the effective date, and

(ii)    retires before age 65 with 10 years or more of credited service,

shall be

(a)    a monthly basic pension payment equal to the amount that is assigned to the Benefit Class Code that is applicable to him as provided in Appendix B to this Pension Plan, for each year of credited service that he had at the date he makes application, and

(b)    the monthly amount that is applicable to him as provided in Appendix D to this Pension Plan for each year of credited service that he had at the date of his retirement (which portion of his pension, as well as the portion described in Section (7) B.2

22

above, is referred to hereinafter in this Pension Plan as the "temporary pension"); and provided, however, that in either such case, the temporary pension shall not be payable to him for any month for which he would be entitled to receive Social Security Benefits; provided further, however, a temporary pension shall not be payable for any month commencing after he attains age 62 and one month.

Such pension payments shall continue while he shall be permanently and totally disabled until he shall reach age 65, but no longer. If his permanent and total disability shall continue until he shall reach age 65, he shall be deemed to have retired at age 65 under Section (5) of this Pension Plan with the same credited service used in calculating his permanent total disability pension.

Notwithstanding the provisions of Section (14) of this Pension Plan, the monthly pension for permanent total disability payable from the Pension Fund shall begin as of the first day of the month after

(i)    the date on which the retiring employee in his application for pension elects to retire, and

(ii)    at least five consecutive months shall have elapsed since the date upon which his total disability commenced,

and such monthly pension shall be payable to him, if he then shall be living, on the first day of the month following the date on which the Board of Administration shall have found in the manner hereafter set forth that he is permanently and totally disabled and that his total disability has existed continuously for a period of five consecutive months

23

or more; provided, however, if the retiring employee is receiving Extended Disability Benefits payable under the Life, Disability and Health Care Benefits Program applicable to employees covered by this Pension Plan and if such benefits are greater than the benefits that would be payable under this Plan, the monthly pension for permanent total disability payable from the Pension Fund shall begin as of the first day of the third month following the date the Pension Board of Administration receives the required medical verification of the retiring employee's disability. The intent is to avoid overpayments of Extended Disability Benefits and not to reduce or increase an employee's benefit entitlement under this Pension Plan. Notwithstanding the foregoing proviso, however, if the retiring employee shall die subsequent to the effective date indicated on the retirement application, such proviso shall not be applicable.

An employee shall be deemed to be permanently and totally disabled only if he is not engaged in regular employment or occupation for remuneration or profit and the Board of Administration shall find, on the basis of medical evidence

(a)    that he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in regular employment or occupation with the Company at the plant or plants where he has seniority for remuneration or profit, and

(b)    that his total disability will be permanent and continuous during the remainder of his life; provided, that no employee shall be deemed to be permanently and totally disabled for the purposes of this Pension Plan if his disability resulted from service in the armed forces of any country except that nothing herein shall

24

prevent an employee from being deemed so disabled under this Pension Plan if he has accumulated at least 5 years of seniority after separation from service in the armed forces and before such incapacity occurs.

In any case where the Board of Administration is required to make a finding with respect to the permanent total disability of any employee applying for, or of any retired employee during, retirement for permanent total disability, the employee (which term in the remainder of this Section (8) shall be applicable to an employee retired for permanent total disability) first shall make application by submitting a form completed by their personal physician for his medical opinion whether the employee has been totally disabled, whether the employee's total disability has existed continuously for a period of at least five consecutive months and whether the employee's total disability will be permanent and continuous during the remainder of his life, and if requested by the Board of Administration, the employee shall be required to submit to an examination also by a physician located at the plant where the employee has seniority or in certain cases through a Plant Physician's Medical Record Review as determined by the Board of Administration. The employee shall be required to submit to such re-examinations as shall be necessary for the Board of Administration to determine whether he is permanently and totally disabled and, when relevant, whether the disability has existed continuously for a period of at least five consecutive months.

If the personal physician and the Plant Physician agree, the medical opinions of such physicians shall decide the question and shall be binding upon the Board of Administration which shall thereupon make

25

its finding in accordance with such opinions. If such physicians shall disagree concerning whether the employee is permanently and totally disabled or on the duration of such disability, that question shall be submitted to a third physician appointed by the Board of Administration. The medical opinion of such third physician, after examining the employee and if necessary consulting with such other two physicians, shall decide the question and shall be binding upon the Board of Administration which shall thereupon make its finding in accordance with such opinion. The fees and expenses of such third physician shall be shared equally by the Company and the Union. An employee who shall refuse to submit to any physical examination requested under this Pension Plan shall not be retired or continued on retirement for permanent total disability.

Any employee who shall be receiving a pension for permanent total disability shall be required to submit to a disability examination in the manner set forth in this Section (8) at any time during his retirement for the purpose of determining his condition whenever such examination is requested by at least three members of the Board, but not more often than semi-annually except during the first year after the date on which he received his first pension payment for permanent total disability. If the Board shall find in the manner set forth in this Section (8) that he no longer is permanently and totally disabled, or if he engages in regular employment or occupation for remuneration or profit, except for purposes of rehabilitation as determined by the Board, his pension for permanent total disability shall cease.

If the pension of an employee retired for permanent total disability under this Pension Plan or

26

the Prior Pension Plan shall cease, and if his seniority is reinstated, he shall be credited with the credited service he had at the time as of which his pension for permanent total disability began and his service with the Company after the date he is re-employed shall be used in computing his credited service under Section (11) of this Pension Plan.

**(9)      Surviving Spouse Benefits**

A.  The Regular Surviving Spouse Option

1.      In lieu of the monthly pension otherwise payable to an employee who retires under Section (5) or (7) or (8) of this Pension Plan or who loses his seniority and is entitled to a pension under Section (6), the employee shall automatically be deemed to have elected a reduced monthly pension payable during his lifetime after the effective date of his election, terminating with the last monthly payment before his death, with the provision that if his death occurs on or after the effective date of his election and if the person who was his spouse on such date is living at his death, a pension in the amount specified below shall be payable monthly thereafter to such person during her lifetime, terminating with the last monthly payment before her death.

2.      This automatic election shall be deemed to have been made at the time that the employee applies for a monthly pension under Section (6), (7) or (8), and the effective date of the election shall be the date his monthly pension commences except as follows:

(a)      In the case of an employee who is married when his election would otherwise become effective

27

but whose marriage at that date has been continuously in effect for less than one year, the effective date of his election shall be the first day of the month following the month in which such marriage has been continuously in effect for one year. The automatic election provided in this Paragraph A. shall be applicable only with respect to an employee who is married on the date the election shall be deemed to have been made.

(b)    An employee who retires under the applicable sections of this Pension Plan or who retired under the applicable sections of the Prior Pension Plan who marries or remarries, subsequent to the earliest date surviving spouse coverage was in effect, or was not in effect on such date solely because the retired employee was not then married, may elect, or re-elect, surviving spouse coverage. Any such coverage, and the benefits there under, shall be provided under the terms and conditions of the Pension Plan in effect at the time of the employee's retirement. Such coverage shall become effective on the first day of the third month following the month in which the Board of Administration receives a completed election form, but in no event before the first day of the month following the month in which the retired employee has been married one year. For elections effective January 1, 1997 and thereafter, such coverage shall become effective on the one year anniversary of the marriage. The applicable reduction in the retiree's benefit shall commence on the first day of the month following the one-year anniversary date. No election provided hereunder shall become effective under any circumstances for any retired employee whose completed election form is received by the Board of Administration after the first day of the month in which the retired employee has been married one year (18 months on or after October 1, 1999).

28

3.    An employee may prevent the automatic election provided in this Paragraph A. by specific written rejection, which for rejections made after December 31, 1984 includes the written consent of the employee's spouse witnessed by a Plan Representative or a notary public, executed at the time of application for retirement benefits. Such specific written rejection shall be executed in whatever form and manner may be prescribed by the Board of Administration for this purpose, and in the event such specific written rejection is so executed the employee shall be entitled to the monthly pension provided in whichever is applicable of Section (5), (6), (7) or (8) of this Pension Plan without the reduction provided in Clause 4., below.

Information regarding this coverage is included in the summary plan description, which will be provided to each employee. Within a reasonable period prior to the pension starting date, each employee shall be provided a written explanation of

(i)    the terms and conditions of the surviving spouse coverage,

(ii)    the employee's right to make and the effect of an election to waive the surviving spouse coverage,

(iii)    the rights of the employee's spouse, and

(iv)    the right to make and the effect of revocation of a previous selection to waive the surviving spouse coverage.

4.    Except as provided in the last sentence of this Clause, the reduced monthly pension payable to the employee who shall have been deemed to have made the automatic election provided above in this Paragraph A. shall be a percentage (determined as set forth below) of the monthly basic pension otherwise

29

payable to the retired employee after age 65 if he had rejected such survivorship election. The percentage to be used shall be 95% if the age of the employee and the age of his spouse do not differ by more than 5 years. If the age of the spouse is less than the age of the employee, the percentage shall be 95% reduced by 1/2 of 1% for each year in excess of 5 years that the age of the spouse is less than the age of the employee. If the age of the spouse is greater than the age of the employee, the percentage shall be 95% increased by 1/2 of 1% for each year in excess of 5 years that the age of the spouse exceeds the age of the employee (up to a maximum of 100%). For this purpose, the ages of the employee and his spouse shall each be the age at his or her last birthday prior to the effective date of the election as provided in Clause 2., above. The reductions provided in this Clause shall be made in all monthly pension payments paid to the retired employee on or after the date on which the retired employee's election becomes effective, except as otherwise provided in Clauses 7., 8. and 9. below. In the case of an employee who has 30 or more years of credited service or whose combined years of age and credited service total 85 or more and whose pension is subject to recomputation at age 62 and one month pursuant to the proviso at the end of Section (7) A., the reduced monthly pension payable to him shall be determined by deducting the amount of the reduction provided above in this Clause from the monthly pension payable before he attains age 62 and one month and before such recomputation and the same amount shall be deducted from his monthly pension payable after he attains age 62 and one month and after such recomputation.

5.    The monthly pension payable to the surviving spouse if the retired employee's death occurs on or after the effective date of his election and the person who was his spouse on such date is living at his death and not receiving benefits or eligible to receive benefits under Section (9)(C) below, shall be:

(a)   65% of the reduced monthly basic pension that was or would have been payable after age 62 and one month to the retired employee, without any reduction for retiring before age 62 in the case of the monthly pension payable to the surviving spouse of a retired employee with 30 years or more of credited service or to the surviving spouse of a retired employee whose combined years of age and credited service total 85 or more.

(b)   60% (increased to 65% effective October 1, 1999) if the employee retired on or after November 1, 1976 and before October 1, 1999.

(c)   55% (increased to 60% effective October 1, 1999), if the employee retired on or after September 1, 1964 and before November 1, 1976.

(d)   50% (increased to 55% effective October 1, 1999), if the employee retired before September 1, 1964.

(e)   65%, if the employee terminated employment (other than by reason of retirement) on or after October 1, 1999.

(f)    60%, if the employee terminated employment (other than by reason of retirement) on or after November 1, 1976 and before October 1, 1999.

(g)   55%, if the employee terminated employment (other than by reason of retirement) on or after September 1, 1964 and before November 1, 1976.

30

31

(h)    50%, if the employee terminated employment (other than by reason of retirement) before September 1, 1964.

6.    An employee who is deemed to have made the automatic election provided in this Paragraph A. must produce an official marriage certificate and birth certificate of his spouse or other evidence of his marriage to and the age of his spouse satisfactory to the Board of Administration in its reasonable discretion.

7.    If the employee is deemed to have made the election provided above in this Paragraph A. and the employee's spouse dies or should otherwise cease to be his spouse after he has made such election but before the effective date of such election, the election shall be revoked automatically. The election shall be irrevocable at and after the effective date of the election if the employee and his designated spouse are both living on such date, except as otherwise provided in Clauses 8. and 9. below. If the employee's designated spouse dies or should otherwise cease to be his spouse after the effective date of the election and during the lifetime of the employee, the reduced pension payable to the employee shall not be affected, except as otherwise provided in Clauses 8. and 9. below.

8.    An employee who is deemed to have made the election provided above in this Paragraph A. and whose designated spouse predeceases him may have his monthly pension restored to the amount payable without reduction for such election, effective the first day of the third month following the month (first day of the month following the month for cancellations occurring on and after January 1, 1994) in which the

32

Board of Administration receives evidence satisfactory to it of the spouse's death.

9.    If an employee is deemed to have made the election provided above in this Paragraph A. and if the employee and his spouse are divorced by court decree or judgment and a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) does not provide to the contrary, such employee may cancel the automatic election and have his monthly pension restored to the amount payable without reduction for such election, effective the first day of the third month following the month in which the Board of Administration receives such employee's written revocation of the election because of divorce, on a form approved by the Board of Administration and accompanied by evidence satisfactory to the Board of Administration of a final decree or judgment of divorce.

B.    Widow's/Widower's Pension Benefit

The surviving spouse of an employee

(i)    who dies on or after attaining age 60 with 10 years or more of credited service, or on or after attaining age 55 if his combined years of age and credited service (to the nearest 1/12 in each case) total 85 or more, or before attaining age 55 if he has 30 years or more of credited service but in any such case before the date on which the employee in his application for pension elects to retire or before the date his monthly pension commences in the case of any employee who defers the receipt of his monthly pension under Section (7).A. and

33

(ii)    who, if he had retired at the date of his death, would have been eligible to make the election under Section (9)A. shall be entitled to a monthly pension during her lifetime, terminating with the last monthly payment before her death. The monthly pension payable to the surviving spouse shall be the amount she would have been entitled to receive under Section (9) A. above, if employee had retired on the date of his death, under Section (5) or Section (7), whichever is applicable, and had made the election under Section (9) A. above.

The death of an otherwise eligible employee who has retired under Section (8), occurring on or after his attaining age 55, but before the first day of the month following the date on which he retires, shall not disqualify an otherwise eligible surviving spouse from receiving a benefit hereunder.

C. The Permanent Total Disability (PTD) Surviving Spouse Option

1.    In lieu of the monthly pension otherwise payable to an employee who retires under Section (8) and who is under age 55 and has less than 30 years of credited service, the employee shall automatically be deemed to have elected a reduced monthly pension payable after the effective date of his election up to and including the month in which he dies or attains age 55, whichever occurs first, as provided in Section (9) C.5. of this Pension Plan, and if he dies before the first day of the month after he would have reached age 55, a monthly pension beginning on the first day of the month after the retired employee would have reached age 55 shall be payable to the person who was his spouse, if such person is living at his death,

34

terminating with the last monthly payment before her death.

2.    This automatic election shall be deemed to have been made at the time that the employee applies for a permanent total disability retirement and the effective date of the election shall be the date his monthly pension commences.

3.    The automatic election provided above in Paragraph C.1. shall be applicable only with respect to a spouse to whom the employee is married on the date the election is deemed to have been made and only if the retired employee and his spouse shall have been married throughout the one-year period ending on the date of the retired employee's death.

4.    An employee may prevent the automatic election provided in this Paragraph C. by specific written rejection, which for rejections made after December 31, 1984 includes the written consent of the employee's spouse witnessed by a Plan representative or a notary public, executed at the time of application for a permanent total disability retirement. Such specific written rejection shall be executed in whatever form and manner may be prescribed by the Board of Administration for this purpose, and in the event such specific written rejection is so executed, the employee shall be entitled to the monthly pension provided in Section (8) without the reduction provided in Section (9) C.5. of this Pension Plan.

The election shall automatically be canceled:

(i)    if the employee's permanent total disability retirement status terminates other than by death prior

35

to the first day of the month after the retiree reaches age 55, or

(ii)  if the retired employee survives on a permanent total disability retirement status until the first day of the month after the retiree reaches age 55, at which time the coverage described in Section (9) A.1. becomes applicable.

5.  The amount of the reduced monthly pension payable until the attainment of age 55 to an employee who shall retire under Section (8) and who shall have been deemed to have made the election provided in Section (9) C. of this Pension Plan, shall be determined by reducing actuarially the amount of the applicable benefit for the cost of the survivor's pension payable in the event of the retired employee's death before the first of the month following the attainment of age 55. The actuarial reduction shall be based on the ages of the retired employee and his spouse (the age of each being determined as the age of his or her birthday nearest the date on which the benefits commence) and shall reflect the extra mortality associated with being permanently and totally disabled. The table contained in Appendix I is the actuarial reduction factor at selected ages. Actuarial reduction factors for ages not shown will be calculated on the same basis as factors shown in Appendix I. Anything to the contrary in this Pension Plan notwithstanding, if the designated spouse of an employee, who shall have retired and who shall have been deemed to have made the election provided in Section (9) C. shall predecease such retired employee, or if they shall be divorced by court decree and a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) does not provide to the contrary, such retired employee shall have his monthly pension restored to

36

the amount payable without such election effective the first day of the third month following the month (first day of the month following the month for cancellations resulting from the death of a spouse occurring on and after January 1, 1994) in which the Board of Administration receives evidence satisfactory to it of the spouse's death or divorce, provided however that cancellation shall not be effective before January 1, 1988.

6.  The amount of the monthly pension payable to the surviving spouse of the retired employee who shall have been deemed to have made the election provided in this Section (9) C., commencing the first of the month following the date on which the retired employee would have reached age 55, shall be 50% of the amount of the monthly pension payable to the retired employee after the reduction provided above in Section (9) C.5.

D. The Pre-Retirement Surviving Spouse Option

1.  An employee who:

(a)  has accrued 5 or more years of credited service under Section (11) of this Plan, or

(b)  terminates seniority and who is eligible for a deferred pension under Section (6) of this Plan,

and, in either case, is not eligible for the survivor benefit coverage provided in this Section (9) otherwise than in this Clause D., shall have the pre-retirement survivor coverage described herein. Notwithstanding the above, any employee who was employed on or after August 23, 1984, and would have been eligible

37

hereunder except that such employee terminated seniority or died prior to January 1, 1985, shall be eligible for the pre-retirement survivor option provided hereunder.

Such coverage shall remain in full force and effect until the date on which the employee or former employee becomes eligible for the survivor benefit coverage provided in this Section (9) otherwise than in this Clause D., at which time the pre-retirement survivor coverage described herein shall cease to be effective.

In the event the employee or former employee predeceases the designated spouse while the pre-retirement survivor coverage provided hereunder is in effect, the designated spouse shall be eligible, during the further lifetime of such spouse, for a monthly benefit commencing on the first of the month following the month in which the employee or former employee would have become eligible, except for the fact that he died, to retire at the option of the employee or commence benefits as a former employee.

The amount of any such monthly survivor benefit shall be determined based on the basic benefit rate in effect for the employee on the date of death of such employee, or the date seniority terminated for a former employee.

2.    The survivor coverage provided hereunder for an employee or former employee shall be effective on the date the employee or former employee attains 5 years of credited service.

3.    The survivor coverage provided hereunder shall be effective with respect to a spouse to whom

38

the employee or former employee is married, but only if the couple shall have been married throughout the one-year period ending on the date of the employee's or former employee's death.

4.    Subsections 2. and 3. notwithstanding, if an employee or former employee marries or remarries, such coverage shall be in effect in favor of his spouse upon such marriage or remarriage, unless, in the case of remarriage, a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) requires such coverage to remain in effect for the former spouse. The effective date of any such coverage shall be in accordance with subsection 3. of this Clause D.

5.    In the event of divorce, the employee or former employee can revoke the coverage provided hereunder without spousal consent, unless a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) provides to the contrary.

6.    The coverage provided hereunder shall be cancelled automatically on the date when any employee or former employee becomes eligible for the survivor coverage provided in this Section (9) otherwise than in this Clause D.

7.    The monthly benefit amount payable hereunder to any eligible surviving spouse shall be 50% of the monthly amount of the basic benefit as determined in Section (6) otherwise payable based on the benefit rate in effect at the

(i)    date of death to the employee, or
(ii)   the date seniority terminated for a former employee, after any reduction provided in Section (6) of this Plan.

39

8. No benefit shall be payable under this Clause D. for any month for which benefits are payable under any other Clause in this Section (9).

9. Information regarding the coverage provided hereunder will be included in the summary plan description, which will be provided to each employee covered by the Pension Plan, in accordance with The Employee Retirement Income Security Act of 1974 (ERISA) as amended.

10. The pre-retirement survivor coverage provided hereunder will apply to eligible employees and former employees separated from service:

(a) whose last day worked for the Company was on or after January 1, 1976, and

(b) who have entitlement to but have not commenced receipt of deferred vested benefits, and

(c) who were alive as of August 23, 1984.

E. Special Provision for Recipients of Survivor Income Benefits

The monthly pension payable to the surviving spouse under any Paragraph in this Section (9) shall not be payable for any month for which a Transition Benefit or a Bridge Benefit is payable under the Life, Disability and Health Care Benefits Program applicable to employees covered by this Pension Plan.

F. Special Provisions for Deemed Disability Survivor's Benefit

40

Notwithstanding any other provision in this Plan to the contrary, the five month period described in Section (8) shall be waived for an employee who

(i) while on medical leave of absence applied for the disability retirement benefit as provided in Section (8)(except that, beginning October 1, 2003, in the case of an occupational injury or illness incurred in the course of his employment by the Company resulting in death, the leave of absence requirement shall not apply) and

(ii) died prior to completion of the five month period directly or indirectly as a result of the condition which gave rise to the medical leave of absence (for example excluding death as a result of homicide, suicide, or accidental death).

The surviving spouse of such an employee shall be eligible to receive the survivor's benefit the spouse would have been eligible to receive if the employee had been approved for a disability retirement benefit and survived until the end of the five month period under any of the applicable survivor benefits provisions of this Plan, excluding a benefit payable under Section (9) D.

(10) Supplemental Allowances and Special Age 65 Benefit

A. Supplemental allowances consist of early retirement supplements and interim supplements. An employee who retires under Section (5), (7) or (8) (other than an employee referred to in (7) C., unless he is an employee whose discharge is referred to the grievance procedure in the collective bargaining agreement applicable to employees covered by this

41

Pension Plan, and the final resolution of that grievance in the grievance procedure or by the Appeal Board or by the Impartial Chairman thereof, includes a determination that the reason for his discharge should not result in his being ineligible for a supplemental allowance under this Section (10)) and who files his application for a pension within five years of the last day he worked for the Company and who agrees to restrict his participation in the work force before age 62 and one month as provided in E. below will receive, in addition to his pension, on the terms and conditions set forth below, whichever of the following are applicable to him:

1.     If he retires under Section (7) or (8) with 30 years or more of credited service, he shall be entitled to a monthly early retirement supplement until age 62 and one month in an amount which when added to his monthly pension under this Pension Plan will equal the amount of total monthly benefit applicable to him as provided in Appendix E. to this Pension Plan; subject to the provisions of B., C., D., E. and F. below.

2.     If he retires under Section (7) A. with less than 30 years of credited service and before attaining age 62 and one month he shall be entitled to a monthly interim supplement until he attains age 62 and one month equal to the amount applicable to him as provided in Appendix F. for each year of credited service that he had at the date of his retirement; subject to the provisions of B., E. and F. below.

