**JEEP CORPORATION – UAW**
**Retirement Income Plan**

*Amended and Restated*

Effective as of January 1, 2009

JEEP CORPORATION-UAW
Retirement Income Plan

Topic               Page

**Article I - Definitions**               1

**Article II - Credited Service**               4
    Section 1.  Past Service               4
    Section 2.  Future Service               4
    Section 3.  Loss of Credited Service               10
    Section 4.  Reinstatement of Credited Service              10
    Section 5.  Transferred Employees               10
    Section 6.  Limitation               11
    Section 7.  Vesting Service               11
    Section 8.  Qualified Military Service               13

**Article III - Eligibility for and Amount of Benefits**               14
    Section 1.  Normal Retirement               14
    Section 2.  Regular Early Retirement               14
    Section 3.  Special Early Retirement               16
    Section 4.  Disability Retirement               16
    Section 5.  Deferred Vested Benefits              16
    Section 6.  Supplemental or Temporary Benefits               18
        Early Retirement Temporary Benefit               18
        Early Retirement Supplement               19
        Special Early Retirement Supplementary Benefit               20
        Disability Retirement Supplementary Benefit               21
        Special Age 65 Benefit               21
        Interim Supplement               22
    Section 7.  Lump Sum Death Benefit              22
    Section 8.  Surviving Spouse Benefits              23
    Section 9.  Pre-Retirement Coverage to Comply with REA             27
    Section 10.  Deduction for Workers' Compensation             28
    Section 11.  Retirements Prior to October 1, 1999             29
    Section 12.  Adjustments for Payments to Alternate Payee             30
    Section 13.  Designated Contingent Annuitant Benefit             30
    Section 14.  Overpayment Balance Under the Life and Disability Benefits Program             32

**Article IV - Commencement and Duration of Benefits**               33
    Section 1.  Age-Retirement Benefits              33
    Section 2.  Disability Retirement Benefits              34
    Section 3.  Supplemental or Temporary Benefits             35
    Section 4.  Deferred Vested Benefits              36
    Section 5.  Provisions in Effect During Benefit Suspension             36
    Section 6.  Suspension of Benefits at Option of Employee             37
    Section 7.  Facility of Payment               37
    Section 8.  Special Lump Sum Payments              37

**Article V - Financing**               38
    Section 1.  Trust Fund               38
    Section 2.  Contributions               38
    Section 3.  Employee Contributions             39

JEEP CORPORATION-UAW
Retirement Income Plan

| Topic | Page |
|---|---|
| Section 4.  Company Interest | 39 |
| Section 5.  Contribution Liability | 39 |
| **Article VI - Procedure for Handling Questions of Fact** | **40** |
| Section 1.  Written Statement of Participant | 40 |
| Section 2.  Written Notification of Claim Denial | 40 |
| Section 3.  Appeal Procedure | 40 |
| **Article VII - Board of Administration** | **41** |
| Section 1.  Establishment | 41 |
| Section 2.  Impartial Chairman | 41 |
| Section 3.  Powers of the Board | 41 |
| Section 4.  Meetings | 42 |
| Section 5.  Reliance | 42 |
| **Article VIII - Non Alienation of Benefits** | **43** |
| Section 1.  Nonalienation | 43 |
| Section 2.  Union Dues and Taxes | 43 |
| **Article IX - Amendment and Duration of the Plan** | **45** |
| Section 1.  Amendment and Duration | 45 |
| Section 2.  Plan Qualification | 45 |
| **Article X - Termination or Merger of the Plan** | **46** |
| Section 1.  Termination of the Plan | 46 |
| Section 2.  Merger of Plan | 46 |
| **Article XI - Named Fiduciaries** | **47** |
| **Appendix A.  Benefit Class Codes** | **48** |
| **Appendix B.  Basic Benefit Rates** | **49** |
| **Appendix C.  Early Retirement Temporary Benefit Rates** | **53** |
| **Appendix D.  30 & Out Total Monthly Benefit** | **54** |
| **Appendix E.  Special Early Retirement Supplementary Benefit Rates** | **55** |
| **Appendix F.  Disability Retirement Supplementary Benefit Rates** | **56** |
| **Appendix G  Interim Supplement** | **58** |
| **Appendix H  Reduction Factors at Selected Ages for Disability Survivor Option Before Age 57 and 55** | **60** |
| **Appendix I.  Limitation on Contributions and Benefits** | **61** |
| **Appendix J.  Provisions for Employees Hired on or After October 1, 2007** | **65** |

JEEP CORPORATION-UAW
Retirement Income Plan

| Topic | Page |
|---|---|
| Section 1.  Definitions | 65 |
| Section 2.  Eligibility | 67 |
| Section 3.  Benefit Amounts | 68 |
| Section 4.  Vesting | 69 |
| Section 5.  Payment of Benefits | 70 |
| Section 6.  Rehire of Employees | 74 |
| Section 7.  Applicability of General Provisions of Pension Plan | 75 |
| Letter (1)  Transferred Employees | 76 |
| Letter (2)  Administrative Expense | 78 |
| Letter (3)  Special Early Standards | 79 |
| Letter (4)  Overpayment Recoveries | 82 |
| Letter (5)  Actuarial Valuations and 5500 Reports | 83 |
| Letter (6)  IRS Approvals | 84 |
| Letter (7)  SSDIB Awards | 85 |
| Letter (8)  PTD Study | 86 |
| Letter (9)  Hourly Benefits Statement | 87 |
| Letter (10)  Surviving Spouse Option Notice | 88 |
| Letter (11)  Notice of Benefit Amounts | 89 |
| Letter (12)  Toll-Free Number | 90 |
| Letter (13)  Plan Simplification | 91 |
| Letter (14)  Credited Service for 1990, 1991 & 1992 Layoff Time | 92 |
| Letter (15)  Special Early Offer | 93 |
| Letter (16)  Investments | 94 |
| Letter (17)  Benefit Class Codes | 97 |
| Letter (18)  Workers' Compensation - Credited Service | 98 |
| Letter (19)  Extended Supplements - Social Security 80% Benefit | 99 |
| Letter (20)  Lump Sum Payments | 101 |
| Letter (21)  Incentive Program for Retirements | 103 |

JEEP CORPORATION-UAW
Retirement Income Plan

| Topic | Page |
|---|---|
| Letter (22)  Special Early Retirement | 108 |
| Letter (23)  Lump Sum - Pension Fund | 110 |
| Letter (24)  Parity Agreement | 112 |

**EXHIBIT A**
**JEEP CORPORATION - UAW**
**RETIREMENT INCOME PLAN**

## ARTICLE I -  DEFINITIONS

As used in this Plan, the following terms shall have the meanings indicated:

(1)   "Act" means the Employee Retirement Income Security Act of 1974 and any future legislation amending, supplementing, superseding or incorporating it, and including any regulations issued pursuant thereto.

(2)   The "Actuarial Value" of an equivalent lump sum value as of any determination date shall be calculated on the basis of the 1983 Group Annuity Mortality Table and the interest rate on 30-year U.S. Treasury Securities determined for the month of October of the year immediately preceding the year of the determination date.

Effective as of January 1, 2008, the "Actuarial Value" of an equivalent lump sum value as of any determination date shall be calculated on the basis of the mortality table described in Code section 417(e)(3), and the interest rate described in Code section 417(e)(3) for the month of October of the year immediately preceding the annuity starting date for the distribution, and the regulations, rulings and other guidance issued thereunder.

(3)   "Actuary" means an independent individual actuary selected by the Company who is enrolled with the Joint Board for Enrollment of Actuaries and is a Fellow or Associate of the Society of Actuaries or is a member of the American Academy of Actuaries, or a firm of independent actuaries selected by the Company, one of whose members is such a Fellow, Associate, or Member.

(4)   "Board" means the Joint Board of Administration appointed in accordance with, and empowered as provided in Article VII of this Plan.

(5)   "Committee" means the Employee Benefits Committee which was established by the Board of Directors of the Company as constituted from time to time. The Committee, including persons delegated by the Committee, shall have such fiduciary responsibilities under the Plan as are allocated to it pursuant to Article XI of the Plan.

(6)   "Company" means Chrysler LLC, and its predecessors, DaimlerChrysler Corporation, Chrysler Corporation, Jeep Corporation, Kaiser Jeep Corporation, Willys Motors, Inc., and Willys-Overland Motors, Inc.

(7)   "Controlled Group of Companies" means such employer organizations under common control as provided under the Act, during the period in which it was under common control.

(8)

(a)   "Credited Service" means the sum of any Past Service and any Future Service for which credit is allowed under Article II and shall be used in computing the amount of benefits under the Plan and for determining the eligibility for certain benefits under the Plan.

(b)   "Vesting Service" means that period of employment with the Company, and/or with a member of a Controlled Group of Companies, and/or with an affiliated company, as

## Article I - Definitions

determined in accordance with Article II, Section 7 of the Plan, for use in determining the eligibility for Deferred Vested Benefits under the Plan.

(9)  "Effective Date" means the effective date of this Plan, September 18, 1950.  Except as otherwise provided herein, in resolutions of the Board of Directors or the Committee, or as otherwise required by law, this amended and restated Plan is effective as of January 1, 2009.

(10)  "Employee" means:

(a)  any person employed by the Company or on the seniority list on or after June 21, 1950, and who was on the seniority list on or after June 30, 1951, in the bargaining unit which is defined in the Collective Bargaining Agreement between the Company and the Union, except as to persons who became a part of the bargaining unit by reason of the amendment to the Collective Bargaining Agreement between the Company and the Union dated July 23, 1956, which persons are Employees within this definition if they were on the seniority list on or after November 1, 1955; or

(b)  any person employed by the Company or on the seniority list on or after November 1, 1955, in the bargaining unit which was defined in the Collective Bargaining Agreement between the Company and the Mechanics Educational Society of America, Local No. 4; or

(c)  any person employed by the Company or on the seniority list on or after April 1, 1965, in the bargaining unit which was defined in the Collective Bargaining Agreement between the Company and the Pattern Makers' Association of Toledo, Ohio, and the Pattern Makers' League of North America; or

(d)  for Taxable Years ending prior to January 1, 1975, any person who has been at any time an Employee within the definitions of the preceding paragraphs and who ceases to satisfy such requirement by sole reason of having taken employment with the Company in a supervisory or other classification.

The term "Employee" shall exclude such person who is:
(i)  covered by another pension plan to which the Company makes contributions, or

(ii)  employed on a part-time or temporary basis for less than 40 hours per month subsequent to his Normal Retirement Date or his date of reemployment by the Company if he was a Retired Participant or an Ex-Participant who is receiving a pension benefit under the Plan; or

(iii)  employed on a contract fee basis subsequent to his Normal Retirement Date or his date of reemployment if he was a Retired Participant or an Ex-Participant who is receiving a pension benefit under the Plan; or

(iv)  a "leased employee" within the meaning of Section 414(n) of the Internal Revenue Code of 1986, as amended ("Code") is one who provides services to the Employer pursuant to an agreement between the Employer and a leasing organization, who has provided such services on a substantially full-time basis for a period of at least one year, and whose services are provided under the primary direction and control of the Employer.

(11)  "Ex-Employee" means an Employee whose employment with the Company has been terminated and who is eligible for a Deferred Vested Benefit in accordance with the Plan.

**Article I - Definitions**

(12)    "Normal Retirement Date" means the first of the month following the month in which the Employee attains age 65.

(13)    "Pension Investment Committee" means the Pension Investment Committee established by the Benefit Fund Review Committee of the Board of Directors of the Company.

(14)    "Permanently and Totally Disabled" means permanent incapacity which satisfies the provisions of Article III, Section 4.

(15)    "Plan" means this Jeep Corporation - UAW Retirement Income Plan, as set forth herein and as from time to time amended, including Appendix A-H, Letters 1-20 and the Unpublished Letter.

(16)    "Retired Employee" means a former Employee who has retired and is entitled to receive a Retirement benefit under this Plan.

(17)    "Retirement" means Normal, Regular Early, Special Early and Disability Retirement. "Retirement Date" shall be the first day of the month following the month in which the Employee becomes eligible for Retirement benefits under this Plan and has made proper application therefor.

(18)    "Taxable Year" means the annual period for which an Employee's Federal Withholding Tax is computed under the Federal Income Tax Law.

(19)    "Union" or "Jeep Unit" means the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Local No. 12 (Jeep Unit).

(20)    Wherever used herein, the masculine gender shall import the feminine, and vice-versa, unless the context shall specifically otherwise require.

**Article II – Credited Service**

**ARTICLE II -  CREDITED SERVICE**


**Section 1.  Past Service**

A.    An Employee shall be credited with Past Service equal to his years of seniority which he holds with the Company on the date on which Future Service commenced. For Employees represented by the UAW Local No. 12 (Jeep Unit), Future Service commenced on September 18, 1950; for Employees represented by the Mechanics Educational Society of America, Local No. 4, Future Service commenced on November 1, 1955; and for Employees represented by the Pattern Makers' Association of Toledo, Ohio and the Pattern Makers' League of North America, Future Service commenced on April 1, 1965.

B.    The above notwithstanding, such an Employee shall also be credited with Past Service for each year or portion thereof by which the total of his service with the Company subsequent to May 27, 1928, exceeds his seniority on the date on which Future Service commenced pursuant to paragraph A above; provided that an Employee who had his seniority canceled after April 9, 1935, and later was rehired prior to such date when Future Service commenced, shall be credited only with the Past Service to which he is entitled on the basis of the seniority which he held on such date when Future Service commenced; provided further that if an Employee shall have quit to transfer, or shall have transferred, from either the UAW, MESA, IAM or Pattern Makers Union to another of said unions, or from one department to another in said unions, and shall have rehired in the next union or department within 7 days, such a quit or transfer, if occurring after April 9, 1935, shall not be deemed to be a cancellation of seniority for the purpose of this paragraph.

C.    Past Service shall be computed to the nearer month.


**Section 2.  Future Service**

A.    General

Credited Service after Future Service commenced (September 18, 1950, for Employees represented by the Union; November 1, 1955, for Employees represented by MESA Local No. 4; April 1, 1965, for Employees represented by the Pattern Makers' Association of Toledo, Ohio and the Pattern Makers' League of North America) shall be computed for each subsequent Taxable Year on the basis of the total hours credited to an Employee during such Taxable Year. Any Taxable Year in which the Employee is credited with 1700 or more hours shall be counted as one year of Credited Service. Where total hours credited during a Taxable Year are less than 1700, a proportionate credit shall be given to the nearer 1/12 of a year. Each 142 hours will constitute 1/12 year and the remaining hours, if greater than 71, will also be counted as 1/12 but if the remaining hours are 71 or less, they will not be counted. Hours to be credited will be:

(1)    all hours worked, and

(2)    8 hours for each holiday for which compensation is received.

Notwithstanding the above, for purposes of Department of Labor Regulations 2530.204-2(c), an Employee shall be credited with a year of Credited Service if he works 2,080 hours during the taxable year, and if the Employee works less than 2,080 hours during the taxable year, the Employee shall be

**Article II – Credited Service**

credited with a partial year of Credited Service, no less than a ratable portion of a full year of participation based on the ratio of the number of hours worked to 2,080 hours.

B.    Leaves of Absence and Layoffs

In addition to the hours credited above, Credited Service will also be given at the rate of 40 hours per week for certain leaves of absence and instances of layoff, provided that the Employee would otherwise have been scheduled to work and provided further that the Employee returns to work in accordance with the terms of the leave. In the event of a failure to return from the leave, the Employee's Credited Service and pension rights will be only that which he had at the commencement of the leave unless such failure is due to the death of the Employee while on such leave. Notwithstanding the foregoing, an Employee with seniority on or after March 1, 2000 who is on layoff or on leave of absence for which Credited Service is granted under Sections (1) and (2) below, shall have such service credited during such layoff or leave of absence without the requirement of returning to work. Subject to these provisions, Credited Service shall be granted:

(1)    at a rate of 40 hours per week to an Employee who is on an approved leave of absence granted by the Company for illness, provided that:

    (a)    effective March 1, 2000, the employee must have received pay for at least 170 hours in any calendar year in which the employee is on such leave of absence; and

    (b)    effective March 1, 2000, the number of hours of Credited Service granted under this Article II Section (2)(B)(1) is limited to 1,530 over the duration of the leave of absence, distributed so as to provide a maximum of 1,700 hours of credited service in the calendar year in which the leave of absence commences, with the difference between 1,530 and those hours allocated to the calendar year in which the leave of absence commences being allocated in the calendar year following the calendar year in which the leave of absence commences; and

    (c)    effective March 1, 2000 employees who as of this date are on a leave of absence due to illness granted prior to this date, and who have accrued more than 1,530 hours of Credited Service while on the leave of absence due to illness, shall cease to accrue additional Credited Service for the duration of their leave of absence due to illness.

(2)    to an Employee who is on leave of absence approved by the Company due to occupational injury or disease and who receives workers compensation payments may count 40 hours for each complete calendar week of such absence on or after the effective date, in the same manner as though he had received pay for working such hours: provided however that no hours may be counted that are after the Employee's Retirement, and provided further that if such absence occurred before October 1, 1997 the Employee must first make application to count such hours.

(3)    to an Employee who is on a leave of absence commencing on or after February 1, 1968, but prior to January 1, 1980, granted by the Company for pregnancy, at the rate of 40 hours per week of such leave; and, to an Employee who is on a leave of absence which commenced prior to February 1, 1968, granted by the Company for maternity leave, at a rate of four months for each leave. The pre February 1, 1968 Credited Service will be in addition to (but will not duplicate) all other Credited Service under this Plan, and will not cause more than 1,700 hours of Credited Service in a calendar year to be credited.

(4)    for only the period February 1, 1968, through January 31, 1971, to an Employee who is on a waiver leave of absence granted by the Company, at the rate of 40 hours per week of such leave;

**Article II – Credited Service**

(5) to an Employee who shall be absent from work pursuant to a leave of absence granted by the Company for business of the Collective Bargaining Unit representing the Employee, at the rate of 40 hours per week of such leave;

(6) effective February 1, 1968, and ceasing to be effective January 1, 2004, to an Employee who shall be absent from work pursuant to a leave of absence granted by the Company for the purposes of filling a position of service, to which the Employee has been elected or appointed, of the Government of the United States, or any political subdivision thereof, at the rate of 40 hours per week of such leave; provided that effective February 1, 1974, the period for which such leave of absence will be granted shall be only the first term of such elected or appointed position of service;

(7) to an Employee who leaves the employment of the Company to enter the Armed Forces of the United States and retains re-employment rights with the Company under provisions of law or the Collective Bargaining Agreement, at the rate of 40 hours per week of such leave;

(8) effective February 1, 1968, and ceasing to be effective January 1, 2004, to an Employee who shall be absent from work pursuant to a leave of absence granted by the Company for personal business, at the rate of 40 hours per week; provided that effective February 1, 1974, granting of such credit shall be limited to the first 30 days of such leave;

(9) for only the period February 1, 1968, through January 31, 1974, to an Employee who shall be absent from work pursuant to a leave of absence granted by the Company when such Employee is going to be out of the plant for an extended period of time working in a capacity which will further the interests of the Company, at the rate of 40 hours per week of such leave;

(10) for only the period of February 1, 1968, through January 31, 1974, to an Employee who shall be absent from work pursuant to a leave of absence granted by the Company for the purposes of attending school, at the rate of 40 hours per week of such leave;

(11) for the period September 19, 1950, through November 18, 1962, to an Employee who retires on a Normal, Regular Early, Special Early or Disability Retirement on or after February 1, 1974, excluding Employees terminating with Deferred Vested Benefit eligibility, and who was on layoff during such period, at the rate of 40 hours per week for each week of layoff, provided that such Employee was not on waiver leave during such period of layoff. In no event shall such Credited Service be granted prior to actual Retirement and the granting of such Credited Service shall not cause the Employee to earn more than 1700 hours of Credited Service in any Taxable Year. Effective with Retirements on or after February 1, 1977, Credited Service will be granted as above for periods of layoff during which an Employee had elected a waiver leave provided that such additional credit during waiver leaves shall be limited to a maximum of 3 years.

(12) for the period November 19, 1962, to February 1, 1980, to an Employee
  (i) with seniority on February 1, 1980, and/or
  (ii) with at least 5 years of Credited Service on Jan. 1, 1983 and who was actively at work during the period January 1, 1980 through December 31, 1982, for a period of layoff during such three year period, and/or
  (iii) with at least 5 years of seniority on February 1, 1982, who was absent from work because of layoff during any Taxable Year after December 31, 1982 and before February 1, 1985, and who was actively at work for the Company during such period

**Article II – Credited Service**

at the rate of 40 hours per week of layoff during such periods multiplied by the following applicable table:

| Seniority as of February 1, 1980 for (i) | Factor |
|---|---|
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

| Credited Service as of January 1, 1983 for (ii) | Factor |
|---|---|
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

| Seniority as of February 1, 1985 for (iii) | Factor |
|---|---|
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

Except as expressly provided herein, such additional Credited Service shall only be granted at the time application is made for a Normal, Regular Early, Special Early, or Disability Retirement Benefit or at the time of death. Further, such additional credited service shall not include, in any case, periods of layoff during which the Employee was on Waiver Leave or any Credited Service which shall cause the Employee to earn more than 1700 hours of Credited Service in a Taxable Year.

For an Employee with 20 or more years of seniority as of February 1, 1985, additional Credited Service will be credited for the period November 19, 1962 through December 31, 1982 for periods of layoff at the rate of 40 hours per week of layoff during such period, excluding any period of layoff while on waiver leave. This additional Credited Service will be granted only at time of retirement or death and will be in addition to (but will not duplicate) all other service under the Plan, and will not cause more than 1700 hours of Credited Service in a Taxable Year to be credited.

(13)  Credited Service for Future Periods of Layoff
    (a)    For an Employee who is actively at work on or after January 1, 1982 and prior to March 1, 2000 and who accrues in any Taxable Year thereafter less than the total number of hours necessary for a full year of future service under the provisions of Article II Section (2)(A), future service shall be credited based on 40 hours per week, up to a maximum of 1700 hours of credit, for the period of any layoff provided that the Employee
        (i)    has received pay for at least 170 hours but for less than 1700 hours during such Taxable Year and prior to such layoff and

**Article II – Credited Service**

           (ii)      has 10 or more years of Credited Service at time of layoff. (Effective September 4, 1990, 10 years of Credited Service is required only for Employees laid off prior to January 1, 1987.)

      (b)      For an Employee who is actively at work on or after March 1, 2000, who

           (i)      is subject to a period of layoff after March 1, 2000, and

           (ii)      has received pay for 170 hours during a calendar year in which the employee is on layoff,

shall be credited with future service at a rate of 40 hours per week up to a maximum of 1,530 hours (3,230 hours provided that the Employee has 10 or more years of seniority at the time the layoff commences) for the duration of the period of layoff. Credited Service under this Article II Section (2)(A)(13)(b) will be allocated so as to provide sufficient hours for the Employee to attain the hours necessary to accrue a full year of future service in the calendar year in which the layoff commences. Should the period of layoff continue beyond the calendar year in which the layoff commences, the difference between 1,530 (3,230 if the employee has 10 or more years of seniority at the time the layoff commences) and the number of hours used to provide the Employee with a full year of future service in the calendar year in which the layoff commences, will be carried over and allocated to calendar years subsequent to the calendar year in which the layoff commences.

(14)      For the period December 31, 1973 to January 1, 1977 to an Employee

      (i)      who accrued less than 1700 hours of Credited Service in any calendar year between those two dates,

      (ii)      was absent from work due to a layoff that resulted in his being cleared from the roll between such dates and

      (iii)      had seniority on October 1, 1993,

at the rate of 40 hours per week of layoff during such periods multiplied by the following applicable table:

| Seniority as of October 1, 1993 | Factor |
| --- | --- |
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

provided, however, that the Employee must first make application in order to count such hours, and provided, further, that in no event shall the provisions of this Clause result in a duplication of Credited Service under this or any other provision of this Article II.

(15)      For the period December 31, 1978 to January 1, 1984

      (i)      who accrued less than 1700 hours of Credited Service in any calendar year between those two dates, and

      (ii)      was absent from work due to a layoff that resulted in his being cleared from the roll between such dates and

      (iii)      had seniority on October 1, 1999,

at the rate of 40 hours per week of layoff during such periods multiplied by the following applicable table:

| Seniority as of October 1, 1999 | Factor |
| --- | --- |
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |

**Article II – Credited Service**

|  |  |
|---|---|
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

(16) For employees covered under this plan who transferred from Kenosha, for the period December 31, 1980 to January 1, 1984

    (i) who accrued less than 1700 hours of Credited Service in either calendar year between those two dates, and

    (ii) was absent from work due to a layoff that resulted in his being cleared from the roll between such dates, and

    (iii) had seniority on September 13, 2002, and

    (iv) upon making application to the Board in a manner specified by the Board,

at a rate of 40 hours per week of layoff during such period, multiplied by the applicable rate from the following table:

| Seniority as of October 1, 1999 | Factor |
|---|---|
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

(17) For the period December 31, 1978 through January 1, 1989

    (i) who accrued less than 1700 hours of Credited Service in any calendar year between those two dates, and

    (ii) was absent from work due to a layoff that resulted in his being cleared from the roll between such dates, and

    (iii) had seniority on January 1, 2004

    (iv) upon making application to the Board in a manner specified by the Board,

at a rate of 40 hours per week of layoff during such periods multiplied by the following applicable table:

| Seniority as of January 1, 2004 | Factor |
|---|---|
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

(18) For employees covered under this plan, who transferred from Kenosha, for the period December 31, 1976 to January 1, 1979,

    (i) who accrued less than 1,700 hours of Credited Service in any calendar year between these two dates, and

    (ii) was absent from work due to layoff that resulted in his being cleared from the roll between such dates, and

    (iii) had Seniority on January 1, 2004 and

    (iv) upon making application to the Board in a manner specified by the Board,

at a rate of 40 hours per week of layoff during such period, multiplied by the applicable rate from the following table:

| Seniority as of January 1, 2004 | Factor |
|---|---|
| 20 or more years | 1.00 |
| 15 but less than 20 years | .75 |
| 10 but less than 15 years | .50 |
| 5 but less than 10 years | .25 |

## Article II – Credited Service

C.    Notwithstanding the above provisions, effective beginning November 19, 1962, an Employee shall be able to earn additional Future Service credit in a Taxable Year to the maximum indicated in the following schedule in the event he voluntarily absents himself from his job (for other than vacation purposes), at the rate of 8 hours for each such day, provided he is of the age indicated and is not absent for a period longer than indicated in the following schedule:

| Age | Maximum Time Off | Maximum Credit |
|---|---|---|
| 62 | 720 hours | 90 consecutive calendar days |
| 63 | 840 hours | 120 consecutive calendar days |
| 64 | 1200 hours | 150 consecutive calendar days |

D.    Effective as of October 1, 2007, Credited Service as of December 31, 1995 will not be less than a Participant's seniority on that date.

## Section 3.  Loss of Credited Service

Any Employee who is terminated as the result of a quit or termination for any other reason, including termination which results from a layoff of sufficient duration to result in a loss of seniority, shall lose all Credited Service and benefits under this Plan, unless specifically eligible for Retirement or Deferred Vested Benefits under the Plan.

## Section 4.  Reinstatement of Credited Service

A.    An Employee who has retired under the Retirement provisions of the Plan or an Ex-Employee who terminated with entitlement to a Deferred Vested Benefit and is subsequently re-employed by the Company, a member of a Controlled Group of Companies, or an affiliated company shall have the Credited Service which he had at the time of Retirement or termination reinstated (for all purposes of the Plan if he was entitled to a Deferred Vested Benefit and such benefit had not yet commenced) and the benefits as the result of subsequent Retirement payable, such reinstatement and subsequent payment as described in and subject to the provisions of Article IV.