B.     The early retirement supplement under Clause 1. of Paragraph A. above for an employee retiring under Section (7) A. shall be calculated assuming that his basic pension commences

42

immediately after retirement, and such early retirement supplements and the interim supplement under Clause 2. of Paragraph A. above shall be reduced for any month prior to age 62 and one month for which he receives or is entitled to receive Social Security Benefits, by an amount equal to the amount of the temporary pension to which he would have been entitled if he had retired under Section (7) B.

C.     The early retirement supplement under Clause 1. of Paragraph A. above for an employee who retires under Section (7) B. or Section (8) shall be calculated on the assumption that he will receive his temporary pension until age 62 and one month even if such temporary pension is not received by the employee until such age because of his entitlement to Social Security Benefits.

D.     The early retirement supplement under Clause 1. of Paragraph A. above for an employee who does not prevent the automatic election of the surviving spouse pension provided under Section (9) shall be calculated on the basis of the monthly pension he would have received if he had prevented such automatic election.

E.     Any of the supplemental allowances to which an employee is entitled shall commence on the first day of the month following the date on which the employee retires and shall be payable monthly thereafter until the first day of the month in which he dies, or he is re-employed by the Company (except that he shall retain any right he might otherwise have to receive a supplemental allowance when such re-employment with the Company shall cease), or his pension ceases for any other reason, or he attains age 62 and one month, whichever occurs first.

43

F.    If the total of the employee's monthly pension under this Pension Plan and his monthly early retirement supplement or interim supplement receivable up to age 62 and one month as computed above would exceed 70% of his final base pay, his monthly supplement (but not his monthly pension) shall be reduced to the extent required so that such monthly pension plus his supplement will equal 70% of his final base pay. For this purpose, an employee's final base pay shall mean 4-1/3 times his

(i)    base hourly rate multiplied by 40, in the case of an hourly employee, and

(ii)    base weekly salary, in the case of a salaried employee,

plus in both cases, cost-of-living allowances in effect on the employee's last day worked for the Company but excluding overtime additions to straight-time pay, shift differentials, payment-in-lieu of vacations, or any other extra compensation.

#### Special Age 65 Benefit

G.    No special age 65 benefit shall be payable under this Pension Plan to any retired employee or eligible surviving spouse whose benefits commence on or after October 1, 1979.

**(11)    Credited Service and Records**

Credited service, wherever used in this Pension Plan, means the number of years and parts of years an employee may count toward becoming eligible for a pension, computed as follows:

44

A.  Before the effective date

1.    The employee must have been on the active payroll or on the seniority list of the Company on the effective date.

2.    If he qualifies under Clause 1. immediately preceding, he may count the time from the date (below called his seniority date) from which he ranks for seniority on the seniority list (except time credited for military service prior to employment by the Company) up to the effective date, plus the time of his employment before his seniority date by the Company or a predecessor corporation, provided

(i)    that if he was off the active payroll or out of the employ of the Company or a predecessor corporation for one or more periods of two years or more he shall count only the time following the last period of two years or more during which he was off the active payroll, or out of the employ and

(ii)    that he may, upon making application therefore, also count the time of all his active service with the Company or a predecessor corporation before such last period of two years or more during which he was off the active payroll, or out of the employ.

3.    An employee who does not qualify under Clause 1. above, who lost his seniority before the effective date and who was rehired and acquired a seniority date after the effective date which seniority date was within 24 consecutive calendar months following his last day of work prior to the effective date may, upon making application therefore, count the time up to his last day worked before the effective date in the manner set forth in Clause 2. above. An employee who does not qualify under Clause 1. above, nor under

45

the preceding sentence, may count the time of all his active service with the Company or a predecessor corporation (such active service to include military service, provided the employee left employment with the Company or a predecessor corporation under an approved military leave of absence and was re-employed in accordance with the terms of such leave of absence) before the effective date upon making application therefore. For the purpose of counting the time of the employee before the effective date as set out in this Clause 3., he shall be deemed to have the seniority date that he had before he last lost his seniority prior to the effective date.

B.  After the effective date

1.    He may count one year for every year beginning January 1 and ending December 31 (below called a calendar year) in which he receives pay from the Company for working 1,700 or more hours. For a calendar year in which he receives pay for working less than 1,700 hours, he may count such part of a year as the number of hours for which he receives pay in that year bears to 1,700; each hour in any year to count only once although he may receive more than straight time pay for it. For the period from the effective date to December 31, 1950, he may count each 142 hours for which he receives pay from the Company for working as one month and remaining hours if more than 71 shall count as one month, but in no event may he count more than the total number of months from the effective date to December 31, 1950.

2.    For the purpose of Clause 1., pay includes straight time holiday pay but excludes pay in lieu of vacation and, for salaried employees only, includes vacation pay.

3.    If after the effective date, he loses his seniority under the labor agreement applicable to the bargaining unit in which he is employed, no time prior to the loss, whether before or after the effective date, shall count as credited service, except that

(a)    the employee shall not lose his credited service if he loses his seniority because the Company transfers him, or if at the time he loses his seniority at a Plant or Division of the Company, he has seniority at any Plant or Division of the Company, and

(b)    if an employee loses his seniority because he receives permanent total disability benefits under a group life insurance policy held by the Company and he is re-employed by the Company, he shall be credited with the credited service that he had at the date he lost his seniority, and

(c)    if, on or after the effective date, an employee loses his seniority, thereby losing his credited service, and thereafter is re-employed by the Company and subsequently acquires a seniority date he shall, upon making proper application, be entitled to the credited service he had at the date he lost his seniority plus, if he had not retired under Section (5) or (7), any additional credited service he would have had if he had been an employee with seniority throughout the period subsequent to the date he lost his seniority up to and including February 1, 1971, and his service with the Company after the date he is re-employed shall be used in computing his credited service under this Section (11).

46

47

Notwithstanding anything in this Pension Plan to the contrary, employees defined in Section (29)(A) (ii), (iii), (iv) and (v) will not earn additional service under this Pension Plan after their rehire date except as provided in Section (27)(ii).

An employee who does not have seniority shall lose his credited service upon the happening of any of the events which would cause an employee with seniority to lose his seniority under the labor agreement applicable to the bargaining unit in which he is employed.

4.     If, after the effective date, he is absent from his work pursuant to an approved leave of absence requested by his Local Union or the International Union to permit him to engage in the business of or to work for the Local Union or the International Union, he may count for credited service 40 hours for each complete calendar week of such leave in the same manner as though he had received pay for working such hours.

5.     For the purpose of Clause 1., an employee who leaves work to enter into active service in the armed forces of the United States and for that reason is given an approved leave of absence by the Company may count 40 hours for each complete calendar week that he is on such leave on and after the effective date, in the same manner as though he received pay for working such hours; provided, however, that the credited service based on such hours shall not exceed four years or such longer period as the employee has re-employment rights pursuant to any Federal law, and provided, further, that the employee is re-employed in accordance with the terms of such leave of absence.

48

6.     For the purpose of Clause 1., an employee who is absent from his work on an approved leave of absence from the Company because of occupational injury or disease incurred in the course of his employment by the Company, and on account of such injury or disease receives Workers' Compensation payments may count 40 hours for each complete calendar week of such absence on or after the effective date, in the same manner as though he had received pay for working such hours; provided, however, that no hours may be counted that are after the employee's retirement, and provided, further, if such absence occurred during the period from the effective date to September 1, 1961, the employee must first make application in order to count such hours.

7.     For the purpose of Clause 1., an employee who is absent from work due to layoff or approved sick leave on or after November 15, 1967, and who accrues in any calendar year thereafter less than 1,700 hours of credited service in such calendar year, may (in addition to any other hours that may be counted) count 40 hours for each complete calendar week of such absence in such calendar year in the same manner as though he had received pay for working such hours; provided, however, that he may count such hours only if he shall have received pay in such calendar year for at least 170 hours; and provided, further, that if such layoff or leave commences in 1970 or any calendar year thereafter and continues after the year in which it commenced, the employee (including an employee who receives pay for 1,700 or more hours in 1970 or any calendar year thereafter if he is absent from work due to layoff or approved sick leave at the end of any such calendar year) may count 40 hours for each complete calendar week of

49

absence from work due to layoff or approved sick leave in the calendar year after such commencing year, not to exceed 1,530 hours that he may count for all such absence related to receipt of such pay from the Company in such commencing year. An employee who returns to work on or after November 1, 1979, and receives pay for a period of less than 170 hours and who thereafter returns to such layoff or sick leave, shall not be disqualified, solely because of the receipt of such pay, from receiving any such credit for which he would otherwise be eligible hereunder. For the purposes of this Clause 7. only, any employee who is laid off subsequent to November 1, 1979 and whose first day of absence due to such layoff is the first regularly scheduled work day in January next following his last day worked shall be deemed to have been laid off on December 31 of the year in which he last worked. A part-time employee may count a number of hours for any week of such absence in the same percentage relationship as such employee's regular part-time schedule is to 40 hours. In no event shall the provisions of this Clause result in a duplication of credited service under this or any other provision of this Section (11).

8.    For the purpose of Clause 1., an employee who

(i)    is at work on or after November 1, 1985,

(ii)    has 10 or more years of seniority at time of layoff commencing on or after November 1, 1985,

(iii)    while on such layoff has received the maximum of 1,530 hours of credit for periods of absence due to layoff or Company approved sick leave in accordance with Clause 7. of this Section (11), and

50

(iv)    continues thereafter to be absent due to such layoff

shall be credited with 40 hours for each complete calendar week of absence due to such layoff up to a maximum of 1,700 hours of credit.

9.    For the purpose of Clause 1., an employee who accrued less than 1,700 hours of credited service in any calendar year as specified below, may count a number of hours equal to 40 for each complete calendar week of such absence in such calendar year multiplied by a percentage as set forth in the table at the end of this Section (11)(B)(9), provided, however, that the employee must first make application in order to count such hours, and provided, further, that in no event shall the provisions of this Clause result in a duplication of credited service under this or any other provision of this Section (11).

(i)    between December 31, 1950, and January 1, 1956, and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who has seniority on September 15, 1973, or

(ii)    between December 31, 1955, and January 1, 1958, and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who had seniority on February 1, 1971, or

(iii)    between December 31, 1957, and January 1, 1963, and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who had seniority on November 15, 1967, or

51

(iv)   between December 31, 1962, and January 1, 1968, and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who had seniority on November 1, 1979, or

(v)   between December 31, 1973 and January 1, 1977 and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who had seniority on October 1, 1993, or

(vi)   between December 31, 1978 and January 1, 1985, and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who had seniority on November 1, 1985, or

(vii)   between December 31, 1976 and January 1, 1979, and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who had seniority on October 1, 1996,or

(viii)   between December 31, 1978 and January 1, 1984, and who was absent from work due to a layoff that resulted in his being cleared from the roll between those two dates, and who had seniority on October 1, 1999, and provided that the service granted under this condition (viii) shall not be less than the service granted in (vi) previously for calendar year 1979 through 1983.

(ix)   between December 31, 1978 and January 1, 1989, and who was absent from work due to a layoff that resulted in his being cleared from the

roll between those two dates, and who had seniority on October 1, 2003, and provided that the service granted under this condition (ix) shall not be less than the service granted in (vi) and (viii) previously for calendar year 1979 through 1984.

| Years of Seniority on dates specified in (i), (ii), (iii), (iv), (v), (vi) (vii), (viii) and (ix) above | Percentage |
| --- | --- |
| 20 or more | 100 |
| 15 but less than 20 | 75 |
| 10 but less than 15 | 50 |
| 5 but less than 10 | 25 |

10.   Notwithstanding any other clause in this Section, in the case of an employee who shall retire on or after

(a)   October 1, 1987, the employee's credited service for the period before January 1, 1966 shall not be less than the employee's seniority as of December 31, 1965 as determined under the Collective Bargaining Agreement;

(b)   October 1, 2007, the employee's credited service for the period before January 1, 1996 shall not be less than the employee's seniority as of December 31, 1995 as determined under the Collective Bargaining Agreement.

11.   An employee with seniority on or after November 1, 1979, who was absent from work while on approved sick leave because of pregnancy on or after August 1, 1950 and prior to January 1, 1968, shall be credited with 510 hours of credited service for any such absence during which she had seniority, provided that the employee makes proper application therefore and, provided further, that in no event shall the provisions of this Clause 11. result in the employee

accruing more than twelve months of credited service in any calendar year.

12. An employee who loses his seniority under the labor agreement on or after January 1, 1976 and who is not eligible for a deferred pension as provided in Section (6) because he does not have 5 or more years of credited service computed as provided in this Section (11) otherwise than in this Clause 12. may, for the sole purpose of determining if he is eligible for a deferred pension as provided in Section (6) and if he makes application therefore, compute his credited service as provided below in this Clause 12.c. and without regard (except as otherwise in this Clause 12. specifically provided) to the other provisions of this Section (11) that grant credited service for time not worked. Any computation of credited service made as provided in this Clause 12. shall be solely for the purpose of determining the eligibility of such a former employee for a deferred pension and not for determining the amount thereof, and the amount of such a deferred pension shall be determined by reference only to the credited service that the former employee had when he lost his seniority, as computed under the provisions of this Section (11) other than the provisions of this Clause 12. Credited service for purposes of this Clause 12. shall be computed as follows:

a. An employee who has completed his eligibility period, such period consisting of the completion of one year of service (excluding any service prior to a one year break in service) or, if later, when he attains age 21 shall be entitled to one year of credited service for purposes of this Clause 12. for each year in which he accumulates a year of service.

b. An employee shall be deemed to have completed one year of service for purposes of completion of his eligibility period when he accumulates 1000 hours of service

(i) in the 12 consecutive month period commencing when his employment commences, or if he does not then accumulate such hours,

(ii) in the first calendar year commencing after his employment commences, or if he does not then accumulate such hours,

(iii) in the next succeeding calendar year in which he does accumulate such hours.

c. An employee who has attained age 18, shall be entitled to one year of service for purposes of this Clause 12. for each calendar year in which he accumulates 1000 hours of service commencing

(i) on the January 1 immediately preceding the date he completes his eligibility period, if such date occurs on or before June 30, or otherwise

(ii) on the January 1 next following the date he completes his eligibility period;

provided, however, that an employee shall not receive one year of service:

(1) for any year in which he does not accumulate 1000 hours of service, or

(2) for any year of service before January 1, 1971, unless he has 3 years of service after December 31, 1970, or

54

55

(3)    for any year of service before January 1, 1976, to the extent such service would not have been counted as credited service under the provisions of this Section (11) as in effect before January 1, 1976, or

(4)    for any years of service prior to a one year break in service, if the employee has not completed a year of service after such break, or

(5)    for any years of service (excluding any service not counted under this subparagraph (5) or under subparagraph (4), above) before consecutive breaks in service of one year each if the number of such consecutive one year breaks in service equals or exceeds the aggregate number of years of service credited to the employee prior to such breaks, or for such employee at work on or after January 1, 1985, years of service prior to consecutive breaks in service of one year if the number of consecutive one year breaks in service equals or exceeds the greater of five or the aggregate number of such years of service prior to such breaks.

d.    For purposes of this Clause 12., an employee shall receive one hour of service in accordance with the rules set forth in Department of Labor Regulation Section 2530.200b-2 and 2530.200b-3 for each hour

(i)    for which an employee is paid or entitled to payment by the Company for performance of duties or

(ii)    during which no duties are performed due to vacations, holidays, sickness, (including disability), layoff, jury duty, military duty or leave of absence.

56

An hour of service shall further include each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Company.

e.    For purposes of this Clause 12., an employee shall have a one year break in service in any calendar year in which he has not accumulated 500 hours of service with the Company. In determining whether an employee has a one year break in service, for any absence from work commencing on or after January 1, 1985 by reason of pregnancy of the employee, birth of a child of the employee, placement of a child with the employee in connection with the adoption of such child by such employee, or for purposes of child care immediately following such birth or placement, or for any absence from work commencing on or after October 1, 1993 for any reason that qualifies an employee for a leave under the Family and Medical Leave Act of 1993, the employee shall be credited with the hours for which such employee otherwise would have been scheduled to receive payment for the performance of duties or, if such scheduled hours cannot be determined by the Company, with 8 hours for each work day of such absence, not to exceed a total of 501 hours for any such absence. Such hours shall be credited in the year in which the absence commences if necessary to prevent incurring a one year break in service, otherwise such hours shall be credited in the immediately following year.

C.  Service of former Briggs employees

An employee covered by this Pension Plan who between December 30, 1953, and June 1, 1954, inclusive, became employed or was treated as having

57

become employed by the Company and whose seniority rights for service with Briggs Manufacturing Company or Briggs Indiana Corporation were preserved pursuant to the agreements between the Company and the Union dated January 8, 1954, may count toward becoming eligible for a pension, in addition to the credited service to which he is entitled for employment with the Company under the above provisions, the following:

(i)  the credited service to which he was entitled, up to the date he became employed by the Company, under Article IX of the Briggs Labor Agreement, and

(ii)  upon making application therefore, the time of all of his active service with either or both of Briggs Manufacturing Company and Briggs Indiana Corporation, up to the date he became employed by the Company, for which he was not entitled to receive credited service under Article IX of the Briggs Labor Agreement, and

(iii)  the time after the effective date and up to the date he became employed by the Company that he was absent from his work pursuant to an approved leave of absence requested by his Local Union or the International Union to permit him to engage in the business of or to work for the Local Union or the International Union and he would otherwise have been scheduled to work for Briggs Manufacturing Company or Briggs Indiana Corporation during such absence;

provided, however, that in any event not more than 1,700 hours, including compensated hours, shall be credited in any calendar year; and provided,

58

further, that in no event shall any of the provisions of this Clause C. result in a duplication of credited service under any other provision either of this Clause C. or of any other provision of this Section (11).

D.  Service for former American Foundry employees

An employee covered by this Pension Plan who on August 31, 1961, was covered by the American Foundry Pension Plan may count toward becoming eligible for a pension, in addition to the credited service to which he is entitled for employment with the Company under the above provisions, the following:

(i)  the credited service to which he was entitled, up to and including August 31, 1961, under the American Foundry Pension Plan, and

(ii)  upon making application therefore, the time of all of his active service with either or both of American Foundry Company, Inc. and the American Foundry Plant of the Company, up to and including August 31, 1961, for which he was not entitled to receive credited service under the American Foundry Pension Plan;

provided, however, that not more than 1,700 hours shall be credited in any calendar year; and provided, further, that in no event shall any of the provisions of this Clause D. result in a duplication of credited service under any other provision either of this Clause D. or any other provision of this Section (11).

E.  Service of former New Process Gear Division employees

59

An employee covered by this Pension Plan who on August 31, 1964, was covered by the New Process Gear Pension Plan may count toward becoming eligible for a pension the credited service he would have had if his credited service for employment with the New Process Gear Division had been computed, for the period of his employment before January 7, 1954, in accordance with A. of this Section (11) and based upon his seniority date (or, if later, the seniority date that would be in effect for him if his seniority date had not been backdated for a period of time equal to the sums of any periods of service that he had with the New Process Gear Corporation prior to the date on which such seniority date was first established), plus the credited service to which he was entitled between January 7, 1954 and August 31, 1964, under the New Process Gear Pension Plan plus the credited service to which he is entitled under this Section (11) for employment with the Company after August 31, 1964; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

F. Service of former DeLuxe Die Works, Inc. employees

A former employee of DeLuxe Die Works, Inc. who as of July 1, 1965, became covered by this Pension Plan may count toward becoming eligible for a pension, in addition to the credited service to which he is entitled for employment with the Company under the above provisions, the following:

(i)  the credited service to which he was entitled, up to and including June 30, 1965, under the DeLuxe Pension Plan and,

(ii)  upon making application therefore, the time of all of his active service with DeLuxe Die Works, Inc., up to and including June 30, 1965, for which he was not entitled to receive credited service under the DeLuxe Pension Plan;

provided, however, that not more than 1,700 hours shall be credited in any calendar year; and provided, further, that in no event shall any of the provisions of this Clause F. result in a duplication of credited service under any other provision either of this Clause F. or of any other provision of this Section (11).

G. Service of former Detroit Universal Division employees

An employee covered by this Pension Plan who on November 9, 1967, was covered by the Detroit Universal Division Pension Plan may count toward becoming eligible for a pension, in addition to the credited service to which he is entitled for employment with the Company under the above provisions, the following:

(i)  the credited service to which he was entitled, up to and including November 9, 1967, under the Detroit Universal Division Pension Plan and,

(ii)  upon making application therefore, the time of all of his active service with either or both of Universal Products Company, Inc. and the Detroit Universal Division of the Company, up to and including November 9, 1967, for which he was not entitled to receive credited service under the Detroit Universal Division Pension Plan;

provided, however, that not more than 1,700 hours shall be credited in any calendar year, and provided, further, that in no event shall any of the provisions of this Clause G. result in a duplication of credited service under any other provisions either of this Clause G. or of any other provision of this Section (11).

H.  Service of former employees of the King-Seeley Division of the King-Seeley Thermos Company

An employee covered by this Pension Plan who on March 21, 1968, was covered either by the King- Seeley Hourly Pension Plan or the King-Seeley Clerical Pension Plan and whose seniority rights for service with the King-Seeley Division of the King-Seeley Thermos Company were preserved pursuant to one of the agreements between the Company and the Union dated March 22, 1968, may count toward becoming eligible for a pension the credited service he would have had if his credited service for employment with the King-Seeley Division of the King-Seeley Thermos Company had been computed, for the period of his employment before July 1, 1950, in accordance with A. of this Section (11), plus the credited service to which he was entitled between July 1, 1950 and March 21, 1968, under whichever he was covered by of either the King-Seeley Hourly Pension Plan or the King-Seeley Clerical Pension Plan plus the credited service to which he is entitled under this Section (11) for employment with the Company after March 21, 1968; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

I.  Service of former American Auto-Felt Corporation employees

A former employee of American Auto-Felt Corporation who as of December 18, 1964, became covered by this Pension Plan and who has seniority on or after February 1, 1971, may upon making application therefore count toward becoming eligible for a pension the time of all his active service, up to and including December 18, 1964, with American Auto-Felt Corporation and, after December 18, 1964, the credited service to which he is entitled for employment with the Company under the above provisions; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

J.  Service of former Central Motor Parts Corporation Employees

A former employee of Central Motor Parts Corporation who as of January 3, 1966, became covered by this Pension Plan may upon making application therefore count towards becoming eligible for a pension the time of all his active service, up to and including January 3, 1966, with Central Motor Parts Corporation and after January 3, 1966, the credited service to which he is entitled for employment with the Company under the above provisions; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

K.  Service of former Tri-State Automotive Parts Company Employees

A former employee of Tri-State Automotive Parts Company who as of October 14, 1963, became covered by this Pension Plan may upon making application therefore and furnishing satisfactory evidence of the active service involved, count toward becoming eligible for a pension the time of all his

active service, beginning October 1, 1951 and up to and including October 13, 1963, with any predecessor owner of such parts facility, and after October 13, 1963, the credited service to which he is entitled for employment with the Company under the above provisions; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

L. Service of Chrysler Casting Corporation Employees

An employee of Chrysler Casting Corporation covered by this Pension Plan who on September 14, 1973 was covered by the Chrysler Casting Pension Plan may count toward becoming eligible for a pension the credited service to which he was entitled up to and including September 14, 1973, under the Chrysler Casting Pension Plan and, after September 14, 1973, the credited service to which he is entitled for employment under the above provisions; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

M.  Service of former State Motor Parts Employees

A former employee of State Motor Parts Corporation who, as of November 1, 1965, became covered by this Pension Plan and who had seniority with the Company on or after November 1, 1979 may, upon making application therefore and furnishing satisfactory evidence of the active service involved, count toward becoming eligible for a pension the time of all his active service up to and including November 1, 1965, with State Motor Parts Corporation, and after November 1, 1965, the credited service to which he is entitled for employment with the Company under the provisions of this Pension Agreement; provided,

64

however, that not more than 1,700 hours shall be credited in any calendar year.