B.    An Employee who has seniority on February 1, 1980, and retires under the Normal, Regular Early, Special Early or Disability Retirement provisions of the Plan on or after February 1, 1980, or on whose death on or after that date and prior to Retirement has a spouse who is entitled to a Survivor Benefit shall have restored at time of Retirement or death any Credited Service previously lost in accordance with Section 3 of this Article and not heretofore restored, provided restoration of such Credited Service will not cause the Credited Service for any Taxable Year to be in excess of one year.

C.    An Employee who terminates employment on or after January 1, 1976, who is not eligible for an immediate or deferred benefit under the Plan and who subsequently returns to employment with the Company, a member of a Controlled Group of Companies or an affiliated company, shall have such Credited Service reinstated for all purposes of the Plan unless such years of service are excluded from Vesting Service under Section 7 of this Article II.

## Section 5.  Transferred Employees

A.    Notwithstanding any provisions of the Plan to the contrary, if a person at the request of the Company has been:

**Article II – Credited Service**

     (1)    separated from the employment of a subsidiary or affiliated company, or

     (2)    transferred from an employment status with the Company not covered by the Plan and thereby becomes covered as an Employee under this Plan, or

     (3)    if an Employee is separated from the employment of the Company at the request of a subsidiary or affiliated company for purposes of employment with such subsidiary or affiliate or is transferred to an employment status with the Company not covered by the Plan and thereby is no longer covered as an Employee under this Plan,

then his Credited Service under any other pension plan of the Company or any pension plan of the subsidiary or affiliate to or from which he was transferred shall be combined with the Credited Service under this Plan for determining his eligibility for benefits under this Plan; provided, however, that any benefits so payable under this Plan shall be calculated based only on the Credited Service earned under this Plan and shall be based on the provisions of this Plan at the time of his actual death, Retirement or termination from the Company, subsidiary or affiliated company.

B.    If an Employee is separated prior to January 1, 1975, from the employment of the Company pursuant to Section 5A(3) above for purposes of employment with AM General Corporation, then the Credited Service accrued under this Plan shall be transferred to the pension plan under which he becomes a participant in his employment with AM General Corporation, and such Credited Service and corresponding benefits accrued hereunder shall thereby be cancelled for purposes of this Plan.

C.    Effective January 1, 1977, an Employee who transfers to a noncovered status with the Company or an affiliate or subsidiary shall no longer accumulate Credited Service under the Plan while in such other status. Effective the same date, for an Employee who was previously transferred to such noncovered status and remains in such noncovered status as of January 1, 1977, the accumulation of Credited Service under the Plan will be only such as such Employee had as of the later of January 1, 1975, or actual date of transfer. For such transferred Employees, Credited Service and Vesting Service earned while covered by any other plan of the Company, and its subsidiaries and affiliates shall be considered as such service under this Plan but solely for the purpose of determining eligibility for benefits.

D.    Effective July 1, 1997, the Credited Service of transferred Employees described in Letter 1 shall be determined in accordance with such Letter Agreement.


**Section 6.  Limitation**

With respect to this Article II, no Credited Service shall be granted for periods of employment subsequent to the month in which the Employee attains his 70th birthday for an Employee who retired prior to March 1, 1988 and no more than one year of Credited Service will be given for any Taxable Year and there shall be no duplication of Credited Service, including no duplication of Credited Service under this Plan with respect to any Employee who has credited service under any other pension plan of the Company or an affiliate or subsidiary company at his termination of employment from the Company or affiliate or subsidiary.


**Section 7.  Vesting Service**

**Article II – Credited Service**

A.    An Employee who is not eligible for a Deferred Vested Benefit under Article III, Section 5, because the Employee has not accumulated 5 years of Credited Service will be eligible for a Deferred Vested Benefit if the Employee has accumulated 5 years of Vesting Service in lieu of 5 years of Credited Service. The amount of the benefit will be determined under Article III, Section 5, utilizing years of Credited Service rather than years of Vesting Service.

B.    An Employee will be credited with Vesting Service as of January 1, 1976, or, if later, the January 1, coinciding with or immediately following his date of hire, taking into account all service from his commencement of employment, except as excluded in Section C below.

C.    Vesting Service shall mean all of an eligible Employee's years of service except:

    (1)    years of service during which the Employee has not completed 870 hours of service (1000 hours beginning calendar year 1998 and thereafter)

    (2)    years of service before age 18;

    (3)    years of service before January 1, 1971, unless the Employee had 3 years of service after December 31, 1970;

    (4)    years of service before January 1, 1976 to the extent that such service would have been disregarded under the Plan's break in service rules in effect on December 31, 1975;

    (5)    years of service before a "one-year break in service" until the Employee has completed one year of service after such break; and

    (6)    years of service by an Employee who is not eligible for a Deferred Vested Pension Benefit under Article III, Section 5, before consecutive breaks in service of one year if the number of consecutive one-year breaks in service equals or exceeds the greater of five or the aggregate number of such years of service prior to such break. The aggregate number of years of service before such breaks shall be deemed not to include any years of service not counted under this subsection by reason of any prior break in service.

D.    For the purposes of Section 7:

    (1)    The term "year of service" means a calendar year period during which the Employee has completed 870 hours of service with the Company (1000 hours beginning calendar year 1998 and thereafter).

    (2)    The term "hour of service" means (a) each hour for which an Employee is paid, or entitled to payment by the Company for the performance of duties for the Company and (b) each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Company. These hours shall be credited in accordance with Department of Labor regulation 2530.200b-2 as further defined in 2530.200b-3. Hours shall not be credited in accordance with both (a) and (b) above.

    (3)    The term "one-year break in service" means a calendar year during which an Employee has not completed more than 435 hours of service with the Company (500 hours beginning calendar year 1998 and thereafter).

**Article II – Credited Service**

> Notwithstanding the foregoing, for any absence from work commencing on or after January 1, 1986 by reason of pregnancy of the individual, birth of the individual's child, placement of a child with the individual in connection with the individual's adoption of the child, or for purposes of caring for such child for a period immediately following such birth or placement, or for any absence from work commencing on or after October 1, 1993, for any reason that qualifies an Employee for a leave under the Family and Medical Leave Act of 1993, the Employee shall be credited with the hours of service for which he would otherwise have been scheduled, or, if that cannot be determined, eight hours for each work day of such absence, not to exceed a total of 501 hours of service for any such absence. Such hours of service shall be credited in the calendar years in which the absence commences if necessary to prevent the occurrence of a break in service, otherwise such hours shall be credited in the immediately following year. In no event will such hours be credited for any purpose other than the prevention of a break in service.

(4)    "Company" shall include the Company, a member of a Controlled Group of Companies, or an affiliated company.

**Section 8.  Qualified Military Service**

Notwithstanding anything in this Pension Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code for employees re-employed following qualified military service on or after December 12, 1994.

**Article III – Eligibility for and Amount of Benefits**

## ARTICLE III -  ELIGIBILITY FOR AND AMOUNT OF BENEFITS

### Section 1.  Normal Retirement

A.    An Employee with at least 10 years of Credited Service (1 year of Credited Service on or after October 1, 2003) whose employment with the Company is terminated when or after he attains the age of 65 shall be eligible for a Normal Retirement Benefit as provided in this Section.

B.    An Employee eligible for a Normal Retirement Benefit who retires on or after March 1, 1997, shall receive a monthly Basic Benefit equal to the amount that is assigned to the Benefit Class Code, established in Appendix A that is applicable to him as provided in Appendix B to this Plan for each year of Credited Service that he had at the date of his Retirement.  For an Employee who retires on or after March 1, 1997 but before October 1, 1997, Benefit Class Code B shall be applicable for benefits payable October 1, 1997 and thereafter.

C.    An Employee who remains in active employment with the Company or a member of the Controlled Group of Companies or an affiliated company on a part-time or temporary basis after his Normal Retirement Date shall be eligible for a Normal Retirement Benefit as provided in this Section. An Employee who remains in active employment with the Company or a member of the Controlled Group of Companies or an affiliated company after his Normal Retirement Date on a regular full-time basis and receives pay for 40 or more hours of service (as referred to in Department of Labor Regulations 2530.200b-2(a)(1) and (a)(2)) for any calendar month shall be notified that he is not eligible for a Normal Retirement Benefit for such month or any similar future month.  Such notification shall be made by personal delivery or first class mail in accordance with Department of Labor Regulations 2530.203-3(b)(4) during the first calendar month beginning on the Employee's Normal Retirement Date and shall contain the items of information called for by such regulations.

### Section 2.  Regular Early Retirement

A.

    (1)    An Employee with at least 10 years but less than 30 years of Credited Service who as of October 1, 2003, has attained age 57, but not age 65, may retire at his option and be eligible to receive an Early Retirement Benefit as provided in this Section.

    (2)    An Employee with at least 30 years of Credited Service who has not attained age 65, may retire at his option and be eligible to receive an Early Retirement Benefit as provided in this Section.

    (3)    Effective October 1, 2003, an employee with less than 30 years of Credited Service, whose sum of age (in full and partial years) and Credited Service (in full and partial years) amounts to 85 or more, may retire at his option, and be eligible to receive an Early Retirement Benefit as provided in this Section.

    (4)    Effective October 1, 2003, an Employee with at least 10, but less than 30, years of Credited Service, who has attained the age of 60 but not age 65, may retire at his option and be eligible to receive an Early Retirement Benefit as provided in this Section.

B.    An Employee who retires at his option on or after March 1, 1997, and who is eligible for a Regular Early Retirement Benefit shall receive an immediate Basic Benefit commencing at his Regular Early

**Article III – Eligibility for and Amount of Benefits**

Retirement Date in the amount determined by multiplying his Basic Benefit rate and Credited Service at his Regular Early Retirement:

(1)     without reduction for Regular Early Retirement if benefit commences after the Employee attains age 62;

(2)     reduced by 1/2 of 1% for each full month by which such Employee is less than age 62 at the time his benefit commences, if he is eligible for Regular Early Retirement only under the provision of Section 2A(1) and not under Section 2A(2), 2A(3) or 2A(4) above;

(3)     for Retirement prior to October 1, 1997, without reduction for Regular Early Retirement if such Employee has 30 or more years of Credited Service at Regular Early Retirement and if he is eligible for Regular Early Retirement under Section 2A(2) above;

(4)     for Retirement on or after October 1, 1997, if such Employee has 30 or more years of Credited Service at Regular Early Retirement, or for Retirement on or after October 1, 2003, if such Employee has at least 10, but not 30, years of Credited Service and has attained the age of 60 but not 65 at Regular Early Retirement, or for Retirement on or after October 1, 2003, if such employee has not earned 30 years of Credited Service but whose sum of age (in full and partial years) and Credited Service (in full and partial years) amounts to 85 or more at Regular Early Retirement, multiplied by a percentage as set forth in the following table:

| Age When Pension Commences | Percentage* |
|:---:|:---:|
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 70.0 |
| 58 | 76.0 |
| 59 | 82.0 |
| 60 | 88.0 |
| 61 | 94.0 |
| 62 and over | 100.0 |

*pro-rated for intermediate ages computed to the nearer whole month

Provided, however, that if he retired

(a)     with 30 or more years of Credited Service effective October 1, 1997 or thereafter, or

(b)     with 85 or more points effective October 1, 2003 or thereafter,

the Basic Benefit otherwise payable to him after age 62 and one month shall be re-computed without any reduction for his pension commencing before he attained age 62 and one month.

**Article III – Eligibility for and Amount of Benefits**

**Section 3.  Special Early Retirement**

A.    Prior to October 1, 2003, an Employee with at least 10 years of Credited Service who has attained age 57, but not age 62, may be able to retire Special Early and be eligible to receive a Special Early Retirement Benefit as provided in this Section.  Effective October 1, 2003, an Employee with at least 10 years of Credited Service who has attained age 55, but not 65, may be able to retire Special Early and be eligible to receive a Special Early Retirement as provided in this Section.

In the event of a plant closing or discontinuance of operations on or after October 1, 2003, an employee with 10 or more years of Credited Service who is laid off at age 50 or older (but not 65 or older), whose layoff appears to be permanent, and who has not been offered suitable work by the Company in the same labor market area, will be eligible upon attaining age 55 for a Special Early Retirement.

In the event of a plant closing on or after October 1, 2003, an employee with 10 or more years of Credited Service, who is laid off at age 50 or older (but not 65 or older) and where no other DaimlerChrysler plant exists within the same labor market, will be eligible for a Special Early Retirement.

B.    An Employee who retires on or after March 1, 1997 Special Early, as set forth in the Standards applicable to such retirement in an attached Letter Agreement and who is eligible for a Special Early Retirement Benefit, shall receive a monthly Basic Benefit computed in accordance with Article III, Section 1B above, based on his years of Credited Service at the time of Special Early Retirement.

**Section 4.  Disability Retirement**

A.    An Employee with at least 10 years of Credited Service who is Permanently and Totally Disabled, as defined in this Section, prior to reaching the age of 65 and who had seniority at the commencement of his Permanent and Total Disability, shall be eligible for a Disability Retirement Benefit as provided in this Section.

An Employee shall be considered "Permanently and Totally Disabled" if his incapacity results in his being unable to engage in any regular employment or occupation by reason of any medically demonstrable physical or mental condition (excluding incapacity which results from injury or disease incurred while serving in the Armed Forces of the United States and is compensable as such by a Federal Disability allowance provided such injury or disease occurred within the 5 years immediately preceding his Retirement Date).

B.    An Employee eligible for a Disability Retirement Benefit, who has applied therefor and who retires on or after March 1, 1997 shall receive a monthly Basic Benefit computed in accordance with Article III, Section 1.B above, but based on the number of years of Credited Service at the time of Disability Retirement.

**Section 5.  Deferred Vested Benefits**

A.    An Employee with (1) at least 5 years of Credited Service or, (2) if less than 5 years of Credited Service, 5 or more years of Vesting Service, (3) who attains age 65 with less than 5 years of Credited Service, or (4) has attained the latter of age 65 or the fifth anniversary in which the Employee

**Article III – Eligibility for and Amount of Benefits**

commenced participation in the Plan, and whose employment with the Company is terminated shall, if he is ineligible for any other benefit under the Plan, be eligible for a Deferred Vested Benefit, upon proper application therefor, payable when or after he attains age 65 in an amount provided in this Section, provided that he must also satisfy the additional requirements following:

An Employee who otherwise satisfies the requirements of this Section shall become eligible for a Deferred Vested Benefit only upon making the following applications to the Board:

(1) such Employee if terminated prior to January 1, 1976, shall, within 60 days following termination of his employment with the Company, file in writing with the Board on a form prescribed by the Board, a request for determination of his Credited Service and/or Vesting Service, as of such date of termination of employment, and of his entitlement to a Deferred Vested Benefit hereunder; and

(2) such Employee shall make application for his Deferred Vested Benefits in accordance with rules established by the Board, not earlier than 60 days prior to his attainment of age 65, nor later than the attainment of age 70 for termination prior to January 1, 1976, provided, however, that, effective March 1, 1997, this age restriction shall no longer be applicable for benefits payable thereafter.

B. An Employee whose employment with the Company is terminated on or after February 1, 1971, and who is eligible to receive a Deferred Vested Benefit shall be entitled to a monthly benefit for his years of Credited Service multiplied by the Normal Retirement Basic Benefit rate in effect as of his date of termination, or the date his Credited Service ceased to accrue, if earlier.

C. An Employee who loses seniority under the labor agreement on or after January 1, 1976, and prior to October 1, 2003, with eligibility for a Deferred Vested Benefit, upon proper application therefor, shall have his Deferred Vested Benefit payable when or after he attains age 57 in an amount provided as in Section B above, except benefits that commence prior to the attainment of age 65 shall be reduced in accordance with the following table:

| Age That Benefit Commences | Percentage* |
|:---:|:---:|
| 65 or later | 100.0 |
| 64 | 89.6 |
| 63 | 80.6 |
| 62 | 72.7 |
| 61 | 65.7 |
| 60 | 59.6 |
| 59 | 54.1 |
| 58 | 49.3 |
| 57 | 45.0 |

\* Prorated for intermediate ages by the number of calendar months that the date of benefit commencement precedes the first of the month following the next anniversary of his birth.

D. A deferred pension for an Employee who loses seniority under the labor agreement on or after October 1, 2003, with eligibility for a Deferred Vested Benefit, shall be either

(a) a monthly pension effective the first day of the month after he attains age 65 commencing not earlier than 90 days prior to the date on which such Ex-Employee elects to have his

**Article III – Eligibility for and Amount of Benefits**

deferred pension commence, in the full amount for which he is eligible under this Article III, or

(b)    a monthly pension commencing as of the first day of the month after he attains age 60 or files his application for such pension, whichever is later, in an amount equal to the monthly pension provided in (a) above reduced by a percentage equal to five-ninths of one percent multiplied by the number of months by which he is less than 65 years of age at the date such pension commences, or

(c)    he has attained age 55 but not 60, a monthly pension commencing as of the first day of the month after he lost his seniority and after his combined full and partial years of age and full and partial years of Credited Service (to the nearest 1/12 in each case) total 85 or more, or after he files his application for such pension, whichever is later, in an amount equal to the monthly pension provided for in (a) above, multiplied by a percentage as set forth in the following table:

| Age That Benefit Commences | Percentage* |
|:---:|:---:|
| 55 | 42.5 |
| 56 | 46.4 |
| 57 | 50.6 |
| 58 | 55.4 |
| 59 | 60.7 |
| 60 | 66.7 |

\*   Prorated for intermediate ages computed to the nearest whole month

**Section 6.  Supplemental or Temporary Benefits**

A.    Early Retirement Temporary Benefit

An Employee who retires on or after March 1, 1997 and prior to October 1, 1997 with 30 or more years of Credited Service and who is eligible for a Regular Early Retirement Benefit under Section 2A(2) of this Article III shall be eligible to receive a monthly Early Retirement Temporary Benefit equal to the monthly amount that is applicable to him as provided in Appendix C to the Plan for each year of Credited Service that he had at the date of his Early Retirement.

The Early Retirement Temporary Benefit to which an Employee is entitled shall commence on his Early Retirement Date and shall be payable monthly thereafter until and including the first day of the month in which he dies, or his pension ceases for any other reason, or he is re-employed by the Company, or he becomes eligible for unreduced Federal Social Security Benefits for age or disability, or he attains age 62 and one month whichever occurs first; provided, however, that if an Employee who is entitled to receive an Early Retirement Temporary Benefit commencing on or after February 1, 1974, has earnings (defined for this purpose as the type counted for the earnings test under the Federal Social Security Act), after retirement in excess of, $15,000 in calendar year 1993 and $15,500 in calendar year 1994 and thereafter before he attains age 62 (age 62 and one month), a penalty equal to double the amount by which such earnings exceed the amount permitted shall be charged against each succeeding monthly Early Retirement Temporary Benefit which he would otherwise be entitled to receive until the full amount of such penalty is satisfied, it being understood that penalties and charges herein shall be cumulative if appropriate.

A Retired Employee receiving an Early Retirement Temporary Benefit may be required to certify whether his earnings have been in excess of the permitted amount and to furnish verification of the

**Article III – Eligibility for and Amount of Benefits**

amount of his earnings. Unless repaid by the Retired Employee in a lump sum, any overpayments of an Early Retirement Temporary Benefit made after a Retired Employee incurred a penalty because of excess earnings in accordance with the preceding paragraph shall be deducted from future monthly benefits payable to him under this Plan.

The earnings limitation under this Section 6(A) shall not be applicable for earnings in calendar year 1997 and thereafter.

The Early Retirement Temporary Benefit is extended to the month prior to the month in which the retiree is eligible for a Social Security benefit of 80% of the full benefit amount, for Participants listed in any category below:

(1)    Current retirees born in 1944, 1945, 1946, 1947, 1948 and 1949 who attain age 62 during the 2007 Agreement.

(2)    Future retirees born in the same years who retire and who attain age 62 during the 2007 Agreement.

B.    Early Retirement Supplement.

An Employee who retires on or after October 1, 1997 with 30 or more years of Credited Service and who is eligible for a Regular Early Retirement Benefit under Section 2A(2) of this Article III shall be entitled to a monthly Early Retirement Supplement until age 62 and one month in an amount which when added to his monthly pension under this Plan will equal the amount of total monthly benefit applicable as provided in Appendix D to this Plan; subject to the provisions of Sections B(1), (2), (3), and (4) below:

(1)    The Early Retirement Supplement under this Section B for an Employee retiring under Regular Early Retirement shall be calculated assuming that his Basic Benefit commences immediately after Retirement, and such Early Retirement Supplement shall be reduced for any month prior to age 62 and one month for which he receives or is entitled to receive Social Security Benefits, by an amount equal to the amount of the Early Retirement Temporary Benefit pursuant to Appendix C to which he would have been entitled if he had retired and been eligible under Section 6A of this Article III.

(2)    The Early Retirement Supplement under this Section B for an Employee who does not prevent the automatic election of the Survivor Benefit provided under Section 8 of this Article III shall be calculated on the basis of the monthly pension he would have received if he had prevented such automatic election.

(3)    Any Early Retirement Supplement to which an Employee is entitled shall commence on the first day of the month following the date on which the Employee retires and shall be payable monthly thereafter until the first day of the month in which he dies, or he is re-employed by the Company (except that he shall retain any right he might otherwise have to receive an Early Retirement Supplement when such re-employment with the Company shall cease), or his pension ceases for any other reason, or he attains age 62 and one month, whichever occurs first.

(4)    If the total of the Employees monthly pension under this Plan and his monthly Early Retirement Supplement receivable up to age 62 and one month as computed above would

**Article III – Eligibility for and Amount of Benefits**

exceed 70% of his final base pay, his monthly supplement (but not his monthly pension) shall be reduced to the extent required so that such monthly pension plus his supplement will equal 70% of his final base pay. For this purpose, and Employee's final base pay shall mean 4-1/3 times his base hourly rate plus cost-of-living allowances in effect on the Employee's last day worked for the Company, multiplied by 40, excluding overtime additions to straight-time pay, shift differentials, payment-in-lieu of vacations, or any other extra compensation.

(5)     The Early Retirement Supplement under this Section 6(B) for an Employee retiring under Regular Early Retirement shall only be payable to an Employee who retires within 5 years of his last day worked.

The Early Retirement Supplement is extended to the month prior to the month in which the retiree is eligible for a Social Security benefit of 80% of the full benefit amount, for Participants listed in any category below:

(1)     Current retirees born in 1944, 1945, 1946, 1947, 1948 and 1949 who attain age 62 during the 2007 Agreement.

(2)     Future retirees born in the same years who retire and who attain age 62 during the 2007 Agreement.

C.     Special Early Retirement Supplementary Benefit

An Employee who retired under the Special Early Retirement provisions of the Plan on or after March 1, 1997, shall be eligible to receive a monthly Special Early Retirement Supplementary Benefit equal to the monthly amount that is applicable to him as provided in Appendix E to the Plan for each year of Credited Service that he had at the date of his Retirement.

The Special Early Retirement Supplementary Benefit shall be paid during such Retired Employee's lifetime until he is re-employed by the Company or his pension ceases for any other reason or until he reaches age 65 (age 62 and one month for Retired Employee's who retired on or after December 31, 2003), or until he becomes eligible for unreduced Federal Social Security Benefits for age or disability, whichever occurs earlier. The Special Early Retirement Supplementary Benefit shall be reduced by the amount of any Social Security Benefit received by such Retired Employee after he reaches age 62 and one month provided such Employee retired prior to January 1, 1976; for an Employee who retired on or after January 1, 1976, such reduction shall be limited to the amount of Social Security Benefit that could have been received as of December 31, 1975, except for lack of sufficient age or disability, and effective on or after December 31, 2003 for Retired Employees who have been approved on or after December 31, 2003 for Social Security Benefits, the Special Early Retirement Supplementary Benefit shall be reduced by the amount of Early Retirement Temporary Benefit pursuant to Appendix C to which the he would have been entitled if he had been eligible and retired under Section 6(A) of this Article III without regard to the amount of Social Security Benefit that could have been received as of December 31, 1975.

The Special Early Retirement Supplementary Benefit is extended to the month prior to the month in which the retiree is eligible for a Social Security benefit of 80% of the full benefit amount, for Participants listed in any category below:

(1)     Current retirees born in 1944, 1945, 1946, 1947, 1948 and 1949 who attain age 62 during the 2007 Agreement.

**Article III – Eligibility for and Amount of Benefits**

    (2)    Future retirees born in the same years who retire and who attain age 62 during the 2007 Agreement.

D.    Disability Retirement Supplementary Benefit

An Employee who retires under the Disability Retirement provisions of the Plan on or after March 1, 1997, shall be eligible to receive a monthly Disability Retirement Supplementary Benefit equal to the monthly amount that is applicable to him as provided in Appendix F to the Plan for each year of Credited Service that he had at the date of his Disability Retirement.

The Disability Retirement Supplementary Benefit shall be paid during such Retired Employee's lifetime until he is re-employed by the Company or his pension ceases for any other reason, or, if later, until he reaches age 62 plus one month (65 for retirement prior to March 1, 1985), or, if earlier, until he becomes eligible for unreduced Federal Social Security Benefits for age or disability; provided that the Disability Retirement Supplementary Benefit shall only be payable while the Retired Employee is also eligible for a Disability Retirement Benefit under the Plan.

E.    Special Age 65 Benefit

A Retired Employee (including for purposes of this Article III, Section 6E an Ex-Employee whose Deferred Vested Benefit commenced prior to February 1, 1971), his spouse (if the Retired Employee retired prior to September 4, 1990) or his surviving spouse who is receiving a Surviving Spouse Benefit under Article III, Section 8 below, any of whom is

(1)    age 65 or older, or

(2)    under age 65 and enrolled in the voluntary "Medicare" coverage that is available under the Federal Social Security Act by making contributions

shall be eligible to receive a monthly Special Age 65 Benefit in accordance with the following table provided, however, that:

(a)    The Special Age 65 Benefit payable to an individual age 65 or older who was not enrolled in Medicare Part B as of October 1, 1990 but who was receiving a Special Age 65 Benefit will be limited to $28.00 per month. Such an individual will be entitled to the schedule of payments in the table below upon submission of proof of enrollment in Medicare Part B. Thereafter continued receipt of the Special Age 65 benefit shall be contingent on maintenance of Medicare Part B enrollment.

(b)    Payment of any Special Age 65 benefit to an individual who was enrolled in Medicare Part B as of October 1, 1990 or who first becomes eligible for Medicare Part B on or after October 1, 1990, is contingent upon enrollment or continued enrollment in Medicare Part B.

| Benefits Payable | Monthly Special Age 65 Benefit Amount* |
|---|---|
| 1/1/04 and after | $76.20 |

    *Provided, however, that

**Article III – Eligibility for and Amount of Benefits**

    (1)    the Special Age 65 Benefit shall not exceed the generally applicable Medicare Part B premium and

    (2)    the Special Age 65 benefit of an eligible spouse shall be $19.60 per month.

In no event, however, shall such payment commence prior to the first day of the month following the earlier of (i) the month during which age 65 is attained or (ii) receipt by the Board of evidence as required by the Board that an individual under age 65 is otherwise eligible. Not more than one payment from this Plan or from any other source provided by the Company shall be made to an individual for any one month. No such payment shall be made to any individual under age 65 for any month such individual is not enrolled for such voluntary "Medicare" coverage.