N. Service of former Parts Wholesale Incorporated Employees

A former employee of Parts Wholesale Incorporated, who, as of April 1, 1968, became covered by this Pension Plan and who had seniority with the Company on or after November 1, 1979 may, upon making application therefore and furnishing satisfactory evidence of the active service involved, count toward becoming eligible for a pension the time of all his active service up to and including April 1, 1968, with any predecessor owner of such parts facility, and after April 1, 1968, the credited service to which he is entitled for employment with the Company under the provisions of the this Pension Plan; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

O. Service of former Parmo Parts, Inc. Employees

A former employee of Parmo Parts, Inc. who as of November 1, 1961, became covered by this Pension Plan and who had seniority with the Company on or after November 1, 1979 may, upon making application therefore and furnishing satisfactory evidence of the active service involved, count toward becoming eligible for a pension the time of all his active service up to and including November 1, 1961, with Lander Motors and Lander Motors D.B.A. Parmo Parts Co., and after November 1, 1961, the credited service to which he is entitled for employment with the Company under the provisions of this Pension Agreement, provided, however, that not more than 1,700 hours shall be credited in any calendar year.

65

## P.  Service of former Global Engine Manufacturing Alliance LLC Employees

A former employee of Global Engine Manufacturing Alliance LLC who as of January 1, 2010, became covered by this Pension Plan may upon making application therefore count towards becoming eligible for a pension the credited service to which he was entitled, up to and including December 31, 2009, under the Global Engine Manufacturing Alliance LLC-UAW Pension Agreement and the credited service to which he is entitled for employment with the Company under the above provisions; provided, however, that not more than 1,700 hours shall be credited in any calendar year.

## Q.  Re-employment of Retiree

If an employee who retired under this Pension Plan or the Prior Pension Plan or has commenced receipt of a deferred pension under either Plan is re-employed on or after November 1, 1979, such employee shall not accumulate any additional credited service as a result of such re-employment.

## R.  Foundry Service

1.  An employee who has seniority on or after November 1, 1979, and who at retirement or at the date on which he loses his seniority has 10 years or more of credited service accrued while continuously employed on certain foundry job classifications determinable as set forth in Appendix G to this Pension Plan (any such job classification is hereinafter referred to as a Foundry Job) may receive an amount of credited service for a calendar year in addition to that credited to him for such year under other provisions of this Pension Plan. For purposes of this Subsection R, an employee is continuously employed on a Foundry Job while he is actively employed on, or on layoff or approved leave of absence from, a Foundry Job. If such an employee is continuously employed exclusively on one or more Foundry Jobs during a year, the amount of such additional credited service shall be determined in accordance with the following table:

| Years of Credited Service Credited On Foundry Jobs | Additional Credited Service |
|---|---|
| For years 1 through 10 | 0 |
| For 10 years and 1 month through 25 | 33-1/3% |
| For years over 25 | 20% |

If he

(i)  is not continuously employed in a calendar year, or

(ii)  is employed on other than Foundry Jobs in such year,

such additional credited service as would be provided under the aforementioned table for such year shall be applicable, provided that he worked at least the minimum number of complete calendar weeks exclusively on Foundry Jobs in that calendar year as set forth in the following table:

| Credited Service Accrued in Calendar Year in Which Employee Was Not Continuously Employed on Foundry Jobs | Maximum Number of Complete Calendar Weeks Exclusively On Foundry Job Required to Obtain Additional Credited Service |
|---|---|
| 1 year | 26 weeks |
| 11/12 year or more but less than 1 year | 24 weeks |
| 10/12 year or more but less than 11/12 year | 22 weeks |
| 9/12 year or more but less than 10/12 year | 19 weeks |
| 8/12 year or more but less than 9/12 year | 17 weeks |
| 7/12 year or more but less than 8/12 year | 15 weeks |
| 6/12 year or more but less than 7/12 year | 13 weeks |
| 5/12 year or more but less than 6/12 year | 11 weeks |
| 4/12 year or more but less than 5/12 year | 9 weeks |
| 3/12 year or more but less than 4/12 year | 6 weeks |
| 2/12 year or more but less than 3/12 year | 4 weeks |
| 1/12 year or more but less than 2/12 year | 2 weeks |

2. Notwithstanding Subsection R1 above, effective October 1, 2007, there will be no additional accrual of Foundry Bonus Service.

S. Asbestos Service

An employee who has seniority on or after November 1, 1979, and who at retirement or at the date on which he loses his seniority has 10 years or more of credited service accrued while continuously employed on certain asbestos classifications as set forth in Appendix H, shall receive additional credited service related thereto in the same manner as set forth in Subsection R. of this Section (11).

68

T. Records

1. The records of a plant, whether of the Company or of a predecessor company, in which an employee or former employee claims service, shall be presumed to be conclusive of the facts concerning his employment or non-employment unless shown beyond a reasonable doubt to be incorrect.

2. Credited service will be computed to the nearest full month. For the period before the effective date, remaining days, if 16 or more shall count as another month, if less than 16 shall not count. For the period beginning with the effective date, in every calendar year in which hours for which the employee has received pay within the year, as defined in Clause B of Section (11), are less than 1,700, every 142 hours shall count as a month, and the remaining hours, if 71 or more, shall count as another month and if less than 71 shall not count.

3. Age shall be proved by official birth certificate issued by proper public authority in the area in which the employee or former employee claims to have been born. If an employee or former employee does not produce a birth certificate, he must produce evidence of age satisfactory to the Board of Administration in its reasonable discretion.

(12) Commencement and Continuation of Pensions

An employee shall not be entitled to a pension under this Pension Plan except as set forth in Sections (4), (5), (6), (7), (8) and (9) of this Pension Plan or to a supplemental allowance or a special age 65 benefit

69

except as set forth in Section (10) of this Pension Plan, and not until he ceases to be an employee.

In no case shall a pension, supplemental allowance or special age 65 benefit commence until the first day of the month following the ceasing of any sickness or accident benefits toward which the Company has contributed by payment of premiums, taxes or otherwise; provided, however, that this paragraph shall have no application with respect to Extended Disability Benefits payable under the Life, Disability and Health Care Benefits Program applicable to the employees covered by this Pension Plan.

An employee who at any time receives permanent total disability benefits under a group life insurance policy held by the Company and is not later rehired shall not be eligible to receive a special age 65 benefit, supplemental allowance or a pension under any section of this Pension Plan except such deferred pension, if any, for which as a former employee he may be eligible under Section (6) of this Pension Plan, upon compliance with all the conditions contained therein. If an employee receives a pension, supplemental allowance or special age 65 benefit under this Pension Plan during any period for which he later shall receive permanent total disability benefits, the amount of the pension payments, supplemental allowance and special age 65 benefits shall be reimbursed to the trustee upon payment of the disability benefits applicable to such period, but not in an amount exceeding the amount of such benefits.

In determining the monthly pension, special age 65 benefit or supplemental allowance payable under

70

this Pension Plan to an employee who retires under Section (5), (7) or (8), or who loses his seniority and is entitled to a pension under Section (6), a deduction shall be made unless prohibited by law, equivalent to all or any part of Workers' Compensation (including compromise or redemption settlements) payable to such employee by reason of any law of the United States, or any political subdivision thereof, which has been or shall be enacted, provided that such deductions shall be to the extent that such Workers' Compensation has been provided by premiums, assessments, taxes or other payments paid by or at the expense of the Company, except that no deduction shall be made for the following:

(a)    Workers' Compensation payments specifically allocated for hospitalization or medical expense, fixed statutory payments for the loss of any bodily member, or 100% loss of use of any bodily member, or payments for loss of industrial vision.

(b)    Compromise or redemption settlements payable prior to the date monthly pension benefits first become payable.

(c)    Workers' Compensation payments paid under a claim filed not later than two years after the loss of seniority.

There shall be no duplication of the pension under any one section of this Pension Plan and the pension under any other section of this Pension Plan or under any section of the Prior Pension Plan; nor of the pension, supplemental allowance or special age 65 benefit under any section of this Pension Plan and permanent total disability benefits under any group life insurance policy held by the Company; nor of the credited service or pension, supplemental allowance or special age 65 benefit under any section of this

71

Pension Plan and the credited service or pension, supplemental allowance or special age 65 benefit under any similar pension plan for other employees of the Company or any subsidiary corporation.

No employee shall have any vested right under this Pension Plan except such rights, if any, as provided in this Pension Plan, as may accrue to him upon retirement or upon compliance with all of the conditions of Section (6).

### (13) Application for Pension, Supplemental Allowance or Special Age 65 Benefit

An employee or former employee desiring to apply for a pension, a supplemental allowance or special age 65 benefit under this Pension Plan must make an application at the plant where he is working or last worked. The application must be filed with a committee consisting of the Union Benefit Representative and the Labor Relations Supervisor (or the plant manager or his representative). If the location at which the employee or former employee last worked has closed, the employee or former employee should contact the Plan Administrator to initiate and complete the retirement application process. Upon request, the applicant must furnish the information the Board of Administration may request, including, without limiting the generality of the above, his age, the date from which he claims credited service (unless previously the date shall have been determined), the departments and plants of the Company or predecessor companies in which he claims to have been an employee, the date following the date of filing his application as of which he wished to retire, the names and addresses and

72

ages of his spouse, children, or other dependents, and the names and addresses of other persons, if any, to communicate with about him, and other pertinent facts, together with documentary evidence in support of the same, satisfactory to the Board of Administration, and any authority in writing that the Board of Administration, may request, authorizing it to obtain pertinent information or records, certificates or transcripts from any public office. In order for the retirement application to be complete, the employee or former employee must complete and sign the pension election authorization and return it to the Union Benefit Representative for final processing. If the location where the employee or former employee last worked has closed, the employee or former employee must return the completed and signed pension election authorization to the plan administrator. The Board of Administration shall approve or deny all retirement applications.

### (14) Payment of Pension, Supplemental Allowance and Special Age 65 Benefit

Pensions, supplemental allowance and special age 65 benefits shall be paid in monthly installments and shall commence not sooner than 30 days and not later than 180 days following the receipt of the required written explanations of distribution options, provided however, an employee may affirmatively elect in writing to commence the pension and supplement payments in less than such 30 days (but not less than 7 days). A pension (other than the deferred pension for former employees provided in Section (6) and the permanent total disability pension provided in Section (8)) shall become payable with the employee's consent as of the first day of the

73

month following the date on which an employee in his application for pension elects to retire or following the last day he works, whichever is later, and shall be payable in the month following the date when his application is approved and on the first day of each month thereafter during his lifetime. A supplemental allowance and a special age 65 benefit shall be payable in the manner provided in Section (10). The purpose of the pensions, supplemental allowances and special age 65 benefits being to provide maintenance for retired employees, no assignment of any pension, supplemental allowance or special age 65 benefit or part of any of them will be recognized or permitted, and payment of the pension, supplemental allowance or special age 65 benefit may cease in the discretion of the Board of Administration upon notice of assignment, attachment, or garnishment of the pension, supplemental allowance or special age 65 benefit or part of any of them, and attachment or other legal process against the pension, supplemental allowance or special age 65 benefit will not be recognized except as may be required by law.

Effective January 1, 1997 the affirmative election in writing to commence pension and supplemental payments less than 30 days following the receipt of the required written explanations of distribution options is only applicable provided

(a) the participant has been provided with information that clearly indicates that the participant has at least 30 days to consider whether to waive the distribution option (with spousal consent);

(b) the participant is permitted to revoke any affirmative distribution election at least until the annuity starting date or, if later, at any time prior to the expiration of the 7-day period that begins the day

74

after the explanation is provided to the participant; and

(c) the annuity starting date is a date after the date that the written explanation was provided to the participant (except that the annuity starting date may be a date prior to the date the written explanation is provided to the participant if the distribution does not commence until at least 30 days after such written explanation is provided subject to the waiver of the 30-day period as provided above).

Notwithstanding anything in the Pension Agreement to the contrary, the payment of benefits under this Pension Plan shall commence not later than the 60th day after the close of the plan year in which the latest of the following events occurs:

(1) The attainment by the employee or former employee of age 65,

(2) The 10th anniversary of the employee's or former employee's participation in the Pension Plan,

(3) The termination of the employee's or former employee's service with the Company, or

(4) The date elected by the employee or former employee for benefits to commence if later than (1), (2) or (3) above.

Notwithstanding the preceding sentence, an employee or former employee must file an application for pension benefits under this Pension Plan before payment of any such benefits can commence.

A. Deductions

Notwithstanding anything in this Pension Plan to the contrary, however, the trustee shall be authorized by the Board of Administration to deduct from the

75

monthly pension payable to any retired employee or any surviving spouse of a retired employee, and from any supplemental allowance and special age 65 benefit payable if the monthly pension shall be insufficient, deductions authorized by the Board of Administration or the retired employee or surviving spouse of a retired employee.

The trustee shall also be authorized to withhold from the monthly benefit

(1)    Federal income tax where required by Federal statutes or regulations unless elected otherwise in accordance with such statutes or regulations by submitting to the Board written authorization and direction acceptable to the Board and

(2)    state income tax where
   (a)    required by state statutes or regulations, unless elected otherwise in accordance with such statutes or regulations, or
   (b)    commencing on or after June 1, 1994, if the state permits voluntary withholding and such person requests voluntary withholding by submitting to the Board written authorization and direction acceptable to the Board.

## B.  Benefit Suspension

Notwithstanding anything in this Pension Plan, however, a retired employee or former employee entitled to receive a pension, supplemental allowance or special age 65 benefit may, for personal reasons and without disclosure thereof, request the Board of Administration in writing to suspend for any period, payment of all or any part of such pension,

76

supplemental allowance or special age 65 benefit otherwise payable to him hereunder. The Board of Administration, on receipt of such request, shall authorize such suspensions, in which event the retired employee or former employee shall be deemed to have forfeited all rights to the amount of pension, supplemental allowance or special age 65 benefit so suspended but shall retain the right to have the full pension, supplemental allowance or special age 65 benefit otherwise payable to him hereunder reinstated as to future monthly payments upon written notice by or on behalf of the retired employee or former employee to the Board of Administration of his desire to revoke his prior request for a suspension or upon such written notice by any person the Board authorizes to be paid the pension, supplemental allowance or special age 65 benefit of the retired employee or former employee, if the Board finds that he is unable to care for his affairs as set out below in this Section (14).

## C.  Anti-alienation

Notwithstanding anything in this Pension Plan, however, no benefit payable at any time under the Pension Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, or encumbrance of any kind, except in accordance with the provisions of a Qualified Domestic Relations Order within the meaning of Code Section 414 (p). Any attempt to alienate, sell, transfer, assign, pledge or otherwise encumber any such benefits, whether presently or thereafter payable, shall be void. No pension benefit nor the Trust Fund or insured fund shall in any manner be liable for or subject to debts or liability of any employee, retired employee, or former employee entitled to any pension benefit. If

77

the employee, retired employee or former employee shall, or shall attempt to, alienate, sell, transfer, assign, pledge or otherwise encumber his benefits under the Pension Plan or any part thereof, or if by reason of his bankruptcy or other event happening at any time such benefits would devolve upon anyone else or would not be enjoyed by him, then the Board in its discretion may terminate his interest in any such benefit and hold or apply it to or for the benefit for such person, his spouse, children, or other dependents, or any of them in such manner as the Board may deem proper.

### D. Recovery of Overpayment

Notwithstanding anything in this Pension Plan, however, a retired employee or former employee entitled to receive a pension, supplemental allowance or special age 65 benefit may authorize in writing that any outstanding overpayment received under any Company benefit plan or program (other than this Pension Plan) be repaid to such respective Plan or Program by withholding not less than $80.00 but in no event more than 10% of his monthly benefit until such overpayment is recovered.

### E. Required Minimum Distributions

Notwithstanding any other provision of this Pension Plan, pensions shall be required to be distributed in accordance with the provisions of Section 401(a)(9) of the Code and the final Treasury regulations thereunder. Such rules shall apply in all events unless any participant shall become a "5-percent owner" (as defined in Code Section 416). In the event any participant should become a 5-percent owner, the minimum distribution rules in the Code pertaining

78

to 5-percent owners shall become applicable with respect to distributions to that participant.

1. Required Beginning Date. Each participant must begin receiving his pension on or before his "Required Beginning Date." The Required Beginning Date of any participant who reaches the age of 70-1/2 after December 31, 1998 shall be April 1 of the calendar year in which the later occurs: (i) the participant reaches age 70-1/2, or (ii) the participant retires.

2. Election to Discontinue Benefits. Any participant who reached the age of 70-1/2 before January 1, 1997, commenced receipt of his pension and had not retired as of January 1, 1997 may elect to discontinue his pension until he retires. Any such election shall be on a form approved by the Board of Administration and shall be irrevocable.

3. Actuarial Adjustments. In the case of any participant who retires in a calendar year after the calendar year in which he reaches the age of 70-1/2, such participant's accrued benefit shall be actuarially increased in accordance with Section 401(a)(9)(C) of the Code to take into account the period after age 70-1/2 in which the participant was not receiving any benefits under the Pension Plan.

4. Distribution Period. Following commencement, distributions must continue over the life of the participant or over the lives of the participant and his beneficiary or over a period which does not extend beyond the life expectancy of the participant or the life expectancies of the participant and his beneficiary as provided in the regulations under Code Section 401(a)(9).

79

5. Death of Participant After Commencement of Required Distributions. Upon the death of a participant after mandatory commencement of his pension in accordance with the rules set forth in the preceding provisions of this Section, the participant's remaining interest, if any, will be distributed subsequent to his death at least as rapidly as under the method of distribution being utilized as of the date of his death.

6. Death of Participant Prior to Commencement of Required Distributions. Upon the death of a participant prior to mandatory commencement of his pension in accordance with the rules set forth in the preceding provisions of this Section, the participant's remaining interest, if any, will be distributed as follows:

(i) Amount not payable to a designated beneficiary. Any remaining interest which is not payable to a designated beneficiary will be distributed within five years after the participant's death,

(ii) Amounts payable to a designated beneficiary. Any remaining interest which is payable to a designated beneficiary will be distributed either
(a) within five years after the participant's death, or
(b) over the life of the beneficiary (or over a period certain not extending beyond the life expectancy of the beneficiary), such payments to commence not later than the end of the calendar year following the calendar year in which the participant died (or if the designated beneficiary is the participant's surviving spouse, to commence not later than the end of the calendar year following the calendar year in which the participant would have attained the age of 70 - 1/2).

80

7. Recalculation of Life Expectancies. For purposes of determining the amount of required distributions hereunder, the life expectancies of the participant and his spousal beneficiary shall be recalculated annually.

F. ESS/SWESS

Notwithstanding anything in this Pension Plan to the contrary, an employee who, while eligible to retire, receives a separation payment pursuant to Attachment A to the Memorandums of Understanding Employment Security System (ESS) and Salaried Worker's Employment Security System (SWESS) Programs of the Collective Bargaining Agreement or Article IV of the Supplemental Unemployment Benefit Plan shall not be eligible to retire under any of the provisions of this Pension Plan for the period described in such agreements, plans or programs, commencing with the date such employee terminates employment or breaks seniority pursuant to the terms of such agreements, plans or programs.

G. Alternate Payees

Notwithstanding anything in this Pension Plan to the contrary, the amount of any monthly pension benefit otherwise payable to a retired employee or former employee shall be reduced by the value of any past and future benefits paid or payable to any alternate payee(s) under a qualified domestic relations order within the meaning of Section 414(p) of the Code. The Actuarial Value shall be used to determine the amount to be paid to such alternate payee(s), if applicable, and the remaining benefit entitlement of the retired employee or former employee.

81

**H.  Union Dues**

Notwithstanding anything in this Pension Plan, however, the trustee shall be authorized by the Board of Administration during the life of any collective bargaining agreement applicable to employees covered by this Pension Plan in accordance with the terms of the form of Retired Employee's Authorization for Check-Off of Dues identified below, and to the extent that applicable State and Federal laws and regulations shall permit,

(i)    to deduct membership dues from the monthly pension payable to any retired employee who shall have executed the following "Retired Employee's Authorization For Check-Off Of Dues" form completed in a manner acceptable to the Company, and

(ii) effective May 1, 1996, to deduct the sum of $2.00 as an associate dues donation from any monthly retirement benefit otherwise payable to any surviving spouse who shall have duly authorized such deduction on a form acceptable to the Company.

"RETIRED EMPLOYEE'S AUTHORIZATION
FOR CHECK-OFF OF DUES

"Social Security No. _____ Pension File No._____
"Local Union No. _____

"(Type or Print Name and Address)
"Name_____
"Street_____ Phone_____
"City-State_____

"TO: CHRYSLER GROUP LLC

82

"I hereby assign to the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (hereinafter referred to as the "Union") from any wages earned or to be earned by me as your employee or as a retired employee, including any pension payable to me, monthly dues in the amount set forth in the blank provided for that purpose below as the "Amount of Monthly Dues Deduction". I authorize and direct that such amounts be deducted from my pension each month and be remitted to the Union at such times and in such manner as may be agreed upon between you and the Union while this authorization is in effect.

"This assignment, authorization and direction shall remain in full force and effect until revoked by my written notice given to the Company, except that during any period when there is not in effect a written collective bargaining agreement between the Company and the Union which permits or provides for the deduction of Union dues from monthly pension benefits payable to a retired employee, this assignment, authorization and direction, if otherwise in effect, shall automatically be suspended for the duration of such period only.

"This authorization is made pursuant to the provisions of Section 302(c) of the Labor Management Relations Act of 1947, as amended.

"Date_____

"$_____

"Amount of Monthly Dues Deduction"

_____
(Signature of Retired Employee here)
83

## I.    Failure to Cash Check

The right of a retired employee or former employee or surviving spouse of either of them to receive any monthly payment of a pension, supplemental allowance and special age 65 benefit shall cease and be considered for all purposes as though such right had never existed if, prior to the second anniversary of the date a check for such monthly payment was mailed to such person, such check is, for any reason, not presented for payment to the bank on which it was drawn; thereafter such person may establish a right to receive any such monthly payment only by personally making application therefore and by supplying all the information the Board of Administration shall require.

## J.    Incapacity

If the Board of Administration shall find that any retired employee or former employee to whom a pension is payable is deceased or is unable to care for his affairs because of illness or accident, the Board may (unless prior claim therefore shall have been made by a duly appointed guardian, committee or other legal representative) authorize the trustee to pay any monthly pension payment, supplemental allowance and special age 65 benefit due to the spouse, children, parents or other relatives or dependents of such deceased employee, retired employee or former employee, or to any other person who in the opinion of the Board is caring for and supporting such retired employee or former employee. Any such payment shall be a complete discharge of any obligation or liability therefore under the Pension Plan, and neither the Board of Administration nor the trustee shall have any duty or obligation to see to the application of the money so paid.