F.    Interim Supplement

An Employee who retired on or after October 31, 2003 under Section 2(A)(3) or Section 2(A)(4) of this Article III, and who has not attained the age of 62, shall be entitled to a monthly Interim Supplement until age 62 and one month, in an amount that is applicable to him as provided in Appendix G to the Plan for each full and partial year of Credited Service that he had at the date of his Early Retirement, subject to the provisions below:

    (1)    The Interim Supplement to which a Retired Employee is entitled shall commence on the first day of the month following the date on which the Employee retires and shall be payable monthly thereafter until the first day of the month in which he dies, or he is re-employed by the Company (except that he shall retain any right he might otherwise have to receive an Interim Supplement when such re-employment with the Company shall cease), or his pension ceases for any other reason, or he attains age 62 and one month, whichever occurs first.

    (2)    The Interim Supplement to which a Retired Employee is entitled shall be reduced for any month prior to age 62 and one month in which he receives, or is entitled to receive Social Security Benefits, by an amount equal to the amount of Early Retirement Temporary Benefit pursuant to Appendix C to which he would have been entitled had he been eligible and retired under Section 6(A) of this Article III.

    (3)    The Interim Supplement under this Section 6(F) for an Employee retiring under Regular Early Retirement shall only be payable to an Employee who retires within 5 years of his last day worked.

The Early Retirement Temporary Benefit is extended to the month prior to the month in which the retiree is eligible for a Social Security benefit of 80% of the full benefit amount, for Participants listed in any category below:

    (1)    Current retirees born in 1944, 1945, 1946, 1947, 1948 and 1949 who attain age 62 during the 2007 Agreement.

    (2)    Future retirees born in the same years who retire and who attain age 62 during the 2007 Agreement.

**Section 7.  Lump Sum Death Benefit**

Upon the death of an Employee who retired prior to September 4, 1990 and who was entitled to receive a Normal, Regular Early, Special Early or Disability Retirement Benefit hereunder or an Ex-Employee whose Deferred Vested Benefits commenced prior to February 1, 1971, there shall be payable to his beneficiary,

**Article III – Eligibility for and Amount of Benefits**

designated by him in writing and filed with the Board, or if no such beneficiary is living, to his estate, a Death Benefit equal to $4,500 ($4,000 for such persons whose benefits began prior to March 1, 1985 but on or after February 1, 1980 and $3,500 for those whose benefits began prior to February 1, 1980) if his death occurs during the first year following his benefit commencement date, or $4,000 ($3,500 for such persons whose benefits began prior to March 1, 1985 but on or after February 1, 1980 and $3,000 for those whose benefits began prior to February 1, 1980) upon his death thereafter.

**Section 8.  Surviving Spouse Benefits**

A.    General

    (1)    An Employee who retires under the Normal, Regular Early, Special Early or Disability Retirement provisions of this Plan on or after November 19, 1962, shall be entitled to elect or effective April 30, 1968, shall be, unless rejected, deemed to have elected to receive a reduced amount of monthly Basic Benefit during his lifetime to provide that, if his designated spouse shall be living at his death after such election shall have become effective, a monthly Survivor Benefit shall be payable to such spouse during her further lifetime.

    (2)    An eligible Employee may designate as his beneficiary of a Survivor Benefit election only the person who is his spouse at such time and who has been his spouse for at least one year immediately prior to the date such Survivor Benefit election becomes effective.

B.    Benefit Amounts

    (1)    For a Retired Employee for whom a Survivor Benefit election becomes effective pursuant to this Section 8, the reduced amount of his monthly Basic Benefit shall be, except as provided in the last sentence of this Section B(1), equal to an amount determined by multiplying the monthly Basic Benefit otherwise payable to the Retired Employee (but not any Supplemental Benefits or Temporary Benefits) after age 65 if he had rejected such Survivor Benefit election by 95% if the Retired Employee's age and his designated spouse's age do not differ by more than 5 years; such percentage shall be increased by 1/2 of 1% (up to a maximum of 100%) for each full year that the designated spouse's age exceeds the Retired Employee's age by more than 5 years, and shall be decreased by 1/2 of 1% for each full year in excess of 5 years that the designated spouse's age is less than the Retired Employee's age. (For the purpose of this paragraph, the age of each person shall be the age at his or her last birthday prior to the effective date of the Survivor Benefit election.)  In the case of an Employee who has 30 or more years of Credited Service, or whose sum of age at retirement (in full and partial years) and Credited Service (in full and partial years) amounts to 85 or more, in either case, whose pension is subject to re-computation at age 62 and one month pursuant to Section 2B(2)(d) of this Article III, the reduced monthly pension payable to him shall be determined by deducting the amount of the reduction provided above in this paragraph from the monthly pension payable before he attains age 62 and one month and before such re-computation and the same amount shall be deducted from his monthly pension payable after he attains age 62 and one month and after such re-computation.

    (2)    The Survivor Benefit payable to the surviving spouse of a Retired Employee who has completed an election pursuant to this Section 8, and who dies after such election becomes effective, shall each month during the further lifetime of such surviving spouse be a benefit equal to 55% (60%, effective October 1, 1978, for surviving spouses of persons retiring on or

**Article III – Eligibility for and Amount of Benefits**

after February 1, 1977 and 65%, effective October 1 ,1999 for surviving spouses of persons retiring on or after such date breaking service after September 27, 1999) of the reduced amount of such Retired Employee's monthly Basic Benefit as would have been determined in paragraph (1) above, for that month, without any reduction for retiring before age 62 in the case of the monthly pension payable to the surviving spouse of a Retired Employee with 30 or more years of Credited Service, or whose sum of age at retirement (in full and partial years) and Credited Service (in full and partial years) amounts to 85 or more. Effective October 1, 1999, the percentages of 55% and 60% shall be raised to 60% and 65% respectively in the case of surviving spouses other than the surviving spouse of a Deferred Vested Benefit pensioner, or of a Disability Retirement retiree who retired prior to age 57 with less than 30 years of Credited Service.

C.      Election of Benefits

    (1)     The automatic election provided above shall become effective on the later of: (i) the commencement date of the Retired Employee's monthly Basic Benefit, or (ii) the first day of the month following the month in which the Retired Employee attains age 60 in the case of Disability Retirement prior to February 1, 1980, or in which the Retired Employee attains age 57 in the case of Disability Retirement thereafter.

    (2)     An Employee may prevent such automatic election by executing a specific written rejection of such election on a form approved by the Board and filing it with the Board. Rejections made after December 31, 1984 shall include the written consent of the Employee's spouse witnessed by a Plan representative or notary public, executed at the time of application for Retirement benefits. Each Employee who becomes eligible on or after January 1, 1976 to reject or elect a Survivor Benefit in accordance with this Section 8 shall be provided information regarding this coverage, which is included in the Summary Plan Description that will be given to each Employee. Within a reasonable period prior to the pension starting date, each Employee shall be provided a written explanation of (i) the terms and conditions of the surviving spouse coverage (ii) the Employee's right to make and the effect of an election to waive the surviving spouse coverage, (iii) the rights of the Employee's spouse and (iv) the right to make and the effect of revocation of a previous selection to waive the surviving spouse coverage.

    (3)     A Survivor Benefit election shall be revoked automatically upon the death of the Employee or his designated spouse, or both, prior to the effective date of the election (which for rejections made after December 31, 1984 requires the written consent of the spouse witnessed by a Plan representative or notary public on a form approved for this purpose by the Company and filed with the Company).

    (4)     A Survivor Benefit election shall be irrevocable at and after its effective date if the Retired Employee and his designated spouse shall be living at such date except that, effective with retirements on or after February 1, 1971, in the event the designated spouse predeceases the Retired Employee, such Retired Employee may cancel the Survivor Benefit election and have his monthly Basic Benefit restored to the amount payable without such election. Effective October 1, 2002 for retirement prior to February 1, 1971, in the event the designated spouse predeceases the Retired Employee, such Retired Employee may cancel the Survivor Benefit election, and have his monthly Basic Benefit restored to the amount payable without such election. For retirements on or after February 1, 1971, this benefit restoration shall be effective the first day of the month following the month in which the Board receives

**Article III – Eligibility for and Amount of Benefits**

evidence, satisfactory to the Board of the spouse's death with respect to deaths occurring on or after January 1, 1994 and shall be effective the first day of the third month following the month the Board receives such evidence for deaths occurring prior to that date.  For retirements prior to February 1, 1971, benefit restoration, upon application of the Retired Employee or Ex-Employee, made on or after September 13, 2002, shall be effective with the first day of the month following the month in which the Board receives such application and satisfactory evidence of the spouse's death.

(5)  In the event the Retired Employee, for whom a Survivor Benefit election in accordance with this Article III, Section 8A, B and G becomes effective, and his designated spouse become divorced, and a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) does not provide to the contrary, such Retired Employee may cancel the Survivor Benefit election and have his monthly pension benefit restored to the amount payable without such election, effective the first of the third month following the month in which the Board receives the Retired Employee's written revocation of the Survivor Benefit election because of divorce accompanied by evidence satisfactory to the Board of a final decree or judgment of divorce.

(6)  Effective October 1, 1979, Survivor Benefits first payable on or after that date to a designated surviving spouse shall not be payable for any month during which the surviving spouse is otherwise eligible for a survivorship benefit, under the Life, Disability, and Health Care Benefits Program (see Exhibit B) provided, however, such surviving spouse may elect to receive the Survivor Benefits from this Plan in lieu of the survivorship benefits from the Life, Disability and Health Care Benefits Program.

(7)  An Employee who retires or retired under the Article III, Section 1, 2, 3 or 4 on or after March 1, 1985 or an Ex-Employee who terminated employment with entitlement to a deferred vested benefit on or after March 1, 1985 may elect a survivor option under the following circumstances:

(a)  an Employee or Ex-Employee who was not married at the time the survivor option could have been elected and who subsequently marries may elect the option to become effective on the first of the month following the first anniversary of the marriage provided the employee applies to elect the option prior to the first of the month following the 18 month anniversary of the marriage.

(b)  an Employee or Ex-Employee who elected the survivor option and whose spouse dies and who subsequently remarries may elect the option to become effective on the first of the month following the first anniversary of the remarriage provided the employee applies to elect the option prior to the first of the month following the 18 month anniversary of the marriage.

(c)  an Employee or Ex-Employee who elected the survivor option and who becomes divorced and rescinds the survivor option and who subsequently remarries may elect the option to become effective on the first of the month following the first anniversary of the remarriage provided the employee applies to elect the option prior to the first of the month following the 18 month anniversary of the marriage.

(d)  Notwithstanding the provisions of Sections 8 C. (7)(a), (b), and (c) above, for elections effective March 1, 1997 and thereafter, such option shall become effective

**Article III – Eligibility for and Amount of Benefits**

on the one year anniversary of the marriage. The applicable reduction in the Retired Employees benefit shall commence on the first day of the month following the one year anniversary date.

D.    In-Service Survivor Option

The eligible surviving spouse of an Employee who dies on or after October 1, 1979, prior to termination of employment for Retirement or for any other reasons or prior to commencement of his Retirement benefit if he has retired, and who at the time of his death would have been eligible to retire under the Normal Retirement or Early Retirement provisions of the Plan, and who if he had retired would have been eligible to provide a Survivor Benefit as provided in Article III, Section 8A and B above, then the surviving spouse of such Employee shall be eligible to receive a monthly Survivor's Benefit. The monthly benefit payable to the surviving spouse shall be the amount the eligible surviving spouse would have been entitled to receive under the above referenced Sections as if the Employee had retired on the date of his death and had made the election.

E.    Deferred Vested Survivor Benefit

An Employee who terminates employment on or after January 1, 1976, with eligibility for a Deferred Vested Benefit shall be eligible to elect at the time of commencement of a Deferred Vested Benefit, a Deferred Vested Survivor Benefit if at the time of commencement of such Deferred Vested Benefit he is legally married. Such Employee will be assumed to have made such election unless he specifically rejects it at time of application for commencement of his Deferred Vested Benefit. If the Deferred Vested Survivor Benefit goes into effect, the Deferred Vested Benefit otherwise payable will be reduced as described in Article III Section 8(B)(1) to take into account the Deferred Vested Survivor Benefit. The Deferred Vested Survivor Benefit will not be applicable to Supplementary Benefits. If the Ex-Employee predeceases his spouse, the spouse will receive for the remainder of her lifetime a benefit equal to 50% (65% for those who terminate on or after October 1, 2003) of the reduced Deferred Vested Benefit for the Deferred Vested Survivor Benefit.

The Deferred Vested Survivor Benefit shall become effective on the date when the Deferred Vested Benefit commences provided that both the Employee and his eligible spouse are living as of that date.

F.    Special Survivorship Option

An Employee who retired prior to February 1, 1968, (excluding for purposes of this provision a Disability Retiree who had not attained age 60 prior to August 1, 1968) and who had not made a Survivor Benefit election under the provisions of the Plan prior to February 1, 1968, may, prior to May 1, 1968, have elected a Special Survivorship Option on a form approved by the Board. The beneficiary of such an election may be only the Retired Employee's spouse, subject to the provisions of Section 8A(2) above. If the Retired Employee made this election, his monthly Basic Benefit for months subsequent to April, 1968, shall be reduced from the benefit otherwise specified in the Plan by $1 for each year of Credited Service at the time of Retirement, provided that if his benefit was subject to actuarial adjustment in the event of Early Retirement, the $1 shall be subject to the same percentage adjustment. If the beneficiary of such election is alive at the time of such Retired Employee's death, a monthly benefit equal to 615% (655% effective March 1, 1997 and 780% effective October 1, 1999 and 1310% effective October 1, 2003) of the reduction specified in the preceding sentence shall be payable on the first day of each month thereafter during the beneficiary's

**Article III – Eligibility for and Amount of Benefits**

continued lifetime. Effective October 1, 2007, the Special Survivor Option is increased to $14.10 for each year of Credited Service.

G.      Survivor Benefit for Disability Retirees

An Employee eligible for a Disability Retirement who retires on or after July 1, 1977, and who is under age 57 (age 55 on or after October 31, 2003) and has less than 30 years of Credited Service shall be deemed to have elected a monthly benefit payable to the Employee up to and including the month in which he attains age 57 (age 55 on or after October 31, 2003) or dies, whichever occurs earlier, reduced as described in the following paragraph; and a monthly Survivor Benefit, beginning on the first day of the month after the Retired Employee would have attained age 57 (age 55 on or after October 31, 2003), if he should die prior to that date, shall be payable to his designated spouse during the further lifetime of such spouse as provided below. The reduction to the Retired Employee's monthly benefit shall be based on the age of the Retired Employee and his spouse (the age of each being determined as the age attained on his or her last birthday prior to commencement of Disability Retirement Benefits) as they relate to each other and age 57 (age 55 on or after October 31, 2003), in accordance with the appropriate table in Appendix H.

Provided that the Retired Employee dies prior to the first of the month following the month in which he attains age 57 (age 55 on or after December 31, 2003), the designated surviving spouse shall receive a monthly benefit equal to 50% of the reduced benefit payable to the Retired Employee excluding any Temporary Benefits or Supplements that may have been payable to the Retired Employee.

The above option will become effective upon benefit commencement unless the Employee rejects it at the time he makes application for a Disability Retirement Benefit except that to become effective the retiring Employee must be married at the time his Disability Retirement Benefit commences and any such rejection must include the written consent of the spouse, witnessed by the Plan representative or a notary public, on a form approved for this purpose by the Company and filed with the Company. The benefit will remain in effect until the Retired Employee no longer becomes disabled or until the first day of the month following the month in which the Retired Employee attains age 57 (age 55 on or after December 31, 2003), whichever is earlier. If the Retired Employee is still receiving a Disability Retirement Benefit when he attains age 57 (age 55 on or after December 31, 2003), Survivor Benefits described in Section 8A and B above shall become applicable.

**Section 9.  Pre-Retirement Survivor Coverage to Comply With the Retirement Equity Act of 1984**

A.      An Ex-Employee or an Employee who would become an Ex-Employee if he broke service and in either case is not eligible for the survivor benefit under Section 8 of this Article III, is eligible for the pre-retirement survivor coverage described herein. Notwithstanding the above, any Employee who worked on or after August 23, 1984, and would have been eligible hereunder except that such employee broke seniority or died prior to March 1, 1985, shall be eligible for the pre-retirement survivor coverage provided hereunder. Such coverage as provided subsequently herein, shall remain in full force and effect until the date on which the Employee or Ex-Employee becomes eligible for the survivor benefit under Section 8 above, at which time the pre-retirement coverage described herein shall cease to be effective.

**Article III – Eligibility for and Amount of Benefits**

In the event the Employee or Ex-Employee predeceases the designated spouse while the pre-retirement survivor coverage provided hereunder is in effect, the designated spouse shall be eligible, during the further lifetime of such spouse, for a monthly benefit commencing on the first of the month following the month in which the Employee or Ex-Employee would have become eligible, except for the fact that he died, to retire at his option.

The amount of any such monthly survivor benefit shall be determined by the basic benefit rate in effect for the Employee on the date of his death or the date seniority broke for an Ex-Employee.

B. The survivor coverage provided hereunder shall be effective with respect to a spouse to whom the Employee or Ex-Employee is married, but only if the couple shall have been married throughout the one-year period ending on the date of the Employee's or Ex-Employee's death.

C. Subsection B notwithstanding, an Employee or Ex-Employee who marries or remarries subsequent to the effective date of the survivor coverage provided hereunder, shall be deemed to have such coverage in favor of his spouse upon such marriage or remarriage, unless, a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) requires such coverage to remain in effect for the former spouse, in which case the coverage cannot become effective for any other spouse of the Employee or Ex-Employee. The effective date of any such coverage shall be in accordance with Subsection A of this Section 9.

D. In the event of divorce, the Employee or Ex-Employee can revoke the coverage provided hereunder without spousal consent, unless a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) provides to the contrary.

E. The monthly benefit amount payable hereunder to any eligible surviving spouse shall be 50% of the monthly amount of the basic benefit as determined in Article III, Section 5 otherwise payable at the (i) date of death of the Participant or (ii) date seniority broke for an Ex-Employee, after any reduction provided in Section 5C of Article III.

No benefit shall be payable under this Section 9 for any month for which benefits are payable under any other Section of this Plan or for any month for which applicable benefits are payable under the provisions of the Life, Disability, and Health Care Benefits Program unless the survivor has elected to receive benefits under this section in lieu of such benefits.

F. The pre-retirement survivor coverage provided hereunder is applicable to eligible Employees and former Employees separated from service:

(1) whose last day worked for the Corporation was on or after January 1, 1976, and

(2) who have entitlement to but have not commenced receipt of Deferred Vested benefits, and who are alive as of August 23, 1984.

**Section 10.  Deduction for Workers' Compensation**

## Article III – Eligibility for and Amount of Benefits

In determining the monthly benefits payable under this Article III to an Ex-Employee or Retired Employee whose benefits commenced on or after February 1, 1971, a deduction shall be made unless prohibited by law, equivalent to all or any part of Workers' Compensation (including compromise or redemption settlements) payable to such Employee by reason of any law of the United States, or any political subdivision thereof, which has been or shall be enacted, provided that such deductions shall be to the extent that such Workers' Compensation has been provided by premiums, taxes or other payments paid by or at the expense of the Company, except that no deduction shall be made for the following:

A.      Workers' Compensation payments specifically allocated for hospitalization or medical expense, fixed statutory payments for the loss of any bodily member, or 100% loss of use of any bodily member, or payments for loss of industrial vision.

B.      Compromise or redemption settlements payable prior to the date monthly pension benefits first become payable.

C.      Workers' Compensation payments paid under a claim filed not later than 2 years after the breaking of seniority.

### Section 11.  Retirements Prior to October 1, 1999

A.      An Employee who retired under the Normal, Regular Early, Special Early or Disability provisions of the Plan with a Retirement Date prior to October 1, 1999 (excluding for purposes of this Section 11A an Ex-Employee who is entitled to a Deferred Vested Benefit), or the eligible surviving spouse of such a Retired Employee (excluding the benefits of a Retired Employee eligible for or receiving a Special Survivor Option), shall have his monthly basic Retirement benefit in effect immediately prior to October 1, 1999, increased, effective as of October 1, 1999, to amounts equal to his years of Credited Service multiplied by the Basic Benefit rates indicated in Appendix B.

Benefit increases payable pursuant to this Article III Section 11A shall be reduced by any applicable Early Retirement or Survivor Benefit factors.

B.      Any Early Retirement Temporary Benefit payable on and after October 1, 1999, to such a Retired Employee shall be equal to the amount indicated in Appendix C.

C.      Any Special Early Retirement Supplementary Benefits or Disability Retirement Supplementary Benefits, payable on or after October 1, 1999 to such Retired Employee shall be equal to the amounts indicated in Appendix E with respect to Special Early Retirements and the amounts indicated in Appendix F with respect to Disability Retirements.

D.      An Employee who retired on or after February 1, 1974, but prior to February 1, 1977, under the Normal, Regular Early, Special Early or Disability Retirement provisions and who had 30 or more years of Credited Service will be entitled to receive a monthly Lifetime Benefit of $25. The Lifetime Benefit shall commence on the first day of the month following the date on which the Employee retires (except that the monthly Lifetime Benefit of any Employee who retired before age 62 shall not commence until the first day of the month following the date on which he attains age 62) and shall be payable monthly thereafter until and including the first day of the month in which he dies, or his pension ceases for any other reason, or he is re-employed by the Company, a member of a Controlled Group of Companies, or an affiliate, whichever occurs first.

**Article III – Eligibility for and Amount of Benefits**

E.    An Employee who retired after the attainment of age 62 and on or after January 1, 1976, but prior to February 1, 1977, under the Normal, Regular Early, Special Early or Disability Retirement provisions and who had less than 30 years of Credited Service will be entitled to an Age-Service supplement in the monthly amount of $2.50 multiplied by his years of Credited Service in excess of 20 and reduced by 1/36 for each full month by which his benefit commencement date precedes his Normal Retirement Date.

F.    An Ex-Employee who terminated employment with the Company on or after January 1, 1976, but prior to February 1, 1977, shall be entitled in addition to his other benefits to a monthly Deferred Vested Supplementary Benefit equal to $2.50 multiplied by his Credited Service years in excess of 20, not to exceed 10 such excess years, at time of termination.

Payment of the Deferred Vested Supplementary Benefit shall commence at the same time as the Deferred Vested Benefit and will be subject to the same reductions as the Deferred Vested Benefit for commencement prior to the attainment of age 65.

G.    The payment of benefits as provided by this Section shall be subject to the appropriate provisions of the Plan in effect prior to March 1, 1997 except as expressly provided under this Plan.

**Section 12. Adjustments for Payments to Alternate Payee**

The amount of benefit payable to a Retired Employee or Ex-Employee will be reduced by an amount equal in value to any settlements made to alternate payees pursuant to one or more Qualified Domestic Relations Orders within the meaning of Section 414 (p) of the Internal Revenue Code of 1986. For this purpose, the value of the settlement shall be determined at the date of the settlement using UP-84 mortality tables and the then current interest rate for determining the value of immediate annuities as established by the PBGC. The same basis shall then be used to convert that value to a life annuity payable to the Employee as of his benefit commencement date and such amount reduced for any subsequent survivor elections shall be a reduction in the Employee's lifetime benefit.

**Section 13. Designated Contingent Annuitant Benefit**

A.    Optional 100% Surviving Beneficiary Benefit
Beginning on or after June 1, 2004, an employee may elect a reduced monthly life income benefit payable during the retired employee's life to provide the following survivor's benefit for a contingent annuitant designated by the employee in writing when the employee elects this form of survivorship benefit.

    (1)    If the contingent annuitant is the employee's spouse and the spouse survives the employee, the benefit payable to the spouse shall be equal to 100% of the reduced monthly life income benefit payable to the employee.

    (2)    If the contingent annuitant is not the employee's spouse and the contingent annuitant survives the employee, the contingent annuitant benefit shall be equal to the lesser of
        (i)    100% of the employee's reduced monthly life income benefit or
        (ii)    the maximum percentage of the employee's reduced monthly life income benefit set forth in Section 1.401 (a)(9)-6T A-2(c)(2) of the IRS regulations, as they may be amended from time to time.

**Article III – Eligibility for and Amount of Benefits**

B.  Optional 50% Surviving Beneficiary Benefit
Beginning on or after June 1, 2004, an employee may elect a reduced monthly life income benefit payable during the retired employee's life, and upon death, if the contingent annuitant survives the employee, a benefit equal to fifty percent (50%) of the reduced monthly life income benefit shall be paid during the life of, and to, the contingent annuitant designated by the employee in writing when the employee elects this form of survivorship benefit.

C.  Married Employees
If the employee is married at the time of the election, and the contingent annuitant is other than the employee's spouse, the spouse must execute a written consent to the election, witnessed by a Plan representative or a notary public, at the time of the application for a normal, regular, early, special early or deferred vested retirement benefit.

D.  Actuarial Equivalent
The benefit provided for under this subsection shall be the Actuarial Equivalent below) of the life income benefit that would have been payable to the retired employee if the employee had not elected a survivorship option under this subsection.  The Actuarial Equivalent shall be calculated on the basis of the 1994 Uninsured Pensioner Male Mortality Table for retirees and the 1994 Uninsured Pensioner Female Mortality Table for contingent annuitants and a six percent (6%) interest rate.

E.  Not Available for Disability Retirement
This option is not available to those employees who retire under the Disability Retirement provisions of this plan.

F.  Irrevocable Election
Once effective, this option may not be cancelled for any reason.

**Section 14.  Rollover Distributions**

A.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Article, a distributee may elect, at the time and in the manner prescribed by the Employee Benefits Committee, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

B.  Definitions
1.  <u>Eligible rollover distribution</u>: An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or Joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; effective for distributions on or after January 1, 2000, any hardship distribution described in Code Section  401(k)(2)(B)(i)(IV), Section 403(b)(7) or Section 403(b)(11) except to the extent another event has occurred that could entitle the recipient to a distribution without regard to hardship under Code Section 401(k)(2)(B)(i)(IV), Section 403(b)(7) or Section 403(b)(1).

**Article III – Eligibility for and Amount of Benefits**

2. <u>Eligible retirement plan</u>: An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

3. <u>Distributee</u>: A distributee includes an employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order.

4. <u>Direct rollover</u>: A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

**Section 15.  Overpayment Balance Under the Life and Disability Benefits Program**

Any Retired Employee having an overpayment balance under the Life and Disability Benefits Program shall be eligible for 65% of any increase in the Retired Employee's monthly basic pension benefit.  Any such reduction shall not serve to increase any benefit otherwise payable.  When the amount of the overpayment balance under the Life and Disability Program has been reduced to zero ($0.00), the retired employee's monthly amount will be increased to the then current amount with no retroactive effect.  This provision will not reduce a basic benefit increase already in pay status.

**Article IV – Commencement and Duration of Benefits**

**ARTICLE IV -  COMMENCEMENT AND DURATION OF BENEFITS**

**Section 1.  Age Retirement Benefits**

A.    Normal or Regular Early or Special Early Retirement Benefits shall be payable to an Employee on the first day of the month after such Employee becomes eligible for such benefit and applies therefor in accordance with the rules established by the Board; shall be payable on the first day of each month thereafter during the life of such retired Employee, and shall commence not sooner than 30 days following the receipt of the required written explanations of distribution options, provided however, an Employee may affirmatively elect in writing to commence the pension and supplement payments in less than such 30 days (but not less than 7 days), provided that in the event the Employee elected a deferred Regular Early Retirement Benefit, no such payment shall be made prior to the date the Employee elected the benefit to commence.