84

### (15)    Effect on Other Pension Plans

This Pension Plan shall not affect in any way the rights of the Company or of any employee under the Chrysler Corporation Salaried Employees' Retirement Income Indenture dated as of April 30, 1941, as amended, or the rights of the Company or of any employee under the Chrysler Corporation Pension Trust Plan dated August 1, 1944, as amended, or the rights of the Company or of any employee under the Chrysler Corporation Supplemental Pension Plan for Salaried Employees dated as of January 1, 1951, as amended, or the rights of the Company or of any employee under the Chrysler Corporation Salaried Employees' Retirement Plan dated as of January 1, 1976, as amended.

### (16)    Effect on Employment Rights

Nothing in this Pension Plan shall give any employee the right to be retained in the employ of the Company, and all employees shall remain subject to discharge or layoff to the same extent as if this Pension Plan had never gone into effect.

### (17)    Right to Pension, Supplemental Allowance or Special Age 65 Benefit

The expiring of any labor agreement applicable to a bargaining unit the employees in which are covered by this Pension Plan or the expiring of this Pension Plan shall not end the right under the terms of this Pension Plan of employees who retire while this Pension Plan is in effect, and who, under the terms of this Pension Plan, are entitled to receive pensions, supplemental allowances or special age 65 benefits to continue to receive pensions, supplemental allowances or

85

special age 65 benefits. Except as provided in Sections (6) and (9) nothing in this Pension Plan or in any labor agreement applicable to a bargaining unit the employees in which are covered by this Pension Plan shall entitle any employee to receive a pension, supplemental allowance or a special age 65 benefit who has not retired in accordance with this Pension Plan during the term of this Pension Plan, or as in this Pension Plan provided, including without limiting the generality of the foregoing, as provided in Section (23) of this Pension Plan, or who under the terms of this Pension Plan is not entitled to a pension, a supplemental allowance or a special age 65 benefit.

**(18)  Procedure for Handling Questions of Fact**

If any question shall arise concerning an employee, former employee, retired employee, or surviving spouse, about the age of the employee, former employee, retired employee, or surviving spouse, the date of the beginning or the total number of months of his credited service, his eligibility for a pension under this Plan, or the amount of a pension, supplemental allowance or special age 65 benefit, if any, to which he claims to be entitled, the employee or the officers of the Local Union on his behalf or the former employee or the retired employee or the surviving spouse shall prepare a written statement which he shall sign, provide all facts and circumstances concerning the matters and send it to the Board of Administration for the Board's review and determination.

If a claim is denied or partly denied, the employee, former employee, or surviving spouse will be notified in writing and given an opportunity for a review. The written denial will give:

86

(a)  specific reason(s) for denial;

(b)  a reference to the specific provision(s) of the Plan on which the denial is based;

(c)  a description of any additional material or information necessary to perfect the claim and the reason why such material or information is needed; and

(d)  an explanation of the Plan's appeal procedure and the time limits applicable to such procedure, including a statement of the employee's, former employee's, or surviving spouse's right to bring a civil action under Section 502(a) of ERISA following a denial of a benefit claim on review.

Any employee, former employee, or surviving spouse who applies for benefits under this Plan and is ruled ineligible or not qualified, or who believes he did not receive the full amount of benefits to which he is entitled, or who is otherwise adversely affected by any action of the Board of Administration, shall have the right to request the Board to review the matter, provided that he makes such a request in writing, within sixty (60) days after being apprised of the Board's action. Not later than sixty (60) days after the Board's receipt of the appeal, the Board shall issue a written decision. However, if specific circumstances so dictate, the decision by the Board may be made within 120 days after receipt of the request for review. The decision on review shall be in writing and shall include specific reasons for the decision, including a reference to the sections of the Plan upon which the decision is based. A decision by the Board of Administration is final and binding.

The Board of Administration will adopt claims procedures with respect to claims involving disability

87

determinations under the Plan in accordance with applicable Department of Labor regulations.

**(19)    Board of Administration**

A.    There shall be established a Board of Administration consisting of six members, three of whom shall be appointed by the Company (hereinafter referred to as the Company Members), and three of whom shall be appointed by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (hereinafter referred to as the Union Members). The Company Members and Union Members shall serve without compensation as such. Each member of the Board may have an alternate, and the same person may be the alternate for more than one member. In the event a member is absent from a meeting of the Board, an alternate may attend and when in attendance shall exercise the duties of the member. Either the Company or the Union at any time may remove a member or alternate appointed by it and may appoint a member to fill any vacancy among the members or alternates appointed by it. Both the Company and the Union shall notify the other in writing of the members or alternates that they appoint before the appointment shall be effective.

B.    The Company Members and Union Members of the Board shall appoint an impartial third person to act as an Impartial Chairman who shall serve until such time as he may be requested to resign by three members of the Board. In the event that the Company Members and Union Members of the Board are unable to agree upon an Impartial Chairman, the Impartial Chairman of the Appeal Board under the labor agreement then applicable to production and maintenance employees of the Company shall select the Impartial Chairman; provided, however, that the Company Members and Union Members may by agreement request the Impartial Chairman of the Appeal Board to serve as the Impartial Chairman of the Board of Administration. The Impartial Chairman shall be considered a Member of the Board of Administration for matters on which he is to vote. The Company and the Union shall share equally the fees and expenses of the Impartial Chairman in cases involving employees. The fees and expenses of the Impartial Chairman in cases involving retired employees and former employees shall be paid out of the Pension Fund.

C.    The Board of Administration shall have discretionary authority to interpret the Plan and determine eligibility for and the amount of benefits in accordance with the terms of this Pension Plan. Any Board interpretation or Board determination shall be given full force and effect unless it can be shown that the interpretation or determination is arbitrary and capricious. In carrying out its duties, the Board shall have the following powers:

1.    To carry out the rules and procedures set forth in this Pension Plan to be followed by employees, former employees and surviving spouses in filing applications for benefits and for furnishing and verifying proofs necessary to establish their age and credited service in accordance with the rules of eligibility for benefits under this Pension Plan.

2.    To find facts and determine the rights of any employee, former employee or surviving spouse applying for retirement benefits and to afford any applicant or the Company, if dissatisfied with

any finding of fact or determination, the right to a hearing.

3.  To apply the procedure set forth in this Pension Plan for establishing and verifying credited service of employees and former employees and, after affording employees and former employees and the Company an opportunity to object, to determine the credited service of employees or former employees.

4.  To make arrangements for authorizing the trustee to pay from the Pension Fund pensions, supplemental allowances and special age 65 benefits to retired employees, former employees and surviving spouses entitled to them, and to authorize paying them.

5.  To prepare and distribute appropriate information explaining the provisions of this Pension Plan, to furnish to the Company and to the Union, upon request, reports of the names and ages of retired employees, former employees and surviving spouses to whom the Board authorized pensions, supplemental allowances and special age 65 benefits to be paid, the amounts of the pensions, supplemental allowances and special age 65 benefits and other facts as provided below in this Pension Plan.

6.  To receive not more often than once a year a report of the receipts, disbursements and assets of the Pension Fund by the trustee or trustees for the time being of the Pension Fund and a report of

allowances paid during the year and the cumulative balance of such contributions less payments.

7.  To arrange with the Company for office space, equipment and clerical and other assistance as may be reasonably necessary for performing the duties of the Board, which the Company will furnish and for which it shall be reasonably compensated from the Pension Fund, with due regard to economical administration of the Plan.

D.  To constitute a quorum for transacting business there shall be required to be present at any meeting of the Board at least two Union Members and two Company Members. At all meetings of the Board the Company Members shall have a total of three votes and the Union Members shall have a total of three votes; the votes of any absent member being divided equally between the members present, appointed by the same party. Decisions of the Board shall be by a majority of the votes cast. The Impartial Chairman shall cast the deciding vote in cases where there shall have been a tie vote.

E.  The Board and any Member of the Board shall be entitled to rely upon the correctness of any information furnished by the trustee, the Union or the Company. Neither the Board nor any of its Members nor any officer or other representative of the Union, nor the Company, nor any officer or other representative of the Company shall be liable because of any act

F.    The Board shall accept as final

1.    determination under any applicable labor agreement on seniority of employees, on loss of seniority and on any other matter for which the terms of such agreement and not the terms of this Pension Plan provide a means of determining,

2.    any determinations made by the appropriate Government agency as to the amount of any Government administered benefit which shall be material in administering this Pension Plan.

Such questions referred to in Clause 1. or Clause 2. above upon which the Company Members and the Union Members of the Board are unable to reach agreement either shall be referred to the appropriate procedure for determination, or where prompt determination on questions referred to in Clause 1. are required, shall be referred directly to the Impartial Chairman under the labor agreement then applicable to production and maintenance employees of the Company.

G.    The Board of Administration shall have no power to add to or subtract from or to modify any of the terms of this Pension Plan, to change or add to any benefit provided by this Pension Plan, nor to waive or fail to apply any requirement of eligibility for a benefit under this Pension Plan.

H.    The Board of Administration shall report

authorized payment of pensions during the calendar year, the number of employees and former employees of each year of age for whom pensions were so authorized, the highest and lowest average monthly pension including any applicable supplemental allowance and special age 65 benefits, that such employees and former employees of each year of age qualified to receive, the number of deaths during the year, as reported to the Board of Administration, of retired employees and former employees receiving pensions of each year of age, and the total pensions including supplemental allowances and special age 65 benefits, that the trustee paid during the calendar year to retired employees and former employees under this Pension Plan.

I.    No ruling of the Board of Administration in one case shall create a basis for retroactive adjustment in any other case.

J.    There shall be no appeal from any ruling within its authority of the Board of Administration. Each such ruling shall be final and binding on the Union and its members, the employee or employees or former employee or employees involved, and on the Company. The Union will discourage any attempt of its members, in any appeal to any Court or Labor Board from a ruling of the Board of Administration.

K.    Any case referred to the Board of Administration on which it has no power to rule shall

the Pension Plan as set forth herein shall become effective October 12, 2011 provided that the obligation to put into effect such amendments and to maintain this Pension Plan, as so amended, is subject to the requirement that

(i)     the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) notifies the Company, in writing, that the new collective bargaining agreements referred to at the beginning of the Pension Agreement have been duly ratified, and

(ii)    approval of this Pension Plan as amended herein and of the trust established in connection therewith by the Internal Revenue Service as a qualified plan and trust

(a)     qualifying under Section 401(a) and exempt from taxation under Section 501(a) of the 1986 Internal Revenue Code or any other applicable section of any Federal tax laws (as such sections are now in effect or are hereafter amended or adopted) and

(b)     entitling the Company to deduction for contributions under Section 404 of the 1986 Internal Revenue Code or any other applicable section of any Federal tax laws (as such sections are now in effect or are hereafter amended or adopted),

is obtained prior to putting such amendments into effect and is maintained continuously thereafter.

The Company will submit this Pension Plan as

the Company is authorized with the consent of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), to make the necessary revisions, adhering as closely as possible to the intent of the Company and the Union as expressed in this Pension Plan.

## (21)    Demands for Change Precluded

Until the expiration of this Pension Plan, neither the Union nor the Company shall demand any change in, deletion from, or addition to, this Pension Plan (except as otherwise provided in Section (20) above), or the Pension Agreement, nor shall either of them be required to bargain with respect to any provision or interpretation of this Pension Plan or any modification thereof, deletion there from or addition or supplement thereto, or with respect to any pension, supplemental allowance or special age 65 benefit or retirement arrangements or plan, nor shall a change in, deletion from, or addition to, this Pension Plan be an object of or be a reason or cause for any strike, slowdown, work stoppage, sit-down, stay-in, curtailment of work or interference with production, lockout, picketing or other exercise of economic force or threat thereof by the Union or the Company.

## (22)    Duration of Pension Plan

This Pension Plan shall continue in effect until September 14, 2015 hereinafter referred to as the

its desire to amend or modify this Pension Plan as of the Expiration Date, or as of such anniversary of the Expiration Date in any subsequent year (it being understood, however, that the foregoing provision for automatic one-year renewal periods shall not be construed as an endorsement by either the Union or the Company of the proposition that one year is a suitable term for a retirement plan agreement). If such notice is given, this Pension Plan shall be open to modification or amendment on the Expiration Date or on such anniversary of the Expiration Date in any subsequent year as the case may be.

If following a notice by either the Union or the Company pursuant to the preceding paragraph, negotiations on such proposed modifications or amendments shall not be completed by the Expiration Date or by such anniversary of the Expiration Date in any subsequent year with respect to which such notice shall have been given, as the case may be, either the Union or the Company, at any time thereafter before completion of such negotiations, may give to the other written notice of termination of this Pension Plan in which event this Pension Plan shall terminate at the end of the 30th day following the day such notice shall have been given, unless the Union and the Company shall agree otherwise at or before that time. Anything herein which might be construed to the contrary notwithstanding, however, it is understood that termination of this Pension Plan shall not have the effect of terminating the right of

## (23) Termination of Pension Plan

A. In the event of termination or partial termination of this Pension Plan (amendment or modification of this Pension Plan as provided for in Section (22) above shall not constitute termination of this Pension Plan for purposes of this Section (23)) or upon complete discontinuance of the Company's contributions hereunder, then, subject to the provisions of Section (23) D., the rights of all affected employees, retired employees and former employees and eligible surviving spouses having an interest in the Pension Fund at the effective date of such termination or discontinuance with respect to benefits accrued to the date of such termination or discontinuance shall be nonforfeitable; provided, however, that no employee or former employee or retired employee or eligible surviving spouse shall have recourse toward satisfaction of his nonforfeitable benefits from other than the Plan assets or the Pension Benefit Guaranty Corporation. The Board of Administration shall allocate the assets of the Pension Fund available to provide benefits among such persons in the manner prescribed by Section 4044 of the Employee Retirement Income Security Act of 1974 (or corresponding provisions of any subsequent applicable law in effect at the time). After such allocation has been made, any residual assets of the Pension Fund may be distributed to the Company if all liabilities of the Pension Plan to employees, retired employees and former employees and eligible surviving spouses have been satisfied

B.     Any such allocation under Subsection A. shall be accomplished at the election of the Board of Administration through either

1.     continuance of the Pension Fund or a new trust fund, or

2.     purchase of insurance annuity contracts; provided, however, that no change shall be effected in the allocation prescribed by Section 4044 of the Employee Retirement Income Security Act of 1974 (or corresponding provisions of any subsequent applicable law in effect at the time).

C.     Anything in this Pension Plan to the contrary notwithstanding, it shall be impossible at any time prior to the satisfaction of all liabilities with respect to employees under the Pension Plan for any part of the corpus or income of the Pension Fund to be used for, or diverted to, purposes other than the exclusive benefit of employees.

D.     There shall not be any merger or consolidation with, or transfer of assets or liabilities to, any other plan after September 2, 1974, unless each employee or retired employee covered by or entitled to pensions or other benefits under this Pension Plan would, if the Pension Plan then terminated, receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Pension Plan had then terminated.

**(24)     Limitation on Payments**

No payments pursuant to this Pension Plan (other than such expenses of administering this Pension

98

Plan as the Company or the Union shall pay) shall be made otherwise out of the Pension Fund, or pursuant to a contract or contracts contracted for or purchased from an insurance company as authorized under Section (2) of this Pension Plan.

As provided in Appendix J, in addition to the other limitations set forth in this Pension Plan and notwithstanding any other provisions of this Pension Plan, the accrued benefit, including the right to any benefit provided in this Pension Plan (and all other defined benefit plans required to be aggregated with this Pension Plan under the provisions of Section 415 of the Internal Revenue Code), shall not, increase to an amount in excess of the amount permitted under Section 415 of the Internal Revenue Code.

**(25)     Accounts of Trustees**

The trustee or trustees from time to time may settle its or their accounts in the manner provided by the trust agreement by service of two copies of the accounts upon the Board of Administration, one for the Union Members and one for the Company Members. The Company or the Board of Administration may object to the accounts within ninety (90) days after service. Otherwise the accounts shall be final, and shall be binding upon the Company, the Union, employees, former employees, retired employees, and the trustee or trustees. In any proceeding for the settlement of the accounts of the trustee or trustees, or concerning the administration of the Pension Fund, service of notice or process on the Union Members of the Board of Administration shall be deemed, for all purposes, service on the Union, the employees, former employees and retired employees.

99

**(26) Inclusion of other Chrysler Employees**

It is hereby agreed that any other employees of Chrysler Group LLC (or of any domestic subsidiary of Chrysler Group LLC) represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) or any of its Local Unions, by written agreement between Chrysler Group LLC or the domestic subsidiary and the International Union or any such Local Union may be deemed and treated as employees covered by this Pension Plan, but nothing herein shall constitute such other employees and the employees theretofore covered by this Pension Plan a single unit appropriate for the purposes of collective bargaining, or be evidence that they constitute such a unit.

**(27) Service of Employee Outside Plan**

An employee who is covered by this Pension Plan at the time of his retirement, but who was not covered by this Pension Plan during the entire period of his employment with the Company, or with any domestic subsidiary the employees of which are covered by this Agreement under Section (26) of this Pension Plan, except as provided below, shall count his service before and after the effective date with the Company or the domestic subsidiary, for the purpose of computing credited service, as though he had been an employee within the meaning of this Pension Plan or shall count the credited service, if any, which he

listed in the appropriate labor agreement between the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and the Company in effect at the time such event occurs. A person must be an employee covered by this Pension Plan at the time of his retirement in order to retire under this Pension Plan.

i. Provided that employees who are covered under this Pension Plan at the time their employment terminates, may use Credited Service earned under a Table 27.1 pension plan during the associated time period in Table 27.1 for the purposes of vesting and determining eligibility for benefits under Sections (5), (6), (7) or (8) of this Pension Plan. An employee may not use Credited Service earned under a Table 27.1 pension plan during the associated time period in Table 27.1 for the purpose of determining a benefit amount under any provisions of this Pension Plan.

### Table 27.1

| Pension Plan | Time period for which Credited Service is not portable with the Chrysler Group LLC-UAW Pension Agreement |
|---|---|
| Chrysler Group LLC Subsidiaries' Pension Plan | any period of time |
| Chrysler Group LLC-SPFPA Pension Agreement | on or after August 18, 1998 |
| Chrysler Group LLC - IUE Pension Agreement | on or after January 31, 1992 for |

ii. Provided that employees who are not covered under this Pension Plan at the time their employment terminates, may use Service earned under a Table 27.2 plan during the associated time period in Table 27.2 for the purposes of vesting and determining eligibility for benefits under Sections (5), (6), (7) or (8) of this Pension Plan. An employee may not use Service earned under a Table 27.2 plan during the associated time period in Table 27.2 for the purpose of determining a benefit amount under any provisions of this Pension Plan.

### Table 27.2

| Contribution Based Service In: | Time period for which Service is not portable with the Chrysler Group LLC-UAW Pension Agreement |
|---|---|
| Chrysler Group LLC Cash Balance Plan | October 29, 2007 through March 31, 2012 |
| Defined Contribution Plan | on or after April 1, 2012 |

1,700 hours of contribution based service in any calendar year equals 12 months, with service less than 1,700 hours counted on a proportional basis.

### (28) Named Fiduciaries

There shall be three Named Fiduciaries under this Plan, the Union, the Chrysler Group LLC Pension Investment Committee and the Chrysler Group LLC Employee Benefits Committee. All of the fiduciary

(i) the Pension Investment Committee shall have the fiduciary responsibilities of selecting the investment managers, of removing any investment managers, of selecting successors, monitoring the activity of said investment managers and of determining (along with the Employee Benefits Committee) the form and terms of the trust agreement with the trustee or trustees.

(ii) all of the fiduciary responsibilities of the Company under this Pension Plan not specifically described in (i) above shall be allocated to the Employee Benefits Committee.

In carrying out the fiduciary responsibilities established under this Pension Plan:

A. Any one of the three Named Fiduciaries under this Pension Plan may allocate any or all of its fiduciary responsibilities to any one or both of the other Named Fiduciaries. Any such allocation shall be effective only if accepted in writing by the Named Fiduciary to whom the fiduciary responsibility has been allocated.

B. Any one of the three Named Fiduciaries under this Pension Plan may designate persons (other than one or both of the other Named Fiduciaries) to carry out the fiduciary responsibilities under this Pension Plan of the Named Fiduciary making such designation.

D. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Pension Plan.

E. A Named Fiduciary, or a fiduciary designated by a Named Fiduciary as set forth in Paragraph B. above, may employ one or more persons to render advice with regard to any responsibility such fiduciary has under the Pension Plan.

F. The Company, by resolution adopted by the Pension Investment Committee, may appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of the Pension Plan.

**(29) Definitions**

A. Except where the context otherwise requires, the term "employees" means employees of the Company within the collective bargaining unit or units represented by the Local Unions which are or become parties to the Pension Agreement, and shall not include:

(i) Retired employees. The term "retired employees" shall not include former employees entitled to a deferred pension upon compliance with all the conditions of Section (6) of this Pension Plan.

(ii) Non-skilled classified employees hired or rehired on or after October 29, 2007 whose Benefit Agreement between Chrysler LLC and the UAW and any successor agreement thereto.

(iii) Salaried bargaining unit employees hired or rehired on or after April 15, 2010 whose employment is governed by the Letter of Understanding, Addendum to the 2007 Chrysler LLC-UAW National Agreement dated April 15, 2010,

(iv) Skilled trade classified employees hired or rehired on or after October 12, 2011 whose employment is governed by the 2011 Production, Maintenance and Parts Agreement, Letters, Memoranda and Agreements, Memorandum of Understanding UAW - Chrysler Group LLC Employees Hired On or After October 29, 2007 Wage & Benefit Agreement between Chrysler Group LLC and the UAW and any successor agreement thereto.

(v) Global Engine Manufacturing Alliance (GEMA) employees hired or rehired on or after the effective date as specified in the agreement referenced in Letter 33 of this Pension Agreement.

For purposes of the above paragraphs (ii), (iii), (iv), and (v) the term 'rehired' shall mean remployment by the Company of an employee who previously lost seniority because of a quit, discharge, retirement or other termination, except for rehire pursuant to Section (49)(g) and (h) of the Production, Maintenance and Parts Agreement between Chrysler Group LLC and

Enrollment of Actuaries and is a Fellow or Associate of the Society of Actuaries or a Member of the American Academy of Actuaries, or a firm of independent actuaries selected by the Company, one of whose members is such a Fellow, Associate or Member.