B.    Notwithstanding the above or anything in this Plan to the contrary, an Employee attaining age 70-1/2 on and after January 1, 1988, but on or before December 31, 1998 will commence monthly receipt of his accrued benefits under this Plan beginning April 1 of the calendar year immediately following the year the Employee attains or attained age 70-1/2 (unless, for such an Employee who attains age 70 1/2 during calendar year 1996, 1997 and 1998, such Employee shall elect otherwise as provided herein).  No Employee shall be eligible to receive any such payment for any month prior to April, 1990, however, and the first such monthly payment shall be April 1, 1990. No Employee attaining age 70-1/2 prior to January 1, 1988, shall be eligible hereunder. An Employee attaining age 70-1/2 after December 31, 1989, but on or before December 31, 1998 (unless an election to the contrary is made by the Employee), shall have his monthly payment based on his pension benefit accrual as of December 31 of the year in which he attains age 70-1/2. The Actuarial Value of the sum of all cash distributions received by any otherwise eligible Employee prior to his actual Retirement under this Plan will be used as an offset from any additional benefit accrual that might otherwise have been payable to such Employee as a result of his working for the Company.

If an Employee dies after the commencement of his accrued benefit distributions in compliance with the preceding paragraph, the Employee's remaining interest, if any, will be distributed after his death at least as rapidly as under the method of distribution being used as of the date of the Employee's death. If an Employee dies before accrued benefit distributions have commenced under the preceding paragraph (a) his remaining accrued benefits not payable to a designated beneficiary will be distributed within five years after the Employee's death, and (b) any portion of the Employee's remaining accrued benefits payable to a designated beneficiary shall be distributed either (i) within five years or (ii) over the life of the beneficiary (or over a period certain not extending beyond the life expectancy of the beneficiary) commencing no later than the end of the calendar year in which the Employee died (or if the designated beneficiary is the Employee's surviving spouse, commencing no later than the end of the calendar year following the calendar year in which the Employee would have attained age 70 1/2). All distributions from this Plan will be made in accordance with Section 401(a)(9) of the Code, including the minimum distribution incidental benefit requirements.

Notwithstanding any other provision of this Plan, in the case of an Employee who is otherwise eligible for monthly retirement benefits under the Plan who has attained age 70 1/2 on or after January 1, 1999 and who has not retired or otherwise incurred a break in seniority, the monthly benefit payable under the Plan shall commence upon retirement, subject to any applicable reductions for survivorship, as provided in Article IV Section 8.  At the time of such Employee's retirement under the Plan, the Employee's

**Article IV – Commencement and Duration of Benefits**

accrued benefit at age 70 1/2 under the Plan will be actuarially increased, in accordance with Section 401 (a)(9)(c) of the Internal Revenue Code to take into account the period after age 70 1/2 in which such employee was not receiving benefits under the Plan, to the extent required by law.

An active Employee who attained age 70 1/2 during calendar years 1996, 1997 and 1998 and who otherwise would commence his/her monthly retirement benefit in accordance with this Section (B) on April 1, 1997, April 1, 1998 or April 1, 1999 respectively may irrevocably elect, on a form approved by the Board, to commence distribution respectively on April 1, 1997, April 1, 1998 and April 1, 1999 or thereafter. The Employee's accrued retirement benefit will be actuarially increased in accordance with the immediately foregoing paragraph to take into account the period after age 70 1/2 in which such Employee was not receiving benefits under the Plan, to the extent required by law.

C.   Normal or Regular Early or Special Early Retirement Benefits shall be suspended during any period in which the Retired Employee returns to active service within the Company, a member of a Controlled Group of Companies or an affiliated company and receives pay for 40 or more hours of service (as referred to in Department of Labor Regulations 2530.200b-2(a)(1) and (a)(2)) for any calendar month. Upon his subsequent termination of employment, such Employee shall be entitled to a Retirement Benefit which shall be the sum of the Retirement Benefit that he was receiving at the time of re-employment (adjusted for any increases granted to Retired Employees with the same previous retirement date) and the Retirement Benefit attributable to credited service earned subsequent to the date of re-employment.

D.   Notwithstanding anything in this Plan to the contrary, the payment of benefits under the Plan to an Employee will begin not later than the 60th day after the latest of the close of the calendar year in which;

(1)   the date on which the Employee attains the earlier of age 65 or the normal retirement age specified under the plan;

(2)   occurs the 10th anniversary of the year in which the Employee commenced participation in the Plan; or

(3)   the Employee terminates the service with the employer.

**Section 2.  Disability Retirement Benefits**

A.   Disability Retirement Benefits shall be payable to an Employee whose application is properly approved, in accordance with the rules established by the Board, on the first day of the month in which expires a waiting period of 5 months from the date upon which his incapacity was incurred, or upon his application for such a benefit, if later, and shall be payable on the first day of each month thereafter during the life of such Employee, subject to paragraph C following, and shall commence not sooner than 30 days following the receipt of the required written explanations of distribution options, provided however, an Employee may affirmatively elect in writing to commence the pension and supplement payments in less than such 30 days (but not less than 7 days).

B.   In any case where the Board is required to make a finding with respect to whether any Employee applying for, or whether any Retired Employee during Retirement, is Permanently and Totally Disabled, the Employee shall be required to submit to an examination by a competent diagnostic medical clinic selected by the Board for the purpose of determining whether the Employee is Permanently and Totally Disabled, such medical examination shall be of such scope as may be determined by the diagnostic clinic to be necessary for this purpose.

**Article IV – Commencement and Duration of Benefits**

In the event the majority of the Company and Union members of the Board so decide, the Board may substitute examination by an equivalent examining agency in place of examination by a diagnostic clinic. No Employee or Retired Employee who refuses to submit to a medical examination properly ordered by the Board shall be eligible for or continue to receive Disability Retirement Benefits, provided that such a Retired Employee shall not be required to submit to such an examination more often than twice a year. The cost of such medical examinations as are required by the Board hereunder, including the cost of transportation necessary to enable an Employee or Retired Employee to undergo a required examination, shall be paid by the Trust Fund.

C.   Notwithstanding any other provision in this Plan to the contrary, the 5 month period described in Section 2. A. above shall be waived for an employee who

(i)   while on medical leave of absence applied for the Disability Retirement Benefit as provided in Article IV Section 2. (A). above except that, effective January 1, 2004,

(a)   in the case of an occupational injury or illness incurred in the course of his employment by the Corporation resulting in death, the leave of absence requirement shall not apply and

(ii)   died prior to completion of the 5 month period directly or indirectly as a result of the condition which gave rise to the medical leave of absence (for example excluding death as a result of homicide, suicide, or accidental death).

The surviving spouse of such an Employee shall be eligible to receive the survivor's benefit the spouse would have been eligible to receive if the Employee had been approved for a Disability Retirement Benefit and survived until the end of the 5 month period under any of the applicable survivor benefits provisions of this Plan, excluding a benefit payable under Article III Section 9.

D.   Disability Retirement Benefits shall be terminated:

(1)   If the Retired Employee returns to work, prior to attaining the age of 65, with the Company, a member of the Controlled Group of Companies or an affiliated company (and such Credited Service and Vesting Service which he had at the time of Disability Retirement shall be reinstated);

(2)   If the Board determines on the basis of a medical examination that the Retired Employee is sufficiently recovered to return to work;

(3)   Upon the Retired Employees attaining the age of 65, at which time the Normal Retirement Benefit to which he is entitled, based on his Credited Service and Normal Retirement benefit rate (together with any appropriate subsequent increases thereto) at the date of his Disability Retirement shall become payable.

**Section 3.  Supplemental or Temporary Benefits**

Supplemental or Temporary Benefits shall be payable in the manner as provided in Article III, sections 6 and 10, upon proper application therefor and subject to the appropriate benefit suspension and/or termination provisions in this article IV.

## Article IV – Commencement and Duration of Benefits

**Section 4.  Deferred Vested Benefits**

Deferred Vested Benefits shall be payable to an Ex-Employee who makes proper application therefor beginning on the first day of the month after he attains age 57 (age 55 on or after October 1, 2003) or after his application for benefit commencement, if later, and shall be payable on the first day of each month thereafter during the life of such Ex-Employee, and shall commence not sooner than 30 days following the receipt of the required written explanations of distribution options, provided however, an Employee may affirmatively elect in writing to commence the pension and supplement payments in less than such 30 days (but not less than 7 days).

An Ex-Employee whose Deferred Vested Benefit has commenced and who subsequently is re-employed by the Company, a member of a Controlled Group of Companies or an affiliated company and receives pay for 40 or more hours of service (as referred to in Department of Labor Regulations 2530.200b-2(a)(1) and (a)(2)) for any calendar month shall have his benefit suspended for such month. Upon his subsequent termination of employment, the benefit payable shall be the sum of the Deferred Vested Benefit that he was receiving at the time of his re-employment (adjusted for any increases granted to Retired Employees with the same previous date of termination) and the benefit attributable to Credited Service earned since the date of re-employment.

**Section 5.  Provisions in Effect During Benefit Suspension**

A.      During the period of such suspension pursuant to the preceding sections, the provisions of Article III Section 8D shall apply.  At his subsequent Retirement, the Employee may make a new election under the provisions of Article III Section 8.

B.      In the event a benefit is suspended under the preceding sections, the ratification provision of Article III Section 1C shall apply.

C.      In the event a Retired Employee or Ex-Employee is re-employed by the Company or by a member of the Controlled Group of Companies or by an affiliated company it shall be his obligation to notify the Company of such re-employment.  Prior to such re-employment a Retired or Ex-Employee may request a determination of whether or not contemplated re-employment will result in a benefit suspension and the Company shall, within a reasonable period of time, render its decision.  If a Retired or Ex-Employee fails to notify the Company of such re-employment, it shall be presumed that such person is employed on a regular full time basis and is receiving pay for 40 or more hours of service during each month in which he is employed.  Any benefit payments made to the Retired or Ex-Employee during such reemployment shall be deducted from any future benefit payments due such person except that such deduction shall be limited to 25 of the benefit payments after the initial payment which may be offset in its entirety.  The Company may request, as a condition for receiving future benefits, that the Retired or Ex-Employee provide factual information sufficient to establish that his re-employment does not constitute the type of employment for which benefits would be suspendable under A above.  Any benefits suspended for months in which the Retired or Ex-Employee was not in the type of employment for which benefits would be suspendable under A above shall be paid to him at his next regularly scheduled time for payment of benefits under this Plan.

D.      In the event an Employee or Ex-Employee whose benefit has commenced is re-employed on either a part-time or temporary basis for less than 40 hours per month, or on a contract fee basis, by the Company or by a member of the Controlled Group of Companies or by an affiliated company, his monthly benefit shall continue and he shall not accrue any additional benefits under the Plan by virtue of such re-employment.

**Article IV – Commencement and Duration of Benefits**

**Section 6.  Suspension of Benefits at Option of Employee**

Notwithstanding any other provisions of the Plan, a person entitled to receive a pension may, without disclosure of his reasons, request the Board in writing to suspend for any period of payment all or any part of such pension (except his Early Retirement Temporary Benefit) otherwise payable to him. The Board, on receipt of such request, shall authorize such suspension, and the person shall be deemed to have forfeited all rights to the pension so suspended, but shall retain the right to have the full pension otherwise payable to him hereunder reinstated as to future monthly payments upon written notice to the Board of his desire to revoke his prior request for a suspension under this Section. In the event of the death of a person who has elected to suspend a Normal, Regular Early, Special Early or Disability Retirement Benefit, or a Deferred Vested Benefit hereunder, any Death Benefits provided under Article III, Section 7 and any Survivor Benefits payable under Article III, Section 8 shall be payable to his beneficiary or his estate, as therein provided, notwithstanding the election to suspend.

**Section 7.  Facility of Payment**

Every person receiving or claiming benefits under the Plan shall be conclusively presumed to be mentally competent and of age until the Board receives a written notice, in a form and manner acceptable to it, that such person is incompetent or a minor, and that a guardian or other person legally vested with the care of his estate has been appointed.  In the event the Board finds that any person to whom a benefit is payable under the Plan is unable to properly care for his affairs, or is a minor, then the payment due (including benefits that would be suspended in accordance with Section 5 above) may be paid to the spouse, a child, a parent, or a brother or sister, or to any person deemed by the Board to have incurred expense for such person otherwise entitled to payment (unless a prior claim therefor shall have been made by a duly appointed legal representative).  In the event a guardian of the estate of any person receiving or claiming benefits under the Plan shall be appointed by a court of competent jurisdiction, payments shall be made to such guardian provided that proper proof of appointment is furnished in a form and manner suitable to the Board.  Any payment made under the provisions of this Section 7 shall be a complete discharge of liability therefor under the Plan.

**Section 8.  Special Lump Sum Payments**

A Participant who retired under the provisions of Section 1 or 2 of this Article IV prior to October 1, 2007 or the eligible surviving spouse of such a Participant who is receiving a survivor benefit will be eligible to receive a Special Lump Sum Payment as of December 2007, December 2008, December 2009 and December 2010. The amount payable to such Retired Participant in 2007 is $700. The Special Lump Sum Payment to an eligible spouse in 2007 will be 65% of this amount ($455). Thereafter (in December 2008, 2009 and 2010), the lump sum will be prorated based on years of Credited Service. For every year of Credited Service the retiree will receive a lump sum of $23.33, with a minimum payment of $233.30, and to a maximum Payment of $700 for a Retired Participant whose Credited Service equaled or exceeded 30 years at retirement. The Special Lump Sum Payment to an eligible spouse in 2008, 2009 and 2010 will be 65% of the appropriate amount based on the deceased Participant's years of Credited Service. Retirees with an overpayment under the Life and Disability Benefits Program will be eligible for 50% of the applicable lump sum amount. Retirees with service under both this Plan and another union plan will receive a maximum of $700 for the first Special Lump Sum Payment and their service maximum up to $700 prorated between the plans in 2008, 2009, and 2010.

**Article V – Financing**

## ARTICLE V -  FINANCING

### Section 1.  Trust Fund

A.      The Pension Investment Committee will establish one or more trust funds or will enter into one or more insurance contracts, or both, to carry out the purpose of this Plan.  The  Pension Investment Committee may select the trustees, insurance company or insurance companies and may change them from time to time. Any trustee designated hereunder shall be a bank or trust company qualified under the laws of the United States or of any state to operate thereunder as a trustee.  The  Pension Investment Committee may modify any trust agreement or insurance contract entered into pursuant to this Plan from time to time to accomplish the purposes of this Plan.

B.      The Pension Investment Committee shall determine the form and terms of any trust agreement or insurance contract relating to the assets of this Plan.  Any trust agreement may permit the trustee or trustees to receive, hold, invest and disburse contributions made under this Plan, as well as interest and other income from the trust assets (the "Trust Fund").  In addition, any such trust agreement may permit the Pension Investment Committee to direct the transfer of all or a portion of the assets of the Trust Fund to a master or group trust established as a medium for the collective investment of funds relating to pension plans of the Company and/or its parent company and/or any of its subsidiaries.

Any trust agreement established under this Plan, including any master or group trust to which assets of this Plan are transferred, may provide for the appointment by the  Pension Investment Committee of one or more investment managers to manage, operate and invest all or a portion of the assets of such trusts, and may permit the Pension Investment Committee to direct the trustees and/or investment managers with respect to the investment of trust assets.  Any such investment manager shall be either (i) a bank; (ii) an insurance company; or (iii) an investment advisor registered as such under the Investment Advisors Act of 1940.

C.      Any trust agreement, including any master or group trust agreement, and any insurance contract relating to this Plan may authorize the trustee or insurance company to pay expenses incident to the operation and management of this Plan. Benefit payments shall be made: (i) from any trust or trusts established pursuant to this Plan; (ii) from a master or group trust to which assets relating to this Plan have been transferred; or (iii) by any insurance company or companies with which the Company has contracted with respect to benefits under this Plan.  The Agreement establishing any master or group trust to which assets of this Plan are transferred shall prohibit the portion of such trust which equitably belongs to this Plan from being used for any purposes other than providing benefits to Employees or their beneficiaries who are entitled to benefits under this Plan.

### Section 2.  Contributions

The Company shall finance the Plan by contributions provided that during the period of this Agreement the annual contribution with respect to the Plan shall not be less than the minimum contributions required under the Act.

**Article V – Financing**

**Section 3.  Employee Contributions**

No Employee shall make or be required to make any contributions under the Plan.


**Section 4.  Company Interest**

The Company shall have no right, title or interest in the contributions made by it to the trustee and no part of the Trust Fund or insured fund shall revert to the Company, except that after satisfaction of all liabilities of the Plan as set forth in Article X, any remainder shall revert to the Company.


**Section 5.  Contribution Liability**

The pension benefits of the Plan shall be only such as can be provided by the assets of the Trust Fund or by any insured fund, and there shall be no liability or obligation on the part of the Company to make any further contributions to the trustee or insurance company in event of termination of the Plan. No liability for the payment of pension benefits under the Plan shall be imposed upon the Company, the Officers, Directors or Stockholders of the Company or the Committee except as required by law.

**Article VI – Procedures for Handling Questions of Fact**

**ARTICLE VI -  PROCEDURE FOR HANDLING QUESTIONS OF FACT**

**Section 1.  Written Statement of Participant**

If any question shall arise concerning an Employee, former Employee, Retired Employee, or surviving spouse, about the age of the Employee, former Employee, Retired Employee, or surviving spouse, the date of the beginning or the total number of months of his Credited Service, his eligibility for a pension under this Plan, or the amount of a pension, supplemental allowance or special age 65 benefit, if any, to which he claims to be entitled, the Employee or the officers of the Local Union on his behalf or the former Employee or the Retired Employee or the surviving spouse shall prepare a written statement which he shall sign, provide all facts and circumstances concerning the matters and send it to the Board of Administration for the Board's review and determination.

**Section 2.  Written Notification of Claim Denial**

If a claim is denied or partly denied, the Employee, former Employee, or surviving spouse will be notified in writing and given an opportunity for a review. The written denial will give:

(a)      specific reason(s) for denial;

(b)      a reference to the specific provision(s) of the Plan on which the denial is based;

(c)      a description of any additional material or information necessary to perfect the claim and the reason why such material or information is needed;

(d)      an explanation of the Plan's appeal procedure; and.

(e)      the time limits applicable to such procedure, including a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following a denial of a benefit claim on review.

The Employee Benefits Committee will adopt additional claims procedures with respect to claims involving disability determinations under the Plan in accordance with applicable Department of Labor regulations.

**Section 3.  Appeal Procedure**

Any Employee, former Employee, or surviving spouse who applied for benefits under this Plan and is ruled ineligible or not qualified, or who believes he did not receive the full amount of benefits to which he is entitled, or who is otherwise adversely affected by any action of the Board of Administration, shall have the right to request the Board to review the matter, provided that he makes such a request in writing, within sixty (60) days after being apprised of the Board's action.  Not later than sixty (60) days after the Board's receipt of the appeal, the Board shall issue a written decision.  However, if specific circumstances so dictate, the decision by the Board may be made within 120 days after receipt of the request for review.  The decision on review shall be in writing and shall include specific reasons for the decision, including a reference to the sections of the Plan upon which the decision is based. A decision by the Board of Administration is final and binding.

**Article VII – Board of Administration**

## ARTICLE VII - BOARD OF ADMINISTRATION

### Section 1.  Establishment

There shall be established a Board of Administration consisting of 6 members: 3 shall be appointed by the Company (referred to as "Company members"); 2 shall be appointed by the Union and one by the International Union, UAW (collectively referred to as the "Union members").  The Company and the Union members shall serve without compensation from the Trust Fund.  Either the Company or the Union at any time may remove a member appointed by it and may appoint a member to fill any vacancy among the members appointed by it.  The Company and the Union shall have the further right to designate alternate members who shall have authority to act in the absence of regular members.  Both the Company and the Union shall notify each other in writing of the regular and alternate members respectively appointed by them before any such appointment shall be effective.

### Section 2.  Impartial Chairman

In the event of any dispute arising out of this Plan which cannot be settled by the Board, the Board shall then appoint an Impartial Chairman whose vote shall settle said dispute.  If the Company members and the Union members fail to agree upon an Impartial Chairman in 3 days, such Impartial Chairman shall be appointed by the Labor-Management Citizen's Commission on the following basis:  The Labor-Management Citizen's Commission shall name 5 persons.  The Company members shall have the right to strike 2 names and the Union members shall have the right to strike 2 names.  The remaining name shall be the person selected to serve as Chairman for that one dispute.

### Section 3.  Powers of the Board

The Board of Administration shall have discretionary authority to interpret the Plan and determine eligibility for and the amount of benefits in accordance with the terms of this Pension Plan.  Any interpretation or determination shall be given full force and effect unless it can be shown that the interpretation or determination is arbitrary and capricious.  In carrying out its duties, the Board shall have the following powers:

A.      To adopt and prescribe regulations and procedures to be followed by Employees, former Employees, and surviving spouses in filing applications for benefits, and for the furnishing and verification of evidence and proofs necessary to establish Employees' and beneficiaries' rights to benefits under the Plan.

B.      To make findings of facts and determinations as to the rights of any Employee, former Employee, or surviving spouse applying for Retirement benefits as to afford any such individual dissatisfied with any such findings or determination the right to a hearing thereon.  Such determination of the Board shall be final and binding on all parties.

C.      To develop procedures for the establishment and verification of Credited Service and Vesting Service of Employees, and after affording Employees an opportunity to make objection with respect thereto, to establish such facts conclusively in advance of Retirement.

**Article VII – Board of Administration**

D.      To obtain from the Company, the Committee, any bargaining agent representing Employees, former Employees, surviving spouses and beneficiaries, such information as shall be necessary for proper administration of the Plan.

E.      To establish appropriate procedures for authorizing the trustee to make benefit payments from the Trust Fund to persons entitled to benefits under the Plan, and to obtain from the trustee such information as shall be necessary for proper administration of the Plan.

F.      To prepare and distribute in such manner as the Board determines to be appropriate, information explaining the Plan.

G.      To furnish the Company, the Committee, and any bargaining unit representing Employees, upon request, such reports with respect to the administration of the Plan as are reasonable and appropriate.

H.      To obtain reports on receipts and disbursements from the Trust Fund not more frequently than quarterly and an annual report by the actuary on the state of the Trust Fund.

I.      To collect, evaluate, analyze, and prepare statistical and other data with respect to the administration of the Plan, and to make an annual report which shall review, analyze, and summarize the operation of the Plan.

J.      To maintain or arrange for such office space, equipment, services and other assistance as may be necessary for the proper and economical administration of the Plan, which the Company will furnish and for which it will be reasonably compensated from the pension fund with due regard to economical administration of the Plan.


**Section 4.  Meetings**

To constitute a quorum for transaction of business, there shall be required to be present at any meeting of the Board at least 2 Union members and 2 Company members. At Board meetings the Company members shall have 3 votes and the Union members shall have 3 votes, the vote of any absent members being divided equally between the members present appointed by the same party. Decision of the Board shall be by majority of the votes cast.


**Section 5.  Reliance**

The Board and any member thereof shall be entitled to rely upon the correctness of any information furnished by the trustee, by any bargaining agent representing Employees, by the Committee, or by the Company. Neither the Board nor any of its members, nor the Union, nor the Company, nor the Committee, nor any Officers or other representative of the Union or the Company shall be liable, because of any act or failure to act on the part of the Board or any of its members, to any person whatsoever, except that nothing herein shall be deemed to relieve any such individual from liability for his own fraud or bad faith.

The Company will administer the Plan and the benefits under the Plan within the limits imposed on it by this Article VII and the Committee.

**Article VIII – Nonalienation of Benefits**

**ARTICLE VIII -  NONALIENATION OF BENEFITS**

**Section 1.  Nonalienation**

No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, or encumbrance of any kind, except in accordance with the provisions of a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p). Any attempt to alienate, sell, transfer, assign, pledge or otherwise encumber any such benefits, whether presently or thereafter payable, shall be void. No pension benefit nor the Trust Fund or insured fund shall in any manner be liable for or subject to debts or liability of any Employee, Retired Employee, or Ex-Employee entitled to any pension benefit. If the Employee, Retired Employee or Ex-Employee shall, or shall attempt to, alienate, sell, transfer, assign, pledge or otherwise encumber his benefits under the Plan or any part thereof, or if by reason of his bankruptcy or other event happening at any time such benefits would devolve upon anyone else or would not be enjoyed by him, then the Board in its discretion may terminate his interest in any such benefit and hold or apply it to or for the benefit for such person, his spouse, children, or other dependents, or any of them in such manner as the Board may deem proper.

Notwithstanding the above, amounts of not less than $80.00, but in no event more than 10% of a retired Employee's monthly benefit, may be withheld to repay any outstanding overpayment owing to any benefit plan of a member of the Controlled Group of Companies, pursuant to written authorization and direction acceptable to the Company.

**Section 2.  Union Dues and Taxes**

Notwithstanding any contrary provisions of the Plan, including but not limited to the provisions contained in this Article VIII, any Retired Employee or Ex-Employee entitled to receive a pension may, pursuant to the Retired Employee's or Ex-Employee's written authorization and direction, authorize the following deductions described in paragraphs A, B(1) and C of this Article VIII:

A.      Union Dues
        Monthly Union dues in the amount of $2.00 from any monthly pension and direct that such dues be remitted to the Union.  The trustee of the Plan shall be, and hereby is, authorized upon receiving specific authorization by the Board to deduct from the monthly pension payment payable for the month of June, 1967, and thereafter during the terms of the Collective Bargaining Agreements in which this Plan is incorporated by reference, to any Retired Employee, Surviving Spouse or Ex-Employee who shall have duly executed an "Authorization for Check Off Dues" in the form annexed to this Plan, or any modified form adopted by the Board, in accordance with the terms of such authorization and to the extent that applicable laws and regulations, state and federal, shall permit, membership dues in the amount of $2.00 per month.  The Union shall indemnify and hold harmless the Company, the Committee and the members of the Board and the trustee of the Jeep Corporation - UAW Retirement Income Plan, against any and all liability, including reasonable attorney's fees, that may arise by reason of this Section 2.

B.      Taxes
        (1)     Federal, state or city income taxes withheld pursuant to federal, state or local statutes or regulations upon submission to the Company of written authorization and direction acceptable to the Company. The deduction for federal income taxes will be automatic unless the Employee elects otherwise by submitting to the Company written authorization and direction acceptable to

**Article VIII – Nonalienation of Benefits**

the Company. The Employee may elect voluntary state withholding in any state on and after June 1, 1994 if permitted by the state by submitting to the Company written authorization and direction acceptable to the Company.

(2)     Notwithstanding the provisions of Section 2 B(1) above, the trustee shall be authorized to withhold from the monthly benefit state income taxes where required by state statutes or regulations unless the Employee (where permitted by such state statutes or regulations) has submitted written authorization and direction not to do so.

C.     Optional type insurance coverage (e.g., HMO, DMO).

The Company shall not be liable by reason of this Section 2 for payments of any monies to any person other than as required by the Plan.  Either party hereto shall have the right, in the case of a good faith doubt as to legality arising as a result of an opinion of the Attorney General or a decision of a Federal Court of Appeals, to terminate the effectiveness of this Section 2 at any time on 30 days written notice to such effect; such termination shall have no effect upon the other provisions of the Plan.