C. For all purposes of this Pension Plan including, but not limited to, the computation of the cost of pensions and the computation of credited service, the term "the effective date" shall mean,

(a) September 1, 1950, in the case of employees covered by this Pension Plan who between December 30, 1953, and June 1, 1954, inclusive, became employed or were treated as having become employed by the Company and whose seniority rights for service with Briggs Manufacturing Company or Briggs Indiana Corporation were preserved pursuant to agreement between the Company and the Union dated January 8, 1954,

(b) December 1, 1955, in the case of employees covered by this Pension Plan who on August 31, 1961, were covered by the Pension Plan incorporated by reference as Exhibit A in the collective bargaining agreement dated December 23, 1958, between American Foundry Company, Inc., and the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-AFL-CIO) and its affiliated Local Union No. 550 (which Pension Plan was adopted by Company as

between Company and Marine Midland Trust Company of Central New York, as Trustee, dated as of September 1, 1961, amending the Pension Agreement dated as of January 7, 1954, between New Process Gear Corporation and Marine Midland Trust Company of Central New York, as Trustee, as such Pension Agreement was thereafter amended (which Pension Agreement as amended is herein called the New Process Gear Pension Plan),

(d) August 1, 1950, in the case of employees covered by this Pension Plan who became employed by the Company as of July 1, 1965, and whose seniority dates with DeLuxe Die Works, Inc. were preserved for certain purposes as provided in an agreement between the Company, the Union and its Local Union No. 155 dated May 24, 1965,

(e) September 1, 1950, in the case of employees covered by this Pension Plan who on November 9, 1967, were covered by the Pension Plan incorporated by reference as Exhibit A in the collective bargaining agreement dated October 15, 1964, between Company for its Detroit Universal Division and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and UAW Local Union No. 174 (which Pension Plan is herein called the Detroit Universal Division Pension Plan),

(f) July 1, 1950, in the case of employees

Union No. 630 (herein called the King-Seely Hourly Pension Plan) and whose seniority dates with the King-Seeley Thermos Co. were preserved for certain purposes as provided in an agreement between the Company and Union dated March 22, 1968,

(g) April 22, 1964, in the case of employees covered by this Pension Plan who on March 21, 1968, were covered by the King-Seeley Division of King-Seeley Thermos Co. Salaried Employees Pension Plan created pursuant to a Supplemental Agreement incorporated by reference in Section 7 of Article XI of the collective bargaining agreement dated April 22, 1964, between the King-Seeley Division of King-Seeley Thermos Co. and the Union and the King-Seeley Division Unit of its affiliated Local Union No. 889 (herein called the King-Seeley Clerical Pension Plan) and whose seniority dates with the King-Seeley Thermos Co. were preserved for certain purposes as provided in an agreement between the Company and the Union dated March 22, 1968, and

(h) January 1, 1951, in the case of employees covered by this Pension Plan who on September 14, 1973, were covered by the Pension Plan incorporated in the National Bargaining Agreement dated August 24, 1971 between Eltra Corporation and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Chrysler Casting Corporation being substituted as the employer in said National Bargaining Agreement with

(i) August 1, 1950, in the case of all other employees covered in this Pension Plan.

D. "Actuarial Value" shall mean, to the extent required by Code Section 417(e), the amount determined using the mortality table described in Code Section 417(e)(3) and the regulations, rulings and other guidance issued thereunder, unless otherwise specifically provided herein, and the interest rate described in Code Section 417(e)(3) for the month of October immediately preceding the year of the determination date.

E. "Internal Revenue Code" or "Code" shall mean the Internal Revenue Code of 1986, as amended.

F. Where used in Section (10) of this Pension Plan, "base hourly rate" means the higher of:

(a) the employee's highest straight-time rate of record during the last 13 consecutive pay periods ending with the pay period which includes his last day worked, or

(b) for an employee who worked on incentive or piece work in at least 4 pay periods during such 13 consecutive pay periods, the employee's average earned straight-time hourly rate for the last 4 (or, if higher, for the first 4) of such 13 consecutive pay periods for which he had any incentive earnings

that if he worked in less than 4 of such 13 consecutive pay periods and had incentive or piece work in each pay period worked, his average earned straight-time hourly rate shall be used for the pay periods he worked.

G.    Where used in Section (10) of this Pension Plan, "base weekly salary" means the employee's highest weekly salary of record during the last 13 consecutive weeks ending with the week which includes his last day worked.

H.    "Prior Pension Plan" means the Pension Agreement dated October 29, 2007 between the Company and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW).

I.    "Retirement Equity Act" means the Retirement Equity Act of 1984.

J.    "Social Security Benefits" means old age benefits unreduced because of age, or disability benefits payable upon complying with the Federal Social Security Act or under any future Federal legislation amending, superseding, supplementing or incorporating the Federal Social Security Act.

K.    The "Company" means Chrysler Group LLC. Solely for purposes of the following sections and/or paragraphs, references in this Pension Plan to "Chrysler Group LLC" or the "Company" shall include

(ii)    The last paragraph of Section (8)
(iii)    Paragraphs A, C and H of Section (29)

L.    In the absence of any express reference to the contrary, masculine pronouns refer to both male and female.

**(30)    Construction**

This Pension Plan shall be construed, governed and administered in accordance with the laws of the State of Michigan except where otherwise required by Federal law.

## APPENDIX A

### FOR HOURLY RATED EMPLOYEES

A Benefit Class Code for the sole purpose of Sections (5), (6), (7) and (8) of this Pension Plan is established for each job classification that is in effect on October 12, 2011 based on the maximum base hourly rate (which term as used herein shall include incentive earnings unless otherwise noted) applicable to the job classification on that date, as follows:

| For Job Classifications Having a Maximum Base Hourly Rate | | Benefit Class Code |
|---|---|---|
| October 12, 2011 and after | $28.10 or less | A |
| | 28.11 through 28.40 | B |
| | 28.41 through 29.79 | C |
| | 29.80 and over | D |

term of this Pension Agreement dated October 12, 2011. It is the intent that the above base hourly rates include any such adjustment.

The Benefit Class Code applicable to an employee is the Benefit Class Code for the job classification held by the employee for the greatest number of calendar days during the 24 consecutive months immediately preceding his last day worked.

The Benefit Class Code established pursuant to this Pension Plan for any new job classification shall be whichever Benefit Class Code is applicable to other job classifications having the same maximum base hourly rate on the date that such new job classification is put into effect, and further, that with respect to a job classification that is obsolete on the date as of which an employee retires or loses his seniority, a hypothetical maximum base hourly rate applicable thereto shall be determined by increasing the maximum base hourly rate for that job classification at the time of its discontinuance to the extent necessary so as to give effect to general wage increases (including cost-of-living allowance transfers) that have occurred since such discontinuance and the Benefit Class Code for such classification so derived shall be whichever Benefit Class Code herein is applicable to other job classifications having the same maximum base hourly rate on that date.

In the event an employee is transferred to a

## FOR SALARIED EMPLOYEES

A Benefit Class Code for the sole purpose of Sections (5), (6), (7) and (8) of this Pension Plan is established for each salary grade as follows:

| Salary Grade | Benefit Class Code |
|---|---|
| 1 and 2 | A |
| 3 | B |
| 4 | C |
| 5 and over | D |

Each ungraded class will have the same Benefit Class Code as the salary grade having a maximum weekly base salary equal to or in excess of but which most closely approximates the maximum weekly base salary of the ungraded class. The Benefit Class Code applicable to an employee is the Benefit Class Code for the salary grade or the ungraded class of the employee for the greatest number of calendar days during the 24 consecutive months immediately preceding his last day worked.

The Benefit Class Code established for each salary grade or ungraded class shall continue in effect without change throughout the term of this Pension Plan.

In the event an employee is transferred to a job which results in a lower basic benefit rate, such employee's vested pension benefit, if any, shall not be less than the amount of his accrued pension benefit on the date of such transfer to such job.

## APPENDIX B

# THE BASIC PENSION RATES FOR EACH OF THE BENEFIT CLASS CODES FOR PURPOSES OF SECTION (4) SHALL BE AS FOLLOWS:

**Monthly Basic Pension Rates***
Payable For Months Commencing

| Date of Retirement | Benefit Class Code | October 1, 2011 and after |
|---|---|---|
| Prior to October 1, 1984 | N/A | $28.50 |
| October 1, 1984 through September 30, 1985 | A | 29.50 |
| | B | 29.75 |
| | C | 30.00 |
| | D | 30.25 |
| October 1, 1985 through September 30, 1986 | A | 29.60 |
| | B | 29.85 |
| | C | 30.10 |
| | D | 30.35 |
| October 1, 1986 through September 30, 1987 | A | 29.70 |
| | B | 29.95 |
| | C | 30.20 |
| | D | 30.45 |
| October 1, 1987 through August 31, 1988 | A | 32.70 |
| | B | 32.95 |
| | C | 33.20 |
| | D | 33.45 |
| September 1, 1988 through August 31, 1989 | A | 32.80 |
| | B | 33.05 |
| | C | 33.30 |
| | D | 33.55 |
| September 1, 1989 through August 31, 1990 | A | 32.90 |
| | B | 33.15 |
| | C | 33.40 |
| | D | 33.65 |
| September 1, 1990 through August 31, 1993 | A | 36.10 |
| | B | 36.35 |
| | C | 36.60 |
| | D | 36.85 |
| September 1, 1993 through August 31, 1996 | A | 39.10 |
| | B | 39.35 |
| | C | 39.60 |
| | D | 39.85 |
| September 1, 1996 through August 31, 1999 | A | 42.50 |
| | B | 42.75 |
| | C | 43.00 |
| | D | 43.25 |
| September 1, 1999 through August 31, 2003 | A | 48.70 |
| | B | 48.95 |
| | C | 49.20 |
| | D | 49.45 |
| September 1, 2003 through August 31, 2007 | A | $52.90 |
| | B | $53.15 |
| | C | $53.40 |
| | D | $53.65 |

* The above rates are applicable to retirees with Dates of Retirement prior to September 1, 2007 who have no Life and Disability Benefits Program overpayment balance due to the Company. For those retirees with an overpayment balance under the Life and Disability Benefits Program, the applicable amount above shall be reduced by $1.00 for each month of credited service until the overpayment balance has been reduced to zero ($0.00). Any such reduction shall not serve to increase any benefit otherwise payable. When the overpayment balance under the Life and Disability Benefits Program has been reduced to zero ($0.00), the retired employee's monthly rate will be increased to the applicable rate above with no retroactive effect.

# THE BASIC PENSION RATES FOR EACH OF THE BENEFIT CLASS CODES FOR PURPOSES OF SECTIONS (5), (7) AND (8) SHALL BE AS FOLLOWS:

**For Benefit Commencement Dates on or after October 1, 2007 and no Benefit Overpayment Recovery under the Life and Disability Benefits Program during the 2007 Agreement and Payments Effective:**

| Benefit Class Code | 10-1-2007 to 9-30-2008 | 10-1-2008 to 9-30-2009 | 10-1-2009 to 9-30-2010 | 10-1-2010 and after* |
|---|---|---|---|---|
| A | $52.90 | $53.10 | $53.30 | $53.55 |
| B | 53.15 | 53.35 | 53.55 | 53.80 |
| C | 53.40 | 53.60 | 53.80 | 54.05 |
| D | 53.65 | 53.85 | 54.05 | 54.30 |

* including October 1, 2011 and later

**For Benefit Commencement Dates on or after October 1, 2007 with a Benefit Overpayment under the Life and Disability Benefits Program at Benefit Commencement and Payments Effective:**

| Benefit Class Code | 10-1-2007 to 9-30-2008 | 10-1-2008 to 9-30-2009 | 10-1-2009 to 9-30-2010 | 10-1-2010 and after* |
|---|---|---|---|---|
| A | $51.90 | $52.00 | $52.10 | $52.25 |
| B | 52.15 | 52.25 | 52.35 | 52.50 |
| C | 52.40 | 52.50 | 52.60 | 52.75 |
| D | 52.65 | 52.75 | 52.85 | 53.00 |

*including October 1, 2011 and later

**For Benefit Commencement Dates between October 1, 2007 and September 1, 2008 with the Recovery of a Benefit Overpayment under the Life and Disability Benefits Program beginning October 1, 2008 Payments Effective:**

| Benefit Class Code | 10-1-2007 to 9-30-2008 | 10-1-2008 to 9-30-2009 | 10-1-2009 to 9-30-2010 | 10-1-2010 and after* |
|---|---|---|---|---|
| A | $52.90 | $53.00 | $53.10 | $53.25 |
| B | 53.15 | 53.25 | 53.35 | 53.50 |
| C | 53.40 | 53.50 | 53.60 | 53.75 |
| D | 53.65 | 53.75 | 53.85 | 54.00 |

* including October 1, 2011 and later

**For Benefit Commencement Dates between October 1, 2007 and September 1, 2009 with the Recovery of a Benefit Overpayment under the Life and Disability Benefits Program beginning October 1, 2009 Payments Effective:**

| Benefit Class Code | 10-1-2007 to 9-30-2008 | 10-1-2008 to 9-30-2009 | 10-1-2009 to 9-30-2010 | 10-1-2010 and after* |
|---|---|---|---|---|
| A | $52.90 | $53.10 | $53.20 | $53.35 |
| B | 53.15 | 53.35 | 53.45 | 53.60 |
| C | 53.40 | 53.60 | 53.70 | 53.85 |
| D | 53.65 | 53.85 | 53.95 | 54.10 |

* including October 1, 2011 and later

**For Benefit Commencement Dates between October 1, 2007 and September 1, 2010 with the Recovery of a Benefit Overpayment under the Life and Disability Benefits Program beginning October 1, 2010 Payments Effective:**

| Benefit Class Code | 10-1-2007 to 9-30-2008 | 10-1-2008 to 9-30-2009 | 10-1-2009 to 9-30-2010 | 10-1-2010 and after* |
|---|---|---|---|---|
| A | $52.90 | $53.10 | $53.30 | $53.45 |
| B | 53.15 | 53.35 | 53.55 | 53.70 |

## APPENDIX C

## THE BASIC PENSION RATES FOR EACH OF THE BENEFIT CLASS CODES FOR PURPOSES OF SECTION (6) SHALL BE AS FOLLOWS:

| | Basic Pension Rate Per Benefit Class Code | | | |
|---|---|---|---|---|
| Date of Loss of Seniority | A | B | C | D |
| October 1, 2007 through September 30, 2008 | $52.90 | $53.15 | $53.40 | $53.65 |
| October 1, 2008 through September 30, 2009 | 53.10 | 53.35 | 53.60 | 53.85 |
| October 1, 2009 through September 30, 2010 | 53.30 | 53.55 | 53.80 | 54.05 |
| October 1, 2010 and after* | 53.55 | 53.80 | 54.05 | 54.30 |

*including those employees losing seniority on October 1, 2011 and later

## APPENDIX D

## THE TEMPORARY BENEFIT RATES AND MONTHLY AMOUNTS FOR PURPOSES OF SECTIONS (7) AND (8) SHALL BE AS FOLLOWS:

Temporary Benefit Rates (And Monthly Amounts) for Each Year of Credited Service Up to Maximum of 30 Years

| Benefit Commencement Date | Rate | Monthly Maximum |
|---|---|---|
| October 1, 2007 through September 30, 2008 | $50.80 | $1,524 |
| October 1, 2008 through September 30, 2009 | 51.00 | 1,530 |

## APPENDIX E

## THE TOTAL MONTHLY BENEFIT FOR PURPOSES OF SECTION (10) SHALL BE AS FOLLOWS:

Total Monthly Benefit For Determining Monthly Early Retirement Supplement Prior To Age 62 And One Month For Retirement With 30 Or More Years of Credited Service

| Benefit Commencement Date | 10-1-07 through 9-1-08 | 10-1-08 through 9-1-09 | 10-1-09 through 9-1-10 | 10-1-10 and after |
|---|---|---|---|---|
| October 1, 2007 and after* | $3,140 | $3,150 | $3,160 | $3,170 |

* including those employees with a benefit commencement date of October 1, 2011 and later.

## APPENDIX F

## INTERIM SUPPLEMENT RATES

### Interim Supplement:
(payable prior to age 62 and one month)

Monthly Amount* for Each Year of Credited Service For Retirees Whose Benefits Commence On or After October 1, 2007

| Age at Retirement | 10-1-07 | 10-1-08 | 10-1-09 | 10-1-10 and After** |
|---|---|---|---|---|
| 55 | $22.35 | $22.45 | $22.55 | $22.60 |
| 56 | 26.35 | 26.50 | 26.60 | 26.70 |
| 57 | 31.90 | 32.00 | 32.15 | 32.25 |
| 58 | 37.35 | 37.50 | 37.65 | 37.80 |
| 59 | 41.65 | 41.85 | 42.00 | 42.20 |

## APPENDIX G

## FOUNDRY SERVICE

A.   For the sole purpose of Section (11), Subsection R. of the Pension Agreement, all hourly job classifications in effect on October 1, 1975, at the Indianapolis Foundry, Winfield Foundry, Huber Avenue Foundry and Fostoria Foundry Plants are designated as Foundry Jobs, except for those job classifications listed below for each respective plant.

1)   Indianapolis Foundry (5108)

Classification

| Number | Classification Title |
|--------|---------------------|
| 1048 | Driver - Truck |
| 1075 | Driver - Truck & Tractor Trailer - Interplant Transportation |
| 1086 | Locomotive Switchman |
| 2624 | Band Sawyer - Metal |
| 3071 | Wire Cutter - Machine |
| 3324 | Checker |
| 3465 | Material Handler - Foundry (only those assigned to Warehouse) |
| 3498 | Packer or Nailer |
| 3568 | Tool Crib Attendant |
| 4530 | Repairman-Castings (only employees located at Mound Road Engine and Trenton Engine Plants) |
| 4770 | Scrap Metal - Sorter & Cutter |
| 4800 | Battery Man |
| 5350 | Inspector - Layout and Sample Check |
| 5604 | Blacksmith |
| 5617 | Carpenter |
| 5621 | Crane Operator - Locomotive |
| 5654 | Mechanic - Refrigeration & Air Conditioning |
| 5668 | Painter & Glazier - Maintenance |
| 5719 | Mechanic - Gas & Electric Jitney |
| 5735 | Recording Instrument - Maintenance and Repair |
| 5805 | Pattern Maker - Metal Patterns (include prior to 01/01/74) |
| 5815 | Pattern Repairman – Foundry Patterns (include prior to 01/01/74) |
| 5905 | Boiler Operator |
| 5920 | Compressor Operator |
| 5942 | Sewage Disposal Plant Operator |
| 6175 | Tool Maker - Jig & Fixture Builder |
| 7089 | Welder - Foundry (only employees located at Mound Road Engine and Trenton Plants) |

2)   Winfield Foundry (5106)

Classification

| Number | Classification Title |
|--------|---------------------|

-NONE-

3)   Huber Avenue Foundry (5109)

| | |
|---|---|
| 1296 | Trouble Man - Foundry (only employees located at Mound Road Engine and Trenton Engine Plants) |
| 3324 | Checker |
| 3568 | Tool Crib Attendant |
| 4530 | Repairman - Castings (only employees located at Mound Road Engine and Trenton Engine Plants) |
| 4599 | Repairman - Welder - Major Machined Parts |
| 4599 | Repairman - Welder - Major Machined Parts (only employees located at Mound Road Engine and Trenton Engine Plants) |
| 4770 | Scrap Metal - Sorter & Cutter |
| 4809 | Battery Man |
| 4857 | Elevator Operator |
| 4905 | Janitor - Office |
| 4933 | Laborer - Pattern Shop |
| 5350 | Inspector - Layout & Sample Check |
| 5365 | Layout - Metal & Wood |
| 5556 | Machine Operator - Tool, Die & Maintenance |
| 5604 | Blacksmith |
| 5613 | Brick Mason & Cement Finisher |
| 5617 | Carpenter |
| 5621 | Crane Operator - Locomotive |
| 5712 | Repairman - Elevator |
| 5719 | Mechanic - Gas & Electric Jitney |
| 5777 | Sheet Metal Worker |
| 5805 | Pattern Maker - Metal Patterns |
| 5807 | Pattern Maker - Wood |

4)    Fostoria Foundry (5110)

| Classification Number | Classification Title |
|---|---|
| 1048 | Driver - Truck |
| 3411 | Material Dispatcher |
| 3465 | Material Handler - Foundry (only those assigned to yard) |
| 3568 | Tool Crib Attendant |
| 4905 | Janitor - Office |
| 5350 | Inspector - Layout & Sample Check |
| 5365 | Layout - Metal & Wood |
| 5556 | Machine Operator - Tool, Die & Maintenance |
| 5604 | Blacksmith |
| 5617 | Carpenter |
| 5621 | Crane Operator - Locomotive |
| 5668 | Painter & Glazier - Maintenance |
| 5706 | Repairman - Compressor |
| 5719 | Mechanic - Gas & Electric Jitney |
| 5777 | Sheet Metal Worker |
| 5815 | Pattern Repairman - Foundry Patterns |

B.    For the sole purpose of Section (11), Subsection R of the Pension Agreement, only those Clerical-Engineering-Technical job classifications listed below and in effect on October 1, 1975, at the Indianapolis Foundry, Winfield Foundry, Huber Avenue Foundry and Fostoria Foundry Plants are designated as Foundry Jobs.

1) Indianapolis Foundry (5108)

Classification

| Number | Classification Title |
|--------|----------------------|
| 110 | Clerk - Jr. II (Casting Counter) |
| 111 | Clerk - General I (Scrap Checker) |
| 211A | Engineer - Tool Engineering A |
| 211B | Engineer - Tool Engineering B |
| 541 | Technician - Laboratory Engineering A (Chill Bench Testing) |
| 549 | Technician - Plant Laboratory (Chill Bench Testing) |

2) Huber/WinfieldFoundry (5109 & 5106)

Classification

| Number | Classification Title |
|--------|----------------------|
| 215 | Engineer - Quality Control |
| 540 | Technician - Laboratory Engineering B |
| 541 | Technician - Laboratory Engineering A |
| 549 | Technician - Plant Laboratory (Furnace Temperature Checking) |
| 549 | Technician - Plant Laboratory (Core & Mold Sand Testing) |
| 549 | Technician - Plant Laboratory (Winfield Foundry Technician) |
| 585 | Process Control Engineer – Foundry |

3) Fostoria Foundry (5110)

|  | Cleaning Room Checker and Core Room Checker) |
|--|--|
| 214 | Analyst Quality Control |
| 215 | Engineer Quality Control |
| 223 | Schedule Man Planning |

No other job classification(s) shall be designated a Foundry Job except that

(i) any job classification becoming effective at one of the above named four plants on or after October 1, 1975, shall be designated a Foundry Job, provided that such job classification

(a) supersedes or replaces a job classification that was a Foundry Job at such plant and

(b) becomes applicable to employees who perform substantially the same work as had been performed by employees while on a job classification that is or was a Foundry Job at such plant, and

(ii) any job classification previously in effect at one of the above named four plants that was discontinued at such plant prior to October 1, 1975, shall be designated a Foundry Job if the work that was performed by employees on such discontinued job classification at the time of its discontinuance was substantially the same as work performed October 1, 1975, at the same plant by employees on a job classification that is a Foundry Job at such plant.

C. Notwithstanding Section (A) and (B) above,

**APPENDIX H**

**ASBESTOS SERVICE**

A. For the sole purpose of Section (11), Subsection S. of Pension Agreement, only those hourly job classifications listed below and in effect on January 1, 1977, at the Trenton Chemical Friction Products Plant are designated as Asbestos Jobs.