D.     As approved in Appendix I, in addition to the other limitations set forth in this Plan and notwithstanding any other provisions of this Plan, the accrued benefit, including the right to any optional benefit provided in this Plan (and all other defined benefit plans required to be aggregated with this Plan under the provisions of Section 415 of the Internal Revenue Code of 1986), shall not, during any calendar year beginning after December 31, 1982, increase to an amount in excess of the amount permitted under Section 415 of the Code.

**Article IX – Amendment and Duration of the Plan**

**ARTICLE IX -  AMENDMENT AND DURATION OF THE PLAN**

**Section 1.  Amendment and Duration**

The Plan may be modified, altered or amended upon mutual agreement of the Company and the Union for the duration of the Plan as established under the Collective Bargaining Agreement.

**Section 2.  Plan Qualification**

It is the intent of the Company and the Union that this Plan shall be and remain an approved Plan so as to qualify for tax exemption under the applicable provisions of the Internal Revenue Code.  The Company and the Union agree to make any modifications, alterations or amendments to this Plan and/or the trust agreement necessary to obtain and retain such approval of the Commissioner of Internal Revenue as may be necessary to establish the deductibility for income tax purposes, under Section 404 of the Internal Revenue Code, of any and all contributions made by the Company under this Plan as being qualified under the provisions of Section 401, 404 and 501(a) or other applicable provisions of the Internal Revenue Code.  Any modification, alteration or amendment of the Plan and/or the trust agreement, made in accordance with this Section 2, may be made retroactively, if necessary or appropriate, to qualify or maintain the Plan as a Plan and Trust meeting the requirements of Section 401, 404 and 501(a) of the Internal Revenue Code, as now in effect or hereafter amended, or any other applicable provisions of the federal tax laws, as now in effect or hereafter amended or adopted, and the regulations issued thereunder.  All submission schedules for qualification approval and all amendments hereafter adopted shall be filed by the Company.

**Article X – Termination of Merger of the Plan**

**ARTICLE X -   TERMINATION OR MERGER OF THE PLAN**

**Section 1.  Termination of the Plan**

In the event of discontinuance of the Plan, the amount of the Trust Fund assets held by the trustee shall be allocated, subject to provision for expenses of administration or liquidation, to provide the pension benefits of Employees, Retired Employees and Ex-Employees eligible for a Deferred Vested Benefit based on their Credited Service to the date of termination of the Plan and the benefits to eligible surviving spouses, in the manner and order specified in Section 4044 of the Act.  Upon the termination or partial termination of the Plan, the rights of all Employees and such former Employees to pension benefits accrued hereunder to the date of such termination or partial termination, to the extent such pension benefits are funded as of such date, are nonforfeitable.

Such allocation of the assets in the Trust Fund shall be accomplished by distribution in cash, or in annuities purchased by the Trustee for the benefit of the persons involved, or in any other manner at the discretion of the Committee.  No Employee, former Employee or any other person shall have any rights or claims under the Plan beyond the capacity of the Fund to provide benefits in accordance with the above provisions, except as provided in the Act.

Should any funds remain after satisfaction of all liabilities for pension benefits as aforesaid, the surplus, if any, in the Fund shall be delivered over and returned to the Company.

Upon termination of the Plan, benefits of any missing participants shall be treated in accordance with Section 4050 of ERISA.

**Section 2.  Merger of Plan**

In the case of a merger or consolidation of the Plan with, or transfer of assets and liabilities of the Trust to, any other plan or trust qualifying under Internal Revenue Code Section 401, the documents effecting such merger or consolidation or transfer shall provide that each Participant would receive a benefit immediately after such merger, consolidation, or transfer (if either this Plan or such other plan then terminated) which is equal to or greater than the benefit he would have been entitled to receive immediately before such merger, consolidation, or transfer (if this Plan had then terminated).

**Article XI – Named Fiduciaries**

**ARTICLE XI -  NAMED FIDUCIARIES**

There shall be three Named Fiduciaries under this Plan, the Union, the  Pension Investment Committee and the Employee Benefits Committee. All of the fiduciary responsibilities of the Union under this Pension Plan are hereby allocated to the Director, Region 2B, UAW. All of the fiduciary responsibilities of the Company under this Pension Plan are hereby allocated as follows:

(i) The  Pension Investment Committee of the Board of Directors of the Company shall have the fiduciary responsibilities set out in Article V of this Pension Plan of selecting the corporate trustee or trustees, of removing any trustee or trustees, of selecting successors, and of determining the form and terms of the trust agreement with the trustee or trustees, and said Pension Investment Committee shall have no other fiduciary responsibilities under this Pension Plan.

(ii) All of the fiduciary responsibilities of the Company under this Pension Plan not hereinabove specifically allocated to said  Pension Investment Committee are hereby allocated to the Employee Benefits Committee the predecessor of which was established by the Board of Directors of Chrysler Corporation by Resolution dated December 10, 1975, as constituted from time to time.

In carrying out the fiduciary responsibilities established under this Pension Plan:

A. Any one of the three Named Fiduciaries under this Pension Plan may allocate any or all of its fiduciary responsibilities to any one or both of the other Named Fiduciaries.  Any such allocation shall be effective only if accepted in writing by the Named Fiduciary to whom the fiduciary responsibility has been allocated.

B. Any one of the three Named Fiduciaries under this Pension Plan may designate persons (other than one or both of the other Named Fiduciaries) to carry out the fiduciary responsibilities under this Pension Plan of the Named Fiduciary making such designation.

C. Any allocation set forth in Paragraph A. above or any designation set forth in Paragraph B. above shall be set forth in writing.

D. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Pension Plan.

E. A Named Fiduciary, or a fiduciary designated by a Named Fiduciary as set forth in Paragraph B. above, may employ one or more persons to render advice with regard to any responsibility such fiduciary has under the Pension Plan.

F. The Company, by resolution adopted by the  Pension Investment Committee, may appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of the Pension Plan.

**Appendix A - Benefit Class Codes**

## APPENDIX A

## BENEFIT CLASS CODES

A Benefit Class Code for the sole purpose of Article III Sections 1,2,3,4 and 5 of this Plan is established for each job classification that is in effect on October 1, 1999 based on maximum hourly base rate (which term as used herein shall include incentive earnings unless otherwise noted) applicable to the job classification on October 1, 1999 as follows:

|  | For Job Classifications Having a Maximum Base Hourly Rate |  |  | Benefit Class Code |
|---|---|---|---|---|
| October 29, 2007 | $28.10 | or less |  | A |
| and | $28.11 | through | $28.40 | B |
| after | $28.41 | through | $29.79 | C |
|  | $29.80 | and over |  | D |

This Benefit Class Code applicable to an Employee is the Benefit Class Code for the job classification held by the Employee for the greatest number of calendar days during the 24 consecutive months immediately preceding his last day worked.

The Base Hourly Rate to Benefit Class Code conversion table above lists the Hourly Rate to Benefit Class Code conversion when wage parity for comparable Job Classifications between Jeep-UAW and DaimlerChrysler-UAW exists.  For periods prior to the attainment of wage parity, the Benefit Class Code for the comparable DaimlerChrysler-UAW Job Classification is used to determine the Benefit Class Code for an Employee covered under this agreement.

The Benefit Class Code established Pursuant to this Plan for any new job classification shall be whichever Benefit Class Code is applicable to other job classifications having the same maximum base hourly rate on the date that such new job classification is Put into effect, and further, that with respect to a job classification that is obsolete on the date as of which an Employee retires or loses his seniority, a hypothetical maximum base hourly rate applicable thereto shall be determined by increasing the maximum base hourly rate for that job classification at the time of its discontinuance to the extent necessary so as to give effect to general wage increases (including cost-of-living allowance transfers) that have occurred since such discontinuance and the Benefit Class Code for such classification so derived shall be whichever Benefit Class Code herein is applicable to other classifications having the same maximum base hourly rate on that date.

In the event an Employee is transferred to a job which results in a lower basic benefit rate, such Employee's Deferred Pension Benefit, if any, shall not be less than the amount of his accrued benefit on the date of such transfer to such job.

**Appendix B – Basic Benefit**

**APPENDIX B**
**(Basic Benefit)**

**Rate Per Year of Credited Service**[1,2]
**For Benefits Payable October 2007**

| Retirement Date | For Benefits Payable October 2007 and after |
|---|---|
| Prior to March 1, 1985 | $28.50 |
| March 1, 1985 through February 28, 1986 | $29.75 |
| March 1, 1986 through February 28, 1987 | $29.85 |
| March 1, 1987 through February 29, 1988 | $29.95 |
| March 1, 1988 through February 28, 1989 | $32.95 |
| March 1, 1989 through February 28, 1990 | $33.05 |
| March 1, 1990 through February 28, 1991 | $34.15 |
| March 1, 1991 through February 28, 1994 | $36.35 |
| March 1, 1994 through February 28, 1997 | $39.35 |
| March 1, 1997 through September 30, 1997 | $42.75 |

**Appendix B – Basic Benefit**

| Benefit Commencement Date | Benefit Class Code | For Benefits Payable October 2007 and after |
|---|---|---|
| October 1, 1997 | A | $42.50 |
| through | B | $42.75 |
| September 30, 1999 | C | $43.00 |
| | D | $44.25 |
| | | |
| October 1, 1999 | A | $48.70 |
| through | B | $48.95 |
| September 30, 2003 | C | $49.20 |
| | D | $49.45 |

**Monthly Basic Pension Rates[1,3]**

| Benefit Commencement Date | Benefit Class Code | For Benefits Payable October 2007 and after |
|---|---|---|
| October 1, 2003 | A | $52.90 |
| through | B | $53.15 |
| September 30, 2007 | C | $53.40 |
| | D | $53.65 |

[1]  Eligible surviving spouses receive a percentage of the calculated amount based on provisions of the Plan

[2]  The above rates are applicable to retirees with Dates of Retirement prior to September 1, 2003 who have no Life and Disability Benefits Program overpayment balance due to the Company. For those retirees with an overpayment balance under the Life and Disability Benefits Program, the applicable amount is reduced by $1.00 for each month of Credited Service until the overpayment balance has been reduced to zero ($0.00). Any such reduction shall not serve to increase any benefit otherwise payable. When the overpayment balance under the Life and Disability Benefits Program has been reduced to zero ($0.00), the retired employee's monthly rate will be increased to the applicable rate above with no retroactive effect.

[3]  The above rates are applicable to retirees with Dates of Retirement on or after September 1, 2003 and prior to August 31, 2007 who have no Life and Disability Benefits Program overpayment balance due to the Company. For those retirees with an overpayment balance under the Life and Disability Benefits Program, the applicable amount is reduced by $1.00 to the applicable rate in Table B2 of the Prior Pension Plan for each month of Credited Service until the overpayment balance has been reduced to zero ($0.00). Any such reduction shall not serve to increase any benefit otherwise payable. When the overpayment balance under the Life and Disability Benefits Program has been reduced to zero ($0.00), the retired employee's monthly rate will be increased to the applicable rate above with no retroactive effect.

**Monthly Basic Pension -Table B 1**

**Appendix B – Basic Benefit**

**For Benefit Commencement Dates on or After October 1, 2007 and no Benefit Overpayment Recovery under the Life and Disability Benefits Program during the 2007 Agreement and Payments Effective:**

| Benefit Commencement Date | Benefit Class Code | 10-1-07 through 9-1-08 | 10-1-08 through 9-1-09 | 10-1-09 through 9-1-10 | 10-1-10 and after |
|---|---|---|---|---|---|
| For Benefits commencing 10-1-07 and after | A | $52.90 | $53.10 | $53.30 | $53.55 |
| | B | 53.15 | 53.35 | 53.55 | 53.80 |
| | C | 53.40 | 53.60 | 53.80 | 54.05 |
| | D | 53.65 | 53.85 | 54.05 | 54.30 |

**For Benefit Commencement Dates on or after October 1, 2007 with a Benefit Overpayment Recovery under the Life and Disability Benefits Program during the 2007 Agreement and Payments Effective:**

| Benefit Commencement Date | Benefit Class Code | 10-1-07 through 9-1-08 | 10-1-08 through 9-1-09 | 10-1-09 through 9-1-10 | 10-1-10 and after |
|---|---|---|---|---|---|
| For Benefits commencing 10-1-07 and after | A | $51.90 | $52.00 | $52.10 | $52.25 |
| | B | 52.15 | 52.25 | 52.35 | 52.50 |
| | C | 52.40 | 52.50 | 52.60 | 52.75 |
| | D | 52.65 | 52.75 | 52.85 | 53.00 |

**For Benefit Commencement Dates between October 1, 2007 and September 1, 2008 with a Benefit Overpayment Recovery under the Life and Disability Benefits Program beginning October 1, 2008 Payments Effective**

| Benefit Commencement Date | Benefit Class Code | 10-1-07 through 9-1-08 | 10-1-08 through 9-1-09 | 10-1-09 through 9-1-10 | 10-1-10 and after |
|---|---|---|---|---|---|
| For Benefits commencing 10-1-07 and after | A | $52.90 | $53.00 | $53.10 | $53.25 |
| | B | 53.15 | 53.25 | 53.35 | 53.50 |
| | C | 53.40 | 53.50 | 53.60 | 53.75 |
| | D | 53.65 | 53.75 | 53.85 | 54.00 |

**For Benefit Commencement Dates between October 1, 2007 and September 1, 2009 with a Benefit Overpayment Recovery under the Life and Disability Benefits Program beginning October 1, 2009 Payments Effective**

**Appendix B – Basic Benefit**

| Benefit Commencement Date | Benefit Class Code | 10-1-07 through 9-1-08 | 10-1-08 through 9-1-09 | 10-1-09 through 9-1-10 | 10-1-10 and after |
|---|---|---|---|---|---|
| For Benefits commencing 10-1-07 and after | A | $52.90 | $53.10 | $53.20 | $53.35 |
| | B | 53.15 | 53.35 | 53.45 | 53.60 |
| | C | 53.40 | 53.60 | 53.70 | 53.85 |
| | D | 53.65 | 53.85 | 53.95 | 54.10 |

**For Benefit Commencement Dates between October 1, 2007 and September 1, 2010 with a Benefit Overpayment Recovery under the Life and Disability Benefits Program beginning October 1, 2009 Payments Effective**

| Benefit Commencement Date | Benefit Class Code | 10-1-07 through 9-1-08 | 10-1-08 through 9-1-09 | 10-1-09 through 9-1-10 | 10-1-10 and after |
|---|---|---|---|---|---|
| For Benefits commencing 10-1-07 and after | A | $52.90 | $53.10 | $53.30 | $53.45 |
| | B | 53.15 | 53.35 | 53.55 | 53.70 |
| | C | 53.40 | 53.60 | 53.80 | 53.95 |
| | D | 53.65 | 53.85 | 54.05 | 54.20 |

**Appendix C – Early Retirement Temporary Benefit**

**APPENDIX C**
**(Early Retirement Temporary Benefit)**
**For Benefits Payable October, 1999 and After**

| Retirement Date | Rate per Year of Credited Service* ** |
|---|---|
| Prior to March 1, 1980 | $20.94 |
| March 1, 1980 through February 28, 1985 | $19.69 |
| March 1, 1985 through February 28, 1988 | $22.67 |
| March 1, 1988 through February 28, 1989 | $27.83 |
| March 1, 1989 through February 28, 1990 | $28.07 |
| March 1, 1990 through February 28, 1991 | $28.30 |
| March 1, 1991 through February 28, 1994 | $32.60 |
| March 1, 1994 through February 28, 1997 | $35.27 |
| March 1, 1997 Through September 30, 1997 | $38.75 |

\*    Up to a maximum of 30 years of Credited Service.
\*\*   $17.15 for years of Credited Service in excess of 30 for retirements on or after February 1, 1980.

**Appendix D – 30&Out Total Monthly Benefit**

### APPENDIX D
**The Total Monthly Benefit For Purposes of Article III Section 6.B.**

**Total Monthly Benefit For Determining,
Monthly Early Retirement Supplement
Prior To Age 62 And One Month**

| Date of Retirement | Benefit Payable 10/1/99 through 9/30/07 | Benefit Payable 10/1/07 and after |
|---|---|---|
| 10/1/97 through 9/30/99 | $2,385.00 | $2,505.00 |

| Date of Retirement | 10/01/99 through 9/30/00 | 10/01/00 through 9/30/01 | 10/01/01 through 9/30/03 | 10/1/07 and after |
|---|---|---|---|---|
| 10/1/99 through 9/30/03 | $2,380.00 | $2,480.00 | $2,600.00 | $2,720.00 |

| Benefit Commencement Date | 10/01/03 through 9/30/04 | 10/01/04 through 9/30/05 | 10/01/05 through 9/30/06 | 10/01/06 through 9/30/07 | 10/1/07 and after |
|---|---|---|---|---|---|
| 10/03 through 9/30/07 | $2,805.00 | $2,875.00 | $2,950.00 | $3,020.00 | $3,140.00 |

| Benefit Commencement Date | 10/01/07 through 9/30/08 | 10/01/08 through 9/30/09 | 10/01/09 through 9/30/10 | 10/01/10 and after |
|---|---|---|---|---|
| 10/01/07 and later | $3,140.00 | $3,150.00 | $3,160.00 | $3,170.00 |

In addition, and solely for an eligible Employee who has attained 30 or more years of Credited Service prior to October 1, 1999, the Early Retirement Supplement above shall be increased by an amount equal to the Employee's Credited Service at Retirement in excess of 30 years multiplied by the sum of $17.15 and the Retired Employee's Basic Benefit rate pursuant to Appendix B.

**Appendix E – Special Early Retirement Supplementary Benefit Rates**

**APPENDIX E**

**(Special Early Retirement Supplementary Benefit)**

**For Benefits Payable to Employees Who Retire Effective October 1999 and After**

| Benefit Commencement Date | Rate Per Year of Credited Service* | Monthly Maximum |
|---|---|---|
| March 1, 1997 through September 1, 1998 | $38.15 | $1,144.50 |
| October 1, 1998 through September 1, 1999 | $39.65 | $1,189.50 |
| October 1, 1999 through September 1, 2000 | $39.85 | $1,195.50 |
| October 1, 2000 through September 1, 2001 | $41.45 | $1,243.50 |
| October 1, 2001 through September 1, 2002 | $43.35 | $1,300.50 |
| October 1, 2002 through September 1, 2003 | $45.45 | $1,363.50 |
| October 1, 2003 through September 1, 2004 | $46.75 | $1,402.50 |
| October 1, 2004 through September 1, 2005 | $48.05 | $1,441.50 |
| October 1, 2005 through September 1, 2006 | $49.50 | $1,485.00 |
| October 1, 2006 through September 30, 2007 | $50.80 | $1,524.00 |
| October 1, 2007 through September 30, 2008 | $50.80 | $1,524.00 |
| October 1, 2008 through September 30, 2009 | $51.00 | $1,530.00 |
| October 1, 2009 through September 30, 2010 | $51.20 | $1,536.00 |
| October 1, 2010 and after | $51.40 | $1,542.00 |

* Up to a maximum of 30 years of Credited Service.

**Appendix F – Disability Retirement Supplementary Benefit Rates**

## APPENDIX F

**(Disability Retirement Supplementary Benefit)**

For Benefits Payable October, 1999 and After

| Date of Retirement | Rate per Year of Credited Service * |
|---|---|
| Prior to February 1, 1980 | $16.65 |
| February 1, 1980 through February 28, 1985 | $22.65 |
| March 1, 1985 through February 29, 1988 | $24.65 |
| March 1, 1988 through February 28, 1989 | $25.85 |
| March 1, 1989 through February 28, 1990 | $26.95 |
| March 1, 1990 through February 28, 1991 | $28.05 |
| March 1, 1991 through February 29, 1992 | $30.40 |
| March 1, 1992 through February 28, 1993 | $32.60 |
| March 1, 1993 through February 28, 1994 | $34.70 |
| March 1, 1994 through February 28, 1995 | $35.40 |
| March 1, 1995 through February 28, 1996 | $36.35 |
| March 1, 1996 through February 28, 1997 | $37.50 |
| March 1, 1997 through September 30, 1998 | $37.75 |

**Appendix F – Disability Retirement Supplementary Benefit Rates**

| Benefit Commencement Date | Rate per Year of Credited Service * |
|---|---|
| October 1, 1998 through September 1, 1999 | $38.65 |
| October 1, 1999 through September 1, 2000 | $38.85 |
| October 1, 2000 through September 1, 2001 | $40.45 |
| October 1, 2001 through September 1, 2002 | $42.35 |
| October 1, 2002 through September 1, 2003 | $44.45 |
| October 1, 2003 through September 1, 2004 | $45.75 |
| October 1, 2004 through September 1, 2005 | $47.05 |
| October 1, 2005 through September 1, 2006 | $48.50 |
| October 1, 2006 through September 1, 2007 | $50.80 |
| October 1, 2007 through September 1, 2008 | $50.80 |
| October 1, 2008 through September 1, 2009 | $51.00 |
| October 1, 2009 through September 1, 2010 | $51.20 |
| October 1, 2010 and after | $51.40 |

\*      Up to a maximum of 30 years of Credited Service.  $18 for years of Credited Service in excess of 30 for retirements on or after February 1, 1980 for Employees who attain 30 or more years of Credited Service prior to October 1, 1999, and who retired prior to October 1, 2003.

**Appendix G – Interim Supplement Rates**

**APPENDIX G**

**Interim Supplement Rates**

**Monthly Amount\* for Each Year of
Credited Service for Retired Employees whose
Benefits Commence on or After October 1, 2003 and prior to October 1, 2007**

| Age at Retirement | 10-1-03 | 10-1-04 | 10-1-05 | 10-1-06 | 10-1-07 |
|---|---|---|---|---|---|
| 55 | $20.10 | $20.70 | $21.35 | $21.90 | $22. |
| 56 | 23.75 | 24.45 | 25.20 | 25.85 | 26. |
| 57 | 28.41 | 29.21 | 30.15 | 30.94 | 31. |
| 58 | 33.27 | 34.21 | 35.30 | 36.19 | 36. |
| 59 | 36.98 | 38.01 | 39.25 | 40.24 | 41. |
| 60 | 42.83 | 44.07 | 45.45 | 46.64 | 47. |
| 61 | 43.12 | 44.36 | 45.75 | 46.94 | 47. |

**Monthly Amount\* for Each Year of
Credited Service for Retired Employees whose
Benefits Commence on or After October 1, 2007**

| Age at Retirement | BCC | 10-1-07 | 10-1-08 | 10-1-09 | 10-1-10 |
|---|---|---|---|---|---|
| 55 | A | $22.35 | $22.45 | $22.55 | $22.60 |
|  | B | 22.35 | 22.45 | 22.55 | 22.60 |
|  | C | 22.35 | 22.45 | 22.55 | 22.60 |
|  | D | 22.35 | 22.45 | 22.55 | 22.60 |
| 56 | A | $26.35 | $26.50 | $26.60 | $26.70 |
|  | B | 26.35 | 26.50 | 26.60 | 26.70 |
|  | C | 26.35 | 26.50 | 26.60 | 26.70 |
|  | D | 26.35 | 26.50 | 26.60 | 26.70 |
| 57 | A | $31.58 | $31.68 | $31.83 | $31.93 |
|  | B | 31.58 | 31.68 | 31.83 | 31.93 |
|  | C | 31.58 | 31.68 | 31.83 | 31.93 |
|  | D | 31.58 | 31.68 | 31.83 | 31.92 |
| 58 | A | $36.93 | $37.08 | $37.22 | $37.37 |
|  | B | 36.92 | 37.07 | 37.22 | 37.37 |
|  | C | 36.92 | 37.07 | 37.22 | 37.37 |
|  | D | 36.92 | 37.07 | 37.22 | 37.37 |
| 59 | A | $41.02 | $41.21 | $41.36 | $41.56 |
|  | B | 41.01 | 41.21 | 41.36 | 41.55 |
|  | C | 41.01 | 41.21 | 41.35 | 41.55 |
|  | D | 41.01 | 41.20 | 41.35 | 41.55 |
| 60 | A | $47.56 | $47.76 | $47.96 | $48.15 |
|  | B | 47.56 | 47.76 | 47.95 | 48.15 |
|  | C | 47.56 | 47.75 | 47.95 | 48.15 |
|  | D | 47.55 | 47.75 | 47.95 | 48.14 |
| 61 | A | $47.88 | $48.08 | $48.28 | $48.48 |

**Appendix G – Interim Supplement Rates**

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | B | 47.88 | 48.08 | 48.28 | 48.47 |
|  | C | 47.88 | 48.07 | 48.27 | 48.47 |
|  | D | 47.87 | 48.07 | 48.27 | 48.48 |

*Prorated for intermediate ages computed to the nearest whole month.

**Appendix H – Reduction Factors for Selected Ages for Disability Survivor Option Before Age 57 and 55**

## APPENDIX H

**Reduction Factors at Selected Ages
For Disability Survivor Option
Before Age 57 (for retirements prior to October 31, 2003) and
Before Age 55 (for retirements on or after October 31, 2003)**

Table H 1 (for retirements prior to October 31, 2003)

| Age of Employee When Benefits Commence | 10 Years Younger | 5 Years Younger | Same Age | 5 Years Older | 10 Years Older |
|---|---|---|---|---|---|
| 30 | 7.27% | 6.67% | 5.92% | 5.03% | 4.04% |
| 35 | 8.99 | 8.25 | 7.35 | 6.27 | 5.07 |
| 40 | 11.51 | 10.60 | 9.48 | 8.16 | 6.67 |
| 45 | 14.76 | 13.66 | 12.31 | 10.72 | 8.91 |
| 50 | 18.89 | 17.61 | 16.05 | 14.22 | 12.11 |
| 51 | 19.83 | 18.51 | 16.93 | 15.06 | 12.90 |
| 52 | 20.79 | 19.45 | 17.84 | 15.94 | 13.75 |
| 53 | 21.78 | 20.42 | 18.79 | 16.86 | 14.64 |
| 54 | 22.81 | 21.43 | 19.78 | 17.84 | 15.61 |

Table H 2 (for retirements on or after October 31, 2003)

| Age of Employee When Benefits Commence | 10 Years Younger | 5 Years Younger | Same Age | 5 Years Older | 10 Years Older |
|---|---|---|---|---|---|
| 30 | 8.6% | 8.1% | 7.5 | 6.7% | 5.9% |
| 35 | 10.4 | 9.9 | 9.2 | 8.3 | 7.2 |
| 40 | 12.5 | 11.8 | 11.0 | 10.0 | 8.8 |
| 45 | 14.3 | 13.5 | 12.7 | 11.6 | 10.3 |
| 50 | 13.9 | 13.2 | 12.4 | 11.4 | 10.2 |
| 51 | 13.1 | 12.5 | 11.7 | 10.8 | 9.7 |
| 52 | 10.4 | 9.9 | 9.3 | 8.6 | 7.7 |
| 53 | 3.4 | 3.2 | 3.0 | 2.8 | 2.5 |
| 54 | 3.4 | 3.3 | 3.1 | 2.8 | 2.5 |

Note:  Actuarial reduction factors for ages not shown above will be calculated on the same basis as the factors shown above.

**Appendix I – Limitation on Contributions and Benefits**

## APPENDIX I

### Limitation on Contributions And Benefits

1.    Annual Benefit

    A.    A benefit that is payable annually in the form of a straight life annuity under a defined benefit plan. Such benefit does not include any benefit attributable to either Employee contributions or rollover contributions. If a defined benefit plan provides for a benefit that is not payable in the form of a straight life annuity, the benefit is adjusted in accordance with Clause C. below.