Classification

| Number | Classification Title |
|--------|---------------------|
| 0233 | Assembler - Cycleweld |
| 0287 | Cement Applicator |
| 0323 | Riveting & Stitching Machines |
| 0326 | Mixer Operator |
| 1057 | Driver - Truck, Gas & Electric |
| 1088* | Sweeping Machine Operator |
| 1926 | Inspector - Floor |
| 2004 | Inspector - Receiving & Shipping |
| 2043 | Inspector - Small Parts |
| 2648 | Brake Lining |
| 2723 | Extruder Operator |
| 2756 | Grinder |
| 2963 | Drill Press |
| 3366 | Conveyor Loader |
| 3568 | Tool Crib Attendant |
| 3820 | Press Operator |
| 4902* | Janitor Laborer |

*Applicable only to employees with seniority on or after May 5, 1988.

B. For the sole purpose of Section (11), Subsection S. of the Pension Agreement, only those hourly job classifications listed below and in effect on January 1, 1977, at the Trenton Chemical Complex are designated as Asbestos Jobs.

Classification

| Number | Classification Title |
|--------|---------------------|
| 4977 | Oiler |
| 5629 | Electrician |
| 5638 | Machine Repair |
| 5658 | Millwright |
| 5680 | Pipefitter - Plumber |

With respect to A. and B. above, additional credited service is not accruable for employment prior to January 1, 1964.

No other job classification(s) shall be designated an Asbestos Job except that

(i) any job classification becoming effective at the Trenton Chemical Complex on or after January 1, 1977, shall be designated an Asbestos Job, provided that such job classification

(a) supersedes or replaces a job classification that was an Asbestos Job at the Trenton Chemical Complex and

(b) becomes applicable to employees who perform substantially the same work as had been performed by employees while on a job classification that is or was an Asbestos Job at the Trenton Chemical

employees on such discontinued job classification at the time of its discontinuance was substantially the same as work performed January 1, 1977 at the Trenton Chemical Complex by employees on a job classification that is an Asbestos Job at the Trenton Chemical Complex.

## APPENDIX I

### REDUCTION FACTORS AT SELECTED AGES FOR DISABILITY SURVIVOR OPTION BEFORE AGE 55 (PURSUANT TO SECTION (9)C.5.)

#### Age Difference Between Disabled Retired Employee and Spouse

#### If Spouse is

| Age of Retired Employee When Benefits Commence | 10 Yrs Younger, Then Applicable Reduction is | 5 Yrs Younger, Then Applicable Reduction is | Same Age, Then Applicable Reduction is | 5 Yrs Older, Then Applicable Reduction is | 10 Yrs Older, Then Applicable Reduction is |
|---|---|---|---|---|---|
| 30 | 8.6% | 8.1% | 7.5% | 6.7% | 5.9% |
| 35 | 10.4 | 9.9 | 9.2 | 8.3 | 7.2 |
| 40 | 12.5 | 11.8 | 11.0 | 10.0 | 8.8 |
| 45 | 14.3 | 13.5 | 12.7 | 11.6 | 10.3 |
| 50 | 13.9 | 13.2 | 12.4 | 11.4 | 10.2 |
| 51 | 13.1 | 12.5 | 11.7 | 10.8 | 9.7 |
| 52 | 10.4 | 9.9 | 9.3 | 8.6 | 7.7 |
| 53 | 3.4 | 3.2 | 3.0 | 2.8 | 2.5 |
| 54 | 3.4 | 3.3 | 3.1 | 2.8 | 2.5 |

NOTE: Actuarial reduction factors for ages not shown above will be calculated on the same basis as

## APPENDIX J

### Limitation on Contributions and Benefits

1. General Rule. Notwithstanding any provision of the Pension Plan to the contrary, the total annual benefit payable to any participant under this Pension Plan and all other qualified defined benefit plans maintained by the Company shall not exceed the limitations on benefits payable under Section 415 of the Code. The limitations and other provisions of Section 415 of the Code with respect to benefits and annual additions, including any permissible grandfather and transition rules under the Code and other tax statutes, hereby are incorporated by reference; provided, however, that the Section 415 limitation in effect in the year of payment, as adjusted in accordance with Section 415(d) of the Code and the regulations and other guidance issued thereunder, shall be applied to determine the benefits payable to such participant.

2. "Limitation On Annual Benefit." For purposes of applying the limitations under Section 415, compensation shall be determined under Treasury Regulation Section 1.415(c)-2(b) and (c). For this purpose, compensation shall include amounts paid after a participant's severance from employment with the Company, provided that

    (A) the compensation is paid by the later of

        (i) 2½ months after the participant's severance from employment with the Company, or

outside the participant's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments, and

(C) the payment would have been paid to the participant prior to a severance from employment if the participant had continued in employment with the Company.

The term "limitation year" means the fiscal period beginning March 1 and ending the last day of the following February. As of January 1 of each calendar year commencing with the calendar year 1988, the foregoing dollar limitation shall be adjusted automatically to equal the dollar limitation as determined by the Commissioner of the Internal Revenue Service for that calendar year under Code Section 415(d)(1)(A). This adjusted dollar limitation shall apply for the limitation year ending with that calendar year. In addition, the annual benefit payable to a participant who has otherwise commenced benefits hereunder that is otherwise limited by the dollar limitation shall be increased to take into account the adjustment of the dollar limitation.

3. Other Plans. If the benefits under this Pension Plan are aggregated with benefits under another defined benefit plan for purposes of such Section 415, any reductions required by Section 415 will be made first with respect to the plan in which the participant most recently accrued benefits. Effective for benefit accruals in limitation years beginning on and after

limitation years ending after December 31, 2001. Benefit increases resulting from the increase in the limitations of Code Section 415(b), as reflected in the following provisions of this Subsection will be provided to those participants (with benefits limited by Code Section 415(b)) who are current participants or are participants who have commenced receipt of monthly benefits hereunder, and who have an accrued benefit under the Pension Plan immediately prior to the effective date of this Subsection, other than an accrued benefit resulting from a benefit increase solely as a result of the increases in limitations under Code Section 415(b).

5. Defined benefit dollar limitation. For purposes of applying the Code Section 415(b) limitations (which are incorporated by reference, as modified herein), the "defined benefit dollar limitation" is $160,000, as adjusted, effective January 1 of each year, under Section 415(d) of the Code in such manner as the Secretary of the Treasury shall prescribe, and payable in the form of a straight life annuity. A limitation as adjusted under section 415(d) will apply to limitation years ending with or within the calendar year for which the adjustment applies.

6. Maximum permissible benefit. The "maximum permissible benefit" is the lesser of the defined benefit dollar limitation or the defined benefit compensation limitation set forth in Section 415(b)(1)(B) of the Code, both adjusted where required in accordance with

INTERNATIONAL UNION
UNITED AUTOMOBILE,
AEROSPACE AND
AGRICULTURAL
IMPLEMENT WORKERS
OF AMERICA (UAW)

CHRYSLER GROUP LLC

Bob King
Wendy Fields-Jacobs
General Holiefield
Tim Bressler
James Hardy
Virdell King
Keith Mickens
Troy Davis
Roy Hamilton
Darrell Motley
Patrick Peralta
Todd Penn
Gary Reid
LaChandra White
Andy Ackles
Patrick Byers
Paul Caucci
Patrick Cooper
Paul Greathouse
Harvey Hawkins, Jr.
Cherylene Hough
Nate Martin
Doug Rice
Susan Robles
Mike Spacil
David Stalnaker

Sergio Marchionne
Nancy Rae
Alphons Iacobelli
Jim Bante
Mike Brown
Sherisse Fiorvento
Mike Jessamy
Kathleen Neal
Chris Pardi
Lisa Reinhardt-Kosal
Glenn Shagena
Daniela Antovski
Debbie Bogart
Fred Castelvetere
Bridget Crane
Jim Dyckman
Patrick Gibson
Meredith Hall
LaMar Harris
Dee Klimek
Colin Lightbody
Jeff Lofay
Valerie Michel
Cindy Pronger
Roy Richie
Glenn Russette

INTERNATIONAL UNION
UNITED AUTOMOBILE,
AEROSPACE AND
AGRICULTURAL
IMPLEMENT WORKERS
OF AMERICA (UAW)

CHRYSLER GROUP LLC

Shawn Fain
Parrish Elder
Tom Brenner
Matt Frantzen
Jeff Hagler
Freddie Hughes
Kenneth Morrast
Rodney Ridgway

Jessica Dabkowski
John Dionise
Steve Dufour
Debbie Felek
Steve Fioritto
Jeff Guernsey
Jonathan Haio
Brian Klott
Danielle Lester
Colleen McBrady
Julie McIntosh
Jaime Miller
Hank Murawski Jr.
Jason Nault
Kevin Pollinger
Doug Root
Robert Sarzyenski
Jennifer Semian
Beth Shapiro
Mike Spoors
Barbara Teholis
Dean Testani
Celia Tramel
Dawn Vickers
Ron Wander
Debbie White

## SCHEDULE I

1. Jefferson North Assembly--Local 7, 889-Unit 3 & 412--Unit 2
2. Warren Truck Assembly--Local 140, 889-Unit 1 & 412--Unit 17
3. Chrysler Center--Power House--Local 412
4. Kokomo Transmission--Local 685 & 1302-- Unit 1 & Unit 3
5. Warren Stamping--Local 869, 889-Unit 8 & 412--Unit 18
6. Chrysler Headquarters and Tech Center-- Departments 1654, 1655 & 2980-- Local 412 Unit 14
7. Kokomo Casting--Local 1166 & 1302-- Unit 4 & Unit 3
8. Chrysler Group Transport LLC.--Local 212
9. Mt.Elliott Tool & Die Manufacturing--Local 212
10. Marysville Axle-Local 961, 889-Unit 15, 412-Unit 21
11. Trenton South Engine Plant-Local 372, 889- Unit 7, 412-Unit 25
12. Sterling Stamping--Local 1264, 889 --Unit 9 & 412--Unit 7
13. Belvidere Assembly--Local 1268 & 1761
14. Toledo Machining--Local 1435, Local 1435- Unit 4 and Unit 3
15. Sterling Heights Assembly--Local 1700, 889- Unit 14 & 412--Unit 51
16. Chrysler Technology Center--Local 889-Unit 2
17. Chrysler Service Contracts Center--Local 889- Unit 4

21. Denver Parts--Local 186
22. Los Angeles Parts--Local 230
23. Chicago Parts--Local 1178
24. Cleveland Parts--Local 573
25. Portland Parts--Local 492
26. Dallas Parts--Local 2360
27. Orlando Parts--Local 1649
28. Marysville Parts--Local 375 & 889-Unit 11
29. Minneapolis Parts--Local 125
30. Milwaukee Parts--Local 75
31. Atlanta Parts--Local 868
32. International Supply Operations--Local 889- Unit 12
33. Detroit Area Nurses--Local 412--Unit 57
34. Product Planning and Development--Local 412-- Unit 1
35. Product Planning and Development--Local 412-- Unit 10
36. Product Planning and Development--Local 412-- Unit 11
37. Product Planning and Development--Local 412-- Unit 14
38. Automotive Sales Group--Local 412--Unit 32
39. Chelsea Proving Grounds--Local 1284
40. Arizona Proving Grounds--Local 509
41. Advanced Powertrain Manufacturing Eng.-- Local 412--Unit 53
42. Parts Division--Local 412--Unit 23
43. Indiana Transmission Plant I--Local 685 & 1302 Units 1 & 3
44. Connor Avenue Assembly Plant--Local 212

48. Pilot Operations - Local 212
49. Warren Parts - Local 1248
50. Indiana Transmission Plant II--Local 685 &
    1302 Units 1 & 3
51. Global Engine Manufacturing Alliance, LLC
    (GEMA) - Local 723

October 14, 1996
(1) Canadian Transfers

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

This will confirm the understanding we reached with you during our recent negotiations of the new Pension Agreement of today's date between Chrysler Corporation and the Union. The Pension Agreement or, where appropriate, any predecessor of that Plan, is referred to below as the "Chrysler Plan."

Our understanding relates to the employees who have seniority at a Plant or Division of the Corporation and who either are or have been transferred from employment covered by the Chrysler Plan to employment covered by the similar Canadian Plan (the Agreement Concerning Non-Contributory Pension Plan dated October 5, 1999 between Chrysler Canada Ltd. and the National Automobile, Aerospace and Agricultural Implement Workers Union of Canada, (CAW-Canada), or any successor of that Agreement at the time in effect or, where appropriate, any predecessor of that Agreement) or who are or have been transferred from employment covered by the Canadian Plan to employment covered by the Chrysler Plan. The understanding also includes employees who have seniority on or after the date hereof with Chrysler Corporation or Chrysler Canada Ltd. and who lost their seniority after January 1, 1957, or

We agreed that the employees to whom our understanding relates would remain "employees" within the meaning of the Chrysler Plan so long as they had credited service under either plan, but that they would earn credited service under the Chrysler Plan only as set forth in its Section (11). The total of their credited service under both the Chrysler Plan and the Canadian Plan would be used to determine eligibility under the Chrysler Plan for a pension or supplemental allowance, but only the Chrysler Plan credited service would be used to determine the amount of the monthly pension or supplemental allowance paid under the Chrysler Plan.

If the total of an employee's Chrysler Plan credited service and Canadian Plan credited service exceeds 30 years, only the number of years of his Chrysler Plan credited service accrued during the last 30 of such total number of years of credited service shall be used in computing the amount of any supplemental allowance that is payable to him. Such number of years of his Chrysler Plan credited service shall also be used to compute the amount of any temporary pension benefit that is payable to him under the Chrysler Plan only until he reaches age 62 or until any earlier month for which he becomes eligible for unreduced old age benefits or disability benefits upon complying with the Federal Social Security Act. The special age 65 benefit provided for under the Chrysler Plan shall be payable only to a retired employee or his surviving spouse eligible for Supplemental Medical Insurance Benefits under the Federal Social Security Act (Part B of Title XVIII of the Federal Social Security Act).

applicable to Chrysler Canada Ltd. and/or its subsidiaries, as appropriate. These include references to being re-employed in the last paragraph of Section (6) of the Prior Pension Plan and in D. of Section (7); references to "losing his seniority" in Section (6), in C. of Section (7) and in A. of Section (9); the reference to being "totally disabled by bodily injury or disease so as to be prevented thereby from engaging in regular employment or occupation with the Corporation" in Section (8) and the reference to "service with the Corporation" in the last paragraph of Section (8); the reference to a "grievance procedure" in A. of Section (10); the reference to "70% of his final base pay" in F. of Section (10); the reference to "sickness or accident benefits toward which the Corporation has contributed", in the second paragraph of Section (12) and the reference to "permanent total disability benefits under a group life insurance policy held by the Corporation" in the third paragraph of Section (12); and the reference to the "Corporation" in S. 1. of Section (11). The reference to "the last day he works" in the first paragraph of Section (14) will be deemed to refer to the last day the employee works either under the Chrysler Plan or under the Canadian Plan, and the reference to benefits that are payable under the Life, Disability and Health Care Benefits in E. of Section (9) will be deemed to include the similar benefits provided under the applicable collective bargaining agreements for employees covered by the Canadian Plan. In addition, where it is appropriate to make effective the arrangements described above, other references in the Chrysler Plan will be deemed to apply to employees to whom this understanding relates in connection with their employment or

or special age 65 benefits under any Section of the Chrysler Plan and the permanent total disability benefits under any group life insurance policy held by the Corporation or by Chrysler Canada Ltd. or its subsidiaries, nor of the credited service pension, supplemental allowance or special age 65 benefit under any Section of the Chrysler Plan and the credited service, pension, Supplementary Pension or any other benefit provided under the Canadian Plan.

We anticipate that Chrysler Canada Ltd. will send a letter to the National Automobile, Aerospace and Agricultural Implement Workers Union of Canada, (CAW-Canada), providing for an arrangement under the Canadian Plan similar to that set forth above. The arrangement set forth in this letter will become effective as of September 15, 1993 when Chrysler Canada Ltd. sends such a letter and it is accepted by the Union.

The arrangement described above (except the immediately preceding paragraph) shall be applicable also to an employee whose employment as an hourly or salaried employee with any other foreign subsidiary (in which the Corporation at the time of such employment directly or indirectly owned a majority of the voting stock) terminated other than by retirement and who thereafter became covered by this Pension Plan.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Letter Originated - September 15, 1973
W. J. Fisher (Corporation)
Douglas Fraser (Union)

October 14, 1996
(2) Overpayment Recoveries

International Union, UAW

Attention: Mr. Jack Laskowski

This is to confirm the understanding reached between the parties during the current negotiations regarding the recovery of certain overpayments under the Chrysler-UAW Pension Agreement from retirees or surviving spouses.

In the event of an overpayment of an early retirement supplement (or a basic pension because a reduction was not made for an effective surviving spouse option) resulting solely and clearly from a demonstrable management error occurring on or after January 1, 1980, the liability of the affected retiree or surviving spouse shall be limited to the repayment of the most recent 12 months of any such overpayment. Such limitation, however, shall not be applicable to the repayment of any overpayment that might have occurred for any period prior to the date of such management error.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Letter Originated - September 15, 1979
W.L. Monroe (Corporation)
Marc Stepp (Union)

October 14, 1996
(3) Re-employed Retirees

International Union, UAW

Attention: Mr. Jack Laskowski

Gentlemen:

This letter will confirm the understanding we reached with you during the current negotiations regarding the intent of the parties with respect to the circumstances under which former employees who retire under the Chrysler-UAW Pension Agreement may subsequently be re-employed by the Corporation for short periods of time.

First, the Corporation intends to hire retirees only where such individuals possess a particular knowledge or skill which is in short supply in the labor market and where the particular knowledge and skill is required only for a limited short period of time. Second, the Corporation does not intend to utilize the arrangement in any situation where regular full-time seniority employees who are qualified to perform the available work are on layoff or where the work can be performed by regular employees through promotion. Third, the Corporation does not intend to make re-employment generally available to retired employees of the

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Leonard J. Paula

Letter Originated - September 15, 1979
W.L. Monroe (Corporation)
Marc Stepp (Union)

October 14, 1996
(4) Special Early Standards

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

At the request of the Union made in a recent meeting of the Pension Subcommittee, we attach for your information copies of the standards applied by the Corporation in the administration of the "Special Early Retirement" provision of the Chrysler-UAW Pension Plan.

Very truly yours,
CHRYSLER CORPORATION
By R.F. Brown

INTERNATIONAL UNION, UAW
By Leonard J. Paula

Letter Originated - September 5, 1983
R.D. Gurdak (Corporation)
Marc Stepp (Union)

## SPECIAL EARLY RETIREMENT

A. Special Early Retirement is designed to benefit both the Corporation and the employee, particularly in those instances when the Corporation might be reluctant, due to circumstances being beyond the control of the employee, to apply this type retirement without the advantage of the higher pension benefits that a Special Early Retirement Pension provides. This retirement provides benefits of

(1) an unreduced basic pension for life,
(2) a temporary pension until age 62 and one month or until the retiree becomes eligible for an unreduced old age benefit or disability benefit under the Federal Social Security Act, and
(3) to the extent eligible, an early retirement supplement until age 62 and one month.

B. The utilization of this type of retirement for an eligible employee between ages 55 and 65 with at least 10 years of credited service may be given consideration in any of the following situations:

satisfactory manner due to a permanent partial disability which results in:
(i) Excessive absenteeism.
(ii) Decreased productivity.
(iii) Frequent salary continuation and/or sickness and accident payments.
(4) In the event of an extended period of disability, as provided in C. below.

C. An employee not actively at work because of an extended period of disability may be considered for Special Early Retirement either
(i) following the cessation of sickness and accident benefits or salary continuation payments,
(ii) during the period he is receiving extended disability benefits,
(iii) following the cessation of extended disability benefits or
(iv) at the time he is being considered for return to work.

A determination will be made by the Corporation at that time based on medical evidence satisfactory to the Corporation, as to whether or not the employee will again be employable by the Corporation.

(1) If at that time the disability still exists and it appears that such disability will be continuous until the employee's normal retirement age and the probability of his being reinstated prior to his normal retirement age is remote because of such disability, the employee may

D. If the employee's condition, based on medical evidence satisfactory to the Corporation, is such that, although able to perform the duties of his job satisfactorily, he would thereby be jeopardizing his health or that of fellow employees, and it is expected that his condition will be continuous until his normal retirement age, such employee may be considered for Special Early Retirement.

E. In making a determination as to whether or not Special Early Retirement is to be extended to an employee, care is to be exercised that all of the basic facts have been considered.

F. (1) If the request for Special Early Retirement is initiated by the employee, he may make written application on a form provided by the Corporation.

(2) If the necessary approvals are obtained, the retirement will be automatically coded Special Early.

(3) If the necessary approvals are not obtained, the employee will be advised in writing that his request has been denied and will be given the reason for denial, e.g., insufficient medical evidence. A copy of the denial will be forwarded to the Corporation Employee Relations Office, Pension Department.

G. Special Early Retirement will be available to an employee who is laid off on or after November 1, 1979 at age 50 or older
(i) as a result of a plant closing or discontinuance of operations, or
(ii) whose layoff appears to be permanent in either case has...

H. Special Early Retirement will be available to an employee at age 50 if such employee is laid off on or after November 1, 1985 as a result of a plant closing where no other Chrysler plants are in the same labor market area.

September 29, 2003
(5) Investments

International Union, UAW

Attention: Mr. Nate Gooden

Dear Sirs:

This will confirm the understanding we reached with you in negotiations leading to the new Pension Agreement of today's date between Chrysler Corporation and the Union with respect to certain investments that might be made with a portion of the contributions of the Pension Fund.

It was agreed that upon and subject to the terms set forth in this letter, a portion of the Corporation's annual contribution to the Pension Fund maintained under the Pension Agreement for each year this letter remains in effect, not exceeding five percent (5%) of the amount of such contribution that is available for investment after deducting the portion of the benefits payable under the Pension Plan for such year which is in excess of the investment income (including dividends and interest, but excluding both realized and unrealized capital gains) earned by the Pension

nonprofit institutions in communities where there are large concentrations of UAW members. As mortgages and debt obligations are amortized, the principal portion of such payments made to the Pension Fund will be considered as amounts available for further investment in such mortgages and debt obligations. Solely for purposes of this paragraph, the Corporation's annual contribution to the Pension Fund shall be estimated by the plan's qualified actuary based on an assumed rate of investment return of 8% compounded annually. In any event, the portion of the fund set aside for the above purposes for Plan Years 2004, 2005, 2006 and 2007 in aggregate shall not be less than $10 million.

The residential mortgages will be available for and are intended to primarily consist of mortgages on single and multiple family dwellings (including cooperatives and condominiums), the purchase price of which is equal to or below the average purchase price of similar housing in the community involved. The communities in which such mortgage financing will be made available will be selected and recommended to the trustees of the Pension Fund by the Investment Advisory Committee provided for in this letter. It is intended that such mortgage financing will be at rates and upon terms prevailing in the communities selected and will be available to the general public, including UAW members, but shall not be limited only to UAW members. The Investment Advisory Committee will recommend to the investment managers of the Pension Fund annually investments in nonprofit institutions of the kind described above which the Committee deems appropriate.

equipment or supplies, and to companies transporting military equipment or supplies to it, with the recommendation that the investment managers refrain from investing any of the funds of the Pension Fund in the securities of such companies. Such recommendation shall not apply with respect to any portion of the Pension Fund that is invested in interests in a common or collective trust fund or pooled investment fund maintained by any of the investment managers or to any insurance contract constituting part of the Pension Fund.