    B.    Where a defined benefit plan provides for mandatory Employee contributions (as defined in Internal Revenue Code Section 411 (c)(2)(C), the annual benefit attributable to such contributions is not taken into account. The annual benefit attributable to mandatory contributions is determined by using the factors described in Internal Revenue Code Section 411 (c)(2)(B) and the regulations thereunder, regardless of whether Code Section 411 applies to that plan. However, the mandatory Employee contributions and any voluntary Employee contributions are all considered a separate defined contribution plan maintained by the Corporation.

    C.    Where a defined benefit plan subject to the limitations of Internal Revenue Code Section 415(b) provides a retirement benefit in any form other than a straight life annuity, a defined benefit plan benefit is adjusted to a straight life annuity beginning at the same age that is the actuarial equivalent of such benefit in accordance with rules determined by the Commissioner of Internal Revenue. However, the following values are not taken into account;

      (i)    the value of a qualified joint and survivor annuity (as defined in Code Section 417(b) and the regulations thereunder) provided by a defined benefit plan to the extent that such value exceeds the sum of

        (a)    the value of a straight life annuity beginning on the same day and

        (b)    the value of any post-retirement death benefits that would be payable even if the annuity were not in the form of a joint and survivor annuity;

      (ii)    the value of benefits that are directly related to retirement benefits (such as pre-retirement disability and death benefits and post-retirement medical benefits);

      (iii)    the value of benefits provided by a defined benefit plan that reflect post-retirement cost-of-living increases to the extent that such increases are in accordance with Code Section 415(d) and the regulations thereunder.

2.    If benefits commence before age 62, the benefit must be limited to the actuarial equivalent of the Employee's Limitation On Annual Benefit, as defined below in Section 4, for benefits commencing at age 62.  In order to determine actuarial equivalence for this purpose, the interest rate assumption used by the Plan shall not be less than the greater of 5 percent or the rate under this Plan used for determining actuarial equivalence for early retirement.

Where an Employee has less than 10 years of participation with the Company at the time the Employee begins to receive retirement benefits under a defined benefit plan, the benefit limitations described in Internal Revenue Code Section 415(b)(1) and (5) are to be reduced by multiplying the otherwise applicable limitation by a fraction:

**Appendix I – Limitation on Contributions and Benefits**

        (i)      the numerator of which is the number of years of participation with the Company as of and including the current Limitation Year, or 1, whichever is greater, and

        (ii)     the denominator of which is 10.

3.     If the retirement benefit under a defined benefit plan begins after age 65, the Maximum Permissible Defined Benefit Amount is adjusted to the lesser of the actuarial equivalent of a $160,000 annual benefit beginning at age 65 or the Employee's highest average compensation in accordance with rules determined by the Commissioner.  The interest rate used when determining the actuarial equivalent shall not be greater than 5% or the rate specified in this Plan.

The annual benefit to which an Employee is entitled at any time under all defined benefit plans maintained by the Company shall not, during the Limitation Year, exceed the Limitation on Annual Benefit.

4.     Limitation On Annual Benefits
For a Limitation Year the Maximum Permissible Defined Benefit Amount with respect to any Employee shall be the lesser of the amounts determined under paragraphs A and B below, subject to the rules of paragraphs C., D., and E.below, where;

A.     is $160,000, and

B.     is 100 percent of the Employee's average compensation for his high three consecutive years of service.

C.     As of January 1 of each calendar year commencing with the calendar year 2002, the dollar limitation set forth in paragraph A above shall be adjusted automatically to equal the dollar limitation as determined by the Commissioner of Internal Revenue for that calendar year under Internal Revenue Code Section 415(d)(1)(A).  This adjusted dollar limitation applies for the Limitation Year ending with that calendar year. It is applicable to employees who are participants of the defined benefit plan and to Employees who have retired or otherwise terminated their service under a defined benefit plan with a non-forfeitable right to accrued benefits, regardless of whether they have actually begun to receive such benefits.  The annual benefit payable to a terminated Employee that is otherwise limited by the dollar limitation shall be increased to take into account the adjustment of the dollar limitation.

D.     With regard to Employees who have separated from service with a nonforfeitable right to accrued benefits, the Compensation limitation described in paragraph B above applicable to Limitation Years commencing on or after January 1, 1976, shall be adjusted annually to take into account increases in the cost-of-living. For any Limitation Year beginning after the separation occurs, the adjustment of the Compensation limitation is made as specified in regulations and rules prescribed by the Commissioner. In the case of an Employee who separated from service prior to January 1, 1976, the cost-of-living adjustment of the Compensation limitation under this paragraph for all Limitation Years prior to January 1, 1976, is to be determined as provided by the Commissioner.

E.     Anything herein to the contrary, an Employee's benefit shall be deemed not to exceed the Maximum Permissible Defined Benefit Amount if when added to the benefits paid to the Employee from any other defined benefit plans or plans of the Employer, such benefits do not exceed $10,000 in any Limitation Year and the Employer has not maintained a defined contribution plan in which the Employee was a participant.

**Appendix I – Limitation on Contributions and Benefits**

5.      Projected Annual Benefit

The annual benefit to which an Employee would be entitled under a defined benefit plan on the assumptions that he/she continues employment until the normal retirement age (or current age, if that is later) thereunder, that his/her Compensation continues at the same rate as in effect for the Limitation Year under consideration until such age, and that all other relevant factors used to determine benefits under the defined benefit plan remain constant as of the current Limitation Year for all future Limitation Years.

6.      For purposes of applying the limitations of Internal Revenue Code Section 415(b) applicable to an Employee for a particular Limitation Year, all qualified benefit plans (without regard to whether a plan has been terminated) ever maintained by the Company will be treated as part of this Plan.

If the benefits under this Plan are aggregated with benefits under another defined benefit plan for purposes of such Section 415, any reductions required by section 415 will be made first with respect to the plan in which the Employee most recently accrued benefits, except that the Chrysler LLC Pension Plan will be reduced last.

7.      Earnings.

    A.      For purposes of this Appendix I, Earnings for a Limitation Year shall include:

        (i)      The Employee's wages, salaries, bonuses, fees for professional service, and other amounts received for personal services actually rendered in the course of employment with the Employer, including earned income from sources outside the United States (as defined in Internal Revenue Code Section 911(b), whether or not excludable from gross income under Internal Revenue Code Section 911 or deductible under Internal Revenue Code Section 913;

        (ii)      Amounts received by the Employee through accident and health insurance for personal injuries or sickness, but only to the extent that these amounts are includable in the Employee's gross income under Internal Revenue Code Section 105(a) or (h);

        (iii)      Disability retirement payments described in Internal Revenue Code Section 105(d), whether or not they are excludable from the Employee's gross income under that Internal Revenue Code Section;

        (iv)      Amounts paid or reimbursed by the Employer for moving expenses incurred by an Employee, but only to the extent that these amounts are not deductible by the Employee under Internal Revenue Code Section 217;

        (v)      The value of a non-qualified stock option granted to an Employee by the Employer, but only to the extent that the value of the option is includable in the gross income of the Employee for the taxable year in which granted; and

        (vi)      The amount includable in the gross income of an Employee upon his making an election under Internal Revenue Code Section 83(b) to include the value of property transferred in connection with his performances of services for the Employer in the taxable year of the transfer.

**Appendix I – Limitation on Contributions and Benefits**

(vii)    Amounts that are includible in the gross income of an employee under the rules of section 409A or section 457(f)(1)(A) or because the amounts are constructively received by the employee.

B.    For purposes of this Appendix I, Earnings shall not include:

(i)    contribution made by the Employer to this or any other plan of deferred compensation to the extent that before the application of this Appendix I and the Internal Revenue Code Section 415 limitation, the contributions are not includable in the Employee's gross income for the taxable year in which contributed, (except, effective January 1, 1998, for any elective deferrals, as defined in Internal Revenue Code Section 402(g)(3), and any amount contributed or deferred by the Employer at the election of the Employee by reason of Internal Revenue Code Section 125), contributions to Simplified Employee Pension Plans to the extent deductible by the Employee under Internal Revenue Code Section 219(b)(7) or distributions from a plan of deferred compensation, other than an unfunded plan;

(ii)    Amounts realized from the exercise of a non-qualified stock option, or from the sale, exchange, or other disposition of stock acquired under a qualified stock option, or when restricted property held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture; or

(iii)    Other amounts that receive special tax benefits, such as premiums for group term life insurance to the extent that they are not includable in the Employee's gross income.

8.    Limitation Year

The Limitation Year shall be the fiscal period beginning March 1 and ending the last day of the following February.

9.    Employer.

For purposes of this Appendix I, the term Employer shall mean the Company and all affiliated companies, within the meaning of Internal Revenue Code Section 1563(a), determined without regard to Internal Revenue Code Section 1563(a)(4) and (e)(3)(C); but in applying the definition of affiliated companies, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" wherever the latter phrase appears in Internal Revenue Code Section 1563(a)(1). In addition, the term shall include all trades or businesses (whether or not incorporated) that are under the common control of the Employer. If the Employer is a member of an affiliated service group as defined in Internal Revenue Code Section 414(m)(2), all Employees of the members shall be treated as employed by a single employer.

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

**APPENDIX J**
**Provisions for Employees Hired on or After October 1, 2007**

**Section 1.  Definitions**

(1)    "Actuarial Equivalent" means a benefit of equivalent value when computed on the basis of the Applicable Mortality Table and the Applicable Interest Rate.

(2)    "Annuity Starting Date" means the first day of the first period for which an amount is payable in any form.

(3)    "Applicable Interest Rate" means the rate of interest referenced in Code Section 417(e), as in effect from time to time, for the Lookback Month immediately preceding the first day of the Stability Period. For purposes of this Section, "Stability Period" means the Plan Year, and the "Lookback Month" means the third full calendar month preceding the first day of the Stability Period.

(4)    "Applicable Mortality Table" means the mortality table referenced in Code Section 417(e), as in effect from time to time.

(5)    "Beneficiary" means the person or persons designated by the employee in accordance with Section 5(6)(d). (Designation of Beneficiary) to receive payments under the Plan in the event of the employee's death when the employee does not have a Surviving Spouse.

(6)    "Cash Balance Account" means the account established under Section 3(2) (Cash Balance Account).

(7)    "Cash Balance Accrued Benefit" means, as of any date, the benefit earned by an employee under the Pension Plan as of that date, when computed in accordance with Section 3(1) (Cash Balance Accrued Benefit).

(8)    "Code" means the Internal Revenue Code of 1986, as amended, and any successor laws.

(9)    "Direct Rollover" means a payment by the Pension Plan to the Eligible Retirement Plan specified by the Distributee.

(10)    "Distributee" means an employee, former employee, a Surviving Spouse, or Spouse or former Spouse who is an alternate payee under a qualified domestic relations order, as defined in Code Section 414(p).

(11)    "Eligible Retirement Plan" means an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), a Roth IRA described in Code Section 408A, an annuity plan described in Code Section 403(a), an annuity contract described in Code Section 403(b), an eligible plan under Code Section 457(b) that is maintained by a state, political subdivision of a state, or any agency or

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

instrumentality of a state or political subdivision of a state that agrees to separately account for amounts transferred into such plan from this Pension Plan, or a qualified plan as described in Code Section 401(a) that accepts the Distributee's Eligible Rollover Distribution.

(12)    "Eligible Rollover Distribution" means any distribution of all or any portion of the balance to the credit of a Distributee, except the following:

    (a)    Any distribution that is one of a series of substantially equal period payments (paid not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and Distributee's designated beneficiary.

    (b)    Any distribution that is one of a series of distributions paid to the Distributee and his designated beneficiary over a specified period orof 10 years or more.

    (c)    Any distribution to the extent such distribution is required under Code Section 401(a)(9).

    (d)    The portion of the distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation for employer securities), except to the extent:

        (1)    such portion is transferred in a Direct Rollover to a qualified trust described in Code Sections 401(a) or 403(a) or an annuity contract described in Code Section 403(b) that provides for separate accounting for amounts so transferred (and earning thereon), including separately accounting for the portion of the distribution that is includible in gross income and the portion of the distribution that is not so includible, or

        (2)    such portion is transferred to an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b).

(13)    "Employment Commencement Date" means the date on which an employee first performs an hour of service within the meaning of Department of Labor Regulations Section 2530.200b-2(a)(1) for the Company.

(14)    "Interest Credits" means the amounts credited to the Cash Balance Account of each employee pursuant to Section C.4. (Interest Credits).

(15)    "Interest Credit Rate" means the third segment rate described in Code Section 430(h)(2)(C)(iii) for the third full calendar month preceding the first day of the Plan Year.

(16)    "Late Retirement Date" means the first day of any month coincident with or next following the date the employee terminates employment after his Normal Retirement Date.

(17)    "Normal Retirement Age" means the date the employee reaches age 65.

(18)    "Normal Retirement Date" means the first day of the month coincident with or next following the date the employee reaches his Normal Retirement Age.

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

(19)   "Pay Credits" means the amounts credited to each employee's Cash Balance Account pursuant to Section 3(3) (Pay Credits).

(20)   "Period of Service" means a period commencing on an employee's Employment Commencement Date or Reemployment Commencement Date and ending on his Severance Date.

(21)   "Period of Severance" means the period commencing on an Employee's Severance Date and ending on his Reemployment Commencement Date.

(22)   "Plan Year" means the 12 consecutive month period beginning on each January 1 and ending on the following December 31.

(23)   "Reemployment Commencement Date" means the first day following a Period of Severance on which an employee performs an hour of service within the meaning of Department of Labor Regulations Section 2530.200b-2(a)(1) for the Company.

(24)   "Severance Date" means the earlier of
   (a)      the date an employee retires, dies, quits, or is discharged; or
   (b)      the first anniversary of the date the employee is absent for any other reason.

(25)   "Spouse or Surviving Spouse" means the person legally married to the employee on the Annuity Starting Date. For purposes of determining benefit recipients upon the death of the employee, the Surviving Spouse shall be the person to whom the employee is legally married for at least one year as of the date of the employee's death. A former spouse shall be considered a Spouse to the extent specified in a domestic relations order determined to be a qualified domestic relations order.

(26)   "Vesting Service" means service which is counted towards an employee's vested benefit under the Pension Plan, as described in Section 4(1) (Vesting Service).

(27)   "Years of Service" means any consecutive 12 month period beginning on an employee's Employment Commencement Date or Reemployment Commencement Date and ending each anniversary thereof.


**Section 2.  Eligibility**

(1)   <u>General Rule.</u>  The provisions of this Appendix J shall apply only to employees with seniority hired on or after October 1, 2007. Such employees shall participate in and accrue benefits under this Appendix J only and not under any other provisions of this Pension Plan, effective as of their seniority date.

(2)   <u>Rehired Employees.</u>   Any employee entitled to a benefit under Article III Eligibility for and Amount of Benefits who terminates employment and is subsequently rehired as an employee on or after October 1, 2007, shall participate in and accrue benefits under this Appendix J

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

only and not under any other provisions of this Pension Plan, effective as of the date he regains seniority. Such an employee shall accrue benefits under this Appendix J based solely on his Period of Service commencing on or after his Reemployment Commencement Date.

(3)     Transfers.
    (a)     Transfer to Non-Covered Service.   An employee who is transferred on or after October 1, 2007, to a job classification within the Company not covered by the terms of the Pension Plan shall not, for such period, earn any Pay Credits, although he shall continue to earn Vesting Service and be credited with Interest Credits.
    (b)     Transfer to Covered Service.  A Company employee not covered under the terms of this Pension Plan who is transferred on or after October 1, 2007, to a job classification within the Company covered under the terms of this Pension Plan shall be eligible to participate and accrue benefits under this Appendix J only, and not under any other provisions of this Pension Plan, effective as of his employment transfer date.

**Section 3.  Benefit Amounts**

(1)     Cash Balance Accrued Benefit.   An employee's Cash Balance Accrued Benefit as of any determination date shall be a monthly amount equal to the Actuarial Equivalent of the employee's Cash Balance Account projected to Normal Retirement Age, including future Interest Credits (determined using the Interest Credit Rate in effect as of the determination date) to that age, payable for the employee's lifetime commencing at his Normal Retirement Date.

(2)     Cash Balance Account.   A Cash Balance Account shall be established and maintained for each employee. Any such account shall be a hypothetical account used to record the amount of retirement benefits payable under this Section 3. (Benefit Amounts) and Section 5. (Payment of Benefits). The Cash Balance Account shall be equal to the sum of the employee's Pay Credits and Interest Credits.  The beginning Cash Balance Account for any employee shall be $0. An employee shall not have an actual individual account and shall not have any claim to any particular assets of the Pension Plan.

(3)     Pay Credits.
    (a)     General.   As of the last day of each Plan Year, each employee shall receive a Pay Credit to his Cash Balance Account equal to 6.4% of his base hourly wage rate for each straight-time hour worked during that Plan Year. The amount to be credited will be determined on a pay-period-by-pay-period basis, based on the employee's straight-time hours and base hourly wage rate during the applicable pay-period, with the aggregate amount credited as of the last day of the Plan Year equal to the sum of the amounts calculated for each payroll period ending within that Plan Year; provided that in no event will an employee be credited with more than 2080 of straight-time hours in any Plan Year. If an employee incurs a Severance Date during the Plan Year, however, his Pay Credits for that Plan Year shall be credited as soon as administratively feasible following his Severance Date.

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

    (b)   <u>Pay Credits During Military Service.</u>  An employee shall receive Pay Credits in accordance with Code Section 414(u) with respect to qualified military service for the United States provided he resumes active employment within the period during which he has reemployment rights under the Uniformed Services and Reemployment Rights Act of 1994, as amended or superseded.  Such Pay Credits shall be based on his base hourly rate in effect on of his last day worked and assuming 40 straight-time hours worked for each full pay period of absence due to military service.

(4)   <u>Interest Credits.</u>  As of the last day of each Plan Year, each employee shall receive an Interest Credit for that Plan Year.  Interest Credits for each Plan Year shall be calculated by multiplying the employee's Cash Balance Account as of the first day of that Plan Year by the Interest Credit Rate for that Plan Year.  An employee's Cash Balance Account shall continue to receive Interest Credits until his Annuity Starting Date. If an employee's Annuity Starting Date is before the last day of a Plan Year, his Interest Credits for that Plan Year shall be determined by multiplying the Interest Credit applicable to his Cash Balance Account for that Plan Year by a fraction, the numerator of which is the number of complete months worked through the Annuity Starting Date and the denominator of which is 12 (or, in the case of a short Plan Year, the number of complete months in the Plan Year).

**Section 4.  Vesting**

(1)   <u>Vesting Service.</u>  Subject to Section 4(3) (Forfeiture), an employee shall receive vesting service for each of his Years of Service earned as of his Severance Date.

(2)   <u>Vested Percentage.</u>

    (a)   <u>Vesting Schedule.</u>  An employee's vested interest in his Cash Balance Accrued Benefit shall be determined as follows:

| *Years of Service* | *Vested Percentage* |
|---|---|
| Less than 3 years | 0% |
| 3 years | 100% |

    (b)   <u>Vesting Upon Reaching Normal Retirement Age.</u>  An employee shall be 100% vested in his Cash Balance Accrued Benefit upon reaching his Normal Retirement Age, provided he is then employed by the Company.

(3)   <u>Forfeiture.</u>  If an employee's vested percentage is zero as of his Severance Date, his Cash Balance Accrued Benefit shall be forfeited on his Severance Date.  If the former employee is reemployed by the Company before his Period of Severance equals 60 consecutive months, his forfeited Cash Balance Accrued Benefit shall be restored as of his Reemployment Commencement Date and shall be credited with Interest Credits retroactive to his Severance Date. An employee's nonvested Cash Balance Accrued Benefit shall be permanently forfeited, and his Vested Service credited before his Period of Severance shall be permanently cancelled, as of the date his Period of Severance equals more than 60 consecutive months.

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

**Section 5.  Payment of Benefits**

(1)  <u>Normal Retirement Benefit.</u>  An employee who terminates active employment with the Company, for reasons other than death, on or after his Normal Retirement Age, but no later than his Normal Retirement Date, shall have a nonforfeitable right to 100% of his Cash Balance Accrued Benefit and shall be entitled to receive a Normal Retirement Benefit.  The Normal Retirement Benefit is a monthly pension amount equal to his Cash Balance Accrued Benefit payable as of his Normal Retirement Date.

(2)  <u>Late Retirement Benefit.</u>  An employee whose employment terminates, or whose employment continues after, his Normal Retirement Date shall have a nonforfeitable right to 100% of his Cash Balance Accrued Benefit and shall be entitled to receive a Late Retirement Benefit. The Late Retirement Benefit is a monthly pension amount equal to the greater of the Actuarial Equivalent of his Cash Balance Account determined as of his Late Retirement Date, or the Actuarial Equivalent of his Cash Balance Accrued Benefit determined as of his Normal Retirement Date.

(3)  <u>Vested Termination Benefit.</u>
    (a)  <u>Deferred Vested Termination Benefit.</u>  An employee who terminates employment with the Company before his Normal Retirement Date with a vested Cash Balance Accrued Benefit shall be entitled to receive a Deferred Vested Termination Benefit. The Deferred Vested Termination Benefit is a monthly pension amount equal to his Cash Balance Accrued Benefit determined as of his Normal Retirement Date.

    (b)  <u>Immediate Vested Termination Benefit.</u>  Upon application to the Board of Administration, an employee who is eligible for a Deferred Vested Termination Benefit may elect to receive an Immediate Vested Termination benefit in lieu of a Deferred Vested Termination Benefit. The Immediate Vested Termination Benefit is a monthly pension amount equal to the Actuarial Equivalent of his Cash Balance Account determined as of his Annuity Starting Date.

(4)  <u>Payment of Cash Balance Accrued Benefit.</u>
    (a)  <u>Application.</u>  An employee or former employee eligible for benefits under this Appendix J shall make application therefore in accordance with Article IV Commencement and Duration of Benefits and his benefit shall be paid, as applicable, in accordance with Article IV Section 7 (Facility of Payment).

    (b)  <u>Cash-Out of Small Benefits.</u>
        (i)  <u>Employees.</u>  Notwithstanding anything contained in this Section 5. (Payment of Benefits) to the contrary, if the Actuarial Equivalent present value of the employee's vested Cash Balance Accrued Benefit does not exceed $5,000, the employee's benefit will be paid to him, regardless of whether he has applied therefor in accordance with Article IV (Commencement and Duration of Benefits) or whether he or his Spouse has consented thereto. Such payment shall be made in a single lump payment as soon as administratively feasible,

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

but not later than the end of the second Plan Year following his termination of employment with the Company. If an employee fails to make a distribution election within 60 days from the date notice was given to him under this Section 5(4)(b) concerning the disposition of his vested Cash Balance Accrued Benefit and the distribution is in excess of $1,000, such distribution shall be transferred to an individual account issuer with whom the Pension Plan has a written agreement that satisfies Department of Labor Regulations Section 2550.404a-2(c). The Board of Administration may, but is not required to, make such transfers with respect to distributions under this Section 5(4)(b) of $1,000 or less.

(ii)   <u>Qualified Domestic Relations Orders.</u>   The provisions of Section 5(4)(b)(i) (Employees) shall also apply to amounts payable to an alternate payee pursuant to an qualified domestic relations order and, in such case, shall be applied solely with reference to the amounts payable to the alternate payee, provided that the amount does not exceed $5,000. Amounts payable under this Section 5(4)(b)(ii) shall be distributed as soon as administratively feasible following determination by the Board of Administration that a domestic relations order relating to the Pension Plan is "qualified' within the meaning of Code Section 414(p).

(c)   Normal Form of Benefit. Except as otherwise elected by the employee pursuant to Section 5(4)(d) (Optional Forms of Benefit), benefits shall be payable on the first of each and every succeeding month during the employee's lifetime, ending with the payment immediately preceding his death.

(d)   <u>Optional Forms of Benefit.</u>   In lieu of the normal form for payment of retirement benefits provided in Section 5(4)(c)(Normal Form of Benefit), an employee may elect an optional form for payment of his benefits. An election of an optional form for payment of retirement benefits must be submitted by the employee to the Board of Administration during the 180 day period immediately preceding the employee's Annuity Starting Date and, if the employee is married on his Annuity Starting Date, the request must be accompanied by a waiver of the Qualified Spouse Annuity, as described as described in Section 5(4)(e) (Qualified Spouse Annuity), that includes the consent of the Spouse to the election, in the form and manner required by the Board of Administration. The optional forms for payment of retirement benefits are as follows:

(a)   <u>Spouse Annuity.</u>   An Actuarial Equivalent retirement benefit payable monthly throughout the period commencing on the employee's Annuity Starting Date and continuing during the lifetime of the employee, with 50%, 75% or 100% (as selected by the employee) of the amount of such reduced benefit continuing to be paid to, and for the lifetime of, his Surviving Spouse. An election of this option shall be cancelled in the event that either the employee or his Spouse dies before the date benefits begin.

(b)   <u>Lump Sum.</u>   A single lump sum payment equal to the employee's Cash Balance Account as of his Annuity Starting Date.

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

    (e)    <u>Qualified Spouse Annuity.</u>

        (i)    <u>Amount of Benefit.</u>  If the employee is legally married on his Annuity Starting Date, he shall be deemed to have elected the optional form for payment of retirement benefits provided for in Section 5(4)(d)(i) (Spouse Annuity), payable immediately, with a 50% continuation factor, unless the employee elects, at the time and manner described in Section 5(4)(e)(iii) (Election to Waive Qualified Spouse Annuity), that his retirement benefits are to be paid in the form set forth in Section 5(4)(c) (Normal Form of Benefit) or in one of the other optional forms permitted pursuant to Section 5(4)(d) (Optional Forms of Benefit).

        (ii)    <u>Notice of Qualified Spouse Annuity.</u>  At least 30 days, but not more than 180 days, before the Annuity Starting Date, the Board of Administration shall provide each employee, in writing, a reasonable explanation of

            (a)    the terms and conditions of the Qualified Spouse Annuity,

            (b)    the employee's right to waive, and the effect of the waiver of, the Qualified Spouse Annuity,

            (c)    the rights of the Spouse, and

            (d)    the right to revoke, and the effect of a revocation of, a previous waiver of the Qualified Spouse Annuity.

        (iii)    <u>Election to Waive Qualified Spouse Annuity.</u>  During the 180 day period ending on the Annuity Starting Date, a married employee may waive the Qualified Spouse Annuity or revoke a prior waiver.  A waiver of the Qualified Spouse Annuity shall not be effective unless the Spouse consents to the waiver. The employee may revoke the waiver without the Spouse's consent.

(5)    <u>Survivor Annuity.</u>

    (a)    <u>Applicability of Survivor Annuity.</u>  A Survivor Annuity shall be provided to the Surviving Spouse of each employee who has a vested Cash Balance Accrued Benefit and who dies before receiving any benefit payments under this Appendix J.

    (b)    <u>Amount of Survivor Annuity.</u>  The Surviving Spouse may elect to receive any, but not more than one, of the following forms of payment:

        (i)    <u>Survivor Annuity.</u>  A monthly benefit that continues for the lifetime of the Surviving Spouse based on the Actuarial Equivalent of the Cash Balance Account determined as of the Surviving Spouse's Annuity Starting Date.

        (ii)    <u>Survivor Lump Sum.</u>  A single lump sum cash payment in an amount equal to the Cash Balance Account determined as of the Surviving Spouse's Annuity Starting Date.

    Such benefit shall be payable to the employee's Surviving Spouse commencing as of the first day of the month following the date of the employee's death, unless a later date is elected by the Surviving Spouse, which date shall not be later than the date the employee would have reached age 70-1/2.