There shall be established an Investment Advisory Committee consisting of six members, three of whom shall be appointed by the Corporation (the "Corporation Members"), and three of whom shall be appointed by the International Union, UAW (the "Union Members"). The powers and authority of the committee shall be limited to (i) selecting and recommending to the investment managers of the Pension Plan the communities in which the residential mortgage financing described above will be made available, and (ii) annually recommending to such investment managers investments in nonprofit institutions described above which the Committee deems appropriate. At any meeting of the Committee, at least two Union Members and two Corporation Members shall be required to be present to constitute a quorum for transacting business, and the Corporation Members shall have a total of three votes and the Union Members shall have a total of three votes. The votes of any absent member shall be divided equally between the members present who were appointed by the same party. Decisions of the Committee shall

Impartial Chairman shall be shared equally by the Corporation and the Union. The Corporation Members and the Union Members shall serve without compensation as such.

The investment managers of the Pension Fund shall exercise investment judgment with respect to recommendations received by them from the Investment Advisory Committee and the Union. The investment managers have the responsibility to secure, over the long term, the maximum attainable total return on investment consistent with the principles of sound, prudent pension fund management. They are expected to discharge their duties solely in the interest of Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, to avoid prohibited transactions, and to meet all other fiduciary responsibilities imposed by the Employee Retirement Income Security Act of 1974 ("ERISA") or other applicable law. Also they are expected to discharge their duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. It is intended that the investment managers of the Pension Fund shall continue to have full investment discretion. Accordingly, if in the judgment of the investment managers, any recommendation of the Investment Advisory Committee or the Union should not be implemented because in the exercise of their investment responsibilities they conclude that the recommended action is not appropriate or it otherwise

The Corporation and the Union agree that each of them will not privately or publicly urge the investment managers to reject any recommendation given to them pursuant to this letter.

Nothing in this letter shall prevent the investment managers of the Pension Fund from investing in their discretion a larger amount of the Pension Fund than that specified in the second paragraph of this letter in investments of the type described in that paragraph.

This letter is subject to the requirement that there are maintained continuously (i) a ruling satisfactory to the parties from the United States Department of Labor to the effect that implementing this letter will not violate any of the provisions of Title I, Subtitle B, Part 4 of ERISA and (ii) a determination letter satisfactory to the parties from the District Director of Internal Revenue Service to the effect that implementing this letter will not cause the Pension Plan and the Pension Fund to fail to continue to qualify under the applicable sections of the Internal Revenue Code relating to qualified pension plans and trusts.

Very truly yours,
CHRYSLER CORPORATION
By James J. Bante

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Nate Gooden

October 14, 1996
(6) Special Early Offer - Hourly/Salary

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

In our negotiations concluded today, the parties discussed at length the standards applied by the Corporation in the administration of the "Special Early Retirement" provision of the Chrysler-UAW Pension Agreement.

The Corporation advised the Union that, due to the extraordinary economic circumstances affecting the Corporation, it has been necessary to accomplish a restructuring and downsizing of the Corporation and, attendant thereto, to substantially and permanently reduce the size of the Corporation's salaried workforce. In order to effect such permanent reductions, the Corporation has offered affected salaried employees, otherwise eligible, Special Early retirement. This is to advise you that, if during the term of the current National Agreement, the Corporation finds it necessary, in order to accomplish an additional restructuring and downsizing of the Corporation, to make further permanent reductions in its salaried workforce through Special Early retirements, the Corporation will contemporaneously offer Special Early retirement to affected hourly employees, otherwise eligible, where permanent reductions are then similarly required.

INTERNATIONAL UNION, UAW
By Leonard J. Paula

Letter Originated - January 14, 1981
R. D. Gurdak (Corporation)
Marc Stepp (Union)

October 14, 1996
(7) Actuarial Valuations And 5500 Reports

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

This will confirm the understanding reached between the parties during the current negotiations that the Corporation will annually furnish as soon as practicable to the Chrysler-UAW Pension Board of Administration a copy of the SFAS 87 pension information (contained in the Corporation's annual report), actuarial valuations, trustee report(s) and 5500 reports applicable to the Chrysler-UAW Pension Agreement and the American Motors-Union Retirement Income Plan. Such actuarial valuations shall continue to provide full and complete information regarding the Plans' funding requirements.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

October 14, 1996
(8) Administrative Expense

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

This is to confirm the understanding reached between the parties during the current negotiations regarding the application of Section (19) C.7. of the Chrysler-UAW Pension Plan.

The parties agreed that, in addition to reimbursement from the Chrysler-UAW Pension Fund for expenses incurred by the Corporation for office space, equipment, clerical and other assistance, the aforementioned Section also provides that the Corporation may charge to the Fund the direct cost of benefit administration performed by the Corporation for the Chrysler-UAW Pension Plan. Such costs include expenses incurred for checkwriting services, systems and programming services, computer operations, supplies and materials, telephone charges and postage.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION

October 29, 2007
(9) Workers' Compensation
Reduced By PTD Benefits

International Union, UAW

Attention: Mr. General Holiefield

Dear Sirs:

This letter of agreement constitutes an amendment to the Chrysler LLC-UAW Pension Plan and shall be construed and applied as if it were therein incorporated.

Pursuant to Subsection 354 (14) of the Michigan Workers' Compensation Act, as amended, until termination or earlier amendment of the current Collective Bargaining Agreement, Workers' Compensation for employees shall not be reduced by disability retirement benefits payable under the Pension Plan, except that for the employees who are injured and retire on or after October 29, 2007, workers' compensation payments for such employees shall be reduced by disability retirement benefits payable under the Chrysler LLC-UAW Pension Plan to the extent that the combined workers' compensation payments, initial Social Security Disability insurance Benefit amount and the initial disability retirement benefit (per week) exceed the employee's gross Average weekly Wage at the time of the injury. In no event shall such reduction be greater than the disability retirement benefit payable.

INTERNATIONAL UNION, UAW
By General Holiefield

Letter Originated - September 16, 1982
R.D. Gurdak (Company)
Marc Stepp (Union)

October 14, 1996
(10) IRS Approvals

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

This is to confirm the understanding reached
between the parties during the current negotiations
that, notwithstanding anything in the Pension
Agreement to the contrary, implementation of
amendments to the Plan resulting from these
negotiations will not be delayed pending the receipt
by the Corporation of required Internal Revenue
Service approvals set forth in Section (20) of the
Pension Plan.

> Very truly yours,
> CHRYSLER CORPORATION
> By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Leonard J. Paula

Letter Originated - September 5, 1983
R.D. Gurdak (Corporation)
Marc Stepp (Union)

156

---

October 29, 2007
(11) Extended Supplements -Social Security 80%
Benefit

International Union, UAW

Attention: Mr. General Holiefield

Dear Sirs:

During these negotiations, the parties agreed that
the term "80% Date" means the first of the month in
which an individual is eligible to receive a Social
Security Retirement Benefit equal to 80% of the
individual's Social Security Full Retirement Benefit.
The parties further agreed to provide for extended
Early Retirement Supplements, Interim Supplements,
and Temporary Benefits for current retirees born in
1944, 1945, 1946, 1947, 1948 or 1949 who attain age
62 during the 2007 Agreement, and to future retirees
born in those years who, during the term of the 2007
Agreement,

    (i)  retire prior to attaining age 62 under Section
        (7) or Section (8) of the Chrysler LLC-UAW
        Pension Plan, and
    (ii)  attain age 62.

Any such Supplements or Temporary Benefits payable
at retirement will be extended until the month prior to
the retiree's "80% Date".

During these negotiations, the parties also
agreed to provide Early Retirement Supplements
(notwithstanding the age limitations within Section
(10)A.1), Interim Supplements (notwithstanding the
age limitations of Section (10)A.2) and Temporary
Benefits (notwithstanding the age limitations of
Section (7)B.2 and Section (8)) to those employees
born in 1944, 1945, 1946, 1947, 1948 or 1949 who,
during the term of this agreement, retire subsequent
to age 62 but prior to their individual "80% Date". For

157

the purpose of applying this provision, Interim Supplements will be determined as though the employee retired at age 61.

For those retirees whose basic pension is subject to recomputation at age 62 and 1 month, that recomputation will occur instead at the retiree's "80% Date"; provided, however, that if a retiree's total monthly pension after age 62 and one month is less than the retiree's recomputed basic pension after age 62 would have been under the Prior Pension Plan, the retiree will receive an amount equal to such recomputed basic pension.

For a retiree who is receiving an Early Retirement Supplement or an Interim Supplement, who also is receiving a Social Security Disability Benefit, that Supplement will cease at age 62 and 1 month.

The parties further agree that, during the term of this Agreement, they would review the issues surrounding the changes in the Social Security "80% Date" and evaluate alternatives to address this issue in the next Agreement.

Very truly yours,
CHRYSLER LLC
By James J. Bante

Accepted and Approved:

INTERNATIONAL UNION, UAW
By General Holiefield

158

September 27, 1999
(12) SSDIB Award

International Union, UAW

Attention: Mr. Stephen P. Yokich

Dear Sirs:

This is to confirm our understanding regarding the interrelationship between eligibility for and amount of temporary pension or supplemental allowance under the Pension Plan and Social Security Disability Insurance Benefits (SSDIB).

When a retiree is awarded SSDIB, a portion of that award generally consists of a lump sum payment attributable to a period before the effective date of the award. The effect of eligibility for SSDIB is to disqualify the employee for a temporary pension under Sections 7. or 8. of the Pension Plan, to reduce the early retirement supplement and to eliminate the interim supplement under Section 10. In the case of receipt of a part of SSDIB as a lump sum for an earlier period by a retired employee who has been receiving a temporary pension, early retirement supplement or interim supplement, an overpayment obligation also accrues under the Plan.

When an initial claim for SSDIB is denied and the employee engages the services of an attorney to appeal such denial, if on or after October 1, 1987, the appeal of the attorney is successful and a portion of the lump sum payment not to exceed 25 percent is awarded to the attorney, the retired employee's repayment obligation will be satisfied if he notifies the Plan within 30 days of the receipt of a retroactive SSDIB award and repays to the Plan within 30 days after notice from the Board of Administration an amount equal to the overpayment of any temporary

159

pension, early retirement supplement or interim supplement less in such case the amount of attorney fees involved on that portion of the award. This reduction applies only to attorney fees associated with a successful appeal of an initial denial by Social Security for SSDIB and includes only that portion of the attorney fees associated with the period of time the employee received a temporary pension or a supplement. Such attorney fees considered for this purpose may not exceed 25 percent of the overpayment due to the Plan. Attorney fees for services prior to denial of initial application for SSDIB will not reduce the amount of an overpayment due to the Plan.

Very truly yours,
DAIMLERCHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Stephen P. Yokich

160

October 14, 1996
(13) PTD Study

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

During the current negotiations, the parties discussed the requirements under which an employee could qualify for a Permanent Total Disability (PTD) retirement under Section (8) of the Chrysler-UAW Pension Plan.

The Corporation expressed its concern relative to the volume of PTD retirements processed in recent years and indicated its desire to review:
(1) the definition of PTD to determine its continued appropriateness and,
(2) the medical verification process for determining an applicant's eligibility for a PTD retirement.

Since an in-depth review of this subject matter would require a considerable time commitment, the parties agreed that they would initiate a study during the term of this Agreement to determine whether such PTD qualification requirements under Section (8) of the Plan should be amended.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Leonard J. Paula

161

Letter Originated - May 14, 1988
R.D. Gurdak (Corporation)
Marc Stepp (Union)


October 14, 1996
(16) Hourly Benefits Statement

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

This will confirm the understanding reached between the parties during the current negotiations that the Corporation will annually furnish a Benefits Statement to hourly employees represented by the UAW.

It is expected that such an hourly Statement will contain information similar to that provided salaried employees represented by the UAW and will be distributed to employees as soon as practicable after the end of each calendar year. To the extent that a Benefits Statement cannot be mechanically generated for certain employees (e.g., employees on various leaves of absence or layoff, employees age 65 or older, etc.), a Benefits Statement will not be issued to them.

During the course of the Statement's development, the Union will be provided drafts of the Statement for their review and comment.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

162

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Leonard J. Paula

Letter Originated - May 14, 1988
R.D. Gurdak (Corporation)
Marc Stepp (Union)


September 27, 1999
(17) Surviving Spouse Option Notice

International Union, UAW

Attention: Mr. Stephen P. Yokich

Dear Sirs:

This will confirm the understanding reached between the parties during the current negotiations that the Corporation will notify all retirees, that eligible retirees who have married or remarried after retirement have the option to elect the surviving spouse option for their spouse. Notification will occur semi-annually by, for example, but not limited to, messages on the retiree payment statements.

Very truly yours,
DAIMLERCHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Stephen P. Yokich

163

October 14, 1996
(18) Chrysler/AMC Retirees

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

This will confirm the understanding regarding the Chrysler-UAW Pension Agreement (Chrysler Plan) we reached with you during discussions leading to the current Collective Bargaining Agreement between Chrysler Corporation (Chrysler) and the Union.

Our understanding relates to employees represented by Local #72 or #75 who have seniority at an American Motors Corporation (AMC) Plant and who either are or have been transferred from employment covered by the American Motors-Union Retirement Income Plan (AMC Plan) to employment covered by the Chrysler Plan or otherwise become covered under the Chrysler-UAW National Agreement (Transferred AMC Employees) or who are or have been transferred from employment covered by the Chrysler Plan to employment covered by the AMC Plan.

We agreed that the Transferred AMC Employees would earn credited service under the Chrysler Plan only as set forth in its Section 11. The total of their credited service under both the AMC Plan and the Chrysler Plan would be used to determine eligibility under the Chrysler Plan for basic, supplemental allowance or temporary benefits, but only the Chrysler Plan credited service would be used to determine the amount of the monthly basic, supplemental or temporary benefit paid under the Chrysler Plan.

164

If the total of an employee's AMC Plan credited service and Chrysler Plan credited service exceeds 30 years, the amount of the employee's monthly supplemental allowance guarantee or temporary benefit under the Chrysler Plan shall be the amount under the Chrysler Plan applicable to an employee with 30 years of Chrysler Plan credited service times a fraction the numerator of which is the employee's credited service under the Chrysler Plan and the denominator of which is the employee's total credited service under the AMC Plan and the Chrysler Plan.

Under this arrangement, there shall be no duplication of credited service or basic, supplemental allowance, temporary, or special age 65 benefits under any Article of the Chrysler Plan and the credited service or pension, supplemental allowances, temporary or special age 65 benefits under the AMC Plan.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Leonard J. Paula

Letter Originated October 18, 1993
R.D. Gurdak (Corporation)
Stan Marshall (Union)

165

October 29, 2007
(19) Chrysler LLC/Jeep Retirees

International Union, UAW

Attention: Mr. General Holiefield

Dear Sirs:

This will confirm the understanding regarding the Chrysler LLC-UAW Pension Agreement (Chrysler LLC Plan) we reached with you during discussions leading to the current Collective Bargaining Agreement between the parties.

Our understanding relates to employees who have seniority under either a National Agreement between Chrysler LLC and the UAW (National Agreement) or the Agreement between Chrysler LLC and the UAW for the Toledo-Jeep Assembly Plant (Jeep Agreement) on or after January 1, 1998 and who either (i) are or have been transferred from employment covered by the Jeep Corporation-UAW Retirement Income Plan (Jeep Plan) to employment covered by the Chrysler LLC Plan (Transferred Jeep Employees) or (ii) are or have been transferred from employment covered by the Chrysler LLC Plan to employment covered by the Jeep Plan.

We agreed that the employees to whom our understanding relates would have their Credited Service under the Chrysler LLC Plan and any service credited under the Jeep Plan determined as follows:

Credited Service for transferees to the Chrysler LLC Plan:

As provided in Section (27) of the Chrysler LLC Plan, in addition to service credited to an employee covered by the Chrysler LLC Plan pursuant to Section

166

11, Credited Service also includes those periods deemed as "credited service" under the Jeep Plan ("Transferred Service"). Such Transferred Service shall become Credited Service under Section 11 upon the employee's attaining seniority under a National Agreement between the parties.

Credited Service for transferees from the Chrysler LLC Plan:

Credited Service as an employee under the Chrysler LLC Plan shall be transferred to the Jeep Plan and shall cease to be Credited Service under the Chrysler LLC Plan. The employee shall cease to participate under the Chrysler LLC Plan effective as of such transfer of Credited Service.

The parties further agree that Chrysler LLC Plan Credited Service shall be transferred to another pension plan of the Chrysler LLC if an employee shall transfer or has transferred, provided that such other pension plan provides the corporate-standard level of pension benefits (for example, the Chrysler LLC Pension Plan or the Chrysler LLC IUE Pension Agreement). If such other pension plan that would be so affected is covered by a collective agreement, the understandings herein reached in these negotiations shall only become effective if all parties to that agreement concur or have concurred with the receipt of Chrysler LLC Plan Credited Service as provided herein.

To confirm the parties prior understanding regarding transfers to and from the Jeep Plan, those employees who do not have seniority under the respective agreement on or after January 1, 1998 will have their Credited Service and benefits determined as follows:

The transferred Jeep employees would earn credited service under the Chrysler LLC Plan only as

167

set forth in its Section 11. The total of their credited service under both the Jeep Plan and the Chrysler LLC Plan would be used to determine eligibility under the Chrysler LLC Plan for basic, supplemental allowance or temporary benefits, but only the Chrysler LLC Plan credited service would be used to determine the amount of the monthly basic, supplemental or temporary benefit paid under the Chrysler LLC Plan. If the total of an employee's Jeep Plan credited service and Chrysler LLC Plan credited service exceeds 30 years, the amount of the employee's monthly supplemental allowance guarantee or temporary benefit under the Chrysler LLC Plan shall be the amount under the Chrysler LLC Plan applicable to an employee with 30 years of Chrysler LLC Plan credited service times a fraction the numerator of which is the employee's credited service under the Chrysler LLC Plan and the denominator of which is the employee's total credited service under the Jeep Plan and the Chrysler LLC Plan.

Under this arrangement, there shall be no duplication of credited service or basic, supplemental allowances, temporary, or special age 65 benefits under any Article of the Chrysler LLC Plan and the death benefits or permanent total disability benefits under the Chrysler LLC group life insurance program with the credited service or basic, supplementary, temporary, special age 65 or death benefits under the Jeep Plan.

Very truly yours,
CHRYSLER LLC
By James J. Bante

Accepted and Approved:

INTERNATIONAL UNION, UAW
By General Holiefield

168

---

October 14, 1996
(20) Notice of Benefit Amounts

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

During these negotiations, the Corporation and the Union agreed that the Chrysler-UAW Pension Plan will provide to any retiree or surviving spouse a notice detailing the components of the pension benefit, whenever there is a recalculation of the pension benefit. The Corporation also agreed to display the surviving spouse option reduction amount on the payment stubs sent to retirees.

Additionally, the parties agreed that all retirees and surviving spouses would receive a notice, as soon as practicable after the conclusion of these negotiations, explaining any pension benefit changes resulting from these negotiations.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW

By Leonard J. Paula

169

October 14, 1996
(21) Toll-Free Number

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

This is to confirm the agreement reached by the parties during negotiations that a toll-free number for retirees and surviving spouses will remain available.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Leonard J. Paula

170

October 12, 2011
(22) AMC - 170 Hour Rule

International Union, UAW

Attention: Mr. General Holiefield

Dear Sirs:

This will confirm the understanding reached between the parties during these negotiations that layoff credited service will be provided under the 170 hour rule of Section (11) B. 7. of the Chrysler Group LLC-UAW Pension Agreement to former AMC employees who exhausted their layoff credit under the American Motors-Union Retirement Income Plan and subsequently returned to work to employment covered under the 1988 or subsequent Chrysler-UAW Collective Bargaining Agreements. This provision is only applicable to the calendar year in which the employee returned to work to employment covered under the 1988 or subsequent Chrysler-UAW Collective Bargaining Agreements and not any prior calendar years.

Very truly yours,
CHRYSLER GROUP LLC
By James J. Bante

Accepted and Approved:

INTERNATIONAL UNION, UAW
By General Holiefield

171

October 14, 1996
(23) Chrysler/New Venture Gear

International Union, UAW

Mr. Jack Laskowski

Dear Sirs:

This letter agreement constitutes an amendment to the current Chrysler-UAW Pension Agreement and shall be construed and applied as if it were therein incorporated.

The benefits payable under the Chrysler-UAW Pension Agreement (the Plan) to employees who transfer to New Venture Gear, Inc. (NVG) from Chrysler shall be only as provided under this letter agreement.

I.   Employees who transfer from Chrysler to NVG and retire or terminate employment from NVG.

Generally, such employees or their surviving spouses shall be eligible for benefits under the Plan based on combined Chrysler/NVG credited service. However, the amount of the benefit payable from the Plan to such an employee shall be based on Chrysler credited service only, and on benefit rates in effect under the Plan when the employee transferred to NVG.

A.   Employees who retire from employment with NVG.

The eligibility to commence a benefit under Sections 5, 7 or 8 of the Plan for an employee who transfers from Chrysler to NVG and subsequently retires from NVG, will be based on the employee's credited service with both

172

Chrysler and NVG, and the employee's age at retirement from NVG. The benefit amount payable from the Plan will be based on the employee's age at retirement from NVG, on credited service with Chrysler only, and on the benefit rates, including early retirement supplements, and other provisions in effect under the Plan when the employee transferred to NVG.

The 30 and Out early retirement supplement payable from the Plan to an employee whose combined Chrysler and NVG credited service exceeds 30 years shall be computed by multiplying the 30 & Out early retirement supplement guarantee in effect when the employee transferred to NVG times the ratio of the employee's Chrysler credited service to the employee's combined Chrysler/NVG credited service and then subtracting the employee's basic benefit and any other benefits payable under the Plan.

The temporary benefit payable from the Plan to an employee whose combined Chrysler/ NVG credited service exceeds 30 years shall be computed by multiplying the temporary benefit rate in effect under the Plan when the employee transferred to NVG times 30 years, and then multiplying the result times the ratio of the employee's Chrysler credited service to the employee's combined Chrysler/NVG credited service.

B.   Employees who terminate employment from NVG.

The eligibility to receive a benefit under Section 6 of the Plan for an employee who transfers from Chrysler to NVG with 5 or more

173

years of credited service and who subsequently terminates employment at NVG will be based on the employee's combined Chrysler/NVG credited service. The benefit amount payable from the Plan at age 65, or earlier in a reduced amount, shall be the employee's credited service with Chrysler only times the basic benefit rate in effect under the Plan when the employee transferred to NVG.

II. Employees who transfer from Chrysler to NVG and subsequently transfer back to Chrysler with the consent of both NVG and Chrysler and who subsequently retire or terminate employment with Chrysler.

Generally, such employees or their surviving spouses shall be eligible for benefits based on combined Chrysler/NVG credited service. However, the amount of the benefit payable from the Plan to such an employee shall be based on Chrysler credited service only.