    (c)    <u>Cost of Survivor Annuity.</u>  The Company fully subsidizes the cost of providing the Survivor Annuity and the benefit payable to or on behalf of the employee shall not be adversely affected because he is covered by a Survivor Annuity.

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

      (d)     <u>Cash-Out of Small Survivor Annuity.</u>  Notwithstanding anything in this Section 5(5) (Survivor Annuity) to the contrary, if the Actuarial Equivalent present value of the Survivor Annuity is not greater than $5,000 at the death of the employee, the Survivor Annuity shall be paid to the Surviving Spouse immediately in a single lump sum payment, regardless of whether the Surviving Spouse has applied therefor or consented thereto.

(6)    <u>Death Benefit.</u>

      (a)     <u>Applicability of Death Benefit.</u>  If an employee dies before receiving any benefit payments under this Appendix J and the employee has no Surviving Spouse, the employee's vested Cash Balance Accrued Benefit shall be paid to the employee's Beneficiary.

      (b)     <u>Payment of Death Benefit.</u>  The employee's Beneficiary shall be paid a single lump sum cash payment in an amount equal to the Cash Balance Account determined as of the employee's date of death. Such benefit shall be payable to the employee's Beneficiary commencing as of the first day of the month following the date of the employee's death, but not later than the end of the calendar year which contains the fifth anniversary of the employee's death.

      (c)     <u>Cash-Out of Death Benefit.</u>  Notwithstanding anything in this Section 5(6) (Death Benefit) to the contrary, if the Actuarial Equivalent present value of the Death Benefit is not greater than $5,000 at the death of the employee, the Death Benefit shall be paid to the Beneficiary immediately in a single lump sum payment, regardless of whether the Beneficiary has applied therefor or consented thereto.

      (d)     <u>Designation of Beneficiary.</u>  Each employee shall have the right to name a beneficiary to receive Death Benefits as provided under this Section 5(6) (Death Benefits). An employee may amend or revoke his designation; provided, however, that:

          (i)     No designation, or amendment or revocation thereof, shall become effective if filed after such employee's death, unless the Board of Administration shall otherwise consent.

          (ii)    In the absence of an effective designation of Beneficiary, or if the Beneficiary shall not survive the employee, then the Death Benefits shall be paid to the employee's estate.

          (iii)   In the event the employee's Beneficiary disclaims his interest in any payment from the Plan, the amount payable as of result of the employee's death shall thereafter be payable from the Plan as if the Beneficiary had predeceased the employee. The Board of Administration shall have no obligation to establish the validity of any disclaimer presented to it.

          (iv)   Any designation of the employee's Spouse as a Beneficiary shall automatically be immediately revoked upon the employee's divorce from his Spouse.  An employee's Beneficiary, whether automatically determined or specified by the

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

employee shall, in any case, be a "designated beneficiary" for purposes of distributions under Code Section 401(a)(9).

(7)  <u>Direct Rollovers.</u>  A Distributee may elect, at the time and in the manner prescribed by the Board of Administration, to have all or a portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

## Section 6.  Rehire of Employees

(1)  <u>Rehire Before Payment.</u>  If a former employee, who upon termination of employment was entitled to a benefit under this Appendix J, is subsequently rehired as an employee covered under this Appendix J prior to receiving any benefits under this Appendix J, he shall not be entitled to commence payments under this Appendix J until he again terminates employment. He, however, shall participate in this Appendix J again as of his seniority date and begin to accrue benefits again as of his Reemployment Commencement Date.

(2)  <u>Rehire After Payment.</u>

  (a)  <u>Prior Lump Sum Distribution.</u>  If a former employee who received a lump sum distribution of his entire vested Cash Balance Accrued Benefit is subsequently rehired as an employee covered under this Appendix J, his Cash Balance Accrued Benefit shall not be reinstated upon his Reemployment Commencement Date. He shall be treated as a newly-hired employee under Section 2(1) (General Rule), except that his Vesting Service earned during his prior Period of Service shall be reinstated, and he shall receive new accruals based solely on his Pay Credits and Interest Credits earned during his period of reemployment.  Such new accruals shall be paid in any form selected by the employee as provided under Section 5(4)(d) (Optional Forms of Benefit) upon the employee's subsequent termination of employment.

  (b)  <u>Annuity Payments Under Appendix J.</u>  If a former employee who is receiving benefits in the normal form of benefit pursuant to Section 5(4)(c). (Normal Form of Benefit) or a Spouse Annuity pursuant to Section 5(4)(d)(i) (Spouse Annuity) is subsequently rehired as an employee covered under this Appendix J, he shall continue to receive payment of his monthly benefits during his period of reemployment.  The monthly benefits amount of a reemployed employee beginning as of the first day of the month on or following his subsequent termination of employment shall be the greater of

   (i)  a recalculated benefit based on the total of his Cash Balance Accrued Benefit as of the last day of his prior employment plus Pay Credits and Interest Credits earned during his period of reemployment, less the Actuarial Equivalent of the benefits already received, or

   (ii)  the monthly benefit paid prior to reemployment plus a monthly benefit paid in the same form based on the employee's Pay Credits and Interest Credits earned during his period of reemployment.

  Such benefits shall be paid in the same form as in effect during the employee's period of reemployment.

**Appendix J – Provisions for Employees Hired on or After October 1, 2007**

**Section 7.  Applicability of General Provisions of Pension Plan**

The following sections of the Pension Plan shall be applicable to this Appendix J:
Article IV - Commencement and Duration of Benefits (except for references to Supplemental and Temporary Benefits and Special Lump Sum Payments)
Article V – Financing
Article VI – Procedure for Handling Questions of Fact
Article VII – Board of Administration
Article VIII – Nonalienation of Benefits
Article IX – Amendment and Duration of the Plan
Article X – Termination or Merger of the Plan
Article XI – Named Fiduciaries
Appendix I (Limitations on Contributions and Benefits)

August 12, 1997
(1)  TRANSFERRED EMPLOYEES

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This will confirm the understanding we reached with you during the current negotiations between Chrysler Corporation and the Union regarding the Jeep Corporation-UAW Retirement Income Plan referred to below as the "Jeep Plan".

Our understanding relates to the Employees who have seniority at a Plant of the Company and who either are or have been transferred from employment covered by the Jeep Plan to employment covered by a similar plan of Chrysler Corporation providing Chrysler corporate-level pension benefits (referred to below as the Chrysler Plan) or who are or have been transferred from employment covered by the Chrysler Plan to employment covered by the Jeep Plan.

We agreed that the Employees to whom our understanding relates would have their Credited Service under the Jeep Plan and any service credited under the Chrysler Plan determined as follows:

Credited Service for transferees to the Jeep Plan:

> In addition to service credited to an Employee covered by the Jeep Plan pursuant to Article II, Credited Service also includes those periods deemed as "credited service" under the Chrysler Plan ("Transferred Service"). Such Transferred Service shall become Credited Service under Article II upon the Employee's attaining seniority under the Agreement between the parties.

Credited Service for transferees from the Jeep Plan:

> Credited Service as an Employee under the Jeep Plan shall be transferred to the Chrysler Plan and shall cease to be Credited Service under the Jeep Plan. The Employee shall cease to participate under the Jeep Plan effective as of such transfer of Credited Service.

If the Chrysler Plan that would be so affected is covered by a collective agreement, the understandings herein reached in these negotiations shall only become effective after all parties to that agreement concur with the receipt of Jeep Plan Credited Service or the transfer of Transferred Service to the Jeep Plan as provided herein.

The parties reaffirmed their understanding relating to Employees who have been transferred between employment covered by the Jeep Plan and employment covered by a plan of Chrysler Corporation not providing Chrysler corporate-level pension benefits (or a Chrysler Plan whose parties have not concurred in the service transfer understandings herein), as follows:

- Such Employees would remain "employees" within the meaning of the Jeep Plan so long as they had Credited Service under either plan, but that they would earn Credited Service under the Jeep Plan only as set forth in its Article II. The total of their credited service under both the Jeep Plan and the Chrysler plan would be used to determine eligibility under the Jeep Plan for basic, supplementary or temporary benefits, but only the Jeep Plan Credited Service would be used to determine the amount of the monthly basic, supplementary or temporary benefit paid under the Jeep Plan.

- If the total of such an employee's Jeep Plan Credited Service and Chrysler Plan credited service exceeds 30 years, the number of years of Credited Service which shall be used in computing the amount of any supplementary or temporary benefit shall be the greater of the employee's Credited Service on December 31, 1987 or 30 years times the fraction the numerator of which is the employee's Credited Service under the Jeep Plan and the denominator is the employee's total credited service under the Jeep Plan and the Chrysler Plan.

Under these arrangements, there shall be no duplication of credited service or basic, supplementary, temporary, special age 65 or death benefits under any Article of the Jeep Plan and the credited service or pension, supplemental allowances or special age 65 benefits under any other Chrysler Plan or death benefits or permanent total disability benefits under the Chrysler group life insurance program.

Very truly yours,

CHRYSLER CORPORATION
By   J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By   J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(2)  ADMINISTRATIVE EXPENSE

Mr. Jack Sizemore
Regional Director, Region 2B, UAW
1691Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This is to confirm the understanding reached between the parties during the current negotiations regarding the application of Article VII, Section 3-J of the Jeep Corporation UAW Retirement Income Plan.

The parties agreed that, in addition to reimbursement from the Fund for expenses incurred by the Company for office space, equipment, clerical and other assistance, the aforementioned Section also provides that the Company may charge to the Fund the direct cost of benefit administration performed by the Company for the Jeep Corporation-UAW Retirement Income Plan. Such costs include expenses incurred for check writing services, systems and programming services, computer operations, supplies and materials, telephone charges and postage.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(3)  SPECIAL EARLY STANDARDS

Mr. Jack Sizemore
Regional Director, Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

Attached for your information are the standards applied by the Company in the administration of the "Special Early Retirement" provision of the Jeep Corporation-UAW Retirement Income Plan.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Attachment

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

**EARLY RETIREMENT UNDER SPECIAL EARLY RETIREMENT CONDITIONS**

A.  Special Early Retirement is designed to benefit both the Company and the Employee, particularly in those instances when the Company might be reluctant, due to circumstances being beyond the control of the employee, to apply this type retirement without the advantage of the higher pension benefits that the Special Early Retirement Pension provides. This pension provides benefits of (1) an unreduced basic pension for life, (2) a Special Early Retirement Supplementary Benefit until age 65 or, if earlier, until the retiree becomes eligible for an unreduced old age benefit or disability benefit under the Federal Social Security Act.

B.  The utilization of this type of retirement for an eligible Employee between ages 57 and 65 with at least 10 years of Credited Service may be given consideration in any of the following situations:

    (1)  In the event of a permanent plant shutdown.

    (2)  In the event of a layoff which appears to be permanent.

    (3)  In the event an Employee is physically or mentally unable to perform his work in a satisfactory manner due to a permanent partial disability which results in:
        (i)  Excessive absenteeism.
        (ii)  Decreased productivity.
        (iii)  Frequent salary continuation and/or sickness and accident payments.

    (4)  In the event of an extended period of disability, as provided in C below.

C.  An Employee not actively at work because of an extended period of disability may be considered for Special Early Retirement either
        (i)  following the cessation of sickness and accident benefits or salary continuation payments,
        (ii)  during the period he is receiving extended disability benefits,
        (iii)  following the cessation of extended disability benefits or
        (iv)  at the time he is being considered for return to work.
A determination will be made by the Company at that time based on medical evidence satisfactory to the Company, as to whether or not the Employee will again be employable by the Company.

    (1)  If at that time the disability still exists and it appears that such disability will be continuous until the Employee's normal retirement age and the probability of his being reinstated prior to his normal retirement age is remote because of such disability, the Employee may be considered for Special Early Retirement.
    (2)  If at that time the disability still exists and it appears that such disability will be permanent and total, the Employee may be eligible for a permanent total disability pension in accordance with the applicable section of the Pension Plan.

D.  If the Employee's condition, based on medical evidence satisfactory to the Company, is such that, although able to perform the duties of his job satisfactorily, he would thereby be jeopardizing his health or that of fellow employees, and it is expected that his condition will be continuous until his normal retirement age such Employee may be considered for Special Early Retirement.

E.   In making a determination as to whether or not Special Early Retirement is to be extended to and Employee, care is exercised that all of the basic facts have been considered.

F.   (1)   If the request for Special Early Retirement is initiated by the Employee, he may make written application on a form provided by the Company.

     (2)   If the necessary approvals are obtained, the retirement will be automatically coded under "Special Early".

     (3)   If the necessary approvals are not obtained, the Employee will be advised in writing that his request has been denied and will be given the reason for denial, e.g., insufficient medical evidence.  A copy of the denial will be forwarded to the Chrysler Retirement Plans Planning and Administration Department.

G.   In the event of a plant closing or discontinuance of operations on or after October 1, 2003, an employee with 10 or more years of Credited Service who is laid off at age 50 or older (but not 65 or older), whose layoff appears to be permanent, and who has not been offered suitable work by the Company in the same labor market area, will be eligible upon attaining age 55 for a Special Early Retirement.

H.   In the event of a plant closing on or after October 1, 2003, an employee with 10 or more years of Credited Service, who is laid off at age 50 or older (but not 65) and where no other DaimlerChrysler plant exists within the same labor market, will be eligible for a Special Early Retirement.

August 12, 1997
(4)  OVERPAYMENT RECOVERIES

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This is to confirm the understanding reached between the parties during the current negotiations regarding the recovery of certain overpayments under the Jeep Corporation-UAW Retirement Income Plan from Retired Employees or surviving spouses.

In the event of an overpayment of an Early Retirement Temporary Benefit (or a basic Pension because a reduction was not made for an effective surviving spouse option) resulting solely and clearly from a demonstrable management error occurring on or after March 1, 1997, the liability of the affected Retired Employee or surviving spouse shall be limited to the repayment of the most recent 12 months of any such overpayment. Such limitation, however, shall not be applicable to the repayment of any overpayment that might have occurred for any period prior to the date of such management error.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(5)  ACTUARIAL VALUATIONS AND 5500 REPORTS

Mr. Jack Sizemore
Regional Director –Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This will confirm the understanding reached between the parties during the current negotiations that the Company will annually furnish as soon as practicable to the Jeep-UAW Board of Administration a copy of the SFAS 87 Pension information (contained in the Company's annual report), actuarial valuations, trustee report(s) and 5500 reports applicable to the Jeep Corporation-UAW Retirement Income Plan. Such actuarial valuations shall continue to provide full and complete information regarding the Plan's funding requirements.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR., UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(6)  IRS APPROVALS

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This is to confirm the understanding reached between the parties during the current negotiations that, notwithstanding anything in the Jeep Corporation-UAW Retirement Income Plan to the contrary, implementation of amendments to the Plan resulting from these negotiations will not be delayed pending the receipt by the Company of required Internal Revenue Service approvals set forth in Subtitle IX. Section 2 of the Plan.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

September 27, 1999
(7)  SSDIB AWARD

Mr. Lloyd Mahaffey
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This is to confirm our understanding regarding the interrelationship between eligibility for and amount of supplemental or temporary benefits under the Jeep Corporation-UAW Retirement Income Plan and Social Security Disability Insurance Benefits (SSDIB).

When a retired employee is awarded SSDIB, a portion of that award generally consists of a lump sum payment attributable to a period before the effective date of the award.  The effect of eligibility for SSDIB is to disqualify the Retired Employee or reduce or eliminate certain supplemental or temporary benefits under the Plan.  In the case of receipt of a part of SSDIB as a lump sum for an earlier period by a Retired Employee who has been receiving a supplemental or temporary benefit, an overpayment obligation also accrues under the Plan.

When an initial claim for SSDIB, is denied and the Retired Employee engages the services of an attorney to appeal such denial, if on or after March 1, 1998, the appeal of the attorney is successful and a portion of the lump sum payment not to exceed 25 percent is awarded to the attorney, the Retired Employee's repayment obligation will be satisfied if he notifies the Plan within 30 days of the receipt of a retroactive SSDIB award and repays to the Plan within 30 days after notice from the Board of Administration an amount equal to the overpayment of and supplemental or temporary benefits under the Plan less in such case the amount of attorney fees involved on that portion of the award. This reduction applies only to attorney fees associated with a successful appeal of an initial denial by Social Security for SSDIB and includes only that portion of the attorney fees associated with the period of time the Retired Employee received supplemental or temporary benefits under the Plan. Such attorney fees considered for this purpose may not exceed 25 percent of the overpayment due to the Plan. Attorney fees for services prior to denial of initial application for SSDIB will not reduce the amount of an overpayment due to the Plan.

Very truly yours,

DAIMLERCHRYSLER CORPORATION
By  R.F. Brown

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  L. Mahaffey

Letter Originated September 27, 1999
R.F. Brown (Corporation)
L. Mahaffey (Union)

August 12, 1997
(8)  PTD STUDY

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

During the current negotiations, the parties discussed the requirements under which an employee could qualify for a Disability Retirement Benefit under Article III, Section 4 of the Jeep Corporation-UAW Retirement Income Plan.

The Company expressed its concern relative to the volume of disability retirements Processed in recent years and indicated its desire to review:

(1)     the definition of "Permanently and Totally Disabled" to determine its continued appropriateness and,

(2)     the medical verification process for determining an applicant's eligibility for a Disability Retirement.

Since an in-depth review of this subject matter would require a considerable time commitment, the parties agreed that they would initiate a study during the term of this Agreement to determine whether such qualification requirements under Article III, Section 4 of the Plan should be amended.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997

(9)  HOURLY BENEFITS STATEMENT

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This will confirm the understanding reached between the parties during the current negotiations that the Company will annually furnish a Benefits Statement to employees represented by the UAW.

It is expected that such a Statement will contain information similar to that provided other hourly employees of Chrysler Corporation represented by the UAW and will be distributed to employees as soon as practicable after the end of each calendar year. To the extent that a Benefits Statement cannot be mechanically generated for certain employees (e.g. employees on various leaves of absence or layoff, employees age 65 or older, etc.), a Benefits Statement will not be issued to them.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

September 27, 1999

(10)  SURVIVING SPOUSE OPTION NOTICE

Mr. Lloyd Mahaffey
Regional Director – Region 2B. UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Mahaffey:

This will confirm the understanding reached between the parties during the current negotiations that the Corporation will notify all retirees that, eligible retirees who have married or remarried after retirement have the option to elect the surviving spouse option for their spouse.  Notification will occur semi-annually by, for example, but not limited to, messages on the retiree pay statements.

Very truly yours,

DAIMLERCHRYSLER CORPORATION
By  R.F.Brown

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  L. Mahaffey

Letter Originated September 27, 1999
R.F. Brown (Corporation)
L. Mahaffey (Union)

August 12, 1997
(11)  NOTICE OF BENEFIT AMOUNTS

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

During these negotiations, the Company and the Union agreed that the Jeep Corporation - UAW Retirement Income Plan will provide to any Retired Employee or surviving spouse a notice detailing the components of the pension benefit whenever there is a recalculation of the pension benefit. The Corporation also agreed to display the surviving spouse option reduction amount on the check stubs sent to retirees.

Additionally, the parties agreed that all Retired Employees and surviving spouses would receive a notice, as soon as practicable after the conclusion of these negotiations, explaining any pension benefit changes resulting from these negotiations.

Very truly your,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(12)  TOLL-FREE NUMBER

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This is to confirm the agreement reached by the parties during negotiations that a toll-free number for Retired Employees and surviving spouses will remain available.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accented and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(13)  JEEP CORPORATION-UAW RETIREMENT INCOME PLAN SIMPLIFICATION

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

During these negotiations, the Company and the Union discussed the desirability of simplifying the text of the Jeep Corporation-UAW Retirement Income Plan (Plan) to improve readability and facilitate easier administration of the Plan's provisions.

It was agreed that after the conclusion of these negotiations, a committee would be established to review the Plan and to make recommendations regarding simplification to the Board of Administration. The committee shall consist of an equal number of Company and Union representatives appointed by the Board.

The Board shall be authorized to approve amendments to the Plan text recommended by the committee. The Board shall not be authorized to adopt amendments that change the substance of any provision or change or add to any benefit provided by the Plan, or to make any other changes in the Plan text not consistent with the purpose of Plan simplification.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997

(14)  CREDITED SERVICE FOR 1990, 1991, & 1992 LAYOFF TIME

Mr. Jack Sizemore
Regional Director, Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

During discussion leading to the 1997 Collective Bargaining Agreement between Chrysler Corporation and the UAW for the Toledo Assembly Plant, the parties expressed mutual concern regarding the lack of reliable records applicable to layoffs on the "J" assembly line during 1990, 1991, and 1992.

The parties therefore agreed that for an employee who has less than 12 months of credited service in 1990, 1991 or 1992 and was actively at work during such year, the employees credited service for such year shall be increased to 12 months except to the extent it can be definitely determined that the reason for any such lost time is the result of a condition for which lost time credited service is not provided.

Yours very truly,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(15)  SPECIAL EARLY OFFER

Mr. Jack Sizemore
Regional Director - Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

During discussions leading to the 1997 Collective Bargaining Agreement between Chrysler and the UAW for the Toledo Assembly Plant, the parties discussed at length the standards applied by the Company in the administration of the Special Early Retirement Provision of the Jeep Corporation-UAW Retirement Income Plan.

The Corporation advised the Union that, due to the extraordinary economic circumstances affecting the Company, it has been necessary to accomplish a restructuring and downsizing of the Company and, attendant thereto, to substantially and permanently reduce the size of the Company's salaried workforce. In order to effect such permanent reductions, the Company has offered affected salaried employees, otherwise eligible, Special Early retirement. This is to advise you that, if during the term of the 1997 Toledo Assembly Plant Agreement the Company finds it necessary, in order to accomplish an additional restructuring and downsizing of the Company to make further permanent reductions in its Toledo Assembly Plant salaried work force through Special Early retirements, the Company will contemporaneously offer Special Early retirement to affect Toledo Assembly Plant hourly employees, otherwise eligible, where permanent reductions are then similarly required.

Very truly yours,

CHRYSLER CORPORATION
By  J.A. Glotzbach

Accepted and Approved:

INTERNATIONAL UNION, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(16)  INVESTMENTS

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodlands Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This will confirm the understanding we reached with you in negotiations leading to the 1997 Agreement for the Toledo Assembly Plant between Chrysler Corporation and the Union with respect to certain investments that might be made with a portion of the contributions of the Jeep Corporation-UAW Retirement Income Plan (Plan).

It was agreed that upon and subject to the terms set forth in this letter, a portion of the Company's annual contribution to the Pension Fund maintained under the Plan for each year this letter remains in effect, not exceeding five percent (5%) of the amount of such contribution that is available for investment after deducting the portion of the benefits payable under the Plan for such year which is in excess of the investment income (including dividends and interest, but excluding both realized and unrealized capital gains) earned by the Pension Fund may be invested in (1) residential mortgages in communities where there are substantial numbers of Toledo Assembly Plant UAW members, and (2) debt obligations of nonprofit nursing homes, nursery schools, federally qualified health maintenance organizations, hospitals or similar nonprofit institutions in communities where there are large concentrations of Toledo Assembly Plant UAW members. As mortgages and debt obligations are amortized, the principal portion of such payments made to the Pension Fund will be considered as amounts available for further investment in such mortgages and debt obligations. Solely for purposes of this paragraph, the Company's annual contribution to the Pension Fund shall be estimated by the Plan's qualified actuary based on an assumed rate of investment return of 8% compounded annually.

The residential mortgages will be available for and it is intended primarily will consist of mortgages on single and multiple family dwellings (including cooperatives and condominiums), the purchase price of which is equal to or below the average purchase price of similar housing in the community involved. The communities in which such mortgage financing will be made available will be selected and recommended to the trustees of the Pension Fund by the Investment Advisory Committee provided for in this letter. It is intended that such mortgage financing will be at rates and upon terms prevailing in the communities selected and will be available to the general public, including UAW members, but shall not be limited only to UAW members. The Investment Advisory Committee will recommend to the investment managers of the Pension Fund annually investments in nonprofit institutions of the kind described above which the Committee deems appropriate.

It was also agreed that the Union may submit to the investment managers of the Pension Fund annually a list of not more than ten (10) companies, including companies doing business in or with South Africa, and those selling that country military equipment or supplies, and to companies transporting military equipment or supplies to it, with the recommendation that the investment managers refrain from investing any of the funds of the Pension Fund in the securities of such companies. Such recommendation shall not apply with respect to any portion of the Pension Fund that is invested in interests in a common or collective trust fund or pooled investment fund maintained by any of the investment managers or to any insurance contract constituting part of the Pension Fund.

There shall be established an Investment Advisory Committee consisting of six members, three of whom shall be appointed by the Corporation (the "Corporation Members", and three of whom shall be appointed by the International Union, UAW (the "Union Members") which shall have authority for the (i) selecting and recommending to the investment managers of the Pension Plan the communities in which the residential mortgage financing described above will be made available, and (ii) annually recommending to such investment managers investments in nonprofit institutions described above which the Committee deems appropriate. At any meeting of the Committee, at least two Union Members and two Corporation Members shall be required to be present to constitute a quorum for transacting business, and the Corporation Members shall have a total of three votes and the Union Members shall have a total of three votes. The votes of any absent member shall be divided equally between the members present who were appointed by the same party. Decisions of the Committee shall be by a majority of the votes cast. In the event of a tie vote, the matter shall be referred to Corporate Union relations and International Union-UAW. The Corporation Members and the Union Members shall serve without compensation as such.

The investment managers of the Pension Fund shall exercise investment judgment with respect to recommendations received by them from the Investment Advisory Committee and the Union. The investment managers have the responsibility to secure, over the long term, the maximum attainable total return on investment consistent with the principles of sound, prudent pension fund management. They are expected to discharge their duties solely in the interest of Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, to avoid prohibited transactions, and to meet all other fiduciary responsibilities imposed by the Employee Retirement Income Security Act of 1974 ("ERISA") or other applicable law. Also they are expected to discharge their duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in a conduct of an enterprise of a like character and with like aims. It is intended that the investment managers of the Pension Fund shall continue to have full investment discretion. Accordingly, if in the judgment of the investment managers, any recommendation of the Investment Advisory Committee or the Union should not be implemented because in the exercise of their investment responsibilities they conclude that the recommended action is not appropriate or it otherwise does not meet the standards of prudence required or is not consistent with the fiduciary obligations and responsibilities of the investment managers, they shall not implement the request and shall so inform the Committee or the Union.

The Corporation and the Union agree that each of them will not privately or publicly urge the investment managers to reject any recommendation given to them pursuant to this letter.

Nothing in this letter shall prevent the investment managers of the Pension Fund from investing in their discretion a larger amount of the Pension Fund than that specified in the second Paragraph of this letter in investments of the type described in that paragraph.

This letter is subject to the requirement that there are maintained continuously (i) a ruling satisfactory to the parties from the United States Department of Labor to the effect that implementing this letter will not violate any of the Provisions of Title I, Subtitle B, Part 4 of ERISA and (ii) a determination letter satisfactory to the parties from the District Director of Internal Revenue Service to the effect that implementing this letter will not cause the Pension Plan and the Pension Fund to fail to continue to qualify under the applicable sections of the Internal Revenue Code relating to qualified pension plans and trusts.