A. Employees who retire from employment with Chrysler.

The eligibility to retire under Sections 5, 7 or 8 of the Plan will be based on the employee's combined Chrysler/NVG credited service and the employee's age at retirement from Chrysler. The benefit amount payable from the Plan shall generally be based on the employee's age at retirement from Chrysler, credited service with Chrysler only, and the benefit rates, including early retirement supplements, under the Plan.

1. The basic benefit payable under the plan shall be the sum of the following:

174

a) The employee's credited service accrued under the Plan prior to his transfer to NVG times the sum of the benefit rate in effect under the Plan when the employee transferred from Chrysler to NVG plus the increase in the rate under the Plan during the period commencing when the employee transferred back to Chrysler from NVG and ending when the employee retires from Chrysler, and

b) The employee's credited service accrued under the Plan after he transferred back to Chrysler from NVG times the benefit rate in effect under the Plan when the employee retires from Chrysler.

2. The 30 & Out Early Retirement Supplement payable from the Plan shall be equal to the Early Retirement Supplement Guarantee under the Plan, computed as detailed below, less the basic and any other benefits payable from the Plan. The Early Retirement Supplement Guarantee shall be the sum of the following:

a) The ratio of the employee's credited service accrued under the Plan prior to his transfer to NVG to the employee's combined Chrysler/NVG credited service times the sum of the Early Retirement Supplement Guarantee in effect under the Plan when the employee transferred to NVG plus the increases in the Guarantee under the Plan during the

175

period commencing when the employee transferred back to Chrysler from NVG and ending when the employee retires from Chrysler, plus

b) The ratio of the employee's credited service accrued under the Plan after he transferred back to Chrysler from NVG to the employee's combined Chrysler/NVG credited service times the Early Retirement Supplement Guarantee in effect under the Plan when the employee retires from Chrysler.

3. The Temporary Benefit payable under Sections 7 or 8 of the Plan shall be the sum of the following:

a) The ratio of the employee's credited service accrued under the Plan prior to his transfer from Chrysler to NVG to the employee's combined Chrysler/NVG credited service times the sum of the benefit rate in effect under the Plan when the employee transferred to NVG plus the increase in the rate under the Plan during the period commencing when the employee transferred back to Chrysler from NVG and ending when the employee retires from Chrysler, times the employee's combined Chrysler/NVG credited service (maximum of 30 years), and

b) The ratio of the employee's credited service accrued under the Plan after he transferred back to Chrysler from

176

NVG to the employee's combined Chrysler/NVG credited service times the benefit rate in effect under the Plan when the employee retires from Chrysler times the employee's combined Chrysler/NVG credited service (maximum 30 years).

4. The Interim Supplement Payable under Section 10 of the Plan shall be the sum of the following:

a) The employee's credited service accrued under the Plan prior to his transfer to NVG times the sum of the benefit rate in effect under the Plan when the employee transferred from Chrysler to NVG plus the increase in the rate under the Plan during the period commencing when the employee transferred back to Chrysler from NVG and ending when the employee retires from Chrysler, both rates based on the employee's age at retirement from Chrysler, and

b) The employee's credited service accrued under the Plan after he transferred back to Chrysler from NVG times the benefit rate in effect under the Plan when the employee retires from Chrysler, such rate based on the employee's age at retirement from Chrysler.

B. Employees who terminate from employment with Chrysler.

The eligibility to receive a benefit under Section 6 of the Plan for an employee who

177

transfers to NVG with 5 or more years of credited service and subsequently transfers back to Chrysler and terminates employment with Chrysler/NVG credited service. The benefit amount payable from the Plan at age 65, or earlier in a reduced amount, shall be as follows:

1. The employee's credited service accrued under the Plan prior to his transfer to NVG times the sum of the basic benefit rate in effect under the Plan when the employee transferred from Chrysler to NVG plus the increases in the rate under the Plan during the period commencing when the employee transferred back to Chrysler from NVG and ending when the employee terminated from Chrysler, plus

2. The employee's credited service accrued under the Plan after he transferred back to Chrysler from NVG times the basic benefit rate in effect under the Plan when the employee terminated from Chrysler.

III. Employees whose credited service accrued under the Plan prior to transfer to NVG were less than five years.

Generally, the assets and liabilities of such employees for service accrued under the Plan prior to their transfer to NVG shall be transferred to the NVG-UAW Pension Agreement.

A. The credited service accrued under the Plan prior to the employee's transfer to NVG shall be treated for all purposes as if accrued while employed at NVG.

B. No benefits shall be payable under the Plan, with respect to the credited service accrued

under the Plan prior to the employee's transfer to NVG, and

C. A transfer shall be made from the Plan's trust fund to the trust fund of the NVG-UAW Pension Agreement related to the transfer of the Plan's liability applicable to the employee's credited service accrued under the Plan prior to the employee's transfer to NVG. The amount of the transfer shall be computed on a de minimus basis under ERISA as follows:

The amount of plan assets transferred will be determined as the present value of the accrued normal retirement benefits as of April 1, 1990 (including surviving spouse benefits), adjusted for interest from April 1, 1990 to the actual transfer date. For purposes of determining the present value of the accrued benefits, the graded interest rates used by the PBGC for April, 1990 will be used as permitted by the regulations under Internal Revenue Code Section 414 which state that PBGC assumptions will be deemed reasonable for this purpose. In the absence of specific guidance, it is anticipated that the funding valuation interest rate of 9% will be used for crediting interest between April 1, 1990 and the actual transfer date. If such an employee transfers to NVG after April 1, 1990, the actual employee transfer date shall be substituted for April 1, 1990 in making the computation.

Very truly yours,
CHRYSLER CORPORATION
By: R. F. Brown


Accepted and Approved

International Union, UAW
By: Leonard J. Paula

September 27, 1999
(24) Workers' Compensation - Credited Service

International Union, UAW

Attention: Mr. Stephen P. Yokich

Dear Sirs:

During these negotiations, the Corporation and the Union discussed the problems that have arisen because of the employment coding system and the resulting impact of this on the credited service provision of the Pension Agreement. This is to confirm that an employee who is absent from work on an approved leave of absence because of occupational injury or disease (code 54) and on account of such injury or disease, receives Workers' Compensation temporary total disability payments, will receive credited service at the rate of 40 hours for each complete week that the employee is on such leave.

For an employee whose initial leave is not considered an approved leave of absence because of occupational injury or disease, but the leave is subsequently changed to an approved leave of absence because of occupational injury or disease (Code 54), credited service will be given for the period for which Workers' Compensation temporary total disability benefits are deemed payable.

In addition, in those cases where Workers' Compensation temporary total disability benefits are no longer payable because the employee has reached maximum medical improvement or the time certain beyond which benefits are not payable, the employee will also be given credited service at the rate of 40 hours for each complete week that he is on an approved leave of absence because of occupational injury or disease (Code 54).

The above notwithstanding, should an employee who would be otherwise eligible to receive credited service break seniority under the terms of the contract or be able to perform any job in the plant for which he has seniority, credited service shall cease to accrue as of that date.

To the extent an employee has not received credited service consistent with these provisions because of employment coding errors, credited service will be corrected if the error is brought to the attention of the employee's local Human Resources Office.

Very truly yours,
DAIMLERCHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Stephen P. Yokich

October 14, 1996
(26) Dallas Parts Depot

International Union, UAW

Attention: Mr. Jack Laskowski

Dear Sirs:

During these negotiations, the parties discussed issues related to the hourly employees at the Dallas Parts Depot who, at that location, were previously covered under an agreement with the Teamsters and were participants in the Teamsters-sponsored pension plan (Prior Plan).

This is to confirm that for such employees with seniority on October 1, 1996, credited service under the Chrysler-UAW Pension Plan (Plan) will include, for all purposes under the Plan, service at that location covered by the Prior Plan (Prior Service).

The benefit payable under the Plan to such an employee who retires or otherwise loses seniority on or after October 1, 1996 shall be the difference between (i) and (ii) following:

(i) the applicable Plan benefit calculated using the employee's credited service as provided hereunder;

(ii) the employee's Prior Service multiplied by the Basic Pension Rate in effect on the date such employee became covered under the Chrysler-UAW Bargaining Agreement ($26.25, $26.50, $26.75 or $27.00) for the employee's Benefit Class Code used in (i) above, and, if appropriate, any supplements or temporary benefits at the benefit levels then in effect, prorated for such Prior Service. In determining this

offset, appropriate factors such as for early retirement or Surviving Spouse Benefits shall apply.

The parties agreed that the offset amount determined in (ii) above will be adjusted to equal the employee's actual Prior Plan benefit if, prior to 90 days following the commencement of benefit payments under the Plan, satisfactory evidence is provided, in writing, to the Board of Administration of the actual Prior Plan amount (and, if any, factors used in its calculation). If no Prior Plan benefit payment is then in effect, but a benefit may become payable at a later date, information concerning such deferred benefit is also to be provided to the Board. Using equitable and uniform rules developed by it, the Board will use the information provided to it regarding such immediate or deferred Prior Plan benefit to adjust the offset under (ii). Any such adjustment shall be retroactive, if necessary, to the employee's date of Plan benefit commencement.

Very truly yours,
CHRYSLER CORPORATION
By R. F. Brown

Accepted and Approved:

INTERNATIONAL UNION, UAW
By Leonard J. Paula

October 29, 2007
(27) Chrysler LLC/MBUSA

International Union, UAW

Attention: Mr. General Holiefield

Dear Sirs:

This letter agreement constitutes an amendment to the current Chrysler LLC-UAW Pension Agreement and shall be construed and applied as if it were therein incorporated.

The benefits payable under the Chrysler LLC-UAW Pension Agreement (Chrysler LLC Plan) to employees who transfer from Mercedes-Benz USA, LLC. (MBUSA), and any successor corporation, to Chrysler LLC or any of its subsidiaries or affiliates covered under the Chrysler LLC Plan, shall be as provided under the Chrysler LLC Plan except as otherwise provided in this letter agreement.

A.  Employees who retire from employment with Chrysler LLC.

The eligibility to retire under Sections (5), (7) or (8) of the Chrysler LLC Plan for an employee who transfers from MBUSA to Chrysler LLC and subsequently retires from Chrysler LLC will be based on the employee's credited service accrued under both the Mercedes-Benz USA, LLC Pension Plan (MBUSA Plan) and the Chrysler LLC Plan, and the employee's age at retirement from Chrysler LLC. In the case where an employee applies to retire under Section (8) of the Chrysler LLC Plan and the MBUSA Plan requires an employee be approved for receipt of Social Security Disability Benefits in order to be eligible to retire on a Disability Retirement Date, the

eligibility to retire under the Chrysler LLC Plan will also be dependent upon the employee's eligibility for Social Security Disability benefits. The benefit amount payable at retirement from the Chrysler LLC Plan shall be based on the employee's age at retirement from Chrysler LLC, on credited service with Chrysler LLC only, and the benefit rates, including early retirement supplements, and other provisions in effect under the Chrysler LLC Plan at the time of the employee's retirement. Post retirement amendments to the benefit amount payable under the Chrysler LLC Plan to the retiree shall be administered as provided in the Chrysler LLC Plan.

If the total of an employee's credited service under the MBUSA Plan and the Chrysler LLC Plan equals or exceeds 30 years, the amount of the employee's monthly Early Retirement Supplement under the Chrysler LLC Plan shall be the amount under the Chrysler LLC Plan applicable to an employee with 30 years of credited service under the Chrysler LLC Plan multiplied by a fraction, the numerator of which is the employee's credited service under the Chrysler LLC Plan and the denominator of which is 30.

B.  Employees who terminate from employment with Chrysler LLC.

The eligibility to receive a benefit under Section (6) of the Chrysler LLC Plan for an employee who transfers to Chrysler LLC from MBUSA, or who terminates from MBUSA and is later employed by Chrysler LLC and subsequently terminates employment with Chrysler LLC, shall be based on the total credited service under the MBUSA Plan and the Chrysler LLC Plan. The benefit amount payable from the Chrysler LLC Plan at

184

185

age 65, or earlier in a reduced amount, shall be determined as the employee's credited service accrued under the Chrysler LLC Plan after his transfer to Chrysler LLC from MBUSA or employment by Chrysler LLC after termination from MBUSA, multiplied by the basic benefit rate in effect under the Chrysler LLC Plan when the employee terminated from Chrysler LLC.

C.   Employees with prior credited service under the Chrysler LLC Plan.

Employees covered under this letter, who have previously accrued credited service under the Chrysler LLC Plan shall have that prior credited service treated as specified in Section (11) of the Chrysler LLC Plan.

D.   Grandfathering of Employees 50 years of age with 10 years of credited service on January 1, 2001

Employees covered under this letter who as of January 1, 2001 have attained an age of 50 years and who have 10 years of credited service under the MBUSA Plan, shall have the Basic Benefit payable under the Chrysler LLC Plan determined as the credited service accrued under the Chrysler LLC Plan multiplied by the benefit rate in effect under the Chrysler LLC Plan when the employee retires from Chrysler LLC, reduced for age as follows:

The Basic Benefit shall be unreduced for age if payment commences on the first day of any month coincident with or next following the covered employee's sixty-second (62nd) birthday.

For early retirements prior to the covered employee's sixty-second (62nd) birthday, the Basic Benefit payable shall be reduced by one-quarter of one percent (1/4 of 1%) for each of the first twenty-four (24) months and five-twelfths of one percent (5/12 of 1%) for each of the next sixty (60) months by which the Benefit Commencement Date precedes the first day of the month coinciding with or next following the covered employee's sixty-second (62nd) birthday.

For employees whose Basic Benefit has been reduced by application of this paragraph, the Basic Benefit will become unreduced at such time as the Basic Benefit becomes unreduced for age under the Chrysler LLC Plan.

Employees covered under this letter who as of January 1, 2001 have attained an age of 50 years and who have 10 years of credited service under the MBUSA Plan, shall be eligible to retire under the Chrysler LLC Plan upon attaining the age of 55. The determination of the employee's benefit shall be as described in Section (A) of this letter, using the Age Reduction Factors as described in this Section (D).

Very truly yours,
CHRYSLER LLC
By James J. Bante

Accepted and Approved

International Union, UAW
By General Holiefield

Letter Originated - November 10, 2000
D. Weiner (Company)
General Holiefield (Union)

186

187

September 29, 2003
(30) Lifetime Supplement and Age-Service
Supplement

International Union, UAW

Attention: Mr. Nate Gooden

Dear Sirs:

This letter agreement amends the Pension Agreement between DaimlerChrysler Corporation ("DCC") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and those of its Local Unions listed on the Schedule 1 to the Pension Agreement ("UAW")("Pension Agreement"). The Pension Agreement shall be construed and applied as if the Amendment were therein incorporated.

1. Pursuant to Section (20) of the Plan, the Corporation is authorized with the consent of the UAW to make necessary revisions to the Pension Agreement.

2. Subsections F and G of Section (4) entitled **"Applicability of Pension Plan and Benefits for Retirement under Prior Pension Plan"** currently state as follows:

   F. The monthly amount of any lifetime supplement payable to an eligible employee shall be $35.00 for months commencing on and after October 1, 1990 and prior to October 1, 1999.

   G. The rate applicable to any age-service supplement payable to an eligible employee shall be $1.00 for each year of credited service that he had at the date of retirement

188

for months commencing on or after October 1, 1990 and prior to October 1, 1999.

3. Neither Party to the Pension Agreement has given effect to the October 1, 1999 cut off date set forth in Subsections F and G to Section (4) of the Pension Agreement.

4. Parties wish to amend Subsections F and G of Section (4) to the Pension Agreement to state that the lifetime supplement and the age-service supplement will not be paid after December 31, 2001.

5. Both Parties to the Pension Agreement agree that Subsections F and G of Section (4) **Applicability of Pension Plan and Benefits for Retirement under Prior Pension Plan** are hereby amended to state:

   "F. The monthly amount of any lifetime supplement payable to an eligible employee shall be $35.00 for months commencing on and after October 1, 1990 and prior to December 31, 2001."

   "G. The rate applicable to any age-service supplement payable to an eligible employee shall be $1.00 for each year of credited service that he had at the date of retirement for months commencing on or after October 1, 1990 and prior to December 31, 2001."

   Very Truly Yours,
   DAIMLERCHRYSLER CORPORATION
   By James J. Bante

Approved and Accepted:

189

INTERNATIONAL UNION, UAW
By Nate Gooden

Letter Originated – January 1, 2002
D. Weiner (Corporation)
John Rudzinski (Union)

October 12, 2011
(31) Designated Contingent Annuitant Benefit

International Union, UAW

Attention: Mr. General Holiefield

Dear Sirs:

During these negotiations, the parties agreed that the Chrysler Group LLC–UAW Pension Agreement is amended to provide for an optional form of survivorship benefit known as designated contingent annuitant benefit as follows.

Designated Contingent Annuitant

A.  Optional 100% Surviving Beneficiary Benefit
Beginning on or after June 1, 2004, an employee may elect a reduced monthly life income benefit payable during the retired employee's life to provide the following survivor's benefit for a contingent annuitant designated by the employee in writing when the employee elects this form of survivorship benefit.

   (1)  If the contingent annuitant is the employee's spouse, the benefit payable to the spouse shall be equal to 100% of the reduced monthly life income payable to the employee if the spouse survives the employee.

   (2)  If the contingent annuitant is not a spouse, the contingent annuitant benefit shall be equal to the lesser of
      (i)  100% of the employee's reduced monthly life income benefit or
      (ii)  the maximum percentage of the employee's reduced monthly life income benefit set forth in Section 1.401 (a) (9) – 6T A-2 (c) (2) of the IRS regulations, as they may be amended from time to time, if the contingent annuitant survives the employee.

B.  Optional 50% Surviving Beneficiary Benefit
Beginning on or after June 1, 2004, an employee may elect a reduced monthly life income benefit payable during the retired employee's life, and upon death, a benefit equal to fifty percent (50%) of the reduced monthly life income benefit shall be paid during the life of, and to, the contingent annuitant designated by the employee in writing when the employee elects this form of survivorship benefit, if the contingent annuitant survives the employee.

C.  Optional 75% Surviving Beneficiary Benefit
For Retirement dates on or after January 1, 2008 (Benefit Commencement Dates February 1, 2008 or later) an employee may elect a reduced monthly life income benefit payable during the retired employee's life, and upon death, a benefit equal to seventy-five percent (75%) of the reduced monthly life income benefit shall be paid during the life of, and to, the contingent annuitant designated by the employee in writing when the employee elects this form of survivorship benefit, if the contingent annuitant survives the employee.

190

191

D. Married Employees
If the employee is married at the time of the election, and the contingent annuitant is other than the employee's spouse, the spouse must execute a written consent to the election witnessed by a Plan representative or a notary public at the time of the application for a normal, early or deferred vested retirement benefit.

E. Election of Benefits
The election of the contingent annuitant option shall be made at the time that the employee applies for a monthly pension under Section (5), (6), (7) or (8), and the effective date of the election shall be the date his monthly pension commences.

F. Actuarial Equivalent
The benefit provided for under this subsection shall be the Actuarial Equivalent (as defined below) of the life income benefit that would have been payable to the retired employee if the employee had not elected a survivorship option under this subsection. The Actuarial Equivalent shall be calculated on the basis of the 1994 Uninsured Pensioner Male Mortality Table for retirees and the 1994 Uninsured Pensioner Female Mortality Table for contingent annuitants and a six percent (6%) interest rate.

G. Not available for permanent total disability retirements.
The 75% Contingent Annuitant option is available to those employees who retire on permanent total disability retirement on or after January 1, 2008.

H. Irrevocable Election
Once effective, this option may not be cancelled for any reason.

192

Please indicate your concurrence to the contingent annuitant payment.

Very truly yours,
CHRYSLER GROUP LLC
By: James J. Bante

Accepted and Approved:

INTERNATIONAL UNION, UAW
By General Holiefield

October 29, 2007
(32) Lump Sum - Pension Fund

International Union, UAW

Attention: General Holiefield

Dear Sirs:

During these negotiations, the parties agreed upon certain lump sum payments to be made to eligible retired employees, surviving spouses, and alternate payees. The parties have agreed to provide for lump sum payments from the Pension Fund under the terms set forth below.

1. The following persons will be eligible for lump sum payments:

    (1.1) Employees who retired with benefits commencing prior to October 1, 2007 under the terms of Sections (5), (7) or (8) of the Plan, and who are receiving benefits from the Plan as of the first of the month for which a lump sum payment would be made.

193

(1.2) Surviving spouses of employees who retired under the terms of Sections (5), (7) or (8) of the Plan, or surviving spouses eligible for a benefit pursuant to Section (9) of the Plan, who were eligible for a benefit commencing prior to October 1, 2007 (excluding surviving spouses of former employees who broke seniority and who are eligible for a deferred pension) and who are eligible for a benefit from the Plan as of the first of the month for which a lump sum payment would be made.

(1.3) Alternate payees will be eligible for a lump sum payment to the extent provided for in a Domestic Relations Order qualified by the Plan thirty-one (31) days prior to the date on which a lump sum would be paid (QDRO) (as defined in Internal Revenue Code Section 414(p))(excluding alternate payees of former employees who broke seniority and are eligible for a deferred pension).

2. Amount and Dates of lump sum payments:

(2.1) In December 2007, a retired employee, shall receive a flat amount of $700.00. However, if such a retired employee has an overpayment balance due the Company under the Life and Disability Benefits Program, each lump sum payment shall be reduced by 50%.

(2.2) In December 2008, 2009 and 2010, a maximum payment of $700.00 will be made to retired employees with thirty (30) or more years of credited service. The payment to retired employees with less than thirty (30) years of credited service will be $23.3333 per year of credited service (with a

proportional amount for fractional years) or a minimum payment of $233.33. Such payments shall be reduced by 50% for any retired employee with an overpayment balance due to the Company under the Life and Disability Benefits Program.

(2.3) Eligible surviving spouses will receive 65% of the amount that would have been payable to the retired employee under (2.1) or (2.2) above.

(2.4) Eligible alternate payees may receive all or a portion of the lump sum payment in accordance with the terms of the applicable QDRO.

Very truly yours,
CHRYSLER LLC
By James J. Bante

Accepted and Approved:

INTERNATIONAL UNION, UAW
By General Holiefield

October 12, 2011

(33) GEMA Employee Participation in Pension Agreement

International Union, UAW

Attention: General Holiefield

Dear Sirs:

Concurrent with these negotiations, the Company and Union discussed issues concerning the possible inclusion of Global Engine Manufacturing Alliance, LLC (GEMA) hourly classified employees in the Agreement between Chrysler Group LLC and the UAW, Production, Maintenance and Parts, dated October 12, 2011. These discussions include the eligibility and conditions relating to GEMA employee participation in any of the various benefit programs that are available to other UAW employees covered under the Chrysler Group LLC-UAW National Agreement.

To the extent these discussions result in an agreement to include or exclude GEMA UAW employees in this Pension Agreement, the parties agree that this Pension Agreement will be appropriately amended to reflect the details of such agreement.

Very truly yours,
CHRYSLER GROUP LLC
By James J. Bante

Accepted and Approved:

INTERNATIONAL UNION, UAW
By General Holiefield

196

**NOTES**

**NOTES**

**NOTES**

**NOTES**

# NOTES

# NOTES

## NOTES

133