Very truly yours,

CHRYSLER CORPORATION
By  J A. Glotzbach

Accepted and Approved:

INTERNATIONAL UNION, UAW

By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

August 12, 1997
(17)  BENEFIT CLASS CODES

Mr. Jack Sizemore
Regional Director – Region 2B, UAW
1691 Woodland Drive
Maumee, OH 43537

Dear Mr. Sizemore:

This will confirm the understandings reached in negotiations leading to the 1997 Agreement for the Toledo Assembly Plant between Chrysler Corporation and the Union with respect to Benefit Class Codes which will be used under the Jeep, Corporation-UAW Retirement Income Plan (Plan) effective for Employees retiring October 1, 1997 and after.

Pursuant to the understandings reached by the parties in these negotiations in the letter on Wage Parity, Toledo Assembly Plant classifications will be revised to correspond to Chrysler-UAW Production as Maintenance (P&M) Agreement classifications as of September 14, 1998. The Benefit Class Codes under the Plan on and after October 1, 1997 shall be determined based on the maximum base rates of the Toledo classifications, including any wage parity amounts, as of October 1, 1998.

It is the intent of the parties that the Benefit Class Code for any job classification on and after October 1, 1997 at the Toledo Assembly Plant be the same under this Plan as the code for such classification would be under the Pension Agreement between Chrysler Corporation and the UAW. With respect to any job classification whose benefit Class Code under this Plan would not otherwise match that under said Pension Agreement, or with respect to any Toledo Assembly Plant job classification which does not have a counterpart job classification under the Pension Agreement, the parties agree to establish the Benefit Class Code therefor which most closely matches the equivalent under the Pension Agreement.

In determining the Benefit Class Code for the period Prior to October 1, 1997 (for purposes of determining the job classification held for the greatest number of days during the 24 months immediately preceding an Employees last day worked, pursuant to Appendix A), any Toledo Assembly Plant job classification not in effect on October 1, 1997 shall be equated to the October 1, 1997 job classification into which it was incorporated by the parties in the implementation of the letter on Wage Parity.

Very truly yours,

CHRYSLER CORPORATION
By  J. A. Glotzbach

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By  J. Sizemore

Letter Originated – August 12, 1997
J.A. Glotzbach (Corporation)
J. Sizemore (Union)

September 27, 1999
(18)  WORKERS' COMPENSATION – CREDITED SERVICE

Mr. Lloyd Mahaffey
Regional Director – Region 2B, UAW
1691 Woodlands Dr
Maumee OH  43537

Dear Mr. Mahaffey:

During these negotiations, the Corporation and the Union discussed the problems that have arisen because of the employment coding system and the resulting impact on this on the credited service provision of the Jeep Corporation – UAW Retirement Income Plan.  This is to confirm that an employee who is absent from work on an approved leave of absence because of occupational injury or disease (code 54) and on account of such injury or disease, receives Workers' Compensation temporary total disability payments, will receive credited service at the rate of 40 hours for each complete week that the employee is on such leave.

For an employee whose initial leave is not considered an approved leave of absence because of occupational injury or disease, but the leave is subsequently changed to an approved leave of absence because of occupational injury or disease (Code 54), credited service will be given for the period for which Workers' Compensation temporary total disability benefits are deemed payable.

In addition, in those cases where Workers' Compensation temporary total disability benefits are no longer payable because the employee has reached maximum medical improvement or the time certain beyond which benefits are payable, the employee will also be given credited service at the rare of 40 hours for each complete week that he is on an approved leave of absence because of occupational injury or disease (Code 54).

The above notwithstanding, should an employee who would be otherwise eligible to receive credited service break seniority under the terms of the contract or be able to perform any job in the plant for which he has seniority, credited service shall cease to accrue as of that date.

To the extent an employee has not received credited service consistent with these provisions because of employment coding errors, credited service will be corrected if the error is brought to the attention of the employee's local Human Resources Office.

Very truly yours,

DAIMLERCHRYSLER CORPORATION
By  R.F. Brown

Accepted and Approved

REGIONAL DIRECTOR, UAW
By  Lloyd Mahaffey

Letter Originated – March 28, 2000
R.F. Brown (Corporation)
L. Mahaffey (Union)

December 22, 2003
(19)  EXTENDED SUPPLEMENTS – SOCIAL SECURITY 80% BENEFIT

Mr. Lloyd Mahaffey
Regional Director – Region 2B, UAW
1691 Woodlands Dr
Maumee OH 43537

Dear Mr. Mahaffey:

During these negotiations, the parties agreed that the term "80% Date" means the first of the month in which an individual is eligible to receive a Social Security Retirement Benefit equal to 80% of the individual's Social Security Full Retirement Benefit.   The parties further agreed to provide for extended Early Retirement Supplements, Special Early Retirement Supplementary Benefits, Early Retirement Temporary Benefits, Interim Supplements and Disability Retirement Supplementary Benefits for current retirees born in 1941, 1942, 1943, 1944 or 1945 who attain age 62 during the term of the 2003 agreement, and to future retirees born in those years who, during the term of the 2003 agreement,

(i)      Retire prior to attaining age 62 under

(a)      Article III Section (2) Regular Early Retirement:
(b)      Article III Section (3) Special Early Retirement; or
(c)      Article III Section (4) Disability Retirement
and
(ii)     attain age 62.

Any such Supplements payable at retirement will be extended until the month prior to the retiree's "80% Date".

During these negotiations, the parties also agreed to provide Early Retirement Supplements (notwithstanding the age limitations within Article III Section 6(B)), Special Early Retirement Supplementary Benefits (notwithstanding the age limitations of Article III Section 6(C)), Interim Supplements (notwithstanding the age limitations of Article III Section 6(F)),and Disability Retirement Supplementary Benefits (notwithstanding the age limitations of Article III Section 6(D)) to those employees born in 1941, 1942, 1943, 1944 and 1945 who, during the term of this agreement, retire subsequent to age 62 but prior to their individual "80% Date".  For the purpose of applying this provision, Interim Supplements will be determined as though the employee retired at age 61.

For those retirees whose basic pension is subject to recomputation at age 62 and 1 month, that recomputation will occur instead at the retiree's "80% Date"; provided, however, that if a retiree's total monthly pension after age 62 and one month is less than the retiree's recomputed basic pension after age 62 would have been under the prior pension plan, the retiree will receive an amount equal to such recomputed basic pension.

For a retiree who is receiving an Early Retirement Supplement, Interim Supplement, Special Early Retirement Supplementary Benefit or a Disability Retirement Supplementary Benefit and who also is receiving a Social Security Disability Benefit, that Supplement will cease at age 62 and 1 month.

The parties further agree that, during the term of this Agreement, they would review the issues surrounding the changes in the Social Security "80% Date" and evaluate alternatives to address this issue in the next Agreement.

Yours very truly,

DAIMLERCHRYSLER CORPORATION
By  K.J. McCarter

Accepted and Approved
REGIONAL DIRECTOR, UAW
By  Lloyd Mahaffey

Letter Originated – September 13, 2002
K.J. McCarter (Corporation)
L. Mahaffey (Union)

December 22, 2003
(20)  LUMP SUM PAYMENTS

Mr. Lloyd Mahaffey
Regional Director – Region 2B, UAW
1691 Woodlands Dr
Maumee OH 43537

Dear Mr. Mahaffey:

During these negotiations, the parties agreed upon certain lump sum payments to be made to eligible retired employees and surviving spouses.  This agreement is totally separate from, and independent of, the Jeep Corporation-UAW Retirement Income Plan (the Plan), and these payments are to be made from the Corporation's general assets and not from the assets of the Trust Fund.

Four lump sum payments will be made by the Corporation paid directly to retired employees and surviving spouses on the basis described below:

(1)     The following persons will be eligible for lump sum payments:
    (1.1)   Employees who retired with benefits commencing prior to October 1, 2003 under the terms of Article III Sections (1), (2), (3), or (4) of the Plan, and who are receiving benefits from the Plan as of the first of the month for which a lump sum payment would be made.  However, except for the March 2004 lump sum payment, if such a retired employee has an overpayment balance due the Corporation under the Life and Disability Benefits Program, lump sum payments will be reduced by 35% (as set forth in Letter (23) of the Plan.
    (1.2)   Surviving spouses pursuant to Article III (excluding surviving spouses under Article III Section (8)(E)) eligible for a benefit as of the first of the month for which a lump sum payment would be made, whose employee spouse was eligible for a benefit commencing prior to October 1, 2003.

(2)     Amount of lump sum payments:
    (2.1)   For a retired employee, with no overpayment balance under the Life and Disability Benefits Program, each lump sum payment shall be $50.00 ($800.00 less $750.00 paid from the Pension Fund pursuant to Letter (23) of the Plan).
    (2.2)   For a retired employee with an overpayment balance under the Life and Disability Benefits Program, each lump sum payment will be paid from the Pension Fund pursuant to Letter (23) of the Plan.
    (2.3)   For an eligible  surviving spouseeach lump sum payment will be paid from the Pension Fund pursuant to Letter (23) of the Plan.

(3)     Payment:
    (3.1)   First Payment – March 2004
    (3.2)   Second Payment – December 2004
    (3.3)   Third Payment – December 2005
    (3.4)   Fourth Payment – December 2006

Please indicate your concurrence in the proposed lump sum payments arrangements and other provisions of this letter.

Very truly yours,

DAIMLERCHRYSLER CORPORATION
By K.J. McCarter

Accepted and Approved

REGIONAL DIRECTOR, UAW
By Lloyd Mahaffey

September 13, 2002
(21)  INCENTIVE PROGRAM FOR RETIREMENT

Mr. Lloyd Mahaffey
Regional Director – Region 2B, UAW
1691 Woodlands Dr.
Maumee OH 43537

Dear Mr. Mahaffey:

This letter agreement amends the 1997 Jeep Corporation – UAW Retirement Income Plan ("Pension Plan") between DaimlerChrysler Corporation ("DCC") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local 12 (Jeep Unit) ("UAW").  The Pension Plan shall be construed and applied as if the Amendment were therein incorporated.

The UAW and DCC have agreed to make a lump sum payment from the Pension Fund established under the Pension Plan to certain hourly employees who retire under the terms of DCC's Incentive Program for Retirements ("IPR").

(1)     Requirements
        The UAW and DCC agree to offer the IPR to participants covered by the Pension Plan on the retirement dates and according to the eligibility requirements set forth in the attached schedule.  In order to qualify for an offer under the IPR, some of which offers may be conditional offers requiring management approval, an employee must:
        (a)     have a job classification under the 1997 Agreement between the parties and employment that has not terminated prior to receiving an offer to retire under the IPR (or prior to the additional effective dates of retirement agreed to between the parties and set forth in the attached schedule), and
        (b)     during the offer period or immediately prior to the additional effective dates of retirement referred to above, be on the active payroll; or be on a disability leave of absence and receiving "Sickness and Accident Benefits"; or be on temporary or indefinite layoff; or be on "Protected" status, and
        (c)     be designated by DCC management as eligible for an IPR offer or IPR conditional offer (all conditional offers must be accepted by DCC management), and
        (d)     satisfy the age and credited service requirements set forth in the attached schedule, and
        (e)     complete and return the Offer Letter or a Conditional Offer Letter during the offer period indicated in the attached schedule (except that those employees who retire at their own option and then later become covered under this agreement will not be required to complete and return any such Offer Letter or Conditional Offer Letter).

(2)     Eligibility
        Participants eligible to be offered an Incentive are those who meet the requirements in 1. above and who , as of the effective date of retirement, have attained age 57 and have 10 or more years of Credited Service or have attained 30 or more years of Credited Service.  Retirement hereunder shall be effective as indicated in the attached schedule except that a one-month to three-month extension to that date may be required (in accordance with terms established by the parties) by DCC for any employee for valid business reasons.  Additional participants eligible to be provided an Incentive pursuant to 1.a. above shall be those who retired under Article III Section 1 or Section 2 with retirement dates as indicated in the attached schedule inclusive.

(3)     Benefits
A participant retiring under the IPR will be covered by Article III Section 1 or Section 2 of the Pension Plan and receive benefits thereunder.  An incentive to retire in the amount of $18,700 (subject to 20% Federal tax) ("Incentive"), will be distributed from the Pension Fund, subject to the terms set forth in this amendment.  Unless extenuating circumstances occur, the Incentive will be payable to all participants who satisfy the requirements of Paragraph 1 together with other Pension benefits in the initial pension check received by the participant, with applicable taxes withheld.

(4)     Taxes
If the participant will not yet attain at least 55 as of the end of the calendar year of retirement and elects to receive a lump sum Incentive and is thereby subject to Federal excise tax penalty on the distribution, the Incentive amount will be increased by an amount to reimburse the participant for the excise tax due on such distributions from qualified retirement plans.  The Incentive will be based on the retiree's residence at the time of retirement, and will be an amount such that the net amount payable to the retiree (i.e. net of Federal taxes at 28% plus applicable state income taxes) shall be the same after consideration of the 10% Federal excise tax as it would have been without that excise tax.  Such increase will be reduced to the extent the $18,700 is not subject to a Federal excise tax due to a full or partial rollover (see below).

(5)     Methods of Payment
The participant and participant's spouse, where applicable, must provide a written election to receive the Incentive in one of the following forms:

| Forms of Payment<br>Participant must select 1 or 2 | Not married at the time of retirement | Married at the time of retirement |
|---|---|---|
| 1. Lump Sum Payment | Participant must reject monthly pension benefit (single life annuity) | Participant and spouse must reject monthly pension benefit |
| 2. Monthly pension benefit | Single Life Annuity | a.  If spouse consents, single life annuity or<br>b.  Qualified Joint and Survivor Annuity |

Such optional annuity forms of payment shall be equal to the actuarial equivalent of the single sum payment that the retiree would otherwise be entitled to receive.  The monthly pension amount payable to the participant is subject to terms of the Pension Plan covering lifetime monthly pension payments.  If a surviving spouse option is elected, payment is subject to the terms of Article III Section 8 of the Pension Plan and to the letters appended to the Pension Plan applicable to Surviving Spouse Benefits.  The monthly amounts shall not change at a future date, except as provided for in Article III Section 8 of the Pension Plan.

(6)     Direct Transfers of Eligible Rollover Distributions

To the extent required under applicable provisions of the Code section 401(1)(31) and regulations issued thereunder, a "distributee" entitled to an Incentive may elect to have all or part of the otherwise taxable portion of such distribution that constitutes an "eligible rollover distribution" (as described in Code section 402(c)) transferred directly from the Pension Fund established to hold the assets of the Pension Plan to an "eligible retirement plan" as defined in the Code section 402(c)(8).  Such election shall be made pursuant to procedures established by DCC.  For purposes of this provision, a "distributee" shall

mean a participant, a participant's surviving spouse, and the alternate payee of a participant (as defined in section 414(p) of the Code) who is the participant's spouse or former spouse.  In accordance with Code section 402(f) DCC will provide a written explanation of the appropriate tax, rollover, and withholding rules, to each distrubtee who is eligible to receive a rollover distribution.

Very truly yours,

DAIMLERCHRYSLER CORPORATION
By K.J. McCarter

Accepted and Approved

REGIONAL DIRECTOR, UAW
By Lloyd Mahaffey

Letter Originated September 13, 2002
K.J. McCarter (Corporation)
L. Mahaffey (Union)

**Schedule to Incentive Programs for Retirement**
**Program Offerings at the Toledo and Toledo North Assembly Plant**

| Offering Period | Retirement Date(s) | Offer/Conditional Offer | Date Letters Must be Returned | Additional Effective Dates of Retirement |
|---|---|---|---|---|
| June 8, 2001 – June 29, 2001 | June 30, 2001 | Conditional for skilled and non-skilled employees | June 29, 2001 | January 31, 2001 – May 31, 2001 |
| January 9, 2002 – January 29, 2002 | January 31, 2002 | Conditional for skilled employees | January 29, 2002 | None |
| April 2, 2002 – April 22, 2002 | April 30, 2002 | Conditional for non-skilled employees | April 22, 2002 | None |

**Exhibit A – Providing a Lump Sum from the Jeep Corporation-UAW Retirement Income Plan for Ages 44 and over**

| Age | Lump Sum | Conversion Factors Based on Age Plus 6 Months | | |
| | | Lifetime Monthly Annuity Without Surviving Spouse Option | 65% Surviving Spouse's Option | |
| | | | Lifetime Monthly Annuity With Surviving Spouse Option | Death Benefit for Spouse |
|---|---|---|---|---|
| 44 | $18,700.00 | $104.01 | $98.81 | $64.23 |
| 45 | 18,700.00 | 104.99 | 99.74 | 64.83 |
| 46 | 18,700.00 | 106.22 | 100.72 | 65.47 |
| 47 | 18,700.00 | 107.12 | 101.76 | 66.14 |
| 48 | 18,700.00 | 108.28 | 102.87 | 66.87 |
| 49 | 18,700.00 | 109.51 | 104.03 | 67.62 |
| 50 | 18,700.00 | 110.82 | 105.28 | 68.43 |
| 51 | 18,700.00 | 112.21 | 106.60 | 69.29 |
| 52 | 18,700.00 | 113.68 | 108.00 | 70.20 |
| 53 | 18,700.00 | 115.26 | 109.50 | 71.18 |
| 54 | 18,700.00 | 116.94 | 111.09 | 72.21 |
| 55 | 18,700.00 | 118.74 | 112.80 | 73.32 |
| 56 | 18,700.00 | 120.67 | 114.64 | 74.52 |
| 57 | 18,700.00 | 122.74 | 116.60 | 75.79 |
| 58 | 18,700.00 | 124.97 | 118.72 | 77.17 |
| 59 | 18,700.00 | 127.36 | 120.99 | 78.64 |
| 60 | 18,700.00 | 129.93 | 123.43 | 80.23 |
| 61 | 18,700.00 | 132.69 | 126.06 | 81.94 |
| 62 | 18,700.00 | 135.66 | 128.88 | 83.77 |
| 63 | 18,700.00 | 138.86 | 131.92 | 85.75 |
| 64 | 18,700.00 | 142.30 | 135.19 | 87.87 |
| 65 | 18,700.00 | 145.99 | 138.69 | 90.15 |
| 66 | 18,700.00 | 149.95 | 142.45 | 92.59 |
| 67 | 18,700.00 | 154.20 | 146.49 | 95.22 |
| 68 | 18,700.00 | 158.76 | 150.82 | 98.03 |
| 69 | 18,700.00 | 163.66 | 155.48 | 101.06 |
| 70 | 18,700.00 | 168.91 | 160.46 | 104.30 |
| 71 | 18,700.00 | 174.56 | 165.83 | 107.79 |
| 72 | 18,700.00 | 180.63 | 171.60 | 111.54 |
| 73 | 18,700.00 | 187.17 | 177.81 | 115.58 |
| 74 | 18,700.00 | 194.20 | 184.49 | 119.92 |
| 75 | 18,700.00 | 201.75 | 191.66 | 124.58 |
| 76 | 18,700.00 | 209.83 | 199.34 | 129.57 |
| 77 | 18,700.00 | 218.47 | 207.55 | 134.91 |
| 78 | 18,700.00 | 227.67 | 216.29 | 140.59 |
| 79 | 18,700.00 | 237.46 | 225.59 | 146.63 |
| 80 | 18,700.00 | 247.88 | 235.49 | 153.07 |

Note:  Age Factors based on 5.80% interest and the 83 Group Annuity Mortality Table weighted 50/50 male/female, with spouse the same age as participant (5% reduction).

September 13, 2002
(22)  Special Early Retirement

Mr. Lloyd Mahaffey
Regional Director - Region 2B, UAW
1691 Woodlands Dr.
Maumee OH 43537

Dear Mr. Mahaffey:

This letter agreement constitutes an amendment to the 1997 Jeep Corporation-UAW Retirement Income Plan (Pension Plan) and shall be construed and applied as if it were therein incorporated.

A Special Early Retirement (Program) shall be offered to certain employees at the Toledo Assembly Plant covered under the Pension Plan who meet the following criteria:

a)   have attained age 57 but not age 62 and have 10 or more years of pension Credited Service under the Pension Plan as indicated on the attached schedule and

b)   are on the active payroll or on disability leave of absence and receiving Accident & Sickness benefits (code 52); or on Temporary or Indefinite Layoff or on Protected Status and

c)   whose employment has not terminated prior to effective date of retirement.

The benefits under this Program shall be those provided to employees retiring early under Article III Section 3 of the Pension Plan.  The effective date of retirement for employees who accept the offers under the Program shall be as indicated on the attached schedule and may be subject to up to an additional 90-day extension for skilled trades employees (up to 60 days for non-skilled employees) by Management for valid business reasons. Employees must accept or reject the offer in writing no later than as indicated on the attached schedule.

The Corporation and the Union agree that the Toledo Assembly Plant employees listed on the attachment shall receive Special Early Retirement offers under the Program.

Sincerely,

DAIMLERCHRYSLER CORPORATION
By K.J. McCarter

Accepted and Approved

REGIONAL DIRECTOR, UAW
By Lloyd Mahaffey

Letter Originated September 13, 2002
K.J. McCarter (Corporation)
L. Mahaffey (Union)

**Schedule to Special Early Retirement**
**Program Offerings at the Toledo and Toledo North Assembly Plants**

| Offering Period | Retirement Date(s) | Offer/Conditional Offer | Date Letters Must be Returned |
|---|---|---|---|
| June 8, 2001 - June 29, 2001 | June 30, 2001 | Conditional for skilled and non-skilled employees | June 29, 2001 |
| January 9, 2002 – January 29, 2002 | January 31, 2002 | Conditional for skilled employees | January 29, 2002 |
| April 2, 2002 – April 22, 2002 | April 30, 2002 | Conditional for non-skilled employees | April 22, 2002 |

December 22, 2003
(23) Lump Sum - Pension Fund

Mr. Lloyd Mahaffey
Regional Director – Region 2B, UAW
1691 Woodlands Dr.
Maumee OH  43537

Dear Mr. Mahaffey:

During these negotiations, the parties agreed upon certain lump sum payments to be made to eligible retired employees and surviving spouses.  The parties have agreed to provide for lump sum payments in the amounts, in the years and under the terms set forth below.

Subject to all of the terms of the Jeep Corporation –UAW Retirement Income Plan, lump sum payments will be made to retired employees, surviving spouses and eligible alternate payees on the basis described below:

1.    The following persons will be eligible for lump sum payments:

(1.1)   Employees who retired with benefits commencing prior to October 1, 2003 under the terms of Article III Sections (1), (2), (3), or (4) of the Plan, and who are receiving benefits from the Plan as of the first of the month for which a lump sum payment would be made.

(1.2)   Surviving spouses of employees who retired under the terms of Article III (excluding surviving spouses under Article III Section (8)(E)), who were eligible for a benefit as of the first of the month for which a lump sum payment would be made, whose employee spouse was eligible for a benefit commencing prior to October 1, 2003.

(1.3)   Alternate payees will be eligible for a lump sum payment to the extent provided for in a Domestic Relations Order qualified by the Corporation thirty-one (31) days prior to the date on which a lump sum would be paid (QDRO) (as defined in Internal Revenue Code Section 414(p))(excluding alternate payees of former employees who broke seniority and are eligible for a deferred pension).

2.    Amount of lump sum payments:

(2.1)   For a retired employee, each lump sum payment shall be $750.00 and shall be paid from the Pension Fund established under the Jeep Corporation-UAW Retirement Income Plan. However, except for the March 2004 lump sum payment, if such a retired employee has an overpayment balance due the Corporation under the Life and Disability Benefits Program, each lump sum payment will be $520.00.

(2.2)   Eligible surviving spouses will receive $520.00 to be paid from the Pension Fund established under the Jeep Corporation-UAW Retirement Income Plan.

(2.3)   Eligible alternate payees may receive all or a portion of the lump sum payment in accordance with the terms of the applicable QDRO.

3.      Dates of lump sum payments:

      (3.1)   First Payment - March 2004
      (3.2)   Second Payment - December 2004
      (3.3)   Third Payment - December 2005
      (3.4)   Fourth Payment - December 2006

4.      Duplication of Benefits
There shall be no duplication in benefits between the lump sum defined in this letter and a lump sum defined in any other pension plan sponsored by the Corporation in which the Retired Employee or Surviving Spouse participates.

Please indicate your concurrence in the proposed lump sum payments arrangement and other provisions of this letter.

Very truly yours,

DAIMLERCHRYSLER CORPORATION
By K.J. McCarter

Accepted and Approved:

REGIONAL DIRECTOR, UAW
By Lloyd Mahaffey

December 22, 2003
(24) Parity Agreement

Mr. Lloyd Mahaffey
Regional Director – Region 2B, UAW
1691 Woodlands Dr.
Maumee OH  43537

Dear Mr. Mahaffey:

This letter will confirm the understanding reached between the Corporation and the Union during the 2003 contract negotiations concerning parity between the Jeep Corporation Union Retirement Income Plan (the Plan) and the DaimlerChrysler – UAW Pension Agreement (the National Agreement).

Substantial changes were made to the Plan as a result of this understanding, and it is the intent of the parties that the plans are to be interpreted and administered similarly.  The parties further agree that the National Plan is the basis for comparison, and that the Plan will be interpreted and administered in a manner consistent with the interpretation and administration of the National Plan.

Two notable exceptions to parity with the National Agreement remain, and are identified as follows:

1.  <u>Enhanced 30 & Out Retirement Supplement for Employees with 30 Years of Credited Service as of October 1, 1999</u>.
    Employees who had accrued 30 Years of Credited Service by October 1, 1999 continue to be eligible for an enhanced 30 & Out Early Retirement Supplement as described in Appendix D to the Plan.

2.  <u>57 and 10 Protected Benefit</u>.
    In bringing the Plan into parity with the National Plan, the 57 and 10 Retirement Eligibility under Article III Section 2(A)(1) ceased to be a set of conditions under which an employee could elect to retire.  A consequence of eliminating this eligibility criterion is that employees with an accrued benefit as of December 31, 2003 will have that accrued benefit "protected" with respect to the retirement provisions of Article III Section 2(A)(1), and the deferred vested provisions of Article III Section 5(C).  This protected benefit will be referred to as the "2003 57&10 Protected Benefit".

    An Employee with a 2003 57&10 Protected Benefit who is not otherwise eligible to retire, shall retain the right to draw his 2003 57&10 Protected Benefit upon attaining age 57, under the terms of Article III Section 2(A)(1) and as calculated under Article III Section 2(B)(2).  Such action will terminate the Employee's employment and, except with respect to such 2003 57&10 Protected Benefit for purposes of retirement under Article III Section 2(A)(1) or performing a calculation under Article III Section 2(B)(2) (and only to the extent of such 2003 57&10 Protected Benefit), the Employee will not be considered a Retired Employee under the Plan, but rather an Ex-Employee.  The Employee will be eligible to commence receipt of the balance of his entitlement (his accrued benefit less the Actuarial Value of his 2003 57&10 Protected Benefit expressed as a monthly annuity) upon satisfying the conditions of Article III Section 5(D).

    Similarly, an Ex-Employee with a 2003 57&10 Protected Benefit, whose employment is terminated prior to the Employee attaining age 57, shall retain the right to draw his protected benefit upon attaining age 57 under the terms of Article III Section 5(C) and shall be eligible to commence receipt of the balance of his entitlement (his accrued benefit less the Actuarial Value of his 2003 57&10 Protected Benefit expressed as a monthly annuity) upon satisfying the conditions of Article III Section 5(D).

For the purposes of determining the actuarial equivalence of both the protected benefit and the accrued benefit above, the interest rate and morality table will be those used by the Plan to determine an Actuarial Value of an equivalent lump sum value.

Very truly yours,
DAIMLERCHRYSLER CORPORATION


By K.J. McCarter

Accepted and Approved
REGIONAL DIRECTOR, UAW

By Lloyd Mahaffey